**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| FREEDOM WIRELESS, INC., |
| Plaintiff, |
| v. |
| BOSTON COMMUNICATIONS GROUP, INC., et al. |
| Defendants. |

Civil Action No. 05-11062 EFH

**NEXTEL COMMUNICATIONS, INC.'S
MOTION TO INTERVENE FOR LIMITED PURPOSE**

Nextel Communications, Inc. ("Nextel") moves this Court, pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure, to intervene in this action – both as of right and permissively – for the limited purposes of filing a Motion for Reconsideration of Ruling on Motion for Admission Pro Hac Vice of Marshall M. Searcy III and Erica P. Taggart and disqualifying them and the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") from any role as counsel to Plaintiff Freedom Wireless, Inc. because of the direct conflict of interest stemming from their concurrent representation of both Freedom Wireless, Inc. and Nextel.

As set forth previously in Nextel's Motion to Intervene and the supporting Memorandum filed in the related action, Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al., U.S. District Ct. (D. Mass.), C.A. No. 00-12234, Quinn Emanuel has represented Nextel since 1993, has generated millions of dollars from Nextel legal work, and continues to represent Nextel in a wide-variety of matters.  In addition, Quinn Emanuel also represented Nextel's merger partner, Sprint, prior to the merger that formed Sprint Nextel.  Although Nextel is not a

defendant in this action, Quinn Emanuel in its representation of Freedom Wireless will have to take positions in this action that adversely affect the interests of its other client, Nextel. This is an ethical violation under Rule 1.7 of the Rules of Professional Conduct.

Furthermore, Nextel has filed a Motion to Intervene in the action, Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al., C.A. No. 00-12234, which is currently on appeal to the Federal Circuit, and if allowed to intervene, plans to immediately file a Motion to Disqualify Quinn Emanuel. The Motion for Reconsideration of Ruling on Motion for Admission Pro Hac Vice and the Motion to Disqualify that Nextel intends to file if permitted to intervene are attached to this motion as Exhibits A and B respectively, in accordance with the requirements of Rule 24 of the Federal Rules of Civil Procedure.

In a separate motion, Nextel seeks leave and an extension of time to file more detailed memoranda in support of this motion, its Motion for Reconsideration of Ruling on Motion for Admission Pro Hac Vice and the Motion to Disqualify Quinn Emanuel. Nextel needs such additional time to prepare appropriate memoranda, helpful to the Court, detailing the extensive relevant facts and history and addressing the substantive law on the conflict of interest and disqualification issue.

WHEREFORE, Putative Intervenor Nextel Communications, Inc. respectfully requests that this Court allow Nextel Communications, Inc. to intervene in this action for the limited purpose of filing a Motion for Reconsideration of Ruling on Motion for Admission Pro Hac Vice of Marshall M. Searcy III and Erica P. Taggart and moving to disqualify them and the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") from any role as counsel to Plaintiff Freedom Wireless, Inc.

Respectfully submitted,

NEXTEL COMMUNICATIONS, INC.
By their attorneys,

/s/Dennis J. Kelly
Dennis J. Kelly (BBO # 266340)
dkelly@burnslev.com
Victoria L. Walton (BBO # 650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

Richard McMillan, Jr. (pro hac vice application to
be filed)
rmcmillan@crowell.com
Michael J. Songer (pro hac vice application to be
filed)
msonger@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Dated:   December 12, 2005

## LOCAL RULE 7.1 CERTIFICATE

I certify that counsel to the moving party Nextel Communications, Inc. has attempted to confer by transmitting multiple telephone and e-mail messages to plaintiff's counsel in a good faith attempt to resolve or narrow the issue but has received no response.

/s/Dennis J. Kelly
Dennis J. Kelly, Esq.
Attorney for NEXTEL COMMUNICATIONS, INC.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>BOSTON COMMUNICATIONS GROUP,<br>INC., et al.<br><br>    Defendants. | Civil Action No. 05-11062 EFH |

### NEXTEL COMMUNICATIONS, INC.'S
### MOTION FOR RECONSIDERATION OF RULING ON MOTION FOR ADMISSION
### PRO HAC VICE OF MARSHALL M. SEARCY III AND ERICA P. TAGGART

Intervenor Nextel Communications, Inc. ("Nextel") hereby moves that this Court

reconsider its ruling on the Motion for Admission Pro Hac Vice of Marshall M. Searcy III and

Erica P. Taggart due to their direct conflict of interest stemming from their concurrent

representation of both Plaintiff Freedom Wireless, Inc. and Nextel, as attorneys in the firm of

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel").

  As set forth previously in Nextel's Motion to Intervene and the supporting Memorandum

filed in the related action, Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.,

U.S. District Ct. (D. Mass.), C.A. No. 00-12234, Quinn Emanuel has represented Nextel since

1993, has generated millions of dollars from Nextel legal work, and continues to represent

Nextel in a wide-variety of matters.  In addition, Quinn Emanuel also represented Nextel's

merger partner, Sprint, prior to the merger that formed Sprint Nextel.

  Now, Quinn Emanuel seeks to continue representing Freedom Wireless in an action

where it has already made assertions on behalf of Freedom Wireless that are adverse to Nextel

and will continue to take positions that are inimical to Nextel's interests. In letters dated December 1and 7, 2005 from Attorney Richard McMillan, Jr. to Attorney A. William Urquhart, Nextel has requested Quinn Emanuel to withdraw from any ongoing representation that could adversely affect Nextel. To alleviate any hardship on Freedom Wireless, Nextel even proposed a potential solution where Quinn Emanuel could continue to represent Freedom Wireless on issues that did not adversely affect Nextel. (Copies of the December 1 and 7 letters are attached hereto as Exhibits A and B respectively.) Nextel has received no substantive response from Quinn Emanuel to these letters.

Quinn Emanuel should not be permitted to represent Freedom Wireless in any capacity in this action. In this Court, attorneys are subject to the Massachusetts Rules of Professional Conduct, which are based on the ABA Model Rules of Professional Conduct. Local Rule 83.6(4)(B). Under the Massachusetts Rules of Professional Conduct, conflicts of interest exist when "representation of [a] client will be directly adverse to another client." Mass. R. Prof. Conduct DR-1.7 (SJC Rule 3:07), incorporated in Local Rule 83.6(4)(B). "Loyalty is an essential element in the lawyer's relationship to a client." Rule 1.7, cmt. 1. As a general proposition, "loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." Thus, "a lawyer may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." *Id.*, cmt. 3. Quinn Emanuel seeks to do just that with its representation of Freedom Wireless in this action, and in Freedom Wireless, Inc. v. Boston Communications Group, Inc., C.A. Nos. 00-12234 and 05-11061.

For the foregoing reasons, Nextel respectfully requests that this Court reconsider its ruling and deny the Motion for Admission Pro Hac Vice of Marshall M. Searcy III and Erica P. Taggart.

Respectfully submitted,

NEXTEL COMMUNICATIONS, INC.
By their attorneys,

/s/Dennis J. Kelly
Dennis J. Kelly (BBO # 266340)
dkelly@burnslev.com
Victoria L. Walton (BBO # 650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

Richard McMillan, Jr. (pro hac vice application to be filed)
rmcmillan@crowell.com
Michael J. Songer (pro hac vice application to be filed)
msonger@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Dated:   December 12, 2005

## LOCAL RULE 7.1 CERTIFICATE

      I certify that counsel to the moving party Nextel Communications, Inc. has attempted to confer by transmitting multiple telephone and e-mail messages to plaintiff's counsel in a good faith attempt to resolve or narrow the issue but has received no response.

           /s/Dennis J. Kelly _____
           Dennis J. Kelly, Esq.
           Attorney for NEXTEL COMMUNICATIONS, INC.

# EXHIBIT A



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Richard McMillan, Jr.
(202) 624-2580
rmcmillan@crowell.com

December 1, 2005

021:822
100773.0000033

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedgers LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:  ***Freedom Wireless, Inc. v. Boston Communications Group,
Inc., et al.*,** **Appeals from case No. 00-CV-12234-EFH ("Current
Litigation")**

***Freedom Wireless, Inc. v. Boston Communications Group,
Inc.*,** **No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel
Litigation")**

***Freedom Wireless, Inc. v. Boston Communications Group,
Inc.*,** **No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltell
Litigation")**

Dear Mr. Urquhart:

I write in follow-up to our earlier correspondence of October 19, 2005.

In your letter of October 19, 2005, you stated that your firm had not
undertaken an analysis of whether the Injunction Order issued by the United
States District Court for the District of Massachusetts in the Current Litigation
reaches the activities of Sprint Nextel. Sprint Nextel thereafter challenged this
position before both the District Court in Massachusetts and the Court of Appeals
for the Federal Circuit, and your client Freedom Wireless has now explicitly
acknowledged before both courts that it does in fact construe the Injunction Order
as reaching the activities of Nextel. Accordingly, we presume you now recognize
and accept the explicit conflict that continues to exist.

This present conflict necessarily has direct implications for the follow-on
cases filed recently in the Massachusetts court. Now that Nextel has been named

A. William Urquhart, Esq.
December 1, 2005
Page 2

as a party-defendant in the follow-on Nextel Litigation, and in light of the direct
conflict that exists in the Current Litigation, Sprint Nextel believes that Quinn
Emanuel must withdraw from any ongoing representation that could adversely
affect Sprint Nextel. This includes your representation of Freedom Wireless in the
Current Litigation, and your representation of Freedom Wireless in any follow-on
litigation, including the Alltell Litigation that has been filed as a companion case to
the Nextel Litigation.

We would hope that the specifics of your firm's ethical conflict are apparent,
but to be specific, your firm (1) has obtained an Injunction Order interpreted by
your client to provide specific relief against Sprint Nextel in the Current Litigation,
and any continued advocacy of that Order, or its underpinnings, puts your firm in
*direct* conflict with the interests of Sprint Nextel, and (2) particularly in light of the
conflict that therefore already exists in the Current Litigation and the exceedingly
close relationship that can be expected to exist between the follow-on Nextel and
Alltel Litigations, plain adversity exists in the follow-on cases as well. The two
follow-on cases will inevitably be coordinated or consolidated, as they involve the
same patents, virtually identical complaints and a matching plaintiff and co-
defendant. Both cases will feature common discovery (including depositions and
document productions) as well as similar evidence and argument. Therefore, and
again in light of the Current Litigation, it will be impossible for your firm to
represent Freedom Wireless in the Alltel Litigation without the effects of your
firm's factual and legal analysis, and arguments based thereon, having direct
adverse impact on Nextel in the Nextel Litigation.

Sprint Nextel appreciates that the disqualification of your law firm will
present potential hardship for Freedom Wireless. Accordingly, Sprint Nextel is
open to considering proposals by your firm regarding its continued representation of
Freedom Wireless for issues not affecting Sprint Nextel, at least with respect to the
06-1020, -1078, -1079, -1098 and -1099 appeals in the Current Litigation. This
might include, for example, some specific restriction to damages issues in the
Current Litigation that would not likely affect Sprint Nextel, in the follow-on Nextel
Litigation. As anticipated by the ethical rules, Sprint Nextel is prepared to consider
such a proposal so long as Sprint Nextel receives adequate assurance that its
interests would not be affected by your continued representation of Freedom
Wireless, as so limited.

Sprint Nextel does not wish to take the formal step of filing motions to
disqualify, and so would much prefer to reach a voluntary agreement concerning the

A. William Urquhart, Esq.
December 1, 2005
Page 3

withdrawal issues.  Nevertheless, Sprint Nextel considers this an extremely serious
matter, and therefore requests your considered response.

Sincerely,

*Richard McMillan*

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation

cc:    Leonard J. Kennedy, Esq.
       Susan Z. Haller, Esq.
       William C. Price, Esq.
       Dominic Surprenant, Esq.

# EXHIBIT B



Richard McMillan, Jr.
(202) 624-2580
rmcmillan@crowell.com

December 7, 2005

021:822
100773.0000033
2680793v1

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

> **Re:** ***Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.***, Appeals from case No. 00-CV-12234-EFH ("Current Litigation")
>
> ***Freedom Wireless, Inc. v. Boston Communications Group, Inc.***, No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel Litigation")
>
> ***Freedom Wireless, Inc. v. Boston Communications Group, Inc.***, No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltell Litigation")

Dear Mr. Urquhart:

I am writing in follow-up to my letter of December 1, 2005.

On December 2, 2005 (the day after my above-referenced letter), we received a copy of Freedom Wireless' "Response to Emergency Motion Order of Cingular Wireless LLC, AT&T Wireless and CMT Partners to Suspend and Stay the District Court's Injunction", filed by your law firm, with the signature line of Marshall M. Searcy, III and Erica P. Taggart. We believe that Quinn Emanuel has presented arguments in this brief that are in continuing violation of the firm's ethical responsibilities.

A. William Urquhart, Esq.
December 7, 2005
Page 2

By way of illustration, I direct your attention to page 4 of that brief, wherein your firm has taken a position with respect to the "joint infringement" issue that is directly at odds with the position advocated by Nextel in briefs filed on November 14, 2005 and November 28, 2005.[1] I also direct your attention to pages 4-5 of the brief, wherein your firm makes specific arguments with respect to statutory language that are directly at odds with arguments set forth in Nextel's earlier filed briefs.[2]

In light of the foregoing, and for reasons previously explained in prior correspondence, Nextel again requests that Quinn Emanuel immediately withdraw from these proceedings.

Sincerely,

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation


cc:    Leonard J. Kennedy, Esq.
       Susan Z. Haller, Esq.
       William C. Price, Esq.
       Dominic Surprenant, Esq.

---

[1]    Compare, for example, Freedom Wireless' brief of December 2, 2005, pp. 4-5 (arguing that "joint infringement . . . existed before 1952 and . . . the 1952 Act made no substantive changes to the law") with Nextel's "Reply in Support of Motion to Stay Injunction Pending Appeal", pp. 5-6 (asserting that prior to 1952, "joint infringement" was an "entirely different concept" than now applied by Freedom Wireless). Relevant pages of the briefs are attached hereto as Exhibits 1 and 2, respectively.

[2]    Compare Freedom Wireless' brief of December 2, 2005, pp. 4-5 (arguing that a proper construction of the word "whoever" in Section 271(a) supports Freedom Wireless' position) with Nextel's Reply in Support of Motion to Stay Injunction Pending Appeal, pp. 6-8 (asserting that a proper construction of "whoever" in Section 271(a) does not support Freedom Wireless' position). Relevant pages of the briefs are attached hereto as Exhibits 3 and 4, respectively.

1

damages. Notably, however, BCGI did not request a stay of the injunction as it

applied to itself and Cingular--tacitly conceding that at least that part of the

injunction was proper.[1]

Yet neither Cingular nor BCGI has shown that they are likely to succeed on

the merits. Freedom refers this Court to its opposition to BCGI's Motion to Stay

the District Court's Injunction,[2] which included the following refutations to BCGI's

claim of likelihood of success on appeal:

Defendants' main argument - that there is a loophole in the patent statute for

companies who work together under a contract to jointly perform all the steps of a

patent - does not have any basis in the law. Even defendants concede that joint

infringement by two separate companies working together existed before 1952, and

that the 1952 Act made no substantive changes to the law. Moreover, defendants

concede that the term "whoever," which is used in § 271 (a) of the patent statute,

clearly covers joint actions when used elsewhere in the patent statute. See

35 U.S.C. § 101; Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) (term should

receive consistent meaning throughout act if possible). Indeed, many lower court

---

[1]    Emergency Motion of Boston Communications Group, Inc. to Construe or Stay
the District Court's Injunction, November 14, 2005, at 2 ("BCGI does not seek to
stay the injunction as it applies to the defendant carriers.").

[2]    Combined Response to Emergency Motion of Boston Communications Group,
Inc. to Construe or Stay the District Court's Injunction and To Nextel's Motion to
Stay Injunction Pending Appeal, November 22, 2005, at 5-17.

cases have taken this joint infringement theory for granted.[3]  In any event, even

under defendants' own theory of the law, there was more than sufficient evidence

presented at trial that BCGI and the carriers coordinated their infringing acts

throughout their contractual relationship.[4]  Overall, defendants, including Cingular,

have failed to make a strong showing that they are likely to escape liability merely

because the jury found they infringed jointly through coordinated action, rather

than individually.

Defendants' arguments that no reasonable jury could conclude that the

defendants infringe the 17 "direct connection" claims, that the infringing system

performed periodic validation as claimed by the patents-in-suit, and that the

remaining claims were invalid in light of prior art merely repeat arguments already

---

[3]   See e.g., Shields v. Halliburton Co., 493 F. Supp. 1376, 1389 (W.D. La. 1980)
("When infringement results from the participation and combined action of several
parties, they are all joint infringers and jointly liable for patent infringement.");
McDermott v. Omid Int'l, 723 F. Supp. 1228, 1236 (S.D. Ohio 1988), aff'd, 883
F.2d 1026 (Fed. Cir. 1989) (similar); Marley Mouldings, Ltd. v. Micron Indus.,
2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) ("[S]everal district courts
have found that a party directly infringes a method or process patent where the
various steps in the patent are performed by distinct entities. . . . These cases are
persuasive."); Union Pacific Resources v. Chesapeake Energy Corp., 1998 U.S.
Dist. LEXIS 14684 (N.D. Tex. May 20, 1998) ("[T]he court is not convinced that
Chesapeake cannot be liable for direct infringement" under a joint infringement
theory).

[4]   See Freedom Wireless' Combined Response to Emergency Motion of Boston
Communications Group, Inc. To Construe or Stay the District Court's Injunction
and to Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005
("Freedom's Opp."), at 9.

2

whose combined actions constitute the infringement, not merely one, whose actions alone do not infringe. The injunctive powers of the court cannot be used to render conduct unlawful that is not properly considered infringing under the Patent Statute. *See Samsung,* 361 F.3d at 1361 (rejecting effort to use the injunction to create liability, in effect, for conspiracy to infringe, not specifically actionable under the Act).

In sum, this appeal poses significant issues in connection with Freedom's effort to extend the district court's injunction to conduct not adjudicated as unlawful in the underlying action, and to persons who were not parties to the underlying action.

2.      Freedom argues that Section 271 *sub silentio* preserved the common law doctrine of "joint infringement" under the heading of direct infringement, as captured by Section 271. But joint infringement at common law was an entirely different concept from the joint infringement now sponsored by Freedom. Prior to enactment of the 1952 Patent Act, joint infringement was an intentional tort. *See, e.g., Gerosa v. Columbia Metal Stamping & Die Co.,* 8 F.2d 611, 611-12 (6th Cir. 1925) (finding joint infringement when the party "knowingly and intentionally had contributed to" the infringement); *Robert Findlay Mfg. Co. v. Hygrade Lighting Fixture Co.,* 288 F. 957, 958 (E.D.N.Y. 1923) ("'Where an infringement of a patent is brought about by concert of action between a defendant and complainant's

- 5 -

licensee, all engaged *directly and intentionally* become joint infringers.'")
(emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173
(C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No.
12,411) ("the mere manufacture of a separate element of a patented combination,
unless such manufacture be proved to have been conducted for the purpose, and
*with the intent of aiding infringement*, is not, in and of itself, infringement.")
(emphasis added). Joint infringement thus was the precursor not of direct
infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which
requires "knowing" misconduct. As such, it was designed to reach only those
parties who knowingly and intentionally sought to aid and abet the acts of
infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F.
at 958; *Saxe*, 21 F. Cas. at 594. Thus, if as Freedom suggests, the concept of joint
infringement need only be coextensive with pre-1952 case law, that doctrine
clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word
"whoever," which is used in the portion of Section 271 describing direct
infringement, is also a word which under a different statutory provision (Section
101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet
this proves too much. First, joint inventorship – unlike joint infringement – is the
subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

- 6 -

3

damages. Notably, however, BCGI did not request a stay of the injunction as it

applied to itself and Cingular--tacitly conceding that at least that part of the

injunction was proper.[1]

Yet neither Cingular nor BCGI has shown that they are likely to succeed on

the merits. Freedom refers this Court to its opposition to BCGI's Motion to Stay

the District Court's Injunction,[2] which included the following refutations to BCGI's

claim of likelihood of success on appeal:

Defendants' main argument - that there is a loophole in the patent statute for

companies who work together under a contract to jointly perform all the steps of a

patent - does not have any basis in the law. Even defendants concede that joint

infringement by two separate companies working together existed before 1952, and

that the 1952 Act made no substantive changes to the law. Moreover, defendants

concede that the term "whoever," which is used in § 271 (a) of the patent statute,

clearly covers joint actions when used elsewhere in the patent statute. <u>See</u>

35 U.S.C. § 101; <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 568 (1995) (term should

receive consistent meaning throughout act if possible). Indeed, many lower court

---

[1]   Emergency Motion of Boston Communications Group, Inc. to Construe or Stay
the District Court's Injunction, November 14, 2005, at 2 ("BCGI does not seek to
stay the injunction as it applies to the defendant carriers.").

[2]   Combined Response to Emergency Motion of Boston Communications Group,
Inc. to Construe or Stay the District Court's Injunction and To Nextel's Motion to
Stay Injunction Pending Appeal, November 22, 2005, at 5-17.

cases have taken this joint infringement theory for granted.[3] In any event, even under defendants' own theory of the law, there was more than sufficient evidence presented at trial that BCGI and the carriers coordinated their infringing acts throughout their contractual relationship.[4] Overall, defendants, including Cingular, have failed to make a strong showing that they are likely to escape liability merely because the jury found they infringed jointly through coordinated action, rather than individually.

Defendants' arguments that no reasonable jury could conclude that the defendants infringe the 17 "direct connection" claims, that the infringing system performed periodic validation as claimed by the patents-in-suit, and that the remaining claims were invalid in light of prior art merely repeat arguments already

---

[3] See e.g., Shields v. Halliburton Co., 493 F. Supp. 1376, 1389 (W.D. La. 1980) ("When infringement results from the participation and combined action of several parties, they are all joint infringers and jointly liable for patent infringement."); McDermott v. Omid Int'l, 723 F. Supp. 1228, 1236 (S.D. Ohio 1988), aff'd, 883 F.2d 1026 (Fed. Cir. 1989) (similar); Marley Mouldings, Ltd. v. Micron Indus., 2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) ("[S]everal district courts have found that a party directly infringes a method or process patent where the various steps in the patent are performed by distinct entities. . . . These cases are persuasive."); Union Pacific Resources v. Chesapeake Energy Corp., 1998 U.S. Dist. LEXIS 14684 (N.D. Tex. May 20, 1998) ("[T]he court is not convinced that Chesapeake cannot be liable for direct infringement" under a joint infringement theory).

[4] See Freedom Wireless' Combined Response to Emergency Motion of Boston Communications Group, Inc. To Construe or Stay the District Court's Injunction and to Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005 ("Freedom's Opp."), at 9.

02624/1063519.1                                    5

4

licensee, all engaged *directly and intentionally* become joint infringers.'")
(emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173
(C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No.
12,411) ("the mere manufacture of a separate element of a patented combination,
unless such manufacture be proved to have been conducted for the purpose, and
*with the intent of aiding infringement*, is not, in and of itself, infringement.")
(emphasis added).  Joint infringement thus was the precursor not of direct
infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which
requires "knowing" misconduct.  As such, it was designed to reach only those
parties who knowingly and intentionally sought to aid and abet the acts of
infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F.
at 958; *Saxe*, 21 F. Cas. at 594.  Thus, if as Freedom suggests, the concept of joint
infringement need only be coextensive with pre-1952 case law, that doctrine
clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word
"whoever," which is used in the portion of Section 271 describing direct
infringement, is also a word which under a different statutory provision (Section
101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet
this proves too much. First, joint inventorship – unlike joint infringement – is the
subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

Second, joint inventorship, even if it were analogous to joint infringement, teaches only that two parties may assume *joint* responsibility under the Patent Act only when they knowingly *intend* to do so. *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) ("Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs . . . ."); *accord Invitrogen Corp. v. Clontech Labs., Inc.*, --- F.3d ---, 2005 WL 3078495, at *8 (Fed. Cir. Nov. 18, 2005) (holding that inventorship requires an understanding and appreciation of the invention, including "that [the inventor] understood his creation to have the features that, comprise the inventive subject matter at bar").

In any case, the provisions of Sections 101 and 271 are not parallel provisions, and this Court's precedents reflect that where general words are used in two different places in the patent law, they may be given a meaning in each that reflects the structure, policies and purposes of each section. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1445 (Fed. Cir. 1998) (reasoning that it is "not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance"). Thus, particularly in light of the alternative bases of liability expressly set forth in Section 271, it does no violence to the Patent Act to construe "whoever" as a single person in the context of Section 271, while recognizing that

- 7 -

"whoever" may encompass multiple, intentional collaborators in the context of Section 101.[2]

In sum, this case plainly presents substantial issues on the questions whether there is a separate doctrine of joint infringement and, if there is such a concept in the patent laws, what constitutes joint infringement.

3.    Freedom attempts to fall back on an additional and entirely contrived argument that the jury "might have" adjudicated BCGI's rights separately because it was improperly so instructed. In support of this view, Freedom refers at various points to evidence that it says it presented in connection with other theories, and snippets from the jury instructions. *See, e.g.*, Freedom Opp'n at 10 n.8. Without citing the record, Freedom baldly and inaccurately states that "the jury's verdict [sic] did not set forth particular findings on these theories."[3] Freedom is flatly

---

[2]    Moreover, even if "whoever" *could* refer to multiple persons in Section 271, this would not be mean that the standards under which their combined actions gives rise to liability would be precisely the same as the standards that would be applied to find joint inventorship in connection with Section 101. The contexts are simply too different to suggest that standards developed in one arena can simply be carried over to another. *See 3D Systems, Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 n.4 (Fed. Cir. 1998) (declining to apply the meaning of Section 102(b) "on sale" bar to Section 271 "offer for sale;" noting that underlying policies for patentability have "no resonance" with the underlying policies for infringement).

[3]    Citing to the trial transcript of April 13, 2005, Freedom claims that the jury was instructed "at length" on how use of the "system" would constitute infringement. *See* Freedom Opp'n at 10-11. This portion of the trial testimony,

(continued...)

- 8 -

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FREEDOM WIRELESS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON COMMUNICATIONS GROUP,<br>INC., et al.<br><br>Defendants. | Civil Action No. 05-11062 EFH |

### NEXTEL COMMUNICATIONS, INC.'S
### MOTION TO DISQUALIFY QUINN EMANUEL

Intervenor Nextel Communications, Inc. ("Nextel") hereby moves this Court to disqualify Marshall M. Searcy III and Erica P. Taggart and all other attorneys from Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") from any role as counsel to Plaintiff Freedom Wireless, Inc. in this action on the ground that they have a direct conflict of interest because of their past and continuing concurrent representation of both Freedom Wireless, Inc. and Nextel.

Briefly the reasons for this Motion to Disqualify are as follows:

1.     Quinn Emanuel has represented Nextel since 1993, has generated millions of dollars from Nextel legal work, and continues to represent Nextel in a wide-variety of matters. In addition, Quinn Emanuel also represented Nextel's merger partner, Sprint, prior to the merger that formed Sprint Nextel and occurred on August 12, 2005.

2.     Now Quinn Emanuel seeks to continue representing Freedom Wireless in an action where it has already made assertions on behalf of Freedom Wireless that are adverse to Nextel and will continue to take positions that are inimical to Nextel's interests.  Nextel has

sought to have Quinn Emanuel withdraw from any ongoing representation that could adversely affect Nextel but has received no substantive response from Quinn Emanuel. (See copies of letters dated December 1, 2005 and December 7, 2005 from Attorney Richard McMillan, Jr. to Attorney A. William Urquhart are attached hereto as Exhibits A and B respectively.)

3. In this Court, attorneys are subject to the Massachusetts Rules of Professional Conduct, which are based on the ABA Model Rules of Professional Conduct. Local Rule 83.6(4)(B). Under the Massachusetts Rules of Professional Conduct, conflicts of interest exist when "representation of [a] client will be directly adverse to another client." Mass. R. Prof. Conduct DR-1.7 (SJC Rule 3:07), incorporated in Local Rule 83.6(4)(B). "Loyalty is an essential element in the lawyer's relationship to a client." Rule 1.7, cmt. 1. As a general proposition, "loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." Thus, "a lawyer may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." *Id.*, cmt. 3. Quinn Emanuel seeks to do just that.

4. Legal representation of Freedom Wireless by the Quinn Emanuel firm and any of its attorneys in or in connection with this action is unethical conduct in violation of the applicable ABA Model Rules of Professional Conduct and warrants and requires their disqualification as counsel in this action.

WHEREFORE, Intervenor Nextel Communications, Inc. requests that this Court enter an Order disqualifying Quinn Emanuel Urquhart Oliver & Hedges, LLP and any and all its attorneys from acting as counsel to Plaintiff Freedom Wireless, Inc. in this action.

Respectfully submitted,

NEXTEL COMMUNICATIONS, INC.
By their attorneys,

/s/Dennis J. Kelly
Dennis J. Kelly (BBO # 266340)
dkelly@burnslev.com
Victoria L. Walton (BBO # 650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

Richard McMillan, Jr. (pro hac vice application to
be filed)
rmcmillan@crowell.com
Michael J. Songer (pro hac vice application to be
filed)
msonger@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

Dated: December 12, 2005

## LOCAL RULE 7.1 CERTIFICATE

I certify that counsel to the moving party Nextel Communications, Inc. has attempted to confer by transmitting multiple telephone and e-mail messages to plaintiff's counsel in a good faith attempt to resolve or narrow the issue but has received no response.

/s/Dennis J. Kelly
Dennis J. Kelly, Esq.
Attorney for NEXTEL COMMUNICATIONS, INC.

# EXHIBIT A



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Richard McMillan, Jr.
(202) 624-2580
rmcmillan@crowell.com

December 1, 2005

021:822
100773.0000033

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedgers LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

> Re:  *Freedom Wireless, Inc. v. Boston Communications Group,
> Inc., et al.*, **Appeals from case No. 00-CV-12234-EFH ("Current
> Litigation")**
>
> *Freedom Wireless, Inc. v. Boston Communications Group,
> Inc.*, **No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel
> Litigation")**
>
> *Freedom Wireless, Inc. v. Boston Communications Group,
> Inc.*, **No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltell
> Litigation")**

Dear Mr. Urquhart:

I write in follow-up to our earlier correspondence of October 19, 2005.

In your letter of October 19, 2005, you stated that your firm had not undertaken an analysis of whether the Injunction Order issued by the United States District Court for the District of Massachusetts in the Current Litigation reaches the activities of Sprint Nextel. Sprint Nextel thereafter challenged this position before both the District Court in Massachusetts and the Court of Appeals for the Federal Circuit, and your client Freedom Wireless has now explicitly acknowledged before both courts that it does in fact construe the Injunction Order as reaching the activities of Nextel. Accordingly, we presume you now recognize and accept the explicit conflict that continues to exist.

This present conflict necessarily has direct implications for the follow-on cases filed recently in the Massachusetts court. Now that Nextel has been named

A. William Urquhart, Esq.
December 1, 2005
Page 2

as a party-defendant in the follow-on Nextel Litigation, and in light of the direct conflict that exists in the Current Litigation, Sprint Nextel believes that Quinn Emanuel must withdraw from any ongoing representation that could adversely affect Sprint Nextel. This includes your representation of Freedom Wireless in the Current Litigation, and your representation of Freedom Wireless in any follow-on litigation, including the Alltell Litigation that has been filed as a companion case to the Nextel Litigation.

We would hope that the specifics of your firm's ethical conflict are apparent, but to be specific, your firm (1) has obtained an Injunction Order interpreted by your client to provide specific relief against Sprint Nextel in the Current Litigation, and any continued advocacy of that Order, or its underpinnings, puts your firm in *direct* conflict with the interests of Sprint Nextel, and (2) particularly in light of the conflict that therefore already exists in the Current Litigation and the exceedingly close relationship that can be expected to exist between the follow-on Nextel and Alltel Litigations, plain adversity exists in the follow-on cases as well. The two follow-on cases will inevitably be coordinated or consolidated, as they involve the same patents, virtually identical complaints and a matching plaintiff and co-defendant. Both cases will feature common discovery (including depositions and document productions) as well as similar evidence and argument. Therefore, and again in light of the Current Litigation, it will be impossible for your firm to represent Freedom Wireless in the Alltel Litigation without the effects of your firm's factual and legal analysis, and arguments based thereon, having direct adverse impact on Nextel in the Nextel Litigation.

Sprint Nextel appreciates that the disqualification of your law firm will present potential hardship for Freedom Wireless. Accordingly, Sprint Nextel is open to considering proposals by your firm regarding its continued representation of Freedom Wireless for issues not affecting Sprint Nextel, at least with respect to the 06-1020, -1078, -1079, -1098 and -1099 appeals in the Current Litigation. This might include, for example, some specific restriction to damages issues in the Current Litigation that would not likely affect Sprint Nextel, in the follow-on Nextel Litigation. As anticipated by the ethical rules, Sprint Nextel is prepared to consider such a proposal so long as Sprint Nextel receives adequate assurance that its interests would not be affected by your continued representation of Freedom Wireless, as so limited.

Sprint Nextel does not wish to take the formal step of filing motions to disqualify, and so would much prefer to reach a voluntary agreement concerning the

A. William Urquhart, Esq.
December 1, 2005
Page 3


withdrawal issues.  Nevertheless, Sprint Nextel considers this an extremely serious matter, and therefore requests your considered response.

Sincerely,

*Richard McMillan*

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation


cc:     Leonard J. Kennedy, Esq.
        Susan Z. Haller, Esq.
        William C. Price, Esq.
        Dominic Surprenant, Esq.

# EXHIBIT B



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**Richard McMillan, Jr.**
**(202) 624-2580**
**rmcmillan@crowell.com**

December 7, 2005

021:822
100773.0000033
2680793v1

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017

> **Re:**    ***Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.***, Appeals from case No. 00-CV-12234-EFH ("Current Litigation")
>
> ***Freedom Wireless, Inc. v. Boston Communications Group, Inc.***, No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel Litigation")
>
> ***Freedom Wireless, Inc. v. Boston Communications Group, Inc.***, No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltell Litigation")

Dear Mr. Urquhart:

I am writing in follow-up to my letter of December 1, 2005.

On December 2, 2005 (the day after my above-referenced letter), we received a copy of Freedom Wireless' "Response to Emergency Motion Order of Cingular Wireless LLC, AT&T Wireless and CMT Partners to Suspend and Stay the District Court's Injunction", filed by your law firm, with the signature line of Marshall M. Searcy, III and Erica P. Taggart. We believe that Quinn Emanuel has presented arguments in this brief that are in continuing violation of the firm's ethical responsibilities.

A. William Urquhart, Esq.
December 7, 2005
Page 2

By way of illustration, I direct your attention to page 4 of that brief, wherein your firm has taken a position with respect to the "joint infringement" issue that is directly at odds with the position advocated by Nextel in briefs filed on November 14, 2005 and November 28, 2005.[1]  I also direct your attention to pages 4-5 of the brief, wherein your firm makes specific arguments with respect to statutory language that are directly at odds with arguments set forth in Nextel's earlier filed briefs.[2]

In light of the foregoing, and for reasons previously explained in prior correspondence, Nextel again requests that Quinn Emanuel immediately withdraw from these proceedings.

Sincerely,

Richard McMillan

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation


cc:   Leonard J. Kennedy, Esq.
      Susan Z. Haller, Esq.
      William C. Price, Esq.
      Dominic Surprenant, Esq.

---

[1]   Compare, for example, Freedom Wireless' brief of December 2, 2005, pp. 4-5 (arguing that "joint infringement . . . existed before 1952 and . . . the 1952 Act made no substantive changes to the law") with Nextel's "Reply in Support of Motion to Stay Injunction Pending Appeal", pp. 5-6 (asserting that prior to 1952, "joint infringement" was an "entirely different concept" than now applied by Freedom Wireless).  Relevant pages of the briefs are attached hereto as Exhibits 1 and 2, respectively.

[2]   Compare Freedom Wireless' brief of December 2, 2005, pp. 4-5 (arguing that a proper construction of the word "whoever" in Section 271(a) supports Freedom Wireless' position) with Nextel's Reply in Support of Motion to Stay Injunction Pending Appeal, pp. 6-8 (asserting that a proper construction of "whoever" in Section 271(a) does not support Freedom Wireless' position).  Relevant pages of the briefs are attached hereto as Exhibits 3 and 4, respectively.

1

damages. Notably, however, BCGI did not request a stay of the injunction as it applied to itself and Cingular--tacitly conceding that at least that part of the injunction was proper.[1]

Yet neither Cingular nor BCGI has shown that they are likely to succeed on the merits. Freedom refers this Court to its opposition to BCGI's Motion to Stay the District Court's Injunction,[2] which included the following refutations to BCGI's claim of likelihood of success on appeal:

Defendants' main argument - that there is a loophole in the patent statute for companies who work together under a contract to jointly perform all the steps of a patent - does not have any basis in the law. Even defendants concede that joint infringement by two separate companies working together existed before 1952, and that the 1952 Act made no substantive changes to the law. Moreover, defendants concede that the term "whoever," which is used in § 271 (a) of the patent statute, clearly covers joint actions when used elsewhere in the patent statute. See 35 U.S.C. § 101; Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) (term should receive consistent meaning throughout act if possible). Indeed, many lower court

---

[1]   Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction, November 14, 2005, at 2 ("BCGI does not seek to stay the injunction as it applies to the defendant carriers.").

[2]   Combined Response to Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction and To Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005, at 5-17.

cases have taken this joint infringement theory for granted.[3]  In any event, even

under defendants' own theory of the law, there was more than sufficient evidence

presented at trial that BCGI and the carriers coordinated their infringing acts

throughout their contractual relationship.[4]  Overall, defendants, including Cingular,

have failed to make a strong showing that they are likely to escape liability merely

because the jury found they infringed jointly through coordinated action, rather

than individually.

Defendants' arguments that no reasonable jury could conclude that the

defendants infringe the 17 "direct connection" claims, that the infringing system

performed periodic validation as claimed by the patents-in-suit, and that the

remaining claims were invalid in light of prior art merely repeat arguments already

---

[3]  See e.g., Shields v. Halliburton Co., 493 F. Supp. 1376, 1389 (W.D. La. 1980)
("When infringement results from the participation and combined action of several
parties, they are all joint infringers and jointly liable for patent infringement.");
McDermott v. Omid Int'l, 723 F. Supp. 1228, 1236 (S.D. Ohio 1988), aff'd, 883
F.2d 1026 (Fed. Cir. 1989) (similar); Marley Mouldings, Ltd. v. Micron Indus.,
2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) ("[S]everal district courts
have found that a party directly infringes a method or process patent where the
various steps in the patent are performed by distinct entities. . . . These cases are
persuasive."); Union Pacific Resources v. Chesapeake Energy Corp., 1998 U.S.
Dist. LEXIS 14684 (N.D. Tex. May 20, 1998) ("[T]he court is not convinced that
Chesapeake cannot be liable for direct infringement" under a joint infringement
theory).

[4]  See Freedom Wireless' Combined Response to Emergency Motion of Boston
Communications Group, Inc. To Construe or Stay the District Court's Injunction
and to Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005
("Freedom's Opp."), at 9.

2

whose combined actions constitute the infringement, not merely one, whose actions alone do not infringe. The injunctive powers of the court cannot be used to render conduct unlawful that is not properly considered infringing under the Patent Statute. *See Samsung,* 361 F.3d at 1361 (rejecting effort to use the injunction to create liability, in effect, for conspiracy to infringe, not specifically actionable under the Act).

In sum, this appeal poses significant issues in connection with Freedom's effort to extend the district court's injunction to conduct not adjudicated as unlawful in the underlying action, and to persons who were not parties to the underlying action.

2.    Freedom argues that Section 271 *sub silentio* preserved the common law doctrine of "joint infringement" under the heading of direct infringement, as captured by Section 271. But joint infringement at common law was an entirely different concept from the joint infringement now sponsored by Freedom. Prior to enactment of the 1952 Patent Act, joint infringement was an intentional tort. *See, e.g., Gerosa v. Columbia Metal Stamping & Die Co.,* 8 F.2d 611, 611-12 (6th Cir. 1925) (finding joint infringement when the party "knowingly and intentionally had contributed to" the infringement); *Robert Findlay Mfg. Co. v. Hygrade Lighting Fixture Co.,* 288 F. 957, 958 (E.D.N.Y. 1923) ("'Where an infringement of a patent is brought about by concert of action between a defendant and complainant's

- 5 -

licensee, all engaged *directly and intentionally* become joint infringers.'")
(emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173
(C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No.
12,411) ("the mere manufacture of a separate element of a patented combination,
unless such manufacture be proved to have been conducted for the purpose, and
*with the intent of aiding infringement*, is not, in and of itself, infringement.")
(emphasis added). Joint infringement thus was the precursor not of direct
infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which
requires "knowing" misconduct. As such, it was designed to reach only those
parties who knowingly and intentionally sought to aid and abet the acts of
infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F.
at 958; *Saxe*, 21 F. Cas. at 594. Thus, if as Freedom suggests, the concept of joint
infringement need only be coextensive with pre-1952 case law, that doctrine
clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word
"whoever," which is used in the portion of Section 271 describing direct
infringement, is also a word which under a different statutory provision (Section
101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet
this proves too much. First, joint inventorship – unlike joint infringement – is the
subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

3

damages. Notably, however, BCGI did not request a stay of the injunction as it applied to itself and Cingular--tacitly conceding that at least that part of the injunction was proper.[1]

Yet neither Cingular nor BCGI has shown that they are likely to succeed on the merits. Freedom refers this Court to its opposition to BCGI's Motion to Stay the District Court's Injunction,[2] which included the following refutations to BCGI's claim of likelihood of success on appeal:

Defendants' main argument - that there is a loophole in the patent statute for companies who work together under a contract to jointly perform all the steps of a patent - does not have any basis in the law. Even defendants concede that joint infringement by two separate companies working together existed before 1952, and that the 1952 Act made no substantive changes to the law. Moreover, defendants concede that the term "whoever," which is used in § 271 (a) of the patent statute, clearly covers joint actions when used elsewhere in the patent statute. See 35 U.S.C. § 101; Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) (term should receive consistent meaning throughout act if possible). Indeed, many lower court

---

[1]  Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction, November 14, 2005, at 2 ("BCGI does not seek to stay the injunction as it applies to the defendant carriers.").

[2]  Combined Response to Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction and To Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005, at 5-17.

cases have taken this joint infringement theory for granted.[3]  In any event, even under defendants' own theory of the law, there was more than sufficient evidence presented at trial that BCGI and the carriers coordinated their infringing acts throughout their contractual relationship.[4]  Overall, defendants, including Cingular, have failed to make a strong showing that they are likely to escape liability merely because the jury found they infringed jointly through coordinated action, rather than individually.

Defendants' arguments that no reasonable jury could conclude that the defendants infringe the 17 "direct connection" claims, that the infringing system performed periodic validation as claimed by the patents-in-suit, and that the remaining claims were invalid in light of prior art merely repeat arguments already

---

[3]  See e.g., Shields v. Halliburton Co., 493 F. Supp. 1376, 1389 (W.D. La. 1980) ("When infringement results from the participation and combined action of several parties, they are all joint infringers and jointly liable for patent infringement."); McDermott v. Omid Int'l, 723 F. Supp. 1228, 1236 (S.D. Ohio 1988), aff'd, 883 F.2d 1026 (Fed. Cir. 1989) (similar); Marley Mouldings, Ltd. v. Micron Indus., 2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) ("[S]everal district courts have found that a party directly infringes a method or process patent where the various steps in the patent are performed by distinct entities.... These cases are persuasive."); Union Pacific Resources v. Chesapeake Energy Corp., 1998 U.S. Dist. LEXIS 14684 (N.D. Tex. May 20, 1998) ("[T]he court is not convinced that Chesapeake cannot be liable for direct infringement" under a joint infringement theory).

[4]  See Freedom Wireless' Combined Response to Emergency Motion of Boston Communications Group, Inc. To Construe or Stay the District Court's Injunction and to Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005 ("Freedom's Opp."), at 9.

02624/1063519.1                              5

4

licensee, all engaged *directly and intentionally* become joint infringers.'")
(emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173
(C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No.
12,411) ("the mere manufacture of a separate element of a patented combination,
unless such manufacture be proved to have been conducted for the purpose, and
*with the intent of aiding infringement*, is not, in and of itself, infringement.")
(emphasis added). Joint infringement thus was the precursor not of direct
infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which
requires "knowing" misconduct. As such, it was designed to reach only those
parties who knowingly and intentionally sought to aid and abet the acts of
infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F.
at 958; *Saxe*, 21 F. Cas. at 594. Thus, if as Freedom suggests, the concept of joint
infringement need only be coextensive with pre-1952 case law, that doctrine
clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word
"whoever," which is used in the portion of Section 271 describing direct
infringement, is also a word which under a different statutory provision (Section
101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet
this proves too much. First, joint inventorship – unlike joint infringement – is the
subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

- 6 -

Second, joint inventorship, even if it were analogous to joint infringement, teaches only that two parties may assume *joint* responsibility under the Patent Act only when they knowingly *intend* to do so. *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) ("Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs . . . ."); *accord Invitrogen Corp. v. Clontech Labs., Inc.*, --- F.3d ---, 2005 WL 3078495, at *8 (Fed. Cir. Nov. 18, 2005) (holding that inventorship requires an understanding and appreciation of the invention, including "that [the inventor] understood his creation to have the features that, comprise the inventive subject matter at bar").

In any case, the provisions of Sections 101 and 271 are not parallel provisions, and this Court's precedents reflect that where general words are used in two different places in the patent law, they may be given a meaning in each that reflects the structure, policies and purposes of each section. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1445 (Fed. Cir. 1998) (reasoning that it is "not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance"). Thus, particularly in light of the alternative bases of liability expressly set forth in Section 271, it does no violence to the Patent Act to construe "whoever" as a single person in the context of Section 271, while recognizing that

- 7 -

"whoever" may encompass multiple, intentional collaborators in the context of Section 101.[2]

In sum, this case plainly presents substantial issues on the questions whether there is a separate doctrine of joint infringement and, if there is such a concept in the patent laws, what constitutes joint infringement.

3.    Freedom attempts to fall back on an additional and entirely contrived argument that the jury "might have" adjudicated BCGI's rights separately because it was improperly so instructed. In support of this view, Freedom refers at various points to evidence that it says it presented in connection with other theories, and snippets from the jury instructions. *See, e.g.*, Freedom Opp'n at 10 n.8. Without citing the record, Freedom baldly and inaccurately states that "the jury's verdict [sic] did not set forth particular findings on these theories."[3] Freedom is flatly

---

[2]    Moreover, even if "whoever" *could* refer to multiple persons in Section 271, this would not be mean that the standards under which their combined actions gives rise to liability would be precisely the same as the standards that would be applied to find joint inventorship in connection with Section 101. The contexts are simply too different to suggest that standards developed in one arena can simply be carried over to another. *See 3D Systems, Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 n.4 (Fed. Cir. 1998) (declining to apply the meaning of Section 102(b) "on sale" bar to Section 271 "offer for sale;" noting that underlying policies for patentability have "no resonance" with the underlying policies for infringement).

[3]    Citing to the trial transcript of April 13, 2005, Freedom claims that the jury was instructed "at length" on how use of the "system" would constitute infringement. *See* Freedom Opp'n at 10-11. This portion of the trial testimony,

(continued...)

- 8 -