**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| FREEDOM WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON COMMUNICATIONS GROUP, INC., et al. <br><br> Defendants. | Civil Action No. 05-11062 EFH |

**NEXTEL COMMUNICATIONS, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO INTERVENE FOR LIMITED PURPOSE**

Nextel Communications, Inc. ("Nextel") is a defendant in the other of the two simultaneously-filed infringement cases filed by Plaintiff Freedom Wireless, Inc. ("Freedom"). The two cases – No. 05-11061[1] and No. 05-11062 – are in their infancy, with service of process occurring in September and Answers or Motions to Dismiss filed in December.  On December 12, 2005, Nextel moved to intervene in this case for a limited purpose, namely, to seek disqualification of members of the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") because of that firm's direct conflict of interest in attempting to represent Freedom in a manner adverse to Nextel, notwithstanding that firm's substantial, longstanding, and continuing representation of Nextel on other matters.[2]  As it advanced in its December 12

---

[1]     *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.,* No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel case").

[2]     Nextel has also moved for reconsideration of the Court's order allowing Quinn Emanuel attorneys to appear *pro hac vice* in the action.  The substantive basis for that request is the same as the disqualification motion – and we focus on the disqualification motion in these papers.

motion, Nextel is now supplementing its earlier submission with this more detailed brief in support of its position.

Pursuant to Fed. R. Civ. Pro. 24(c), Nextel has also attached to this submission the memorandum supporting its disqualification motion.[3]  That memorandum and the evidence describe a patent conflict of interest on the part of Quinn Emanuel that cannot be avoided or evaded by the device of pursuing Freedom's claims in two parallel, but nominally separate, simultaneously-filed, lawsuits rather than one.  As described below, the proper means of addressing a disqualification issue arising from a law firm's conflict of interest is by intervention in the case in which the conflict becomes manifest.

Under similar circumstances, Nextel recently moved to intervene in Freedom's earlier case ("*Freedom I*")[4] against BCGI, Cingular Wireless, LLC, and others.  Nextel's motion to intervene in *Freedom I* was filed after judgment, when Quinn Emanuel (and Freedom) first took the position that the Court's injunction in that case barred Nextel's ongoing business relationship with BCGI.  On November 9, 2005, this Court denied Nextel's motion to intervene after judgment.[5]  Nextel then moved to intervene in the *appeal* of *Freedom I* in the United States Court of Appeals for the Federal Circuit.  Nextel's motion to intervene in the appeal of *Freedom*

---

[3]    The disqualification memorandum is attached here as Exhibit A.  To avoid duplication, Nextel has submitted a declaration attaching a single set of exhibits in support of both this motion and the motion for disqualification.  *See* Declaration of Brian M. Koide in Support of Nextel Communications, Inc.'s Motion to Intervene for Limited Purpose and Motion to Disqualify Quinn Emanuel ("Koide Decl.").

[4]    *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234-EFH (D. Mass. filed Oct. 30, 2000).

[5]    Courts have often been reluctant to allow intervention *after* judgment, though there are many circumstances where it is both necessary and appropriate.  Nextel asserted that this was one such circumstance.

*I* was made at the very outset of that appeal in order to allow Nextel to raise the disqualification

issue, along with certain substantive issues.

On December 15, 2005, after reviewing the standards for intervention, the Federal Circuit

granted Nextel's motion to intervene, finding it timely and otherwise proper.  Dec. 15, 2005

Public Order (Ex. A to Koide Decl.).  Nextel's motion to disqualify Quinn Emanuel from further

participating in the *Freedom I* appeal is now pending in the Federal Circuit.  The same

considerations that supported Nextel's intervention on appeal in *Freedom I* require that

intervention be allowed here to resolve the disqualification issue at the outset of this case.

## ARGUMENT

Nextel is entitled to intervene in this action as a matter of right under Rule 24(a).

Moreover, even if Rule 24(a) did not require its motion to be granted, Nextel meets all the

requirements for permissive intervention under Rule 24(b).

### I.     INTERVENTION OF RIGHT SHOULD BE GRANTED.

Rule 24(a) of the Federal Rules of Civil Procedure sets forth the standard for intervention

as of right:

> Upon timely application anyone shall be permitted to intervene in
> an action . . . (2) when the applicant claims an interest relating to
> the property or transaction which is the subject of the action and
> the applicant is so situated that the disposition of the action may as
> a practical matter impair or impede the applicant's ability to protect
> that interest, unless the applicant's interest is adequately
> represented by existing parties.

Fed. R. Civ. P. 24(a).  Accordingly, a party seeking to intervene as of right under Rule 24(a)(2)

must satisfy four elements:

> 1.     The application must be timely . . .;
>
> 2.     The applicant must claim an interest relating to the property
>        or transaction which is the subject of the action;

    3.    Disposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest; and

    4.    The applicant must show that the interest will not be adequately represented by existing parties.

*Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992).[6]

Nextel's application satisfies each of the four elements.

**A.    Nextel Has Moved to Intervene in a Timely Manner.**

In evaluating a motion to intervene, courts consider "all the circumstances" relating to timeliness. *Fiandaca v. Cunningham*, 827 F.2d 825, 833-34 (1st Cir. 1987) (citing *NAACP v. New York*, 413 U.S. 345, 366 (1973)) (granting motion to intervene – after conclusion of trial – where applicants moved to intervene "soon after learning that their interests may be affected and prior to the court's approval of a settlement or entry of judgment"). In considering "all the circumstances" relating to timeliness, courts typically consider:

    (1)    the length of time the applicants knew, or reasonably should have known, of their interest before they petitioned to intervene;

    (2)    the prejudice to existing parties due to applicants' failure to petition for intervention promptly;

    (3)    the prejudice that applicants would suffer if they were not allowed to intervene; and

    (4)    any unusual circumstances militating either for or against intervention.

*Id.* at 834 (internal citations omitted).

This motion is timely. The conflicts issue raised by Nextel was created when Quinn Emanuel attorneys Marshall M. Searcy III and Erica Taggart moved for admission *pro hac vice*

---

[6]    In patent disputes, the regional circuit law applies – rather than Federal Circuit law – when resolving motions to intervene. *Haworth, Inc. v. Steelcase, Inc.*, 12 F.3d 1090, 1092 (Fed. Cir. 1993).

in this action on December 7, 2005.  The Court granted the motion on Thursday December 8, 2005, and Nextel moved to intervene and disqualify the following Monday, December 12, 2005.  Accordingly, Freedom cannot credibly contend any prejudice due to any purported "delay." *Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990) ("Approximately two weeks elapsed between the time in which the proposed intervenors learned of their need to intervene and when they filed their motion to intervene.  Certainly, this short period does not support a finding of undue delay.").

Further, this action has, in reality, just begun.  Although filed on May 20, 2005, the Summons and Complaint were not served until September and October 2005; several defendants have just filed Answers or Motions to Dismiss within the past two weeks.[7]  BCGI filed a Motion for a Stay of the Proceedings Pending Resolution of the Federal Circuit Appeal on November 23, 2005, which this Court denied little more than a week ago.  Furthermore, on December 20, 2005, BCGI filed a Motion for Reconsideration of its Motion for a Stay both in this action and in the Nextel case.  With Quinn Emanuel having been formally allowed to appear, and it appearing that this action now will proceed, intervention – and a decision on the motion to disqualify – are now ripe for consideration.

In addition, as the conflict of interest emerged, Nextel properly sought to try to address the conflict directly with Quinn Emanuel.[8]  Quinn Emanuel acknowledged that Nextel was a longtime and substantial client of Quinn Emanuel, but claimed that the firm had not analyzed the

---

[7]     Freedom filed its Second Amended Complaint on December 12, 2005.  BCGI filed its Answer to Second Amended Complaint and Counterclaim on December 16, 2005.  Alltel Corp. filed its Answer on December 19, 2005.  South Canaan Cellular Communications Co. filed its Motion to Dismiss, or in the alternative to transfer venue, on December 19, 2005.  The Regional Carriers filed a Motion to Dismiss on December 19, 2005.

[8]     Oct. 19, 2005 Letter from McMillan to Urquhart (Ex. H to Koide Decl.).

issues related to Nextel.[9]  Nextel then requested Quinn Emanuel to withdraw from any ongoing representation that could adversely affect Nextel,[10] a request which Quinn Emanuel has thus far substantively ignored.

In contrast to the lack of prejudice faced by Freedom or the other parties at this early stage of this case, Nextel would face grave prejudice if not allowed to intervene, as it has an undeniable interest in whether its longtime counsel, Quinn Emanuel, should be disqualified as adversary counsel in this action.

### B. Nextel Possesses a Legally Protectable Interest In Assuring The Continuing Loyalty Of Its Long-Time Counsel.

Nextel has a direct and substantial interest in ensuring that its counsel respect its duties to Nextel.  The cases recognize the right of a client to insist upon the loyalty of its counsel and further recognize that the right to counsel's loyalty – which is breached on an ongoing basis in an adverse representation – provides a legitimate basis for intervention as of right.  In sum, a client's interest in ensuring the fidelity of its counsel, and seeking disqualification, are legally protectable interests warranting intervention as of right.  *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (noting that non-party "could have intervened as of right under Rule 24(a) of the Federal Rules of Civil Procedure, and it could have pressed for the disqualification of" attorney); *Cruz v. County of DuPage*, 1997 WL 370194, at *4-6 (N.D. Ill. 1997) (allowing non-party to intervene for purposes of ruling on non-party's motion to disqualify counsel due to conflict of interest under Rule 1.7 of the Rules of Professional Conduct).

---

[9]     Oct. 19, 2005 Letter from Urquhart to McMillan (Ex. I to Koide Decl.); s*ee also* Quinn Emanuel Representative Clients (Ex. M  to Koide Decl.).

[10]     Dec. 1, 2005 Letter from McMillan to Urquhart (Ex. J to Koide Decl.); Dec. 7, 2005 Letter from McMillan to Urquhart (Ex. K to Koide Decl.).

That the ethical duties at issue are protected by the Massachusetts Rules of Professional Conduct and rules of court does not, in any way, diminish Nextel's specific interest in having those rules enforced. Indeed, the rights and obligations reflected in those Rules are highly personal to Nextel. Nextel has a profound interest in challenging the conduct of counsel for Freedom. Nextel has had a long and substantial relationship with Quinn Emanuel. Declaration of Jamia Williams ¶ 3 (Ex. E to Koide Decl.); Oct. 19, 2005 Letter from Urquhart to McMillan (Ex. I to Koide Decl.); Quinn Emanuel Representative Clients (Ex. M to Koide Decl.). In addition, Quinn Emanuel represented Nextel's merger partner, Sprint, prior to the merger that formed Sprint Nextel. Declaration of Terry Koehler ¶ 2 (Ex. F to Koide Decl.); Oct. 19, 2005 Letter from Urquhart to McMillan (Ex. I to Koide Decl.). Nextel's therefore has a redressable and significant legal interest in curbing the ongoing violation of Quinn Emanuel's ethical obligations to Nextel.

Nextel is therefore not seeking to inject new issues *on the merits*. Rather, it is seeking a limited intervention to protect its own ongoing interest in the proceedings by raising a discrete and particularized issue. That issue focuses upon Quinn Emanuel's, and Freedom's, violations of Nextel's rights in pursuing the matter. Courts have had little difficulty recognizing that intervention is appropriate to protect similar interests of third parties. *See In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) (finding privilege claims support intervention when privileged information would otherwise be disclosed pursuant to grand jury subpoena).

The disqualification issue is properly addressed at the very outset of proceedings because the failure to address the issue now might well taint the process on a continuing basis. Nextel's interests in curbing the ongoing breach of its rights provides precisely the type of interest that a party must, and should, assert by way of intervention.

### C.    Nextel's Interest Will be Substantially Impaired.

Once it is recognized that an applicant for intervention as of right has a legally protectable interest, the First Circuit next looks to see whether that interest will be impaired by the action. *Mosbacher*, 966 F.2d at 41.  Nextel's legally protectable interest will be substantially impaired unless Nextel is allowed to intervene in this action.  That is because the violation of Nextel's rights, and the impairment of its interest, is by its very nature a continuing violation.  Nextel's recourse for that violation is disqualification – and disqualification can only be effectuated through the actions of this Court.

Nextel's accompanying Memorandum in Support of its Motion to Disqualify Quinn Emanuel details the basis for Nextel's right to seek Quinn Emanuel's disqualification.  Nextel's interests – based on a continuous and extended relationship with Quinn Emanuel over more than decade – fully deserve the Court's attention at this early juncture in the litigation.

### D.    Nextel's Interests Are Not Capable of Being Adequately Represented by the Current Parties.

Here, the existing parties cannot represent Nextel's interests.  Quite simply, no existing party has standing to assert the interests in the loyalty of Quinn Emanuel to Nextel that Nextel will here assert through its motion to disqualify.  Quinn Emanuel's conflict arises from its ongoing representation of Nextel and only Nextel can protect its interests.  Thus, the basic breach of Quinn Emanuel's ethical obligations at the heart of this intervention will go unchallenged if Nextel's motion to intervene is not granted.

## II.    PERMISSIVE INTERVENTION SHOULD BE GRANTED.

Should the Court determine that the criteria for intervention as of right are not met, permissive intervention is warranted.  Rule 24(b) of the Federal Rules of Civil Procedure sets forth the standard for permissive intervention:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). Under Rule 24(b)(2), a party seeking to intervene permissively must show that:

> (1)    "[T]he applicant's claim or defense and the main action have a question of law or fact in common,"
>
> (2)    the applicant's interests are not adequately represented by an existing party, *and*
>
> (3)    intervention would not result in undue delay or prejudice to the original parties.

*In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (emphasis in original). Nextel meets all three requirements.

The first requirement is addressed to the overlap of interests. Where a party seeks to intervene for a limited purpose – rather than intervene fully in the case – the question is simply whether the issue being raised overlaps with any issue of law or fact involved with the case. Here, the question being presented is whether Quinn Emanuel can properly serve as counsel for Freedom. That issue was certainly presented on an ongoing basis here. Indeed, it was the precise subject of the *pro hac vice* application by Quinn Emanuel's attorneys. Nextel has an interest in that question; Freedom assuredly has an interest in that question. Disqualification (or denial of the right to appear *pro hac vice*) is the proper remedy – and this Court is the proper Court to pass on the issue. The issue is, therefore, properly addressed here.

Second, as stated above with respect to intervention as of right, Nextel's interests are not adequately represented by an existing party. Finally, Nextel's intervention will not unduly delay or prejudice any of the original parties. It will curb an ongoing injury and allow a basic issue –

concerning who may serve as counsel to Freedom – to be addressed at the very outset of the

case.  Therefore, permissive intervention of Nextel for purposes of seeking disqualification of

Quinn Emanuel from this action is appropriate.

## CONCLUSION

        Nextel's Motion to Intervene should be granted.

                        Respectfully submitted,

                        NEXTEL COMMUNICATIONS, INC.
                        By their attorneys,

                        /s/Dennis J. Kelly
                        Dennis J. Kelly (BBO # 266340)
                        dkelly@burnslev.com
                        Victoria L. Walton (BBO # 650999)
                        vwalton@burnslev.com
                        BURNS & LEVINSON LLP
                        125 Summer Street
                        Boston, MA 02110-1624
                        Telephone: 617-345-3000
                        Facsimile: 617-345-3299

                        Richard McMillan, Jr. (pro hac vice application to
                        be filed)
                        rmcmillan@crowell.com
                        Michael J. Songer (pro hac vice application to be
                        filed)
                        msonger@crowell.com
                        CROWELL & MORING, LLP
                        1001 Pennsylvania Avenue, N.W.
                        Washington, D.C.  20004
                        Telephone: (202) 624-2500
                        Facsimile: (202) 628-5116

Dated:  December 27, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

---

FREEDOM WIRELESS, INC.,

                Plaintiff,

       v.

BOSTON COMMUNICATIONS GROUP,
INC., et al.

                Defendants.

Civil Action No. 05-11062 EFH

---

**NEXTEL COMMUNICATIONS, INC.'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISQUALIFY QUINN EMANUEL**

      Nextel Communications, Inc. ("Nextel") submits this Memorandum in support of its

Motion to Disqualify Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"). The

Motion to Disqualify was previously tendered to the Court on December 12, 2005, as an

attachment to Nextel's Motion to Intervene also filed that date. In the event that the Court grants

Nextel's motion to intervene, Nextel will file its Motion to Disqualify, supported by this

Memorandum, in accordance with Federal Rule of Civil Procedure 24(c).

      The Massachusetts Rules of Professional Conduct makes it clear that a lawyer has a duty

of loyalty to a current client. That duty of loyalty requires that the lawyer "shall not represent a

client if the representation of that client will be directly adverse to another client." Mass. R.

Prof. Conduct DR-1.7(a) (SJC Rule 3:07) ("Rule 1.7"). Quinn Emanuel's representation of

Freedom in this case is directly and materially adverse to Nextel, which Quinn Emanuel also

represents – and has represented for years – in other matters. The record reflects that Freedom

simultaneously filed two substantively identical complaints in this Court against various parties,

including Nextel. One, No. 05-11061-EFH, includes Nextel as defendant; the second, No. 05-

11062-EFH, includes all the remaining wireless carriers doing business with BCGI except Nextel.

Freedom and Quinn Emanuel apparently hoped to circumvent the ethical bar on Quinn Emanuel pursuing a representation adverse to Nextel by entering its appearance only in the '062 case. But ethical rules are not so easily circumvented. As shown below, any analysis of the litigation realities easily demonstrates that Quinn Emanuel cannot represent Freedom in the '062 case without being materially adverse to Nextel, due to the companion (and likely to be consolidated) '061 case. In light of this conflict, Quinn Emanuel must withdraw from the case. Mass. R. Prof. Conduct DR-1.16(a) (SJC Rule 3:07) ("Rule 1.16"). Failing withdrawal, disqualification is the proper remedy.[1]

## BACKGROUND

Quinn Emanuel's disregard of its duty of loyalty actually manifested itself at the conclusion of the prior case, *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, No. 00-CV-12234 (D. Mass. filed Oct. 30, 2000) ("*Freedom I*"). In *Freedom I*, Quinn Emanuel purported to obtain injunctive relief directly against its longstanding client, Nextel. That action, and the service of complaints in the two new actions, prompted a series of letters in which Nextel formally requested that Quinn Emanuel withdraw from the representations. Quinn Emanuel has to date not acceded to these requests. Nextel has thus successfully moved to intervene in the Federal Circuit appeal of *Freedom I* and has filed a motion to disqualify Quinn Emanuel from

---

[1] In lieu of filing this motion, Nextel has sought to have Quinn Emanuel withdraw. *See* Dec. 1, 2005 Letter from McMillan to Urquhart (Ex. J to Declaration of Brian M. Koide in Support of Nextel Communications, Inc.'s Motion to Intervene for Limited Purpose and Motion to Disqualify Quinn Emanuel ("Koide Decl.")); Dec. 7, 2005 Letter from McMillan to Urquhart (Ex. K to Koide Decl.). Quinn Emanuel has declined to do so.

further participation in the appeal.  That intervention and that motion focuses on the issue of disqualification in connection with the appellate proceedings in *Freedom I*.

This motion address an equally direct conflict of interest in Quinn Emanuel's representation of Freedom in this Court.  As shown below, Quinn Emanuel's attempt to pursue Freedom's claims against Alltel and Cincinnati Bell in the '062 case, *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("'062 case" or "Alltel case"), and to circumvent the conflict by not entering a formal appearance in the parallel case proceeding against Nextel, *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("'061" case or "Nextel case"), reflects an approach to Quinn Emanuel's ethical duties that is all form and no substance.  The "two-pleadings" approach cannot disguise the conflict of interest that inheres in Quinn Emanuel's actions.

### A.     Quinn Emanuel's Representation of Nextel

Quinn Emanuel is a large California-based law firm.  The firm has represented both Sprint and Nextel for over twelve years; it continues to serve as counsel for the recently formed Sprint Nextel Corp.'s ("Sprint Nextel") affiliates today.[2]  The representation has involved a wide range of different matters and resulted in billings in excess of $6.6 million since the beginning of 2003 alone.  Declaration of Jamia Williams ¶ 3 (Ex. E to Koide Decl.); Declaration of Terry Koehler ¶ 2 (Ex. F to Koide Decl.).  The representations have been in matters of consequence, and Quinn Emanuel has frequently played the role of Nextel's principal West Coast litigation counsel.

---

[2]     *See* Quinn Emanuel Representative Clients (Ex. M to Koide Decl.) (stating that Quinn Emanuel represents Nextel in intellectual property litigation, antitrust, class action, and appellate matters); s*ee also* Oct. 19, 2005 Letter from Urquhart to McMillan (Ex. I to Koide Decl.).

### B.    Quinn Emanuel's Representation of Freedom in *Freedom I*

As this Court is aware, Quinn Emanuel was counsel to Freedom in *Freedom I*, a suit which Quinn Emanuel brought on behalf of Freedom against Boston Communications Group, Inc. ("BCGI") and several wireless carriers.  That case is now on appeal to the United States Court of Appeals for the Federal Circuit.  The Federal Circuit has allowed Nextel to intervene in that appeal, in part to address the disqualification issue associated with Quinn Emanuel's representation of Freedom in the appellate proceedings.  Dec. 15, 2005 Public Order (Ex. A to Koide Decl.).

### C.    The Emergence of Quinn Emanuel's Conflict of Interest in *Freedom I*

For much of the earlier *Freedom I* litigation, Quinn Emanuel's representation of Freedom presented no ethical conflict with Nextel, because Freedom ultimately proceeded in that case against BCGI, Cingular Wireless, LLC, AT&T Wireless PCS, CMT Partners, and Western Wireless Corp., based on joint infringement claims.  The essence of Freedom's claims lay in the assertion that while none of the defendants *individually* infringed Freedom's method claims, the *combined* actions of various pairs of defendants taken together constituted "joint infringement."  Nextel began to use BCGI's services in 2002 in connection with its "Boost Mobile" prepaid wireless phone service.  Declaration of Phillip Cooke ¶ 6 (Ex. G to Koide Decl.).  Nextel's conduct was never put at issue in *Freedom I*, until the post-trial injunction was issued on October 17, 2005.

In fact, this Court drew clear lines that created a litigation in which Quinn Emanuel could serve as Freedom's counsel *without* engendering any conflict with Nextel.  For example, this Court held that Freedom's claims of joint infringement arising from combined actions of BCGI and the named carrier defendants did *not* allow Freedom to claim damages for BCGI's dealings with Nextel.  Neither could Freedom put those actions at issue in *Freedom I*.  To the contrary,

this Court ruled that if Freedom wished to pursue a claim of joint infringement resulting from the combined actions of BCGI and any *non-defendant* carrier customer (such as Nextel), it would have to file a separate action against BCGI and those other defendants.  Apr. 27, 2005 Order (Ex. B to Koide Decl.) ("[this case] is not an adjudication on the merits of any claims arising from conduct involving non-defendant carriers . . . Freedom may pursue claims arising from conduct involving non-defendant carriers in a separate action.").

### D.     BCGI-Nextel and BCGI-Alltel *et al.*

Rather than file a single case against the remaining wireless carriers doing business with BCGI, Freedom simultaneously filed in this Court what purports to be *two* separate cases against the remaining wireless customers of BCGI.  It filed this case ('062), against BCGI and all the remaining carriers with whom BCGI was doing business, except Nextel.  At the same time, it filed a case against BCGI and Nextel alone ('061).

Although filed at the same time, in the same Court, with parallel allegations, and bearing consecutive docket numbers, Quinn Emanuel purports to represent Freedom *only* in this case, not the Nextel case, in which Freedom is apparently represented by Goodwin Procter LLP.  This odd gerrymander of claims and defendants has only one purpose:  nominally to avoid Quinn Emanuel entering a formal appearance in a case against Nextel.  Through this formality, Quinn Emanuel apparently believed it could circumvent the prohibition on undertaking a representation materially adverse to its current client, and thus avoid an ethical obligation that lies at the core of an attorney's ethical responsibility to a client.[3]  As shown below, the device of having Quinn

---

[3]     While all this continued, Nextel received direct assurances from Quinn Emanuel that it would avoid conflicts.  Thus, on March 10, 2005, Quinn Emanuel sent an e-mail to Nextel, assuring Nextel that "no one at [the] firm has any involvement (sic) with anything to do with Nextel [with regards to] the [Freedom] case or will have in the future."  Mar. 10, 2005 E-mail from Suprenant to Haller (Ex. N to Koide Decl.).  Indeed, Nextel received further assurances from Quinn Emanuel in July 2005.  Before the Sprint-Nextel merger closed this year, Sprint required its

(continued…)

Emanuel appear in only one case cannot obscure the conflict, or circumvent the bar on such representations, because Quinn Emanuel's actions in this case will necessarily have an adverse impact on Nextel.

   **E.    Quinn Emanuel's Effort to Walk an Ethical Tightrope Collapsed
        With This Court's Entry of the Injunction in the *Freedom I* Litigation**

   Although Freedom filed its new Complaints with the Court in May 2005, it purposefully did not complete service of the Complaints on any of the defendants until September or October 2005.  In the meantime, as this Court is well aware, Freedom prevailed in *Freedom I*, and then sought an injunction against further infringement.  It was in connection with this injunction that Quinn Emanuel's conflict of interest became increasingly manifest.  As subsequently construed by Quinn Emanuel, the injunction was directed not only against the defendants in Freedom I, but against Nextel and other non-defendant carriers as well.

   This position was remarkable, because when BCGI raised a concern about Freedom's proposed injunction language during briefing, Quinn Emanuel had assured this Court that the proposed injunction would *not* extend beyond the "joint infringements" actually found in the case.  Quinn Emanuel specifically referred to this Court's rulings limiting *Freedom I* to the activities of the named parties.  Quinn Emanuel then assured the Court that:

>             Freedom is not seeking to enjoin any conduct that the Court ruled
>             was beyond the scope of this action, and that was not presented at
>             trial.  Freedom is only seeking to enjoin the conduct that was found
>             to infringe Freedom's patents-in-suit . . . Freedom is only seeking
>             to enjoin *defendants* from performing the same activities with the

---

(…continued)

outside counsel, including Quinn Emanuel, to identify "actual or potential conflicts" that would exist if the merger
went forward.  In July 2005, after being provided with a list of all Nextel entities, Quinn Emanuel stated that Quinn
Emanuel had reviewed its records and had determined that no conflicts of interest existed with any of the Nextel
entities listed.  July 11, 2005 Conflict of Interest Statement (Ex. O to Koide Decl.).

same implementations *that were actually found to infringe* Freedom's patents-in-suit.[4]

The Court entered an injunction in *Freedom I*, based on language taken from Freedom's motion.

### F.    Quinn Emanuel's Response to the Injunction

No sooner had the Court entered the injunction in *Freedom I*, then Quinn Emanuel itself publicly promoted a view of the injunction designed to have it reach the very conduct – the activities of BCGI *vis-à-vis* Nextel and other non-defendant carriers – that it had assured the Court would *not* be reached.  In a press release immediately after the injunction was entered, Quinn Emanuel asserted that:

> "The injunction prohibits any of the defendants from making, using, or selling prepaid wireless services based on the systems found to infringe, either by themselves or jointly *with **any other companies***," said Bill Price, lead trial lawyer for the plaintiff and chair of Quinn Emanuel Urquhart Oliver & Hedges LLP's trial practice.  It thus prohibits *BCGI and its **current carrier customers**, including Alltel and Cincinnati Bell, Inc. (CBB),* which were named in a recent patent infringement lawsuit by Freedom Wireless, *from selling prepaid wireless services using the infringing BCGI systems*.

Press Release (Ex. L to Koide Decl.) (emphasis added).

Quinn Emanuel did not mention Nextel by name, despite the fact that Freedom's suit against Nextel, like Freedom's suit against Alltel and Cincinnati Bell, had already been filed and Nextel was assuredly one of BCGI's "current carrier customers."  Nonetheless, the press release categorically asserted that the injunction reached "any" wireless carrier doing business with BCGI and thus reached "BCGI and its current carrier customers."  This "included" – but there was no suggestion that it was limited to – "Alltel and Cincinnati Bell."  Leaving Nextel's name

---

[4]    Freedom's Reply Brief in Further Support of its Motion for Injunctive Relief at 6 (Ex. C to Koide Decl.) (emphasis added).

out of the press release meant nothing substantively.  Nonetheless, Quinn Emanuel apparently

believed that by doing so it might avoid a conflict.[5]  Significantly, in response to Nextel's protest

that this was a clear conflict of interest, Quinn Emanuel responded by asserting that it had not

"analyzed" whether Nextel infringed the patents – as if Quinn Emanuel's intentional ignorance

could somehow obviate its ethical duties.[6]

> ### G.    Nextel's Intervention in the Court of Appeals

Given the Quinn Emanuel/Freedom effort to construe the injunction to bar Nextel's

activities, Nextel was compelled to become involved in the *Freedom I* litigation to protect itself

from the force of an injunction that – according to Quinn Emanuel and Freedom – already barred

Nextel's activities with BCGI, even before Nextel had the opportunity to defend itself in the case

actually filed against it.

This Court denied Nextel's motion to intervene after entry of judgment in *Freedom I*.

Nonetheless, Quinn Emanuel's expansive reading of the injunction prompted Nextel to formally

intervene in the appeal of *Freedom I* in the Federal Circuit.  In so moving, Nextel highlighted its

intention to seek to disqualify Quinn Emanuel from representing Freedom in the appeal, as well

as its intention to raise certain substantive issues.

On December 15, 2005, the Court of Appeals granted Nextel's motion to intervene.[7]  The

Court also stayed the injunction to the extent that it might be construed to reach the activities of

---

[5]    Since issuing the press release, Freedom has left no doubt about that adversity.  Freedom has formally and explicitly taken the position that Nextel is covered by this Court's injunction issued in *Freedom I*.  For example, Freedom has insisted that it is "clear" and there is "no doubt" that the injunction bars Nextel's activities.  *See* Opposition of Freedom Wireless, Inc. to Defendant BCGI's Motion for a Stay of Proceedings Pending Resolution of the Federal Circuit Appeals at 8-9 (Ex. D to Koide Decl.).

[6]    Ex. I to Koide Decl.

[7]    Ex. A to Koide Decl.

BCGI and non-party carriers such as Nextel.[8]  Nextel thereafter filed its Motion to Disqualify, which is currently pending before the Federal Circuit.

### H.        Nextel's Efforts to Raise the Conflicts Issue with Quinn Emanuel

In a series of letters, Nextel has raised the conflicts issue and sought Quinn Emanuel's voluntary withdrawal from the pending litigation.  By letter of October 19, 2005, Nextel sought clarification of Freedom's and Quinn Emanuel's intent concerning the scope of the *Freedom I* injunction, and was told Quinn Emanuel had not "analyzed" the issue (an assertion belied by its own press release).  Oct. 19, 2005 Letter from McMillan to Urquhart (Ex. H to Koide Decl.); Oct. 19, 2005 Letter from Urquhart to McMillan (Ex. I to Koide Decl.).  On December 1 and December 7, 2005, Nextel submitted detailed letters to Quinn Emanuel formally requesting Quinn Emanuel's withdrawal from the appeal in *Freedom I* and from any participation in the Alltel or Nextel cases.  Dec. 1, 2005 Letter from McMillan to Urquhart (Ex. J to Koide Decl.); Dec. 7, 2005 Letter from McMillan to Urquhart (Ex. K to Koide Decl.).  Nextel has received no substantive response to these letters.

## ARGUMENT

## I.      QUINN EMANUEL MAY NOT ACT IN A MANNER ADVERSE TO NEXTEL

In appearing in this Court, Quinn Emanuel has submitted itself to the standards of ethical practice applicable in Massachusetts.  Moreover, because Quinn Emanuel's attorneys practice as members of the California bar, they are bound by the ethical strictures imposed by California as well.  The ethical mandates of both jurisdictions are absolute.  Under both Massachusetts and

---

[8]     *Id.*

California Rules of Professional Conduct, a law firm may *not* represent one client in a manner directly adverse to another.  Rule 1.7; *accord* Cal. R. Prof. Conduct 3-310(C)(3).[9]

The rationale underlying this restriction is the obligation that forms the core of the attorney-client relationship:  "Loyalty is an essential element in the lawyer's relationship to a client."  Rule 1.7, cmt. 1.  That loyalty "prohibits undertaking representation directly adverse to [a] client without that client's consent."  Rule 1.7, cmt. 3.  Thus, "a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated."  *Id.*  A conflict of interest exists when "representation of [one] client will be directly adverse to another client."  Rule 1.7.

In the *Freedom I* appeal, Quinn Emanuel will apparently suggest that the conflict was unwittingly "thrust" upon them, but this consideration is certainly not present in the newly filed Alltel and Nextel cases, and is in any case irrelevant.  The fact that the attorney has already embarked on a course of representation of one client before the conflict arises or becomes apparent does *not*, in any way, eliminate the attorney's obligation to cure the conflict once it does become apparent.  To the contrary, "where representation has commenced, [the attorney] shall withdraw from the representation of a client if:  (1) the representation will result in violation of the rules of professional conduct or other law."  Rule 1.16(a); *accord* Cal. R. Prof. Conduct 3-700(B)(2).  The attorney's obligation in such circumstances is clear:  "If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation."

---

[9]     The Supreme Judicial Court of Massachusetts stated the point unequivocally in *The McCourt Co., Inc. v. FPC Properties, Inc.*, 386 Mass. 145, 146 (Mass. 1982):  "The undivided loyalty that a lawyer owes to his clients forbids him, without the clients' consent, from acting for client A in one action and at the same time against client A in another."

Rule 1.7, cmt. 2. Here, not even that issue arises – Quinn Emanuel has chosen to appear in an entirely new case, and Nextel is challenging that representation at the outset of the case.

## II. QUINN EMANUEL'S DIRECT ADVERSITY TO NEXTEL CANNOT BE OVERCOME BY THE FILING OF TWO PARALLEL SUITS IN THE SAME COURT

### A. Quinn Emanuel Cannot Avoid The Conflict Of Interest By Keeping Its Name Off The Papers In The Nextel Case

As is evident from the way in which the two cases at issue were filed – the Alltel case, against all the remaining carriers, *except* Nextel, with Quinn Emanuel as counsel, and the Nextel case, against Nextel alone, ostensibly without Quinn Emanuel as counsel – neither Freedom nor Quinn Emanuel disputes the fact that Quinn Emanuel cannot undertake any representation against Nextel. The only question is whether Quinn Emanuel can sidestep its ethical problem as it has tried to do here – by breaking the claims against Nextel out of the concurrently filed larger suit against the other wireless carriers, and having a different firm appear formally as Freedom's counsel in that case.

Loyalty is a matter of substance, not form. Just as Quinn Emanuel's public statements regarding the *Freedom I* injunction did *not* distinguish between Nextel and any other carrier doing business with BCGI, neither do the follow-on lawsuits. The two cases that Freedom filed are substantively identical. They were filed on the same day, in the same court, and assigned to the same judge as cases related to *Freedom I* (Local Rule 40.1(g)). They presumably will, in the ordinary course, be consolidated for efficient administration in accordance with Fed. R. Civ. P. 42(a) ("actions involving common question of law or fact … may [be] consolidated … to avoid unnecessary costs or delay").

Quinn Emanuel plainly could not continue to represent Freedom in the Alltel case if the Alltel and Nextel cases were consolidated,[10] but the conflicts issue does not turn on the formality of consolidation. It turns on the reality of how these litigations will proceed. There is predictability to what will occur:

- Claim construction issues and other legal arguments will be presented. This may be affected by the results in the Federal Circuit appeal of *Freedom I*, and if the judgment is reversed, there may be a particularly broad range of new issues raised or revisited. But even apart from the appeal, or if this Court is merely trying to apply whatever rules the Federal Circuit establishes, vigorous arguments will proceed in which Freedom's and Nextel's interests will almost invariably be adverse. Resolution of issues of law which this Court decides for purposes of one case may be applied to the other case in seamless and predictable fashion. This Court, or the presiding judge in both cases, will rule on the basis of substance, not form.

- Depositions will proceed against numerous parties and non-parties. The parties and this Court will want witnesses deposed once, not twice. BCGI and Freedom witnesses will be deposed, for example, in both cases, but so will numerous third parties who are affiliated with those parties or are knowledgeable about prior art or other matters in dispute. When Quinn Emanuel is questioning or defending these witnesses, its interest will be directly adverse to Nextel's. When deposition transcripts are played to the jury, Quinn Emanuel lawyers who are present will be influencing the Nextel case.

---

[10]    If consolidation is ordered (as it should be), Quinn Emanuel would be representing the party plaintiff in the very same matter in which another client (Nextel) is an adverse defendant – the quintessential direct conflict.

- Defendants in the two cases will retain joint experts to at least some significant degree. Nextel and Alltel, for example, may retain joint experts, BCGI will certainly wish a single set of experts (depending of course on its posture once the appeals process is complete), and it is entirely possible that all defendants will collaborate in significant respects regarding experts. Freedom also will likely have a single set of experts for the two cases. In all aspects of the expert work – whether at the report stage, depositions or at trial – Freedom's and Quinn Emanuel's interest will be directly adverse to Nextel.

Thus, the notion that the two cases could remain separate, so that Quinn Emanuel could avoid advocating against Nextel, defies the reality of litigation. There is simply no way that the two cases can proceed in parallel in front of a single judge without Quinn Emanuel's advocacy in the lead case running headlong into the interests of Nextel. Given that Freedom is a common plaintiff in the two cases, Quinn Emanuel is unlikely to posit any positions for Freedom in this case that would not be adverse to Nextel.[11]

So far as can be gleaned from the case law and common experience, no law firm has yet had the temerity to argue what Quinn Emanuel is arguing here – that it can avoid a very real and tangible adversity by nominally separating identical claims into two suits in the same court. The California courts (applying standards by which the Quinn Emanuel attorneys licensed in California are required to comply) recognized as much in a similar setting. *See Cal West Nurseries, Inc. v. Superior Court*, 29 Cal.Rptr.3d 170 (Cal. Ct. App. 2005). In *Cal West*

---

[11]     Indeed, this fact is illustrated by Quinn Emanuel's actions in *Freedom I*. Quinn Emanuel's press release (discussed above) asserted that this Court's injunction reached "any" wireless carrier doing business with BCGI. The press release noted that this "included" "Alltel and Cincinnati Bell," but there was no way that Quinn Emanuel could suggest that it was *limited to* Alltel and Cincinnati Bell. Ex. L to Koide Decl. Such assertions directly affect Nextel.

*Nurseries*, a law firm found that it was directly adverse to a current client. *Id.* at 172. The firm

tried to resolve the conflict by removing itself from the litigation insofar as it was suing its own

client, but tried to stay in the case as it related to other parties. The California court found this

insufficient, holding, "The duty of loyalty . . . prohibits the lawyers from representing the second

client to *any extent* in the action." *Id.* (emphasis added). The fact that the firm did "not represent

[the client on the particular claim] does not eliminate the adverse relationship between the two

parties." *Id.* at 174. The court found a "sufficient adverse relationship" to require

disqualification. *Id.* [12] The device of two parallel lawsuits can be no more effective than using

the device of two parallel claims in the same suit in vitiating a very real, very tangible conflict of

interest.

     Indeed, under principles commonly applied to the professional duties of lawyers, the

approach being suggested by Quinn Emanuel is simply untenable. The prohibition upon

conflicts of interest has never been limited to the litigation context; it does not depend upon

whether the attorney appears in one lawsuit, or two, or none. Rather, the core prohibition is

substantive, requiring the lawyer to ensure that his activities do not materially and adversely

impact a client. Rule 1.7, cmt. 9 emphasizes the importance of a substantive inquiry, noting that

even in separate matters a firm's antagonistic positions "may relate to an issue that is so crucial

to the resolution of a matter as to require that the clients be advised of the conflict and their

consent obtained." Further, the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §

---

[12] The court noted:

> A client who learns that his or her lawyer is also representing a litigation adversary,
> even with respect to a matter *wholly unrelated* to the one for which counsel was
> retained, cannot long be expected to sustain the level of confidence and trust in
> counsel that is one of the foundations of the professional relationship.

*Id.* at 174 (emphasis in original) (*quoting Flatt v. Superior Court*, 885 P.2d 950, 955 (Cal. 1994)).

121, describes the "basic prohibition of conflicts of interest" in terms of the substantial risk that the attorney's actions will, in any respect, have a material adverse affect on its clients:  A "lawyer may not represent a client if . . . there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected . . . by the lawyer's duties to another current client."

In honing in on an analogous issue – the question of conflict of interest that may arise even in connection with two *unrelated* lawsuits raising identical issues – the RESTATEMENT (THIRD) § 128 cmt. f, describes the conflict inquiry this way:  "[A] conflict is presented when there is a substantial risk that a lawyer's action in Case A will materially and adversely affect another of the lawyer's clients in Case B."[13]  That conflict is presented here, even more directly. Where Case A: (1) is precisely parallel to Case B; (2) is being pursued in the same court as Case B; (3) is being pursued at the same time as case B; (4) is being pursued before the same judge as Case B; (5) involves important substantive legal interests; and (6) those interests bear directly on the client's ongoing business activities, the "substantial risk" that the lawyer's activities in Case A may "materially and adversely" affect the client's interest in Case B, is manifest.  As demonstrated above, Quinn Emanuel's representation of Freedom in this case creates a manifest risk of both direct adversity and the risk of material and adverse impact on Nextel.  Under these circumstances, Quinn Emanuel may not proceed.

---

[13]    The comment goes on to explain that the "[f]actors relevant in determining the risk of such an effect include whether the issue is before a trial court or an appellate court; whether the issue is substantive or procedural; the temporal relationship between the matters; the practical significance of the issue to the immediate and long-run interests of the clients involved; and the clients' reasonable expectations in retaining the lawyer."

## III.     THE REMEDY IS DISQUALIFICATION

The ordinary remedy for a conflict of interest arising in litigation is disqualification. Disqualification puts an end to what amounts to a *continuing* breach of loyalty when a law firm acts in a manner directly adverse to a current client.  The proper response of a law firm faced with a conflict of interest is to withdraw.  Failing voluntary withdrawal, the law firm must be disqualified.

Where there is a lure of tens of millions of dollars of potential contingent fees in cases like this one, the temptation to evade ethical rules is undoubtedly great.  But there are no "work-arounds" for an attorney's core ethical obligations.  Lawyers are flatly barred from throwing clients overboard in pursuit of the interests of others.  That bar protects the judicial process as well as the victimized client.  *In re Bushkin Assoc., Inc.*, 864 F.2d 241, 246 (1st Cir. 1989) (finding disqualification may be necessary "to protect the integrity of the judicial process, enforce its rules against transgressors, and maintain public confidence in the legal profession"). Quinn Emanuel's approach disregards these basic strictures.

On the one hand, Quinn Emanuel has long represented Nextel.  That representation has not been modest or occasional.  Quinn Emanuel has served Nextel, Sprint and their affiliates for over a decade.  This has involved a multitude of cases and millions of dollars in legal fees – approximately $6.6 million in the past three years alone.  Declaration of Jamia Williams ¶ 3 (Ex. E to Koide Decl.); Declaration of Terry Koehler ¶ 2 (Ex. F to Koide Decl.).  Quinn Emanuel has for the most part served as Nextel's principal West Coast counsel during this period.

Quinn Emanuel acknowledges this long history.  Ex. I to Koide Decl.  It acknowledges that it cannot act adversely to Nextel.  Yet its response has not been withdrawal.  Instead, its response has been to try to finagle a way around its duties.  It announced that the injunction in *Freedom I* would reach "any" of BCGI's "current customers" – which to Quinn Emanuel's

16

knowledge necessarily included Nextel – but tried to avoid its obligations to Nextel by not specifically mentioning Nextel by name.  *See* Ex. L to Koide Decl.  After Nextel protested the potential scope of the injunction, Quinn Emanuel asserted that there could be no conflict because it had not analyzed the issue – though the press release it issued made clear that it had.  Ex. I to Koide Decl.  And when it came to filing suit against the remaining wireless carriers doing business with BCGI, Quinn Emanuel apparently believed that it had miraculously washed its hands of its duties by having Freedom simultaneously file two parallel suits in the same court, one against everyone except Nextel, the other only against Nextel.

While courts recognize the gravity of disqualification, they have not hesitated to require it when conflicts arise.  *See Picker Int'l, Inc. v. Varian Assoc., Inc.*, 869 F.2d 578, 584 (Fed. Cir. 1989) (affirming disqualification of plaintiff's counsel); *Fiandaca v. Cunningham*, 827 F.2d 825, 828 (1st Cir. 1987) ("a district court is vested with broad power and responsibility to supervise the professional conduct of the attorneys appearing before it"); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 818 (N.D. Cal. 2004) (disqualifying defendant's counsel for breach of attorney's duty of loyalty to client when counsel concurrently represented plaintiff's managing partner in a personal capacity).

The only appropriate remedy for the conflict is to compel Quinn Emanuel to respect its obligations to Nextel.  Any potential prejudice to Freedom by disqualifying Quinn Emanuel is outweighed by the ongoing injury to Nextel.  Quinn Emanuel's relationship with – and duty of loyalty to – Nextel is substantial and of long standing.  Freedom has long been aware of the conflict that would arise if Quinn Emanuel were to take actions directly adverse to Nextel.  Moreover, Freedom is represented by multiple firms, notably Goodwin Procter LLP.  The cases are just beginning; answers have just been filed and the Scheduling Conference has not yet been

noticed by the court.  Thus, any possible inconvenience to Freedom is outweighed by the injustice and impropriety in allowing Quinn Emanuel to ignore its ethical responsibilities to a current client.

**CONCLUSION**

Nextel's Motion to Disqualify Quinn Emanuel should be granted.

Respectfully submitted,

NEXTEL COMMUNICATIONS, INC.
By their attorneys,

_____
Dennis J. Kelly (BBO # 266340)
dkelly@burnslev.com
Victoria L. Walton (BBO # 650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone:  617-345-3000
Facsimile:  617-345-3299

Richard McMillan, Jr. (pro hac vice application to be filed)
rmcmillan@crowell.com
Michael J. Songer (pro hac vice application to be filed)
msonger@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

Dated:   December 27, 2005