## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

           Plaintiff,

     v.

BOSTON COMMUNICATIONS GROUP,
INC., et al.

           Defendants.

Civil Action No. 05-11062 EFH

## DECLARATION OF BRIAN M. KOIDE IN SUPPORT OF NEXTEL COMMUNICATIONS, INC.'S MOTION TO INTERVENE FOR LIMITED PURPOSE AND MOTION TO DISQUALIFY QUINN EMANUEL

I, Brian M. Koide, declare as follows:

1.     I am counsel for Crowell & Moring LLP, attorneys for Nextel Communications, Inc. I submit this declaration based on my personal, first-hand knowledge.

2.     Attached as Exhibit A is a true and correct copy of an Order entered in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, Nos. 06-1020, -1078, -1079, -1098, -1099 (Fed. Cir. entered Dec. 15, 2005).

3.     Attached as Exhibit B is a true and correct copy of an Order entered in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234-EFH (D. Mass. entered Apr. 27, 2005).

4.     Attached as Exhibit C is a true and correct copy of Plaintiff Freedom Wireless, Inc.'s Reply Brief in Further Support of its Motion for Injunctive Relief filed in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234-EFH (D. Mass. filed Oct. 14, 2005).

5.      Attached as Exhibit D is a true and correct copy of the Opposition of Freedom Wireless, Inc. to Defendant Boston Communications Group, Inc.'s Motion for a Stay of Proceedings Pending Resolution of the Federal Circuit Appeals filed in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 05-11061-EFH (D. Mass. filed Dec. 7, 2005).

6.      Attached as Exhibit E is a true and correct copy of the Declaration of Jamia Williams filed in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234-EFH (D. Mass. filed Oct. 25, 2005).

7.      Attached as Exhibit F is a true and correct copy of the Declaration of Terry Koehler filed in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234-EFH (D. Mass. filed Oct. 25, 2005).

8.      Attached as Exhibit G is a true and correct copy of the Declaration of Phillip Cooke filed in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, No. 00-12234-EFH (D. Mass. filed Oct. 25, 2005).

9.      Attached as Exhibit H is a true and correct copy of a letter from Richard McMillan, Jr. to A. William Urquhart, dated October 19, 2005.

10.     Attached as Exhibit I is a true and correct copy of a letter from A. William Urquhart to Richard McMillan, Jr., dated October 19, 2005.

11.     Attached as Exhibit J is a true and correct copy of a letter from Richard McMillan, Jr. to A. William Urquhart, dated December 1, 2005.

12.     Attached as Exhibit K is a true and correct copy of a letter from Richard McMillan, Jr. to A. William Urquhart, dated December 7, 2005.

13.     Attached as Exhibit L is a true and correct copy of a press release from Quinn Emanuel Urquhart Oliver & Hedges entitled "Court Orders Boston Communications Group and Cingular Wireless to Stop Selling Infringing Prepaid Wi . . . .," dated October 18, 2005.

14.     Attached as Exhibit M are true and correct copies of pages from the website of Quinn Emanuel Urquhart Oliver & Hedges, which were printed out on October 23, 2005.

15.     Attached as Exhibit N is a true and correct copy of an email from Dominic Suprenant to Susan Haller, dated March 10, 2005.

16.     Attached as Exhibit O is a true and correct copy of a Conflict of Interest Statement of John Purcell, dated July 11, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on December 26, 2005 in Washington, DC.

Brian M. Koide

# A

NOTE: Pursuant to Fed. Cir. R. 47.6, this order
is not citable as precedent. It is a public order.

# United States Court of Appeals for the Federal Circuit

06-1020, -1078, -1079, -1098, -1099

FREEDOM WIRELESS, INC.,

Plaintiff-Cross Appellant,

v.

BOSTON COMMUNICATIONS GROUP, INC.,

Defendant-Appellant,

and

WESTERN WIRELESS CORPORATION (d/b/a Cellular One),

Defendant-Appellant,

and

AT&T WIRELESS PCS, CINGULAR WIRELESS LLC, and CMT PARTNERS
(d/b/a Cellular One of San Francisco),

Defendants-Appellants,

and

NEXTEL COMMUNICATIONS, INC. and NEXTEL OPERATIONS, INC.
(now known as Sprint Nextel Corporation),

Movants-Appellants,

v.

ROGERS WIRELESS, INC. (a/k/a Rogers AT&T Wireless),

Defendant-Appellee.

ON MOTION

Before MICHEL, Chief Judge, BRYSON and GAJARSA, Circuit Judges.

BRYSON, Circuit Judge.

### O R D E R

Nextel Communications, Inc. and Nextel Operations, Inc. (collectively Nextel) move for leave to intervene in the appellants' and cross-appellant's appeals. Nextel moves for a stay, pending appeal, of the injunction issued by the United States District Court for the District of Massachusetts to the extent that it reaches Nextel. Boston Communications Group, Inc. (BCGI) moves to construe the injunction not to apply to non-defendants or, if it does, to stay the injunction, pending appeal. Cingular Wireless, LLC, AT&T Wireless, and CMT Partners (collectively Cingular) move for a stay, pending appeal, of the injunction as it applies to them. Freedom Wireless, Inc. opposes the motions. Nextel, BCGI, and Cingular move for leave to file replies, with replies attached. Freedom Wireless does not oppose the motions for leave to file replies.

### BACKGROUND

Freedom Wireless brought "joint infringement" claims against BCGI and Cingular Wireless LLC jointly; BCGI and AT&T Wireless PCS jointly; BCGI and CMT Partners jointly; and BCGI and Western Wireless Corporation jointly. Per the jury instruction, joint infringement was defined as:

> if separate companies work together to perform all of the steps of a claim of a patent, the companies are jointly responsible, that is, responsible as a group for the infringement of the patent. Even if no single company performs all of the steps of a claim, the companies are jointly responsible.

The district court explicitly held that contributory infringement and inducement were not applicable and those theories were not presented to the jury. The jury returned four

verdicts finding that each of the four pairings jointly infringed the patents in suit literally and under the doctrine of equivalents.

Before trial, the district court held that Freedom Wireless, if it wished to pursue claims against non-defendant carriers, must do so in separate actions.    Freedom Wireless filed separate follow-up actions, against BCGI and Nextel jointly and against BCGI and Alltel Corporation jointly.    Those actions are pending in the district court. Apparently there is also a third action against BCGI and Cincinnati Bell, Inc.

Following the jury verdicts in this case, Freedom Wireless provided the district court with a proposed injunction.    BCGI complained that the language was too broad and could be construed to cover BCGI's activities with the so-called "non-defendant carriers" who were not parties in the case.    The district court's injunction enjoined those "acting in concert with any third party, other than a licensee of Freedom Wireless, Inc. to make, use, sell, or offer to sell any of these implementations, or any systems that are not colorably different."    Shortly thereafter, counsel for Freedom Wireless, Quinn Emanuel Urquhart, issued a press release stating that the injunction prohibits "BCGI and its current carrier customers, including Alltel and Cincinnati Bell, Inc. (CBB), which were named in a recent patent infringement suit by Freedom Wireless, from selling prepaid wireless services using the infringing BCGI systems."

Nextel immediately moved for leave to intervene in the district court for the purpose of clarifying, staying, or amending the injunction and to disqualify Quinn Emanuel based on Quinn Emanuel's concurrent representation of Freedom Wireless and Nextel (in other patent litigation).    The district court denied Nextel's motion for leave

to intervene without stating any reasons. Nextel appealed the denial of its motion for leave to intervene and the denial of BCGI's motion to clarify or stay the injunction.

## NEXTEL'S MOTION FOR LEAVE TO INTERVENE

Nextel contends that its application is timely because it was filed only one week after the Injunction Order was entered. Freedom Wireless responds that Nextel has been aware of Freedom Wireless's suit against BCGI since 2002, and thus "has known for years that [Nextel's] interests were at risk." However, there is some indication that Nextel believed its rights would not be determined in the instant case, but rather in a separate, subsequent action filed by Freedom Wireless against BCGI and Nextel. Thus, Nextel was not made aware that its rights were the subject of the instant litigation until the Injunction Order was entered. Accordingly, Nextel filed its application in a timely manner.

Nextel also states that it has a direct interest in the injunction because the injunction "may be construed to bar the continued relationship of BCGI and Nextel." Nextel points out that it relies upon BCGI's services to run its prepaid wireless phone service, and that the injunction could "seriously impact Nextel's ability to offer prepaid wireless phone calls." Thus, it appears that Nextel has a legally protectable interest relating to the injunction and that the disposition of this appeal may impair Nextel's ability to protect its interest.

Nextel further argues that its interests cannot be adequately represented by existing parties to the appeal. Freedom Wireless responds that the interests of Nextel and BCGI are "perfectly aligned." However, Nextel points out that BCGI's interests in this appeal are much broader than Nextel's. According to Nextel, BCGI may devote the

bulk of its efforts on appeal to issues of infringement and invalidity, rather than the scope of the injunction. Furthermore, Nextel contends that BCGI's financial interests may not coincide with its own because BCGI may wish to settle, while Nextel seeks continued litigation. Because Nextel and BCGI are separate businesses with potentially divergent objectives on appeal, we are satisfied that Nextel has shown that its interests will not be adequately represented by an existing party. Accordingly, the court grants Nextel's motion for leave to intervene.

### THE PARTIES' MOTIONS TO STAY THE INJUNCTION

We turn to the parties' motions for a stay, pending appeal, of the injunction. For ease of reference and because BCGI is connected to each of the movants as a joint infringer or putative joint infringer, we refer primarily for purposes of this discussion to BCGI's arguments. At issue is whether BCGI has shown a likelihood of success or presented a substantial question regarding joint infringement, an argument common to all the motions for a stay, and whether the other injunction factors tip in its favor.

In deciding whether to grant a stay, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). See also Standard Havens Prods. v. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990). The factors regulating issuance of a stay are (1) whether the movant has made a strong argument that it is likely to succeed on the merits, (2) whether movant will be irreparably harmed absent a stay, (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987). To prevail, a party moving for

a stay pending appeal must establish a strong likelihood of success on the merits or, failing that, must show that it has a substantial case on the merits and that the harm factors militate in its favor. Hilton, 481 U.S. at 778.

> BCGI argues that the
>
> judgment of infringement in this case rests entirely on Freedom's theory, adopted by the district court in its jury instructions, that there could be joint direct infringement even without a showing that BCGI controlled the actions of a carrier defendant (or vice versa). That is, it is enough (following Freedom's joint infringement theory) if one party performs some of a claim's steps and a second party performs the remaining claims. This Court, however, has never directly addressed whether such a "joint infringement" theory exists, much less adopted the theory.

BCGI points to the court's language in Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293 (Fed. Cir. 2005), rejecting the patentee's argument that the actions of surgeons could be joined with those of the defendant medical device manufacturer to establish direct infringement, observing that no agency relationship existed among the surgeons and the manufacturer. In response, Freedom Wireless argues that the theory of liability based on joint infringement existed before the 1952 Patent Act, remains viable today, and cannot be limited to "control" of one party by another. Freedom Wireless points to four district court cases that have embraced the theory of joint infringement.

The question of the viability and scope of the theory of joint infringement is an issue that will benefit from full briefing by the parties in this appeal. This motions panel thus declines to delve into the issue in any depth. However, we conclude that BCGI has demonstrated the existence of a substantial question whether the theory of liability applied in the district court departs from this court's precedents regarding vicarious liability for infringement in such a manner as to bring the verdict into question. This court has not

06-1020 et al.                                6

PAGE 7/9 * RCVD AT 12/15/2005 1:22:46 PM [Eastern Standard Time] * SVR:DCNTFAX01/0 * DNIS:6285116 * CSID:+2026339623 * DURATION (mm-ss):02-56

directly addressed the theory of joint infringement and there is relatively little precedent on that issue.

With respect to the balance of harms, BCGI states that the injunction against continuing to supply services to its co-defendant carriers has left it "in an extremely tenuous financial position" and that its "survival hinges on the present motion succeeding," if the injunction applies to Nextel and BCGI's other non-defendant carriers. Nextel states that it uses BCGI's services for all its prepaid wireless customers in the United States. Cingular states that it is working to migrate its customers to other prepaid systems, but that its remaining customers will be harmed unless the injunction is stayed.

With respect to harm to Freedom Wireless, BCGI states that Freedom Wireless does not offer or sell prepaid services in the prepaid wireless market and can be compensated by money damages if it prevails on appeal. See DuPont, 835 F.2d at 278-79 (noting the comparative lack of harm to DuPont because DuPont did not practice the invention and never sought to exclude others from the market). With respect to the public interest, BCGI states that millions of subscribers will either be burdened with having to change service providers or be at risk of losing wireless service.

## CONCLUSION

In view of the above, we conclude that the appellants have shown that a substantial question exists regarding the theory of joint infringement and that the balance of harm tips in their favor. Accordingly, a stay of the injunction is warranted.

IT IS ORDERED THAT:

(1)    Nextel's motion for leave to intervene on appeal is granted.

PAGE 8/9 * RCVD AT 12/15/2005 1:22:46 PM [Eastern Standard Time] * SVR:DCNTFAX01/0 * DNIS:6285116 * CSID:+2026339623 * DURATION (mm-ss):02-56

(2)     The motions for a stay of the injunction, pending appeal, are granted.

(3)     The motions for leave to file replies are granted.

FOR THE COURT

DEC 15 2005
_____
Date

_William C. Bryson_

William C. Bryson
Circuit Judge

cc:     Marshall M. Searcy, III, Esq.
        Donald Dunner, Esq.
        Claudia Wilson Frost, Esq.
        Richard McMillan, Jr., Esq.
        Mark D. Wegener, Esq.
        Vickie L. Henry, Esq.

s5

**FILED**
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

DEC 1 5 2005

JAN HORBALY
CLERK

06-1020 et al.                           8

# B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * * * * * * * * * *

FREEDOM WIRELESS, INC.,
                    Plaintiff


                    v.                          CIVIL ACTION NO.:
                                                00-12234-EFH

BOSTON COMMUNICATIONS GROUP,
INC., ET AL.,
                    Defendants.

* * * * * * * * * * * * * * * * * * * * * * * *

## <u>O R D E R</u>

April 27, 2005

HARRINGTON, S.D.J.

The Court grants Plaintiff Freedom Wireless, Inc.'s Motion for Clarification of the Court's Ruling on Boston Communication Group, Inc.'s Motion for Judgment as a Matter of Law with Respect to Conduct Involving Non-Defendant Carriers.

The Court clarifies said ruling as follows:

1.    To the extent that the Court found that there was insufficient evidence for the jury to find a claim against BCGI with respect to conduct involving non-defendant carriers, the basis for that finding is that Freedom was not permitted to present evidence of the minutes of use and revenues that BCGI derived from its infringing acts with respect to the non-defendant carriers;

2.    As a consequence, the ruling is not an adjudication on the merits of any claims arising from conduct involving non-defendant carriers; and

3.    Freedom may pursue claims arising from conduct involving non-defendant carriers

in a separate action.

SO ORDERED.

/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

-2-

C

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|                                          |     |
|------------------------------------------|-----|
| FREEDOM WIRELESS, INC.,                  | )   Civil Action No. 05-CA-12234-EFH |
|                                          | )   |
| Plaintiff,                               | )   |
|                                          | )   |
| v.                                       | )   |
|                                          | )   |
| BOSTON COMMUNICATIONS GROUP,             | )   |
| INC. et al.,                             | )   |
|                                          | )   |
| Defendants.                              | )   |
|                                          | )   |
| And Related Counterclaims.               | )   |
|                                          | )   |

## PLAINTIFF FREEDOM WIRELESS, INC.'S REPLY BRIEF
## IN FURTHER SUPPORT OF ITS MOTION FOR INJUNCTIVE RELIEF

As explained in Freedom's motion, following the infringement verdict, Freedom is entitled to a permanent injunction as a matter of law, absent exceptional circumstances here. This is consistent with the Federal Circuit rule, reiterated in MercExchange, L.L.C. v. eBay, Inc.

In their oppositions, defendants argue that this Court should disregard controlling Federal Circuit precedent simply because the losing party in the MercExchange case has filed a petition for certiorari. However, absent actual contrary direction from the Supreme Court, this Court should apply the Federal Circuit rule. In addition, while defendants argue that the need for their type of cellphone service is exceptional, such need does not rise to the level of the public need for life-and-death medical and health services and products that is cited by the Federal Circuit as a possible basis for the denial of an injunction. Moreover, the need for prepaid wireless service can be met by Freedom's licensees.

Regarding the scope of any injunction entered by the Court, defendants concede that the injunction should prohibit them from jointly making, using, selling, or offering to sell the implementations that were found to infringe. Instead, defendants argue that the injunction should not prohibit them from, individually or with any third-parties, making, using, selling, or offering to sell the aforementioned implementations. A defendant should not be allowed to, individually or in concert with any third-parties, perform the same activities with the same implementations that it is prohibited from jointly performing with other defendants.

With respect to Western Wireless, defendants argue that this Court should not enter an injunction simply because one former employee has testified that Western Wireless has ceased its infringing activities. However, under controlling precedent, this Court should enter an injunction absent "very persuasive" evidence that further infringement will not take place here.

With respect to the royalty during the grace period, defendants argue that they should be allowed to practice Freedom's patented invention for the same royalty that Convergys and Telecordia have paid to Freedom. However, Freedom suggested a "grace period" of 90 days to ease any burden on defendants' customers. Freedom should not be penalized for this suggestion by being forced to effectively license its patents to defendants on terms of their choosing.

I. **FOLLOWING THE INFRINGEMENT VERDICT, FREEDOM IS ENTITLED TO A PERMANENT INJUNCTION AS A MATTER OF LAW, ABSENT EXCEPTIONAL CIRCUMSTANCES HERE.**

    A. <u>The Federal Circuit Rule, Reiterated In MercExchange, Is Controlling.</u>

Defendants argue that this Court should disregard controlling Federal Circuit precedent, <u>MercExchange, L.L.C. v. eBay, Inc.</u>, simply because the losing party in that case has filed a petition for certiorari to the Supreme Court. However, as defendants admit, the Supreme Court has not even granted the petition (which it may deny), let alone reversed the Federal Circuit's

decision (which it may affirm). Absent actual contrary direction from the Supreme Court, this

Court should apply the Federal Circuit rule, reiterated in MercExchange, that a permanent

injunction following an infringement verdict should be denied only where there are exceptional

circumstances, such as a need to use an invention to protect public health or national security.[1]

401 F.3d 1323, 1338-39 (Fed. Cir. 2005).

**B.    The Need For Defendants' Cellphone Services, While Important, Is Not
Exceptional, And The Need For Prepaid Wireless Service Can Be Met By
Freedom's Licensees.**

In addition, defendants argue that the need for their type of cellphone services is

exceptional and should justify the denial of an injunction.[2] However, such need does not rise to

the level of the public need for the type of life-and-death health and medical services and

products that is cited by the Federal Circuit as a possible basis for the denial of an injunction.

See, e.g., Rite-Hite Corp. v. Kelley, Inc., 56 F.3d 1538, 1547 (Fed. Cir. 1996) (citing, for

example, medical test kits for cancer and hepatitis, irradiation of oleomargarine to produce

Vitamin D and prevent rickets, city operation of sewage disposal plant).

Moreover, the need for prepaid wireless service can be met by Freedom's licensees.

While defendants suggest without any basis that two of Freedom's licensees, Convergys and

---

[1]     Even under defendants' alternative standard for injunctive relief, Freedom is
entitled to an injunction. As discussed in its motion, Freedom will face irreparable harm if an
injunction does not issue; Freedom does not have an adequate remedy at law; the injunction is n
the public interest; and the balance of hardships tips in Freedom's favor. In particular, contrary
to defendants' assertions regarding the relative harms and hardships to Freedom and defendants,
it is well-established that "[i]njunctions are not reserved for patentees who intend to practice
their patents, as opposed to those who choose to license," MercExchange, 401 F.3d at 1339, and
that "[o]ne who elects to build a business on a product found to infringe cannot be heard to
complain if an injunction against continuing infringement destroys the business so elected,"
Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

[2]     In making this argument, defendants gratuitously reference the recent tragedies of
Hurricanes Katrina and Rita. This is an attempt to trade on the misfortune of others in order to
garner sympathy for defendants' position.

Telecordia, will not be able to offer prepaid wireless service at an affordable cost, they fail to mention that Verizon, one of the largest wireless carriers in the United States and a former carrier defendant in this action, has practiced and is licensed to practice Freedom's patented inventions. Defendants offer no reason that these licensees cannot meet the consumer demand for prepaid wireless service.

In addition, the Federal Communications Commission has mandated that all calls to 911 must be routed to a public safety answering point regardless of whether subscribers' accounts are active. (See, e.g., Federal Communications Commission Consumer Facts Regarding Wireless 911 Services, available at http://ftp.fcc.gov/cgb/consumerfacts/wireless911srvc.html, Taggart Aff., Ex. A.) As a result, even if defendants' customers do not switch to a licensed prepaid wireless carrier, in the event of an emergency, their calls will still go through in the same manner as if the balances in their prepaid accounts had reached zero.

## II.    FREEDOM'S PROPOSED INJUNCTION IS NOT OVERLY BROAD.

### A.    Defendants Concede That The Injunction Should Prohibit Them From Jointly Making, Using, Selling, Or Offering To Sell The Prepaid Wireless Service Implementations That Were Found To Infringe Freedom's Patents In-Suit.

Regarding the scope of any injunction entered by the Court, defendants concede that the injunction should prohibit BCGI and the carrier defendants, including Cingular, from jointly making, using, selling, or offering to sell the prepaid wireless service implementations—multi-frequency (MF), common channel signaling system seven (SS7), and pre-intelligent network (pre-IN)—that were found to infringe Freedom's patents-in-suit. (See, e.g., BCGI's Opp'n, at 1, 14 ("Any injunction should apply only to the continued joint infringement by Boston Communications and the wireless carrier defendants."); Cingular's Opp'n, at 2.) There can be no real dispute that the injunction should prohibit the same group of companies (defendants)

from performing the same activities with the same implementations that were found to infringe

the patents-in-suit.

    **B.**    <u>A Defendant Should Not Be Allowed To, Individually Or In Concert With</u>
            <u>Any Third-Parties, Perform The Same Activities With The Same</u>
            <u>Implementations That It Is Prohibited From Jointly Performing.</u>

    Instead, defendants argue that the injunction should not prohibit them from, <u>individually</u>

or <u>in concert with any third-parties</u>, making, using, selling, or offering to sell the aforementioned

implementations. However, a defendant should not be allowed to, individually or in concert with

any third-parties, perform the same activities with the same implementations that it is prohibited

from jointly performing with other defendants. Otherwise, a defendant may circumvent the

injunction by simply substituting new companies for, or acquiring the businesses of, other

members of the group of companies (defendants) that was found to be infringing Freedom's

patents-in-suit.[3] In a related context, the Federal Circuit has prohibited such efforts to evade the

proscriptions of an injunction:

> An injunction would be of little value if its proscriptions could be evaded by the
> expedient of forming another entity to carry on the enjoined activity. For that
> reason, courts have consistently held that 'successors' are within the scope of an
> injunction entered against a corporation and may be held in contempt for its
> violation.

<u>Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.</u>, 154 F.3d 1345, 1354-55 (Fed.

Cir. 1998).

    In addition, defendants argue that Freedom's proposed injunction is improper because it

seeks to bind "those persons in active concert or participation with them who receive actual

notice of the order by personal service or otherwise." However, this language is taken directly

---

    [3]    For example, Cingular could simply purchase BCGI's prepaid wireless service
implementations or build the same implementations for its own use in performing the same
activities that were found to infringe Freedom's patents-in-suit.

from Rule 65(d) of the Federal Rules of Civil Procedure regarding the proper form and scope of an injunction. Defendants' argument is baseless.

**C.    Freedom Is Only Seeking To Enjoin The Conduct That Was Found To Infringe Freedom's Patents-In-Suit.**

Contrary to defendants' assertions, Freedom is not seeking to enjoin any conduct that the Court ruled was beyond the scope of this action, and that was not presented at trial. Freedom is only seeking to enjoin the conduct that was found to infringe Freedom's patents-in-suit, and that defendants were shown at trial to be performing jointly (but that they may seek to perform individually or in concert with various third-parties in the future).

Similarly, the rulings in the Federal Circuit cases cited in defendants' oppositions are not inconsistent with the scope of the injunction that Freedom is seeking in this action. In those cases, the Federal Circuit ruled that "the only acts [an] injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices." Int'l Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed. Cir. 2004); see also KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1526 (Fed. Cir. 1985). Here, Freedom is only seeking to enjoin defendants from performing the same activities with the same implementations that were actually found to infringe Freedom's patents-in-suit.[4]

---

[4]    In addition, defendants argue that the language of the injunction should not cover "any systems that are not colorably different" from the aforementioned implementations. However, as defendants concede, such language is taken directly from Federal Circuit case law, including the cases cited in defendants' oppositions. See, e.g., Int'l Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed. Cir. 2004) ("[T]he only acts [an] injunction may prohibit are infringement of the patents by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices."). Such language is appropriate.

III.   **THIS COURT SHOULD ENTER AN INJUNCTION WITH RESPECT TO WESTERN WIRELESS IN THE ABSENCE OF ANY VERY PERSUASIVE EVIDENCE THAT FURTHER INFRINGEMENT WILL NOT TAKE PLACE.**

Western Wireless argues that this Court should not enter an injunction with respect to it simply because a single witness, Heather Slee, a former Western Wireless employee, has testified that Western Wireless has ceased its infringing activities. However, the Federal Circuit has held that:

> The fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place. . . . 'The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him . . . .'

W.L. Gore & Assocs., Inc. v. Garlock, Inc., 842 F.2d 1275, 1281-82 (Fed. Cir. 1988). Here, there is no "very persuasive" evidence (rather than Western Wireless' self-serving assertions) that Western Wireless no longer has the capacity to perform its infringing activities and has no intention to resume them. Indeed, Western Wireless has merged with Alltel, which is infringing Freedom's patented inventions using the BCGI system.[5] (See, e.g., Alltel's Announcement of Its Merger with Western Wireless, available at http://www.wwireless.com, Taggart Aff., Ex. B.)

---

[5]   In addition, Alltel was originally named as a defendant in this action but was dropped after it represented that it had not done and was not doing business with BCGI. Subsequently, however, Alltel and BCGI announced a nationwide agreement under which Alltel would provide prepaid wireless service using the BCGI system. The on-again, off-again nature of the relationship between BCGI and the merged Alltel-Western Wireless entity shows why an injunction against Western Wireless is necessary and appropriate.

7

IV.    **DEFENDANTS SHOULD PAY THE ROYALTY OF 2.5 CENTS PER MINUTE OF USE OF THEIR CUSTOMERS AS A COMPROMISE DURING THE GRACE PERIOD.**

Defendants argue that they should be allowed to practice Freedom's patented inventions for the same royalty that Convergys and Telecordia have paid to Freedom. However, Freedom suggested a "grace period" of 90 days to ease any burden on defendants' customers. Freedom should not be penalized for this suggestion by being forced to effectively license its patents to defendants on terms of their choosing (i.e., at the rates that Freedom has negotiated with and chosen to provide to Convergys or Telecordia). See, e.g., Odetics, Inc. v. Storage Tech. Corp., 14 F. Supp. 2d 785, 795 (E.D. Va. 1998) ("If no injunction issues, Odetics effectively will be forced to license the '151 patent to STK, a result antithetical to a basic tenet of the patent system, namely that the decision whether to license is one that should be left to the patentee."). As discussed above and in its motion, following the infringement verdict, Freedom is entitled to a permanent injunction against defendants' continuing infringement. At this point, if defendants want to continue to offer prepaid wireless services, they should seek to negotiate a license with Freedom, like Convergys and Telecordia did, consistent with the patent laws and Freedom's patent rights. See, e.g., id. Alternatively, defendants should pay the royalty of 2.5 cents per minute of use of their customers (which the jury found to be reasonable) as a compromise during the grace period.

<u>Conclusion</u>

For the foregoing reasons, Freedom hereby respectfully requests that the Court enter an order granting permanent injunctive relief pursuant to 35 U.S.C. § 283. Defendants should be enjoined from making, using, selling, or offering to sell the prepaid wireless service implementations—multi-frequency (MF), common channel signaling system seven (SS7), and pre-intelligent network (pre-IN)—found to infringe Freedom's patents. This injunction should prohibit each defendant and each of their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with one or more of the foregoing who receive actual notice of this Order by personal service or otherwise from (i) individually making, using, selling, or offering to sell any of the aforementioned implementations, or any systems that are not colorably different, (ii) jointly making, using, selling, or offering to sell any of these implementations, or any systems that are not colorably different, or (iii) acting in concert with any third-party, other than a licensee of Freedom, to make, use, sell, or offer to sell any of these implementations, or any systems that are not colorably different.

To ease any burden on defendants' customers, Freedom suggests that the injunction should provide a "grace period" of 90 days, during which time defendants could not add new prepaid customers, for defendants' customers to use the remainder of their prepaid balances and find an alternative carrier. During this period, defendants will pay to Freedom the royalty of 2.5

cents per minute of use by their customers, and provide monthly statements to Freedom detailing that use.

Dated:  October 14, 2005

Respectfully submitted,

FREEDOM WIRELESS, INC.
By their attorneys

*Marshall M. Searcy III/pfw*

Paul F. Ware, Jr., P.C. (BBO # 516240)
Douglas C. Doskocil (BBO #558949)
Goodwin Procter, LLP
Exchange Place
Boston, MA  02109-2881
Tel:  (617) 570-1000
Fax:  (617) 523-1231

A. William Urquhart
Marshall M. Searcy III
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(pro hac vice)

Attorneys for Plaintiff Freedom Wireless, Inc.

02624/684577.1                          10

## CERTIFICATE OF SERVICE

I, Erica P. Taggart, hereby certify that on October 14, 2005, I caused a true copy of the foregoing Plaintiff Freedom Wireless, Inc.'s Reply Brief in Further Support of Its Motion for Injunctive Relief to be served by overnight courier, by hand and facsimile to counsel of record.

Dated:  October 14, 2005

Erica P. Taggart

LIBA/1638811.1

**D**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

Plaintiff,

v.

BOSTON COMMUNICATIONS GROUP,
INC. and NEXTEL COMMUNICATIONS,
INC.,

Defendants.

CIVIL ACTION No. 05-11061-EFH

**OPPOSITION OF FREEDOM WIRELESS, INC. TO DEFENDANT BOSTON
COMMUNICATIONS GROUP, INC.'S MOTION FOR A STAY OF PROCEEDINGS
PENDING RESOLUTION OF THE FEDERAL CIRCUIT APPEALS**

### INTRODUCTION

On May 20, 2005, after a fifty-one day trial, the jury returned a verdict on the issues of

validity, infringement and damages (Nos. 1786, 1787, 1788, 1789) in *Freedom Wireless, Inc. v.*

*Boston Communications Group, Inc., et al.* (D. Mass.) (Civil Action No. 00-12234-EFH) ("C.A.

No. 00-12234"), and, on September 1, 2005, after an eleven-day bench trial, this Court issued

comprehensive Findings of Fact and Conclusions of Law (No. 1870) concluding that defendants

in C.A. No. 00-12234 had not proven that the patents-in-suit ('067 and '823) were obtained by

inequitable conduct. Also on September 1, 2005, Judgment (No. 1871) was entered in

accordance with the jury verdict awarding Freedom Wireless, Inc. ("Freedom Wireless") One

Hundred Twenty-Eight Million Dollars ($128,000,000)[1] and this Court's Findings of Fact and

---

[1]     By Order of Award of Prejudgment Interest (October 12, 2005) (No. 1929), this Court awarded Freedom
Wireless approximately Twenty Million Dollars ($20,000,000) in prejudgment interest. This Court also
entered an Order for Award of Costs that day (No. 1928) awarding Freedom Wireless $323,584.96. On

Conclusions of Law.

On October 20, 2005, after disposition of several post-trial motions, including this Court's Order for Permanent Injunctive Relief Pursuant to 35 U.S.C. § 283 ("Injunction Order")[2] (No. 1943) and Order (No. 1949) denying the Renewed Motion for Judgment as a Matter of Law or for a New Trial filed by Boston Communications Group, Inc. ("BCGI"), BCGI filed its Notice of Appeal in C.A. No. 00-12234 (No. 1958) to the United States Court of Appeals for the Federal Circuit.

In the Federal Circuit, on November 14, 2005, BCGI filed the Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction ("Emergency Motion") (Exhibit A). In its Emergency Motion, BCGI argued that the Federal Circuit should construe the Injunction Order "not to apply to" Nextel Communications, Inc. ("Nextel").

BCGI has now filed a Motion for a Stay of Proceedings Pending Resolution of the Federal Circuit Appeals ("Motion for Stay") in this case,[3] but it has not articulated the rule, much less made any effort to satisfy the rule, that governs the granting of such extraordinary relief. Moreover, it is telling that, depending on whether its audience is this Court or the Federal Circuit, BCGI sings a very different tune. Its inconsistent arguments of convenience reveal their weaknesses.

---

November 16, 2005, this Court entered an Order (No. 1997) enhancing the award of damages to Freedom Wireless by $1.9 Million.

[2] Among other things, the Injunction Order prohibits Boston Communications Group, Inc. and the other defendants in C.A. No. 00-12234 from acting in concert with any third party to "make, use, sell, or offer to sell" any of the three prepaid wireless service implementations found to infringe Freedom Wireless's patents.

[3] There are only two defendants in this case, BCGI and Nextel. BCGI has filed the same Motion for Stay in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.* (D. Mass.) (Civil Action No. 05-11062-EFH) ("C.A. No. 05-11062"). Defendants in C.A. No. 05-11062 are BCGI and twenty-two prepaid wireless carriers. Nextel is not a party in that case. A separate opposition to the Motion for Stay will be filed in C.A. No. 05-11062.

The Motion for Stay should be denied and this case should proceed on a normal schedule.

## ARGUMENT

### I.    BCGI Has Not Satisfied the Governing Rule to Obtain a Stay.

The Supreme Court articulated the rule that governs here in *Landis v. North American*

*Co.*, 299 U.S. 248, 255 (1936):

> [T]he suppliant for a stay must make out a clear case of hardship or inequity
> in being required to go forward, if there is even a fair possibility that the stay
> for which he prays will work damage to some one else.  Only in rare
> circumstances will a litigant in one cause be compelled to stand aside while a
> litigant in another settles the rule of law that will define the rights of both.[4]

This rule has been routinely followed.  *See, e.g., C.F.T.C. v. Chilcott Portfolio Mgmt.,*

*Inc.*, 713 F.2d 1477, 1483-87 (10th Cir. 1983) (reversing stay order as abuse of discretion);

*Dellinger v. Mitchell*, 442 F.2d 782, 786-88 (D.C. Cir. 1971) (stay order invalid); *Amersham*

*Int'l v. Corning Glass Works*, 108 F.R.D. 71, 71-72 (D. Mass. 1985) ("[T]o be entitled to a stay,

a party must demonstrate a clear case of hardship if there is a danger that the stay will damage

the other party.") (quotations and citations omitted).[5]

### A.    BCGI Will Suffer No Hardship Or Inequity If This Case Proceeds On A Normal Schedule.

BCGI has failed to "make out a clear case of hardship or inequity in being required to go

forward."  In fact, BCGI has made out no case of hardship.  The only "hardship" BCGI mentions is

---

[4]  BCGI quotes *Landis* for the basic proposition that every court has the power to control the disposition of cases on its docket, Motion for Stay at 4-5, but fails to point out the governing rule.

[5]  The two opinions cited by BCGI to support its argument that this Court "has the discretion to stay proceedings in a patent-infringement action . . . pending the outcome of an appeal in another case," Motion for Stay at 4, are not on point. *In re Intertape Polymer Corp.*, 121 Fed. Appx. 386 (Fed. Cir. Dec. 2, 2004) (unpublished), is not citable as precedent. *See* Fed. Cir. R. 47.6.  In that case, the Federal Circuit (in a 2-1 decision) denied a petition for a writ of mandamus to direct a district court to vacate its stay of proceedings because "[t]his case, involving the district court's management of its own docket, clearly does not warrant the extraordinary remedy of mandamus." *Id.* at 387.  The Federal Circuit, in *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir 1983), dismissed an appeal from an order staying proceedings for lack of jurisdiction. Analogizing the appeal of the stay order to a mandamus petition, the Court found no exception to the Court's jurisdictional statute which limits appeals to final decisions. *Id.* at 1341-42; *see* 28 U.S.C. § 1295.

the expense of discovery, Motion for Stay at 7-8, but that "hardship" is inherent in litigation and certainly does not justify a stay. *See Dow Chemical Co. v. Composite Container Corp.*, 223 U.S.P.Q. 685, 686. (D. Mass. 1984) (not reported in F.Supp.). BCGI does not even suggest that it will suffer any inequity if the case proceeds.

BCGI also intimates that judicial economy is a reason to grant a stay in this case. Motion for Stay at 7 ("potentially unnecessary and significant waste of the Court's . . . time and resources"). However, judicial economy "should rarely if ever lead to such broad curtailment of the access to the courts." *C.F.T.C.*, 713 F.2d at 1485. BCGI's judicial economy argument is premised solely on the *possibility* that the Federal Circuit *may* overturn the jury verdict or vacate this Court's Orders. That premise is baseless.

BCGI identifies three "important issues" that the Federal Circuit will decide in the appeals in C.A. No. 00-12234 that "may well dispose of" this case: (1) "the Court's claim construction"; (2) "the jury verdict on infringement, validity, and damages"; and (3) "the Court's decision that the patents-in-suit were not procured by inequitable conduct." Motion for Stay at 3.

First, the jury verdict on validity, infringement and damages is very unlikely to be overturned because of the great deference that it will be accorded by the Federal Circuit. A patent is "presumed valid," 35 U.S.C. § 282, and patent invalidity must be established by clear and convincing evidence. *Robotic Vision Sys., Inc. v. View Engineering, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999). The jury in C.A. No. 00-12234 found that BCGI and defendant prepaid wireless carriers did not carry their heavy evidentiary burden. *See, e.g., Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.").

4

Infringement is also a question of fact for the jury. *See, e.g., Teleflex, Inc. v. Ficosa NA Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 1993 WL 217173, *3 (Fed. Cir. 1993) (unpublished) ("[I]t is not our function as an appellate court to substitute our judgment for that of the jury and determine for ourselves whether we would have concluded that the product infringes the claims, but rather whether there is sufficient evidence to support a jury verdict on the issue."); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985) (willful infringement question of fact for jury). And the measurement of patent damages is a question of fact also assigned to the jury. *See, e.g., Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001). There is little chance that the Federal Circuit will disturb the jury's verdict on validity, infringement or damages.

Nor is this Court's conclusion that the patents-in-suit were not procured by inequitable conduct likely to be disturbed by the Federal Circuit. "To establish unenforceability based on inequitable conduct the challenger must prove, by clear and convincing evidence, that material information was intentionally withheld for the purpose of misleading or deceiving the patent examiner." *Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995). This Court issued comprehensive Findings of Fact and Conclusions of Law (fifty-two pages) after an eleven-day bench trial on defendants' claims of inequitable conduct. This Court's detailed Findings of Fact will not be set aside unless they are clearly erroneous, *see* Fed. R. Civ. P. 52(a), and its ultimate finding of no inequitable conduct will be reviewed only for an abuse of discretion. *See, e.g., Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1378 (Fed. Cir. 2005) ("A finding of inequitable conduct is committed to the trial judge's discretion and is reviewed under an abuse of discretion standard."). Enforceability rulings are further insulated from

5

appellate review where, as here, this Court supported its findings with numerous observations regarding witness credibility. *See* Fed. R. Civ. P. 52(a) ("due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."); *see also, e.g.,* Findings of Fact and Conclusions of Law at 9 ("The Court found Mr. Mrose's [Freedom Wireless's patent attorney] testimony to be extremely credible."); 16 ("the Court finds that Mr. Silvey's [defendants' witness] deposition was not credible."); 35 ("During trial, the Court found the testimony of Mr. von Hellens [Freedom Wireless's predecessor's patent attorney] and Mr. Mrose to be extremely credible."); 35 n.1 ("[T]he Court did not find credible the opinions of Professor Wicker. Indeed, Professor Wicker was the Defendants' main expert on infringement and invalidity during the jury trial, and the jury, in reaching its verdict, disregarded his testimony.").

As to the third "important issue" cited by BCGI, although the Federal Circuit will review this Court's patent claim constructions *de novo, see, e.g., Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 713 (Fed. Cir. 1998), the Federal Court "exercise[s] . . . independent review" against the backdrop of generally thoughtful district court Orders. *See* April 23, 2003 Memorandum and Order (No. 736) and Order (No. 737). As the *Key* Court pointed out: "we do not start from scratch; rather we begin with and carefully consider the trial court's work." *Id.*

It is noteworthy that the jury found that BCGI and defendant prepaid wireless carriers have jointly infringed thirty-two claims of the patents. The verdict will stand if the jury's findings on validity, infringement and damages on only one of those claims are upheld. *E.g., Collegenet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1236 (Fed. Cir. 2005) ("[I]nfringement of even a single claim entitles a patentee to damages. Therefore, even if the district court had concluded that the infringement verdicts on [certain] claims were against the clear weight of the

evidence, the damages awarded on the . . . patent would still stand."); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) ("A patent is infringed if any claim is infringed, . . ., for each claim is a separate statement of the patented invention.") (citations omitted).

In sum, the odds that "[t]he Federal Circuit's decision on these important issues may well dispose of" this case are very low indeed. To paraphrase Judge Keeton in *Dow Chemical*:

> [BCGI] can give the court no assurances or even convincing arguments that a
> stay will achieve the ends of judicial economy which would be its
> [justification]. This proceeding will be affected only if [Freedom Wireless]
> loses in [the Federal Circuit]. It has already been successful . . . [and with the
> jury and this Court]. At this point, the chance that [Freedom Wireless] will lose
> in [the Federal Circuit] is merely speculation . . . .

223 U.S.P.Q. at 686.

Magistrate Judge Alexander held similarly in *Amersham*. Defendant sought to stay plaintiff's patent infringement suit pending final disposition of an interference proceeding brought by defendant in the PTO. Defendant contended that the "interference proceeding encompass[ed] the heart of the infringement claim" and might lead to the invalidation of the patent and render the suit moot. 108 F.R.D. at 72. Defendant asserted that "it would be duplicitous, expensive, and an unnecessary waste of judicial resources to continue" the litigation while the PTO proceedings were pending. *Id.* The Court rejected defendant's arguments, finding that "[d]espite these considerations, defendant has failed to overcome the heavy burden required to sustain a stay motion." *Id.* (footnote omitted).[6]

---

[6]  If judicial economy were a factor, it would weigh heavily against a stay in this case. This case is now assigned
to this Court because it is obviously related to C.A. No. 00-12234. This Court has construed the claims of the
patents-in-suit and is intimately familiar with the central facts and law that will determine this case, having
presided over a fifty-one day jury trial and having conducted an eleven-day bench trial based on infringement
of those patents. If this case is stayed until the Federal Circuit resolves the appeals in C.A. No. 00-12234,
twelve, eighteen, twenty-four months from now, this case may be re-assigned to another district court judge
who will be required to start anew. It would be a far more efficient use of judicial resources to allow this case

In sum, BCGI will suffer no cognizable hardship or inequity if this case proceeds on a normal schedule.

**B.    Freedom Wireless Will Be Damaged If This Case Is Stayed.**

As this Court observed in *King Instrument Corp. v. Perego*, 737 F.Supp. 1227, 1241 (D. Mass. 1990):

> Any infringement tends to dampen the fires of creativity so necessary to the vitality of society, economic and otherwise. The law is the protector of the inventor's delicate genius and nourishes its growth and development.

In C.A. No. 00-12234, the jury returned a special verdict finding that Freedom Wireless's patents-in-suit ('067 and '823) are valid and that BCGI and defendant prepaid wireless carriers have jointly infringed all thirty-two claims of the patents. Indeed, the jury found that BCGI willfully infringed the patents. *See* Verdict-I, Verdict-II, Verdict-III, Verdict-IV (Nos. 1786 at 7, 1787 at 7, 1788 at 7, 1789 at 7). The infringement verdicts, as a matter of law, establish irreparable harm to Freedom Wireless caused by those defendants. "In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989) (citation omitted). *See also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 106 F. Supp. 2d 696, 701 (D.N.J. 2000) ("Without a doubt, a 'clear showing' of validity and infringement is satisfied where those issues have been tried and the fact-finder has determined that the patent in question was infringed and is not invalid.")

And, although Nextel was not a party in C.A. No. 00-12234, it is clear that it is engaging in the same infringing activities with BCGI as are the prepaid wireless carriers in the earlier-filed case. Nextel has admitted that it has been offering prepaid wireless services since it contracted

---

to proceed normally under the management and direction of the judge currently assigned to it, who lived with C.A. No. 00-12234 for over five years.

with BCGI in August 2002 "to implement its prepaid services." Nextel Communications, Inc.'s and Nextel Operations, Inc.'s Memorandum in Support of its Motion to Intervene for Limited Purpose ("Nextel Memorandum") (No. 1952) (Declaration of Phillip Cooke ("Cooke Dec.") (No. 1953) at 2, ¶¶ 5, 6). "Nextel uses BCGI's services for all of the prepaid phone calls made by its prepaid wireless customers in the United States." Cooke Dec. 2, ¶ 6. Nextel has also acknowledged that: "Nextel has a direct interest in the subject matter of [C.A. No. 00-12234] and resulting injunction: BCGI's ability to provide its services to Nextel." Nextel Memorandum at 7. Moreover, BCGI has no doubt that the Injunction Order in C.A. No. 00-12234 affects Nextel. *See, e.g.,* Defendant Boston Communications' Opposition to Plaintiff's Motion for Injunctive Relief (No. 1920) at 5 ("injunction would cover the activities of the very same non-defendant carrier customers, such as Nextel Communications, Inc."). Nextel has not and cannot contend that it is not using one of the three prepaid wireless service implementations found to infringe Freedom Wireless's patents.

In sum, there can be little doubt that BCGI and Nextel are infringing Freedom Wireless's '067 and '823 patents and that Freedom Wireless is being irreparably damaged by BCGI's and Nextel's infringing activities. Unless the Injunction Order in C.A. No. 00-12234 prohibits the infringing activities of BCGI and Nextel, a stay of these proceedings would enable that irreparable damage to continue unabated for a protracted period of time.[7]

Freedom Wireless would suffer additional damages if the infringing activities of BCGI and Nextel are not enjoined and a stay is granted in this case. Freedom Wireless has entered into patent licenses with Verizon Wireless, Convergys Corporation and Telcordia Technologies, Inc.

---

[7] As indicated *supra* at 2, BCGI has asked the Federal Circuit to interpret the Injunction Order "not to apply to" Nextel. If the Injunction Order is so limited, Freedom Wireless will move in this case to enjoin the infringing activities of BCGI and Nextel.

9

These three companies compete with BCGI in the prepaid wireless services market. If this case is stayed, BCGI would continue to infringe the patents using Freedom Wireless's technology to compete royalty-free against Freedom Wireless's licensees. The authorized licensees would remain at a competitive disadvantage to BCGI simply because they paid to obtain valid licenses rather than infringe the patents cost-free. Thus, Freedom Wireless would continue to be unable to license its patents for fair market value because of the unfair competition from BCGI's continuing infringing activities.

A stay of this case would also encourage potential licensees to infringe Freedom Wireless's patents because Freedom Wireless would be perceived as being unable to enforce its patent rights. *See, e.g., Boehringer Ingelheim Vetmedica,* 106 F. Supp. 2d at 703 ("[I]f an injunction does not issue at this time, Boehringer's reputation will be injured as it will be perceived as a company which is unable to enforce the exclusivity of its patent rights despite having proven liability and validity. . . . [O]ther would-be infringers will no doubt be invited to infringe . . .").

Grant of a stay would harm Freedom Wireless in yet another way. If BCGI's dire predictions of imminent financial doom are to be believed, BCGI may succeed in never having to pay Freedom Wireless the damages caused by its infringing activities with Nextel. *See* discussion *infra* at 14-16.

Freedom Wireless would also be harmed by the sheer delay in waiting for the Federal Circuit to decide the appeals. As BCGI argued to this Court: "It is likely, given the complexity of the appeal issues, the presence of multiple defendants, and the copendency of Freedom's appeal, that the appeal herein easily could take 18 months or longer to resolve." Emergency Motion to Clarify or Stay Permanent Injunction Pending Appeal (No. 1961) at 19. The Federal

Circuit recently issued its decision in one patent infringement case, *Invitrogen Corp., Inc. v. Clontech Labs, Inc.*, ___ F.3d ___, 2005 WL 3078495 (Fed. Cir. Nov. 18, 2005), that was docketed twenty-five months earlier on October 23, 2003. Suffice it to say, if BCGI is granted the stay it requests, Freedom Wireless would be forced to wait years to vindicate its patent rights. Freedom Wireless "is in the clear danger of being damaged by untoward delay." *Amersham* 108 F.R.D. at 72.

Here, there is much more than "a fair possibility that the stay for which [BCGI] prays will work damage to" Freedom Wireless. It will cause continuing irreparable damage, as well as damages caused by unfair competition, perceived inability to enforce its patent rights, the risk that BCGI will become judgment-proof, and protracted delay.[8]

## II.    BCGI Sings A Different Tune Depending On Its Audience.

To this Court, BCGI now argues that this case should be stayed pending the outcome of the Federal Circuit appeals in C.A. No. 00-12234. However, to the Federal Circuit, BCGI argues that the Injunction Order in C.A. No. 00-12234 should be stayed, if it prohibits the infringing

---

[8]    BCGI argues that "a stay is particularly desirable where, as here, an appeal in another action will present key issues that bear directly on – and may well dictate the outcome of – the action in which the stay is sought." Motion for Stay at 5. But the opinions cited and quoted by BCGI, *id.* at 5-7, are either legally inapposite or clearly distinguishable.

  For example, two opinions do not apply the governing *Landis* rule and arose in different procedural contexts. *Arco Polymers, Inc. v. Studiengesellschaft Kohle*, 710 F.2d 798, 798 (Fed. Cir. 1983) (suspending appellate proceedings where parties agreed to be bound by Federal Court's ruling in related appeal on patent validity); *Stormwater Mgmnt., Inc. v. CDS Techs., Inc.*, 2005 WL 743073, *2-3 (D. Or. 2005) (ordering parties to submit comments on whether to grant stay but not ruling on issue). The court cited *Landis* in *Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp.2d 639, 642-43 (N.D. Tex. 2004), but granted a stay requested by *plaintiff*, the alleged infringer seeking to invalidate the patent-in-suit, based on the Fifth Circuit's "first to file" rule embracing principles of comity between federal district courts.

  In *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, *3 (S.D.N.Y. 2005), the alleged infringer no longer manufactured the accused products and therefore there was no continuing harm to the patentee or to the public interest. *In re Literary Works in Electronic Databases Copyright Litigation*, 58 U.S.P.Q. 2d 1317, 1318-19 (S.D.N.Y. 2001), presented a unique set of facts. In that multidistrict litigation involving three class actions, all defendants and all but one plaintiff asked the court to stay proceedings pending an imminent decision by the Supreme Court which all agreed would "significantly impact the course and scope" of the litigation. *Id.* at 1318. Again, the facts in this case are very different.

activities of BCGI and Nextel, because this case is proceeding against Nextel. BCGI sings a

different tune depending on its audience. BCGI should not be allowed to eat its cake (restrict the

scope of the Injunction Order so that the infringing activities of BCGI and Nextel can continue)

and have it too (stay this case so Freedom Wireless cannot seek to enjoin those illegal activities

in this case).

In its November 14, 2005 Emergency Motion to the Federal Circuit, BCGI argued that

the scope of the Injunction Order should be limited to prohibit the combined infringing activities

of only BCGI and the four defendant prepaid wireless carries in C.A. No. 00-12234, and should

not reach non-defendant carriers such as Nextel.

> [W]hether the patents are jointly infringed by BCGI and other, *non-defendant*
> carriers – whose activities are now at issue in *other* cases that Freedom filed –
> is beyond the scope of this case [C.A. No. 00-12234]. *Id.* at 2 (emphasis
> original).

BCGI repeatedly emphasized the pendency of this case throughout its Emergency Motion

as a reason to limit or stay the Injunction Order.

> [T]he non-defendant carriers' conduct was not part of this case [C.A. No. 00-
> 12234] and . . . Freedom would have to *file separate actions* to "pursue claims
> arising from conduct involving non-defendant carriers" . . . , *which Freedom
> has now done* . . . *Id.* at 11 (attaching as exhibits Complaints in this case and
> C.A. No. 05-11062) (exhibit citations omitted) (emphasis added).

> Freedom insists the injunction against BCGI's use of its service bureau for
> non-defendant carriers . . . cover[s] the activities of non-parties, *including
> those that are currently the subject of separate, pending litigations* where the
> issues of infringement, validity, and enforceability are contested. *Id.* at 12
> (emphasis added).

> In this context, therefore, *separate lawsuits (which are now underway)* are
> required to determine whether the joint conduct of other carriers and BCGI
> infringes, and that conduct cannot be enjoined. *Id.* at 13 (emphasis added).

> Freedom has in fact filed *separate lawsuits* against other carriers, including [would
> be] intervenor *Nextel*, which deals with this issue [enjoining joint conduct of BCGI
> and non-defendant prepaid wireless carriers] in more detail in its brief. *Id.* at 13 n.3
> (emphasis added).

BCGI's November 28, 2005 Reply Brief in Support of Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction (Exhibit B) at 2-3 (record citations and footnote omitted) (emphasis added) relied even more heavily on the pendency of this case in an effort to convince the Federal Circuit to carve Nextel out of the Injunction Order :

> [Freedom] treats as a foregone conclusion that the combined activities of BCGI and Nextel jointly infringe its patents . . . *BCGI's and Nextel's activities*, however, *are the subject of a separate litigation* – as are BCGI's and Alltel's activities. *Accordingly, the district court's injunction should not be construed so that it would effectively short-circuit the judicial process in those cases.*

Freedom Wireless is not attempting to "short-circuit the judicial process"; it wants this case to proceed in due course. Rather, it is BCGI that is attempting to turn the judicial process "off" by staying this case while simultaneously seeking to limit or stay the Injunction Order by arguing that this Court abused its discretion in issuing that Order. BCGI's inconsistent arguments before this Court and the Federal Circuit expose their weaknesses. Either BCGI should withdraw its attempts to limit or stay the Injunction Order in the Federal Circuit or withdraw its Motion for Stay in this case. It can't have it both ways.

Nextel has taken its cue from BCGI. In the Federal Circuit, Nextel filed a Motion to Intervene for Limited Purpose and a Motion to Stay Pending Appeal. Like BCGI, Nextel highlighted the pendency of this action to support both Motions. *See, e.g.*, Motion to Intervene for Limited Purpose (November 14, 2005) (Exhibit C) at 2 ("Freedom's claims of joint infringement involving BCGI and Nextel . . . have become the subject of a separate lawsuit brought by Freedom . . ."); 9 (Freedom Wireless has "file[d] a separate action against BCGI and Nextel . . . . Nextel had every reason to believe that its rights would be determined in that action, . . ." (citing this case) (record citations omitted) (emphasis original)); Motion to Stay Injunction

13

Pending Appeal (November 14, 2005) (Exhibit D) at 5 ("Plaintiff had *not* joined Nextel in [C.A. No. 00-12234], even though Nextel had entered into contracts with BCGI for prepaid wireless services that Freedom, in a follow-on lawsuit against Nextel, has since claimed to be analogous to those provided to the named defendants." (citing this case) (footnotes omitted)); 5-6 ("[T]he court below . . . instructed Freedom that it would have to make [joint infringement] allegations [against non-defendant prepaid wireless carriers] in follow-on suits (which Freedom has since done in the Nextel litigation).")); 6 ("As directed by the district court, Freedom filed two separate follow-on actions.") (citing this case and C.A. No. 05-11062); 14 ("[I]t is Freedom's desire for such findings – that BCGI's and Nextel's actions combined to create another 'joint infringement' – that explains Freedom's decision to bring a separate lawsuit against Nextel . . ."); 15 ("Here, Nextel's day in court with respect to Freedom's claims against it should be yet to come . . . Freedom was required to present its claims asserting 'joint infringement' by BCGI and Nextel in a separate suit. Freedom filed such a suit; Nextel is prepared to defend that suit. It has not done so as of yet."); Reply in Support of Motion to Intervene for Limited Purpose (November 28, 2005) (Exhibit E) at 3 ("Freedom [filed] a separate action against BCGI and Nextel . . . Nextel properly expected issues concerning its combined actions with BCGI to be judged in that action, . . ." (record citations omitted); Reply in Support of Motion to Stay Injunction Pending Appeal (November 28, 2005) (Exhibit F) at 2 ("[T]he question whether the BCGI and Nextel's combined actions . . . also infringed was simply not at issue in [C.A. No. 00-12234]. Those questions were being determined in separate cases, in which the parties whose actions were at issue had actually been named as defendants and were thus given an opportunity to defend themselves.")

14

While Nextel protests that it is "prepared to defend" this case, its surrogate BCGI is seeking to stop it. Like BCGI, Nextel should choose either to drop its efforts to limit or stay the Injunction Order, or oppose BCGI's attempts to stay this case.

BCGI's Motion for Stay was filed in this Court on November 23, 2005. Before and after that date, both BCGI and Nextel made several filings in the Federal Circuit. Even if BCGI and Nextel decided to advance mutually inconsistent arguments regarding the scope of the Injunction Order and the desire for this case to proceed on a normal schedule, a modicum of candor should have convinced them to inform this Court and the Federal Circuit what relief they were seeking from the other tribunal. This would have enabled both Courts to make fully informed decisions on BCGI's pending motions.

**III.    If A Stay Is Granted, BCGI Should Be Required To Post A Bond.**

At least as early as August 17, 2005, BCGI proclaimed that the $128 Million jury damages award in C.A. No. 00-12234 would "put [BCGI] out of business." Defendants' Memorandum in Support of Their Motion for Remittitur or, in the Alternative, Motion for A New Trial with Respect to Damages (No. 1861) at 2. After this Court denied that Motion, BCGI reiterated in its Memorandum in Support of Defendants' Motion for Reconsideration and for Oral Argument (No. 1873) at 1, that the success of the Motion for Reconsideration was "critical to the survival" of BCGI. BCGI continued this theme in its Opposition to Plaintiff's Motion for Injunctive Relief (No. 1920) at 8 (harm injunction would cause is "severe, and may be irreparable"), 9 & n.6 (BCGI "*cannot survive as a going concern* if a broad injunction is issued, and would be forced to file for bankruptcy") (emphasis original).

In the Federal Circuit, BCGI has repeatedly threatened that, if the Injunction Order is not limited or stayed, BCGI would file bankruptcy before the Federal Circuit decided the appeals. Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District

15

Court's Injunction (Exhibit A) at 4, 17-19; *see also id.* at 17-18 (BCGI is "in an extremely tenuous financial position"); 18 ("BCGI *cannot survive as a going concern*") (emphasis original); 19 (BCGI's "economic situation is perilous"). Most recently, in the Federal Circuit, BCGI repeated that, without relief, BCGI would not survive the appeals and that, because non-defendant prepaid wireless carriers are finding alternative suppliers, "BCGI's continued existence may be seriously jeopardized." Reply Brief in Support of Emergency Motion to Construe or Stay the District Court's Injunction (Exhibit B) at 1, 10; Letter to Honorable Jan Horbaly, Clerk of Court, U.S. Court of Appeals for the Federal Circuit (Exhibit G).

Thus, by its own admissions, if the Federal Circuit does not limit or stay the Injunction Order, BCGI will be insolvent and declare bankruptcy while, if BCGI has its way, this case would be stayed. This would be a classic case of "justice delayed is justice denied." Viewed in the light of BCGI's repeated forecasts of imminent financial doom, the instant Motion for Stay is, in reality, a request that this Court delay these proceedings until BCGI becomes judgment-proof and can avoid paying damages to Freedom Wireless for its infringing activities with Nextel.

Therefore, if this Court considers staying this case, any stay should be expressly conditioned on the posting of an adequate bond by BCGI and/or Nextel, or some other type of adequate prejudgment security, that will enable Freedom Wireless to collect the damages it is awarded in this case. *Zebrowski v. Hanna,* 973 F.2d 1001, 1004 (1st Cir. 1992) ("A court has inherent power to regulate the litigation before it in order to preserve money likely to be the subject of the final judgment.") (citations omitted).

The amount of the bond can be calculated by employing the same methodology that was used to determine the amount of the supersedeas bond in C.A. No. 00-12234. In this case,

16

Freedom Wireless will be entitled to recover damages from BCGI and Nextel for a period beginning in August 2002 when Nextel initially contracted with BCGI to provide prepaid wireless services. Cooke Dec. at 2, ¶¶ 5, 6. BCGI and Nextel should be directed to file and serve a certification that lists for each month the number of minutes used by Nextel prepaid wireless customers from August 2002 through December 31, 2005. The amount of the initial bond should be calculated by multiplying the aggregate number of minutes by the reasonable royalty rate found by the jury in C.A. No. 00-12234, 2.5¢ per minute. As long as this case is stayed, BCGI and Nextel should be required to periodically certify (*e.g.*, quarterly) the number of minutes used by Nextel prepaid wireless customers and be required to post supplemental bonds to secure the payment of damages to Freedom Wireless.

If this case is stayed, and BCGI and Nextel are not required to post bonds, or provide some other type of adequate prejudgment security, Freedom Wireless may not be compensated for BCGI's and Nextel's continuing infringement of Freedom Wireless's patents-in-suit. Any stay, therefore, should be expressly conditioned on BCGI and Nextel providing such security to Freedom Wireless.

## CONCLUSION

The Motion for Stay should be denied. This case should proceed on a normal schedule. If any stay is granted, this Court should expressly condition it on BCGI and/or Nextel providing adequate prejudgment security.

Respectfully submitted,

FREEDOM WIRELESS, INC.
By their attorneys

  /s/John Kenneth Felter
Paul F. Ware, Jr. (BBO # 516240)
John Kenneth Felter (BBO # 162540)
Douglas C. Doskocil (BBO # 558949)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881
Tel:  (617) 570-1000
Fax:  (617) 523-1231

Dated:  December 7, 2005

LIBA/1653466.2

# E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

Plaintiff,

v.

BOSTON COMMUNICATIONS GROUP,
INC., et al.

Defendants.

CIVIL ACTION No. 00-CV-12234-EFH

## DECLARATION OF JAMIA WILLIAMS

I, Jamia Williams, declare as follows:

1.     I am a Project Coordinator for the legal department for Nextel Operations, Inc. In this Declaration, I refer to Nextel Operations, Inc. and its affiliates collectively as "Nextel." As a Project Coordinator, one of my duties is managing payment of Nextel's legal bills for work done by outside legal counsel, including the Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") law firm. I have worked in this capacity at Nextel since January 2004. Through my work managing payment of Nextel's legal bills, I am familiar with the matters and amounts billed from Quinn Emanuel's representation of Nextel and its affiliates prior to assuming my current position in January 2004.

2.     I have recently reviewed our billing records regarding Quinn Emanuel's representation of Nextel. Presently, Quinn Emanuel is actively engaged in representing Nextel on at least 10 separate matters. In Quinn Emanuel's most recent set of bills, at least 8 different Quinn Emanuel attorneys are listed as having worked on matters for Nextel during the month of August 2005 alone.

3.     As of September 1, 2005, Quinn Emanuel has already billed Nextel over $1.6 million for legal services for calendar year 2005. In calendar year 2004, Quinn Emanuel billed

Nextel for more than $3.9 million in legal services. In calendar year 2003, Quinn Emanuel billed Nextel for over $1.1 million. In calendar year 2002, Quinn Emanuel billed Nextel for more than $251,000. Some of the matters in which Quinn Emanuel has represented Nextel from 2002 to the present are listed in the attachment to this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed on October 21, 2005 in Reston, Virginia.

Jamia Williams

- 2 -

**Quinn Emanuel Matters**

**2005 Matters (as of September 1, 2005):**

Anatole v. Nextel Communications
Angeline v Nextel Communications
Barary v. Nextel
Carver Ranches v. Nextel Communications, Inc.
JKK,LLC v Nextel
Legge v. Nextel
Marlowe v AT&T
McGuire v. Nextel
Partovi v. Nextel
Strugano v. Nextel
The Foundation for Taxpayer and Consumer Rights v Nextel
Toomey v. Nextel Communications, Inc.
Tucker v. Nextel

**2004 Matters:**

Anatole v. Nextel Communications
Angeline v Nextel Communications
Ball v GTE Mobilnet, et al
Barary v. Nextel
Carver Ranches v. Nextel Communications, Inc.
Dye v. Nextel
HOBBS V NEXTEL
JKK,LLC v Nextel
Judith Blinderman v Nextel South Corp
Legge v. Nextel
Marlowe v AT&T
McGuire v. Nextel
Nextel Depositions
Nextel v. Association Against Identity
Parrish v. Nextel of California
Partovi v. Nextel
Spieholz v. Nextel
Strugano v. Nextel
The Foundation for Taxpayer and Consumer Rights v Nextel
Thompson v. Nextel of California
Toomey v. Nextel Communications, Inc.
Tucker v. Nextel

As of September 1, 2005

**Quinn Emanuel Matters Cont.**

**2003 Matters:**

Anatole v. Nextel Communications
Aprahamian v. Wood & NCI
Ball v GTE Mobilnet, et al
Benicia v. Nextel
Credit Disclosure Advice
Dye v. Nextel
Golden Eagle Ins. Corp.
JKK, LLC v. Nextel
Kay v. Nextel
Legge v. Nextel
Lyons v. Nextel
Marlowe v. AT&T
McGuire v. Nextel
Nextel v. Association Against Idenity
Nextel v. Freeman - Kaa
Parrish v. Nextel of California
Ready v. NCI
Shakib v. Nextel
Strugano v. Nextel
The Foundation for Taxpayer and Consumer Rights v Nextel
Thompson v. Nextel of California
Toomey v. Nextel Communications, Inc.

**2002 Matters:**

Aprhamian v. Wood
Ball v. GTE Mobilnet, et al
Benicia v. Nextel
Carpinteria-Summerland Fire Protection District v. Nextel of CA, Inc.
Chadron Partners v. NCI
Digital Comm v. Nextel
Global Towers
Golden Eagle Ins. Corp.
Indiana v. NCI
Legge v. Nextel
Lyons v. NCI
McGuire v. Nextel
Nextel v. Freeman - Kaa
Ready v. NCI
Shakib v. Nextel
World Bazaars Inc

As of September 1, 2005

**F**

UNITED STATES DISTRICT COURT
. FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON COMMUNICATIONS GROUP,<br>·INC., et al.<br><br>Defendants. | CIVIL ACTION No. 00-CV-12234-EFH |

## DECLARATION OF TERRY KOEHLER

I, Terry Koehler, declare as follows:

1.     I am a Financial Analyst for the legal department of Sprint Nextel Communications, Inc. I have worked at Sprint Nextel Communications, Inc. ("Sprint Nextel"), previously Sprint Corporation ("Sprint"), for 11 years.  In my positions at Sprint and Sprint Nextel, one of my duties has been to process and submit for payment Sprint Nextel's legal bills for work done by outside legal counsel, including the Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") law firm.  As a result of this work experience, I have knowledge of the matters and amounts billed from Quinn Emanuel's representation of Sprint Nextel and its affiliates over a period dating back to April 1998.

2.     I have recently reviewed our billing records regarding Quinn Emanuel's representation of Sprint Nextel. Since April 1998, Quinn Emanuel has billed Sprint Nextel nearly $318,000 for legal services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed on October 20, 2005 in Overland Park, KS.

Terry Koehler

- 2 -

G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

Plaintiff,

v.

BOSTON COMMUNICATIONS GROUP,
INC., et al.

Defendants.

CIVIL ACTION No. 00-CV-12234-EFH

## DECLARATION OF PHILLIP COOKE

I, Phillip Cooke, declare as follows:

1.      I am a Senior Director, IT at Nextel Operations, Inc.  In this Declaration, I refer to Nextel Operations, Inc. and Nextel Communications, Inc. (including their affiliates) as "Nextel." Nextel is a national telecommunications company, which recently merged with a subsidiary of Sprint Corporation to form Sprint Nextel Corporation ("Sprint Nextel") the third-largest wireless service provider in the United States.  Sprint Nextel, through its subsidiaries, operates in a variety of telecommunications markets, including prepaid wireless.

2.      I first became employed by Nextel in September 2003, and have continued to work at Nextel since that date.  Including my experience at Nextel, I have nearly twenty years of experience in the telecommunications and wireless markets.  Based on my position and experience in the wireless industry, I have personal knowledge of the prepaid wireless market and of Nextel's position in that market.

3.      I understand Nextel is not a party to this case, *Freedom Wireless, Inc. v. Boston Comm. Grp., Inc.*, No. CV-12234-EFH, ("Cingular Litigation").  It is my further understanding that no claims of infringement have been directed against Nextel Communications, Inc. in the Cingular Litigation.  Rather, Freedom Wireless recently served a complaint in a separate

litigation before this Court – *Freedom Wireless v. Boston Communications Group, Inc.*, No. 05-11061 EFH ("Nextel Litigation") – accusing both BCGI and Nextel Communications, Inc. of infringing the same two Freedom patents asserted in earlier Freedom Litigation.

    4.     I understand that a dispute has arisen with respect to the scope of an injunction that was entered in the Cingular Litigation and whether the injunction should be applied to Nextel. Nextel did not become aware that an injunction issued until October 17, 2005. I have been asked to provide this Declaration to address the effect of the injunction if found to apply to Nextel.

    5.     Nextel offers prepaid wireless telecommunications services to over two million customers throughout the United States. Nextel began offering prepaid wireless service in 2002, with the introduction of a service branded as "Boost Mobile." Nextel owns, operates, configures, and maintains the communications network that delivers prepaid services to its customers.

    6.     In order to implement its prepaid services, Nextel contracted with BCGI in August 2002. Pursuant to this contract, BCGI provides catalog, usage rating, billing, and information services for offerings that include cellular, "push-to-talk," and data downloads. Nextel uses BCGI's services for all of the prepaid phone calls made by its prepaid wireless customers in the United States. Prohibiting Nextel from utilizing BCGI services within the period specified in the Cingular injunction would seriously impact Nextel's ability to offer prepaid wireless phone calls. In addition, the impact would result in increased costs due to increased call center support from subscribers calling our Care Centers seeking an explanation. Nextel's prepaid wireless phone service also accounts for a notable portion of Nextel's overall revenues. Preventing Nextel from using BCGI's service would thus inflict substantial irreparable harm upon Nextel.

7.    I have also considered whether Nextel could find an alternative to BCGI's service by January 16, 2006. Based on my roles at Nextel and experience in the industry, it would not be commercially feasible for Nextel to find alternative vendors and implement alternative services within that time frame. Due to the complexity of offering these services, recent discussions with other vendors (including Amdocs and Telecordia) suggest that to replace the BCGI's current wireless phone service capability with comparable service would likely require several months beyond January 16, 2006. Moreover, a January 16, 2006 deadline would require Nextel to begin implementation of any alternative services during the holiday season, the busiest and most active period of the year for Nextel's prepaid wireless market segment and for all wireless carriers generally. Even though January 16, 2006 falls outside of the holiday season, the preparations during the holiday period would be a substantial hardship for Nextel's business. The costs and operations impact to putting forth such an effort would create significant operational problems for Nextel, adding both risk to providing other IT and billing support to Nextel and the absorption of significant unplanned expense to Nextel.

8.    In an industry where reliability of services is paramount, impacting Nextel's prepaid wireless phone service – even for a few hours – would irreparably harm the Boost Mobile brand and jeopardize Nextel's prepaid wireless client base.

9.    Preventing Nextel from using BCGI's services could also force Nextel's more than two million prepaid wireless subscribers to incur significant costs in switching to other wireless phone services or to forego any wireless phone service. Nextel's prepaid wireless subscribers, many of which are young people that cannot afford, or do not have sufficient credit to qualify for, a monthly wireless billing plan. A substantial number of these young subscribers therefore would not be able to purchase wireless service other than prepaid wireless service.

- 3 -

Studies have shown that young people increasing rely on the cellular phones as their primary mode of communication. For instance, many college students do not have a landline phone and rely solely on their wireless phone for communication. Depriving Nextel's youth-based prepaid wireless customer base from access to a wireless phone would often deprive many of these individuals of their primary means of communication.

10.    Nextel's prepaid wireless customers cannot switch over to alternative prepaid services without incurring significant out-of-pocket costs. Unlike other wireless carriers that offer phones compatible with other wireless carriers' networks, Nextel's prepaid wireless phones can only work on the integrated Digital Enhanced Network ("iDEN"), which is only operated nationally in the United States by Nextel and its partners. Accordingly, Nextel prepaid wireless customers cannot switch to other prepaid services without first buying a new phone, which could cost more than one hundred of dollars per customer – a substantial amount for a young person on a limited income. Many Nextel prepaid wireless customers would not be able to afford this cost for a new phone, and would be left without any cellular phone service. Nextel prepaid wireless customers have also made a considerable investment in purchasing and/or subscribing to more than $20,000 per day in data applications – including custom ring tones, custom graphics, and games – none of which could be transferred to other prepaid wireless phone services.

11.    Other wireless prepaid services also fail to offer the same features as Nextel's Boost Mobile prepaid wireless service. Boost Mobile is the only prepaid wireless service in the United States that offers both wireless phone service and wireless walkie-talkie service on a single handset. Nextel's unique walkie-talkie feature permits users to have conversations with Nextel customers at a fraction of the cost of cellular phone call. Boost Mobile customers pay a fixed fee for unlimited use per day. Nextel's walkie-talkie feature is particularly popular with its

younger Boost Mobile customers and keeps them connected to the community of other Boost Mobile subscribers. While the walkie-talkie is heavily used by Boost Mobile subscribers, there is still the need to be able to communicate via cellular phone service.

12.    Boost Mobile customers use both prepaid cellular phone service and the walkie-talkie feature to contact family members and authorities in times of crisis or emergencies. Nextel's Boost Mobile young customers– and for that matter consumers generally – increasing rely on wireless telephones as a personal safety device to call family members or authorities in times of crisis and emergencies. Parents often buy a Boost Mobile phone for their children – or allow their children to buy Boost Mobile phones – with these purposes in mind. Boost Mobile's prepaid wireless phone service is also used in emergencies. Such uses are substantial factors in the continued growth of the wireless phone industry, in general, and with walkie-talkie capabilities, represent a key component of Nextel's growth. The industry's efforts at promoting the safety benefits of wireless phone services have received widespread support among law enforcement authorities.

13.    In addition to harming Nextel and its customers, shutting down Nextel's prepaid wireless cellular phone service would also harm third-party vendors of Boost Mobile products and services. Boost Mobile phones and accessories are currently sold by Target, Wal-Mart, Best Buy, 7-Eleven, and Rite-Aid. Further, there are numerous small vendors that provide digital content (such as games and wallpaper). Shutting down Nextel's Boost Mobile service would harm these third-party vendors by reducing their revenue, increasing inventory costs and impacting small vendors by substantially reducing sales, possibly impacting their viability.

·I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed on October 24, 2005 in Reston, Virginia.

Phillip Cooke

**H**



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Richard McMillan, Jr.
(202) 624-2580
rmcmillan@crowell.com

October 19, 2005

021:822
100773.0000033

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:    *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, et al., Civil Action No. 00-CV-12234-EFH

Dear Mr. Urquhart:

I am counsel for Sprint Nextel Corporation which, as you know, is a substantial client of your law firm.

On Monday, October 17, 2005, I received a copy of an "Order for Permanent Injunctive Relief Pursuant to 35 U.S.C. § 283", entered in the above-captioned case on October 12, 2005. This Order was entered upon motion by the plaintiff, Freedom Wireless (which your law firm also represents), and adopts, essentially verbatim, the language for the injunction proposed by your law firm.

I am writing to determine whether you and your client construe this Order to apply in any way to any aspect of Sprint Nextel's prepaid wireless service activities. I ask this question for the obvious reasons that Sprint Nextel (1) was not party to this litigation and (2) would expect that your law firm in light of your ethical duties would have no involvement whatever in obtaining an injunction against a client (Sprint Nextel) of your law firm.

Accordingly, we request your immediate assurance on behalf of you and your client, Freedom Wireless, that the Court's injunction Order of October 12, 2005 does not reach the activities of Sprint Nextel. In particular, we ask your assurance that you and your client do not consider Sprint Nextel to be a person "in active concert or participation with" BCGI for purposes of the Order, and do not believe that BCGI is enjoined under the Order from providing prepaid wireless service implementations to Sprint Nextel.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington ▪ Irvine ▪ London ▪ Brussels

A. William Urquhart, Esq.
October 19, 2005
Page 2

Because we deem this an extremely serious matter, we would request this assurance by close of business today.

Sincerely,

*Richard McMillan*

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation

cc:   Leonard J. Kennedy, Esq.
      Susan Z. Haller, Esq.
      William C. Price, Esq.
      Dominic Surprenant, Esq.

I

**quinn emanuel** trial lawyers · los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 19, 2005

<u>VIA FACSIMILE & U.S. MAIL</u>

Richard McMillan, Jr., Esq.
Crowell Moring
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595

<u>Freedom Wireless, Inc. v. Boston Communications Group, Inc.,</u>
<u>Civil Action No. 00-CV-12234 EFH</u>

Dear Mr. McMillan:

I write in response to your letter to me of yesterday.

You are correct that Sprint Nextel Corp. is a substantial--and valued--client of the firm. We have represented Nextel since 1993 and Sprint starting many years before that.

You are also correct that our firm represents Freedom Wireless. Our firm began that representation in 1999. At that time, neither Sprint nor Nextel offered pre-paid wireless services.

It is my understanding that sometime in 2002, Nextel entered the pre-paid wireless service market via acquisition. Once that came to our attention, we informed Freedom Wireless that we could not offer them any advice of any kind with respect to Nextel. We have reiterated that position to them periodically and have strictly adhered to it.

We understand your letter to ask for our firm's legal advice on the meaning of the permanent injunction you reference as to activities of Sprint Nextel. Our firm cannot give advice as to whether the injunction reaches the activities of Sprint Nextel. We are barred by our professional responsibilities from undertaking that analysis and we have not

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

undertaken that analysis. We do not represent Freedom Wireless in its separate lawsuit against Nextel. They are represented by separate counsel (copied below) and we have provided them no assistance of any kind in that litigation.

We have scrupulously adhered to our professional responsibilities to both clients. At bottom, this was a situation that was thrust on us and which our firm handled appropriately. I believe, upon reflection, that you will agree with that.

Very truly yours,

A. William Urquhart

AWU:gs
385856.1

cc:    Leonard J. Kennedy, Esq.
       Susan Z. Haller, Esq.
       William C. Price, Esq.
       Dominic Surprenant, Esq.
       Kenneth Felter, Esq.

2

J

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116



Richard McMillan, Jr.
(202) 624-2580
rmcmillan@crowell.com

December 1, 2005

021:822
100773.0000033

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedgers LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:    *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.,* Appeals from case No. 00-CV-12234-EFH ("Current Litigation")

*Freedom Wireless, Inc. v. Boston Communications Group, Inc.,* No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel Litigation")

*Freedom Wireless, Inc. v. Boston Communications Group, Inc.,* No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltell Litigation")

Dear Mr. Urquhart:

I write in follow-up to our earlier correspondence of October 19, 2005.

In your letter of October 19, 2005, you stated that your firm had not undertaken an analysis of whether the Injunction Order issued by the United States District Court for the District of Massachusetts in the Current Litigation reaches the activities of Sprint Nextel. Sprint Nextel thereafter challenged this position before both the District Court in Massachusetts and the Court of Appeals for the Federal Circuit, and your client Freedom Wireless has now explicitly acknowledged before both courts that it does in fact construe the Injunction Order as reaching the activities of Nextel. Accordingly, we presume you now recognize and accept the explicit conflict that continues to exist.

This present conflict necessarily has direct implications for the follow-on cases filed recently in the Massachusetts court. Now that Nextel has been named

A. William Urquhart, Esq.
December 1, 2005
Page 2

as a party-defendant in the follow-on Nextel Litigation, and in light of the direct conflict that exists in the Current Litigation, Sprint Nextel believes that Quinn Emanuel must withdraw from any ongoing representation that could adversely affect Sprint Nextel. This includes your representation of Freedom Wireless in the Current Litigation, and your representation of Freedom Wireless in any follow-on litigation, including the Alltell Litigation that has been filed as a companion case to the Nextel Litigation.

We would hope that the specifics of your firm's ethical conflict are apparent, but to be specific, your firm (1) has obtained an Injunction Order interpreted by your client to provide specific relief against Sprint Nextel in the Current Litigation, and any continued advocacy of that Order, or its underpinnings, puts your firm in *direct* conflict with the interests of Sprint Nextel, and (2) particularly in light of the conflict that therefore already exists in the Current Litigation and the exceedingly close relationship that can be expected to exist between the follow-on Nextel and Alltel Litigations, plain adversity exists in the follow-on cases as well. The two follow-on cases will inevitably be coordinated or consolidated, as they involve the same patents, virtually identical complaints and a matching plaintiff and co-defendant. Both cases will feature common discovery (including depositions and document productions) as well as similar evidence and argument. Therefore, and again in light of the Current Litigation, it will be impossible for your firm to represent Freedom Wireless in the Alltel Litigation without the effects of your firm's factual and legal analysis, and arguments based thereon, having direct adverse impact on Nextel in the Nextel Litigation.

Sprint Nextel appreciates that the disqualification of your law firm will present potential hardship for Freedom Wireless. Accordingly, Sprint Nextel is open to considering proposals by your firm regarding its continued representation of Freedom Wireless for issues not affecting Sprint Nextel, at least with respect to the 06-1020, -1078, -1079, -1098 and -1099 appeals in the Current Litigation. This might include, for example, some specific restriction to damages issues in the Current Litigation that would not likely affect Sprint Nextel, in the follow-on Nextel Litigation. As anticipated by the ethical rules, Sprint Nextel is prepared to consider such a proposal so long as Sprint Nextel receives adequate assurance that its interests would not be affected by your continued representation of Freedom Wireless, as so limited.

Sprint Nextel does not wish to take the formal step of filing motions to disqualify, and so would much prefer to reach a voluntary agreement concerning the

A. William Urquhart, Esq.
December 1, 2005
Page 3


withdrawal issues.  Nevertheless, Sprint Nextel considers this an extremely serious matter, and therefore requests your considered response.

Sincerely,

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation


cc:    Leonard J. Kennedy, Esq.
       Susan Z. Haller, Esq.
       William C. Price, Esq.
       Dominic Surprenant, Esq.

**K**



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Richard McMillan, Jr.
(202) 624-2580
rmcmillan@crowell.com

December 7, 2005

021:822
100773.0000033
2680793v1

A. William Urquhart, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

> Re:     *Freedom Wireless, Inc. v. Boston Communications
> Group, Inc., et al.*, Appeals from case No. 00-CV-12234-EFH
> ("Current Litigation")
>
> *Freedom Wireless, Inc. v. Boston Communications Group,
> Inc.*, No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel
> Litigation")
>
> *Freedom Wireless, Inc. v. Boston Communications Group,
> Inc.*, No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltell
> Litigation")

Dear Mr. Urquhart:

I am writing in follow-up to my letter of December 1, 2005.

On December 2, 2005 (the day after my above-referenced letter), we received a copy of Freedom Wireless' "Response to Emergency Motion Order of Cingular Wireless LLC, AT&T Wireless and CMT Partners to Suspend and Stay the District Court's Injunction", filed by your law firm, with the signature line of Marshall M. Searcy, III and Erica P. Taggart. We believe that Quinn Emanuel has presented arguments in this brief that are in continuing violation of the firm's ethical responsibilities.

A. William Urquhart, Esq.
December 7, 2005
Page 2

By way of illustration, I direct your attention to page 4 of that brief, wherein your firm has taken a position with respect to the "joint infringement" issue that is directly at odds with the position advocated by Nextel in briefs filed on November 14, 2005 and November 28, 2005.[1] I also direct your attention to pages 4-5 of the brief, wherein your firm makes specific arguments with respect to statutory language that are directly at odds with arguments set forth in Nextel's earlier filed briefs.[2]

In light of the foregoing, and for reasons previously explained in prior correspondence, Nextel again requests that Quinn Emanuel immediately withdraw from these proceedings.

Sincerely,

Richard McMillan, Jr.
Counsel for
Sprint Nextel Corporation

cc:   Leonard J. Kennedy, Esq.
      Susan Z. Haller, Esq.
      William C. Price, Esq.
      Dominic Surprenant, Esq.

---

[1]     Compare, for example, Freedom Wireless' brief of December 2, 2005, pp. 4-5 (arguing that "joint infringement . . . existed before 1952 and . . . the 1952 Act made no substantive changes to the law") with Nextel's "Reply in Support of Motion to Stay Injunction Pending Appeal", pp. 5-6 (asserting that prior to 1952, "joint infringement" was an "entirely different concept" than now applied by Freedom Wireless). Relevant pages of the briefs are attached hereto as Exhibits 1 and 2, respectively.

[2]     Compare Freedom Wireless' brief of December 2, 2005, pp. 4-5 (arguing that a proper construction of the word "whoever" in Section 271(a) supports Freedom Wireless' position) with Nextel's Reply in Support of Motion to Stay Injunction Pending Appeal, pp. 6-8 (asserting that a proper construction of "whoever" in Section 271(a) does not support Freedom Wireless' position). Relevant pages of the briefs are attached hereto as Exhibits 3 and 4, respectively.

1

damages. Notably, however, BCGI did not request a stay of the injunction as it applied to itself and Cingular--tacitly conceding that at least that part of the injunction was proper.[1]

Yet neither Cingular nor BCGI has shown that they are likely to succeed on the merits. Freedom refers this Court to its opposition to BCGI's Motion to Stay the District Court's Injunction,[2] which included the following refutations to BCGI's claim of likelihood of success on appeal:

Defendants' main argument - that there is a loophole in the patent statute for companies who work together under a contract to jointly perform all the steps of a patent - does not have any basis in the law. Even defendants concede that joint infringement by two separate companies working together existed before 1952, and that the 1952 Act made no substantive changes to the law. Moreover, defendants concede that the term "whoever," which is used in § 271 (a) of the patent statute, clearly covers joint actions when used elsewhere in the patent statute. See 35 U.S.C. § 101; Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) (term should receive consistent meaning throughout act if possible). Indeed, many lower court

---

[1]   Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction, November 14, 2005, at 2 ("BCGI does not seek to stay the injunction as it applies to the defendant carriers.").

[2]   Combined Response to Emergency Motion of Boston Communications Group, Inc. to Construe or Stay the District Court's Injunction and To Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005, at 5-17.

cases have taken this joint infringement theory for granted.[3]  In any event, even under defendants' own theory of the law, there was more than sufficient evidence presented at trial that BCGI and the carriers coordinated their infringing acts throughout their contractual relationship.[4]  Overall, defendants, including Cingular, have failed to make a strong showing that they are likely to escape liability merely because the jury found they infringed jointly through coordinated action, rather than individually.

Defendants' arguments that no reasonable jury could conclude that the defendants infringe the 17 "direct connection" claims, that the infringing system performed periodic validation as claimed by the patents-in-suit, and that the remaining claims were invalid in light of prior art merely repeat arguments already

---

[3]  See e.g., Shields v. Halliburton Co., 493 F. Supp. 1376, 1389 (W.D. La. 1980) ("When infringement results from the participation and combined action of several parties, they are all joint infringers and jointly liable for patent infringement."); McDermott v. Omid Int'l, 723 F. Supp. 1228, 1236 (S.D. Ohio 1988), aff'd, 883 F.2d 1026 (Fed. Cir. 1989) (similar); Marley Mouldings, Ltd. v. Micron Indus., 2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) ("[S]everal district courts have found that a party directly infringes a method or process patent where the various steps in the patent are performed by distinct entities. . . . These cases are persuasive."); Union Pacific Resources v. Chesapeake Energy Corp., 1998 U.S. Dist. LEXIS 14684 (N.D. Tex. May 20, 1998) ("[T]he court is not convinced that Chesapeake cannot be liable for direct infringement" under a joint infringement theory).

[4]  See Freedom Wireless' Combined Response to Emergency Motion of Boston Communications Group, Inc. To Construe or Stay the District Court's Injunction and to Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005 ("Freedom's Opp."), at 9.

2

whose combined actions constitute the infringement, not merely one, whose actions alone do not infringe. The injunctive powers of the court cannot be used to render conduct unlawful that is not properly considered infringing under the Patent Statute. *See Samsung*, 361 F.3d at 1361 (rejecting effort to use the injunction to create liability, in effect, for conspiracy to infringe, not specifically actionable under the Act).

In sum, this appeal poses significant issues in connection with Freedom's effort to extend the district court's injunction to conduct not adjudicated as unlawful in the underlying action, and to persons who were not parties to the underlying action.

2.    Freedom argues that Section 271 *sub silentio* preserved the common law doctrine of "joint infringement" under the heading of direct infringement, as captured by Section 271. But joint infringement at common law was an entirely different concept from the joint infringement now sponsored by Freedom. Prior to enactment of the 1952 Patent Act, joint infringement was an intentional tort. *See, e.g., Gerosa v. Columbia Metal Stamping & Die Co.*, 8 F.2d 611, 611-12 (6th Cir. 1925) (finding joint infringement when the party "knowingly and intentionally had contributed to" the infringement); *Robert Findlay Mfg. Co. v. Hygrade Lighting Fixture Co.*, 288 F. 957, 958 (E.D.N.Y. 1923) ("'Where an infringement of a patent is brought about by concert of action between a defendant and complainant's

- 5 -

licensee, all engaged *directly and intentionally* become joint infringers.'") (emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173 (C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No. 12,411) ("the mere manufacture of a separate element of a patented combination, unless such manufacture be proved to have been conducted for the purpose, and *with the intent of aiding infringement*, is not, in and of itself, infringement.") (emphasis added). Joint infringement thus was the precursor not of direct infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which requires "knowing" misconduct. As such, it was designed to reach only those parties who knowingly and intentionally sought to aid and abet the acts of infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F. at 958; *Saxe*, 21 F. Cas. at 594. Thus, if as Freedom suggests, the concept of joint infringement need only be coextensive with pre-1952 case law, that doctrine clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word "whoever," which is used in the portion of Section 271 describing direct infringement, is also a word which under a different statutory provision (Section 101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet this proves too much. First, joint inventorship – unlike joint infringement – is the subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

- 6 -

3

damages. Notably, however, BCGI did not request a stay of the injunction as it

applied to itself and Cingular--tacitly conceding that at least that part of the

injunction was proper.[1]

Yet neither Cingular nor BCGI has shown that they are likely to succeed on

the merits. Freedom refers this Court to its opposition to BCGI's Motion to Stay

the District Court's Injunction,[2] which included the following refutations to BCGI's

claim of likelihood of success on appeal:

Defendants' main argument - that there is a loophole in the patent statute for

companies who work together under a contract to jointly perform all the steps of a

patent - does not have any basis in the law. Even defendants concede that joint

infringement by two separate companies working together existed before 1952, and

that the 1952 Act made no substantive changes to the law. Moreover, defendants

concede that the term "whoever," which is used in § 271 (a) of the patent statute,

clearly covers joint actions when used elsewhere in the patent statute. See

35 U.S.C. § 101; Gustafson v. Alloyd Co., 513 U.S. 561, 568 (1995) (term should

receive consistent meaning throughout act if possible). Indeed, many lower court

---

[1]  Emergency Motion of Boston Communications Group, Inc. to Construe or Stay
the District Court's Injunction, November 14, 2005, at 2 ("BCGI does not seek to
stay the injunction as it applies to the defendant carriers.").

[2]  Combined Response to Emergency Motion of Boston Communications Group,
Inc. to Construe or Stay the District Court's Injunction and To Nextel's Motion to
Stay Injunction Pending Appeal, November 22, 2005, at 5-17.

02624/1063519.1

cases have taken this joint infringement theory for granted.[3] In any event, even
under defendants' own theory of the law, there was more than sufficient evidence
presented at trial that BCGI and the carriers coordinated their infringing acts
throughout their contractual relationship.[4] Overall, defendants, including Cingular,
have failed to make a strong showing that they are likely to escape liability merely
because the jury found they infringed jointly through coordinated action, rather
than individually.

Defendants' arguments that no reasonable jury could conclude that the
defendants infringe the 17 "direct connection" claims, that the infringing system
performed periodic validation as claimed by the patents-in-suit, and that the
remaining claims were invalid in light of prior art merely repeat arguments already

---

[3]  See e.g., Shields v. Halliburton Co., 493 F. Supp. 1376, 1389 (W.D. La. 1980)
("When infringement results from the participation and combined action of several
parties, they are all joint infringers and jointly liable for patent infringement.");
McDermott v. Omid Int'l, 723 F. Supp. 1228, 1236 (S.D. Ohio 1988), aff'd, 883
F.2d 1026 (Fed. Cir. 1989) (similar); Marley Mouldings, Ltd. v. Micron Indus.,
2003 WL 1989640, at *2-3 (N.D. Ill. Apr. 30, 2003) ("[S]everal district courts
have found that a party directly infringes a method or process patent where the
various steps in the patent are performed by distinct entities. . . . These cases are
persuasive."); Union Pacific Resources v. Chesapeake Energy Corp., 1998 U.S.
Dist. LEXIS 14684 (N.D. Tex. May 20, 1998) ("[T]he court is not convinced that
Chesapeake cannot be liable for direct infringement" under a joint infringement
theory).

[4]  See Freedom Wireless' Combined Response to Emergency Motion of Boston
Communications Group, Inc. To Construe or Stay the District Court's Injunction
and to Nextel's Motion to Stay Injunction Pending Appeal, November 22, 2005
("Freedom's Opp."), at 9.

02624/1063519.1

5

4

licensee, all engaged *directly and intentionally* become joint infringers.'") (emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173 (C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No. 12,411) ("the mere manufacture of a separate element of a patented combination, unless such manufacture be proved to have been conducted for the purpose, and *with the intent of aiding infringement*, is not, in and of itself, infringement.") (emphasis added). Joint infringement thus was the precursor not of direct infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which requires "knowing" misconduct. As such, it was designed to reach only those parties who knowingly and intentionally sought to aid and abet the acts of infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F. at 958; *Saxe*, 21 F. Cas. at 594. Thus, if as Freedom suggests, the concept of joint infringement need only be coextensive with pre-1952 case law, that doctrine clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word "whoever," which is used in the portion of Section 271 describing direct infringement, is also a word which under a different statutory provision (Section 101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet this proves too much. First, joint inventorship – unlike joint infringement – is the subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

- 6 -

Second, joint inventorship, even if it were analogous to joint infringement, teaches only that two parties may assume *joint* responsibility under the Patent Act only when they knowingly *intend* to do so. *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) ("Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs . . . ."); *accord Invitrogen Corp. v. Clontech Labs., Inc.*, --- F.3d ---, 2005 WL 3078495, at *8 (Fed. Cir. Nov. 18, 2005) (holding that inventorship requires an understanding and appreciation of the invention, including "that [the inventor] understood his creation to have the features that, comprise the inventive subject matter at bar").

In any case, the provisions of Sections 101 and 271 are not parallel provisions, and this Court's precedents reflect that where general words are used in two different places in the patent law, they may be given a meaning in each that reflects the structure, policies and purposes of each section. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1445 (Fed. Cir. 1998) (reasoning that it is "not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance"). Thus, particularly in light of the alternative bases of liability expressly set forth in Section 271, it does no violence to the Patent Act to construe "whoever" as a single person in the context of Section 271, while recognizing that

- 7 -

"whoever" may encompass multiple, intentional collaborators in the context of Section 101.[2]

In sum, this case plainly presents substantial issues on the questions whether there is a separate doctrine of joint infringement and, if there is such a concept in the patent laws, what constitutes joint infringement.

3.    Freedom attempts to fall back on an additional and entirely contrived argument that the jury "might have" adjudicated BCGI's rights separately because it was improperly so instructed. In support of this view, Freedom refers at various points to evidence that it says it presented in connection with other theories, and snippets from the jury instructions. *See, e.g.,* Freedom Opp'n at 10 n.8. Without citing the record, Freedom baldly and inaccurately states that "the jury's verdict [sic] did not set forth particular findings on these theories."[3] Freedom is flatly

---

[2]    Moreover, even if "whoever" *could* refer to multiple persons in Section 271, this would not be mean that the standards under which their combined actions gives rise to liability would be precisely the same as the standards that would be applied to find joint inventorship in connection with Section 101. The contexts are simply too different to suggest that standards developed in one arena can simply be carried over to another. *See 3D Systems, Inc. v. Aarotech Labs, Inc.,* 160 F.3d 1373, 1379 n.4 (Fed. Cir. 1998) (declining to apply the meaning of Section 102(b) "on sale" bar to Section 271 "offer for sale;" noting that underlying policies for patentability have "no resonance" with the underlying policies for infringement).

[3]    Citing to the trial transcript of April 13, 2005, Freedom claims that the jury was instructed "at length" on how use of the "system" would constitute infringement. *See* Freedom Opp'n at 10-11. This portion of the trial testimony,
(continued...)

- 8 -

L



**ClickPress**™

GLOBAL NEWS DISTRIBUTION

**AT&T Wireless**
AT&T Wireless & Cingular have Joined
Forces. Free Cell Phones.

**Cingular Wireless**
Free phones, plans as low as $39.99 with
activation, restrictions apply

Ads by Goooooogle

| Home | Latest News | Submit News | About Us | FAQ |
|---|---|---|---|---|

News Search: [＿＿＿＿＿＿] [ Search ]                       More search options

Business: Court Orders Boston Communications Group And
Cingular Wireless To Stop Selling Infringing Prepaid Wi

Previous Release
Next Release

# Court Orders Boston Communications Group And Cingular Wireless To Stop Selling Infringing Wi

Ads by Goooooogle

**Cingular Wireless**
Online Special - Cingular Wireless Camera Phone
w/ Cingular Plans
www.Wirefly.com

*While the defendants are prohibited from adding new customers to the infringing systems from today forward, they can continue to serve current customers for 90 days, but they must pay Freedom a 2.5-cent per minute royalty for any use during that grace period.*

**Free Cingular Ringtones**
Unlimited Ringtones & Screen Savers Start Saving
Money Today!
www.freeringers.net

**[ClickPress, Tue Oct 18 2005]** BOSTON – The United States Federal District Court for the District of Massachusetts has granted an injunction against Boston Communication Group, Inc. (BCGI) and Cingular Wireless, forbidding them from continuing to sell prepaid wireless services of the type that were found to be covered by Freedom Wireless' patents.

The order follows the jury's unanimous verdict on May 20, 2005 that 32 claims of two of Freedom's six U.S. patents on prepaid wireless were valid and infringed by defendants BCGI, Cingular Wireless (a joint venture between Southwestern Bell (SBC) and Bell South (BLS)), CMT Partners, AT&T Wireless and Western Wireless (recently merged into Alltel Communications, Inc. (AT)), as well as the Court's September 1, 2005 ruling that the two Freedom patents at issue in the case were fully enforceable.

"The injunction prohibits any of the defendants from making, using, or selling prepaid wireless services based on the systems found to infringe, either by themselves or jointly with any other companies," said Bill Price, lead trial lawyer for the plaintiff and chair of Quinn Emanuel Urquhart Oliver & Hedges LLP's trial practice. It thus prohibits BCGI and its current carrier customers, including Alltel and Cincinnati Bell, Inc. (CBB), which were named in a recent patent infringement lawsuit by Freedom Wireless, from selling prepaid wireless services using the infringing BCGI systems.

While the defendants are prohibited from adding new customers to the infringing systems from today forward, they can continue to serve current customers for 90 days, but they must pay Freedom a 2.5-cent per minute royalty for any use during that grace period.

Although the jury awarded Freedom Wireless $128 million as compensation for defendants' sale of over 5 billion minutes resulting in $1.5 billion in revenue, the amount of damages continues to rise. On October 12, the Court awarded Freedom Wireless an additional $19.7 million in prejudgment interest to reflect the loss of interest on the royalties that should have been paid over the past seven years of infringement. The Court also granted Freedom Wireless' motion for an accounting in order to assess additional damages for the period between December 2004 and the judgment. During that time period, defendants BCGI and Cingular Wireless

have jointly sold an estimated 585 million minutes, which could result in an additional $14.6 million in damages.

Also last week, the Court denied Freedom's motion for attorneys fees and enhanced damages, but clarified that "the evidence fully supports the jury's finding that the defendant Boston Communications Group, Inc., willfully infringed plaintiff's patents" that the "the jury verdict constitutes a fair, reasonable and just compensation for such willful infringement."

On September 28, 2005, Cingular Wireless posted bonds totaling $140.6 million as security for its intended appeal. Cingular Wireless and BCGI will be required to supplement that bond now that the damages have risen to nearly $150 million excluding additional amounts that may be awarded to account for post-judgment interest and royalties for the period covered by the accounting.

Although Freedom has entered into license agreements with Convergys Corporation (CVG) and Telcordia Technologies, Inc. since the jury's verdict, neither Cingular nor BCGI has a license to practice Freedom's patented system.

Contact information for interviews:
Bill Price – (818) 519 0570
Bill Urquhart, Quinn Emanuel Urquhart Oliver & Hedges – (818) 519-8751 or call Anne Sage at (310) 396-2400 to arrange an interview .

This press release was issued through GroupWeb EmailWire.Com.

Company: GroupWeb EmailWire.Com
Contact Name:
Contact Email:
Contact Phone:
Related website

[+] Global news distribution by ClickPress.

Free SFI Website
Free Web Hosting, Free Follow-Up System.

Tired of the Rat Race?
Learn to earn Executive level pay from home now
888-446-8579

Certified Westwood Online
Career Focused Online Education. Advance your
Status and Salary.

Your Ad Here

M

# quinn emanuel trial lawyers
### quinn emanuel urquhart oliver & hedges, llp

Home

About the Firm

In the News

Practice Areas

Attorneys

Recruiting

Contact Us

## Practice Areas

### ANTITRUST AND TRADE REGULATION REPRESENTATIVE CLIENTS

Brazile Metal Services
Beauchat U.S.A., Inc.
Continental Airlines
Epson America, Inc.
Hughes Electronics Corp.
Johnson Controls, Inc.
Mattel, Inc.
Nextel Communications, Inc.
Northwest Airlines
Seiko Epson
The Scotts Company

SCROLL TEXT

Enter search keyword(s) here



Check our extensive articles archive for insightful legal analysis and topical legal news.

Back to Practice

**Notable Victories**       **Representative Clients**       **Partners in this Area**



**The Best and Brightest**
Each year we recruit law students from top law schools across America. Learn more about our recruitment program. | go



**Peruse Our Files**
Follow this link to our online library of insightful articles and legal analysis authored by some of our sharpest legal minds. | go

**Los Angeles**
tel 213 443 3000

**New York**
tel 212 702 8100

Los Angeles  |  New York  |  San Francisco  |  Silicon Valley  |  San Diego
©2005 Quinn Emanuel Urquhart Oliver & Hedges, LLP   All Rights Reserved.

# quinn emanuel trial lawyers
### quinn emanuel urquhart oliver & hedges, llp

Home

About the Firm

In the News

Practice Areas

Attorneys

Recruiting

Contact Us



## Practice Areas

### APPELLATE PRACTICE REPRESENTATIVE CLIENTS

ABC
Academy of Motion Picture
    Arts and Sciences
Avery Dennison
Bancorp Services, L.L.C
Credit Suisse First Boston
Delphi
DIRECTV
Fox Children's Network
Gateway, Inc.
General Motors Corp.
GM Daewoo Automobile &
    Technology Co.
Hathaway Dinwiddie Construction
Co.
Home Box Office
IBM
Intuit Inc.
Kaiser Foundation Health Plan
LendingTree.com
Los Angeles Times

Lycos Inc.
Mattel Inc.
Napster
Nextel Communications, Inc.
Nike, Inc.
Oriental Trading Co.
Parsons
People's Choice Home Loan,
Inc.
PricewaterhouseCoopers
Roommates.com
royalblue financial corp.
Sarah Brightman
    (Phantom of the Opera)
Sarnoff Digital
Societe des Bains de Mer
The Scotts Company
Time Warner Inc.
Transonic Systems
TRW
Turner Entertainment Co.

**SCROLL TEXT**



Enter search keyword(s) here

Check our extensive
articles archive for
insightful legal analysis
and topical legal news. ▸

**Back to Practice**

**Notable Victories**     **Representative Clients**     **Partners in this Area**



**Winning Is What We Do**
Our attorneys have won 879 of
952 cases, or an astounding
92.3%. Check out some of our
recent wins. | go



**The Best and Brightest**
Each year we recruit law students
from top law schools across
America. Learn more about our
recruitment program. | go

**Los Angeles**
tel 213 443 3000
**New York**
tel 212 702 8100

Los Angeles | New York | San Francisco | Silicon Valley | San Diego
©2005 Quinn Emanuel Urquhart Oliver & Hedges, LLP   All Rights Reserved.

# quinn emanuel trial lawyers
### quinn emanuel urquhart oliver & hedges, llp

Home

About the Firm

In the News

Practice Areas

Attorneys

Recruiting

Contact Us

**Practice Areas**

## INTELLECTUAL PROPERTY LITIGATION REPRESENTATIVE CLIENTS

Academy of Motion Pictures
    Arts & Sciences
Academy of Television Arts
    & Sciences
Advanced Micro Devices, Inc.
AOL
Apple Computer
Avery Dennison Corp.
Bancorp Services
DirecTV
DoubleClick
Fox, Inc.
Freedom Wireless, Inc.
General Motors Corp.
Genentech, Inc.
Harman International
Hitachi, Ltd.
HBO
Hughes Electronics Corp.

Mattel, Inc.
Monsanto Company
National Academy of
    Recording Arts & Sciences
Netscape
Nextel Communications
Nike, Inc.
Northrop Grumman Corp.
PharmaStern Therapeutics
Phoenix Technologies, Ltd.
Roche Molecular
    Systems, Inc.
Seiko Epson
Shell Oil Company
Texas Fluorescence
    Laboratories
Time Warner Entertainment
TRW, Inc.
Turner Entertainment

**SCROLL TEXT**

Enter search keyword(s) here

Check our extensive articles archive for insightful legal analysis and topical legal news. ▸

Back to Practice

**Notable Victories**        **Representative Clients**        **Partners in this Area**



**Winning is What We Do**
Our attorneys have won 879 of 952 cases, or an astounding 92.3%. Check out some of our recent wins. | go



**Go to the Source**
Download our current issue of the Business Litigation Report, a timely and topical newsletter of legal news and analysis. | go

**Los Angeles**
tel 213 443 3000

**New York**
tel 212 702 8100

**Los Angeles | New York | San Francisco | Silicon Valley | San Diego**
©2005 Quinn Emanuel Urquhart Oliver & Hedges, LLP   All Rights Reserved.

# quinn emanuel trial lawyers

**quinn emanuel urquhart oliver & hedges, llp**

Home

About the Firm

In the News

Practice Areas

Attorneys

Recruiting

Contact Us



**Practice Areas**

## CLASS ACTION LITIGATION REPRESENTATIVE CLIENTS

| | |
|---|---|
| Ariba, Inc. | Lynch Display Vans, Inc. |
| Bank of America | Manufacturers Bank |
| Blue Shield of California | Marsh McLennan / |
| Bluefly, Inc. |    Marsh USA / Marsh, Inc. |
| City National Bank | Mattel, Inc. |
| City of Simi Valley | McKesson HBOC |
| Corel Corp. | MedPartners, Inc. |
| CSC | Micron Electronics |
| DaimlerChrysler Corp. | Mobil Oil Corp. |
| Delphi | Monogram Bank |
| DirecTV | MP3.com |
| Electronic Arts and Origin Systems | MTC Electronic Technologies |
| Enodis |    Securities |
| Entertainment Partners | New Media Spark PLC |
| E-Universe Securities | Nextel of California, Inc. |
| First Republic Bank Securities | Northrop Grumman Corp. |
| Flagstar | palmOne, Inc. |
| Fuji Photo USA Ltd. | Pearce |
| Fulk | People's Choice Home |
| G&L Realty |    Loan, Inc. |

**SCROLL TEXT**



Enter search keyword(s) here

Check our extensive articles archive for insightful legal analysis and topical legal news.

**Back to Practice**

| Notable Victories | Representative Clients | Partners in this Area |
|---|---|---|



**The Best and Brightest**
Each year we recruit law students from top law schools across America. Learn more about our recruitment program. | **go**



**What others are saying**
Quinn Emanuel's practice has generated respect among clients and adversaries alike. Find out what our clients say. | **go**

**Los Angeles**
tel 213 443 3000

**New York**
tel 212 702 8100

**Los Angeles  |  New York  |  San Francisco  |  Silicon Valley  |  San Diego**
©2005 Quinn Emanuel Urquhart Oliver & Hedges, LLP   All Rights Reserved.

N

**Koide, Brian**

| | |
|---|---|
| **From:** | Dominic Surprenant [dominicsurprenant@quinnemanuel.com] |
| **Sent:** | Thursday, March 10, 2005 5:28 PM |
| **To:** | Haller, Susan |
| **Subject:** | Freedom Wireless |

Sue,

My firm is trying a case in Boston called Freedom Wireless, where we represent the plaintiff versus a variety of cell providers in what I understand to be essentially a patent infringement lawsuit.  Nextel is not a defendant and I have never been involved in the case in any fashion.

It is my understanding that when we took on the representation five years ago, we told our Freedom Wirless clients that we represented Nextel and could not be adverse to Nextel under any circumstances, and our clients agreed to that condition.

It is also my understanding that our FW clients hired another firm which specializes in licensing agreements and that firm sent out letters to a variety of cell providers, including Nextel, about taking out a license.

Finally, it is my understanding through the grapevine Nextel has a lawyer monitoring the trial, which started several days ago.

Obviously, no one at my firm has any invovlement with anything to do with Nextel w/r/t the FW case or will have in the future.

However, when I heard through the grapewine that our clients had otherwise contacted Nextel, and Nextel (per the rumor mill) is monitoring the trial, I told the relevant partners here that I wanted to make sure the firm's Nextel client was apprized of where things stand.

I think my firm's role, or my role here, is of course strictly limited to offering to be an honest broker to facilitate a sensible business deal, if Nextel should want us to do so.

If you have any questions, Sue, please let me know.

Thanks.



**Conflict of Interest Statement**

Consistent with Sprint's Outside Counsel Policy, _Quinn Emanuel_ ("Firm") has conducted a review of its records, and has determined that no conflicts of interest exist with any of the entities listed on the two attachments to the April 2005 letter from Thomas A Gerke. Alternatively, if actual or potential conflicts of interest have been identified, they are described in an attachment to this statement.

_Quinn Emanuel_
Name of Firm

Signature of Authorized Representative

_John Purcell_
Printed Name of Signator

_7/11/05_
Date