UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

          Plaintiff,

     v.

BOSTON COMMUNICATIONS GROUP,
INC., ET AL.,

          Defendants.

CIVIL ACTION No. 05-11062-EFH

## OPPOSITION OF FREEDOM WIRELESS, INC. TO NEXTEL COMMUNICATIONS, INC.'S MOTION TO INTERVENE FOR LIMITED PURPOSE

       Nextel Communications, Inc.'s ("Nextel") Motion to Intervene for Limited Purpose ("Nextel Motion") is remarkable for several reasons.

       First, in addition to its brevity (two pages), the Motion is short on legal authority. Nextel merely cites the governing Rule but makes absolutely no effort to demonstrate how it satisfies the criteria either for intervention as of right or permissive intervention.

       Second, the Motion is equally lacking in factual support. Nextel only briefly summarizes a few undisputed facts---that Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") represents plaintiff Freedom Wireless, Inc. ("Freedom Wireless") and Nextel (in totally unrelated matters)--- and then asserts that "in its representation of Freedom Wireless [Quinn Emanuel] will have to take positions in this action that adversely affect the interests of" Nextel. Nextel Motion at 2. Nextel next leaps to the unfounded conclusion: "This is an ethical violation under Rule 1.7 of the Rules of Professional Conduct." *Id*.[1] Again, Nextel makes

---

[1] Nextel's proposed Motion for Reconsideration of Ruling on Motion for Admission Pro Hac Vice of Marshall M. Searcy III and Erica Taggart ("Motion for Reconsideration") (two pages) and Motion to Disqualify Quinn

absolutely no effort to prove its cavalier charge of unethical conduct.

Third, the Nextel Motion is *déjà vu.* Nextel refers to the substantively identical Motion to Intervene (No. 1951) and supporting Memorandum (No. 1952-1) filed in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.* (C.A. No. 00-12234-EFH), apparently in support of the instant Motion. That Motion to Intervene was filed on October 25, 2005. Freedom Wireless filed its Opposition (No. 1978) on November 8, 2005. The Court denied that Motion to Intervene the next day (November 9, 2005). As demonstrated herein, the reasons for denying the pending Motion are as strong, indeed stronger, than the reasons for denying the earlier Motion to Intervene.

This Court should not tarry considering the Nextel Motion. It should be denied forthwith.[2]

## ARGUMENT

## I.    NEXTEL MAY NOT INTERVENE AS OF RIGHT OR PERMISSIVELY.

As a threshold matter, the Nextel Motion should be denied because Nextel has made no showing either that it is entitled to intervene or that it should be permitted to intervene. As another independent reason to deny the Motion, Nextel has violated Local Rule 7.1(B)(1). Even if the Court considers the criteria for intervention, the Nextel Motion should be denied.

### A.    Nextel Has Not Satisfied Rule 24 Criteria or Local Rule 7.1(B)(1).

The Nextel Motion should be summarily denied because Nextel has made absolutely no effort to satisfy the criteria for intervention set forth in Rule 24 of the Federal Rules of Civil Procedure. Certainly, Nextel has not carried its burden of proving that it satisfies those

---

Emanuel ("Motion to Disqualify") (two pages) (attached to the Nextel Motion as Exhibits A and B, respectively) are similarly remarkable for their brevity and absence of legal authority and factual support. They are addressed herein.

[2]    Nextel has filed a separate Motion for 30 Days Leave to File Detailed Memoranda in Support of its Motions. Freedom Wireless has filed a separate Opposition to that Motion.

requirements. *See, e.g., Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989). For this reason alone, the Court should deny the instant Motion.

Exacerbating Nextel's utter failure to marshal legal authority and facts to support its Motion is Nextel's violation of the Local Rules of this Court. Local Rule 7.1(B)(1) expressly states:

> A party filing a motion *shall* at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted. Affidavits and other documents setting forth or evidencing facts on which the motion is based *shall* be filed with the motion.

(emphasis added). Here, Nextel has not filed the required memorandum or other documents. This Court (and Freedom Wireless) need not speculate what, if any, authorities or facts Nextel *may* have to support its Motion to Intervene. The violation of Local Rule 7.1(B)(1) supplies another independent ground to deny the Nextel Motion. *See Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 223-24 (1st Cir. 1994) (affirming order denying motion based on noncompliance with local rule); *United States v. Vaughan,* 875 F.Supp. 36, 46 (D. Mass. 1995) (argument not raised in supporting memorandum waived due to failure to comply with Local Rule 7.1).

Because Nextel has made absolutely no effort to support the instant Motion, and has violated this Court's Local Rules, the Nextel Motion should be denied.

**B.    Nextel Has No Right To Intervene.**

If this Court considers the criteria for intervention as of right, it is clear that Nextel cannot pass muster. To intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), an applicant must satisfy four requirements: (1) the application must be timely; (2) the applicant must claim an interest relating to the subject of the action; (3) the disposition of the action may impair or impede the applicant's ability to protect the interest; and (4) the applicant must show that the

interest will not be adequately represented by existing parties. *Conserv. Law Found. of N. Eng., Inc. v. Mosbacher,* 966 F.2d 39, 41 (1st Cir. 1992). Failure to meet any one of these requirements is fatal to a motion to intervene as of right. *See Travelers Indem. Co*., 884 F.2d at 637. Here, Nextel fails to satisfy at least the second and fourth requirements.[3]

### 1.    Nextel Has No "Direct Legal Interest" In This Action.

Obviously, Nextel is not a party to this action. It is a defendant in another action (C.A. No. 05-11061-EFH). It will have the opportunity to protect its interests and to defend against Freedom Wireless's claims of patent infringement in that case.

Based on Nextel's own arguments, Nextel has no "direct legal interest" relating to the subject of this action. Nextel has repeatedly argued that the case tried last year (C.A. No. 00-12234-EFH) (which is now on appeal to the Federal Circuit) did not affect its "direct legal interest" because it was not a party to that action. For example, in its Motion to Intervene for Limited Purpose ("Federal Circuit Motion") (Exhibit A) (at 9) filed in the Federal Circuit, Nextel argued that it "had every reason to believe that its rights would be determined in [C.A. No. 05-11061-EFH], not through the back door . . . [in C.A. No. 00-12234-EFH]."

Nextel has also repeatedly argued that it has no legally cognizable interest in C.A. No. 00-12234. To justify failing to attempt to intervene in that case until this Court issued its October 12, 2005 Order for Permanent Injunctive Relief Pursuant to 35 U.S.C. § 283 (No. 1943) ("Injunction Order"), Nextel distinguished between its "business interests," which do not trigger a need to intervene, and "direct legal interest," which does:

> Freedom confuses the nature of Nextel's *business* interests – which Nextel has
> in many business and litigation activities that could affect it – with Nextel's
> direct *legal* interest in these proceedings [C.A. No. 00-12234-EFH] now, which

---

[3]    In this Opposition, Freedom Wireless addresses only the second and fourth requirements; however, it does not concede that Nextel satisfies the other two requirements.

form the basis for Nextel's requested intervention as of right. Nextel's legal interest, at issue here, arose when Freedom asserted that the district court's injunction directly barred conduct that was not the subject of the case, and which had not been determined to be infringing, namely, the combined actions of BCGI and Nextel. Nextel has a clear, cognizable legal interest in not having an injunction extend to its activities.

Reply in Support of Motion to Intervene for Limited Purpose ("Federal Circuit Reply") (Exhibit B) (at 1) (emphasis original). It is Nextel's position that: "Before the filing of the Injunction Order there was no cause for Nextel to intervene in the litigation below [C.A. No. 00-12234-EFH]." Federal Circuit Motion at 7. And, "[u]ntil the injunction, the BCGI-Nextel combination of conduct was not at issue and Nextel was very much a non-party to the proceedings below [C.A. No. 00-12234-EFH]." Reply in Support of Motion to Stay Injunction Pending Appeal (Exhibit C) at 2-3. Nextel continued to emphasize the "difference between [its] business interest" in C.A. No. 00-12234-EFH and the "specific injury to [its] cognizable legal interests" which only arose from the Injunction Order. Federal Circuit Reply at 2. Nextel has made its position explicitly clear:

> A party may have a *business* interest in monitoring a patent case if someone with whom it is doing business is a defendant and the resolution of the suit could affect the supply of a product or service. It may similarly have a *business* interest in the suit if conduct that parallels its own conduct is alleged to infringe and a party wants to understand why. But the law does not insist that such a party intervene when its direct *legal* interests are *not* at issue, *i.e.*, where its own conduct was not being judged.

*Id.* at 2 (emphasis original).

This case is identical to C.A. No. 00-12234-EFH for purposes of Nextel's arguments. It is a patent case in which "someone [BCGI] with whom [Nextel] is doing business is a defendant and the resolution of the suit could affect the supply of a product or service [prepaid wireless service]." This is a suit in which "conduct that parallels [Nextel's] own conduct is alleged to infringe and [Nextel] wants to understand why." According to Nextel, "its direct *legal* interests

are *not* at issue" because "its own conduct [is] not being judged." (emphasis original). Thus, Nextel's arguments in the Federal Circuit defeat its Motion to Intervene in this case. [4]

As in C.A. No. 00-12234-EFH, here Freedom Wireless claims that Boston Communications Group, Inc. ("BCGI") and several defendant wireless carriers are infringing its '067 and '823 patents. Nextel was not a party in C.A. No. 00-12234-EFH, and is not a party here. Just as in C.A. No. 00-12234-EFH, according to Nextel, in the instant action, the "BCGI-Nextel combination of conduct [is] not at issue," "there [is] no cause for Nextel to intervene," and Nextel is "very much a non-party." Its "legal interest" in this case will not arise, if ever, unless and until Freedom Wireless seeks an injunction "directly barr[ing] [Nextel's] conduct."

In sum, by it's own admission, Nextel has no "legal interest" to justify intervening in this case. *See Langone v. Flint Ink N. Am. Corp.,* 231 F.R.D. 114, 119 (D. Mass. 2005) (denying that would-be intervenor had an interest where, by its own characterization of the claims, it had not established a cognizable interest).

### 2.    Nextel's "Direct Legal Interest", If Any, Is Adequately Represented.

Nextel also fails the fourth requirement of Rule 24(a)(2) because any interest it may have in this case is adequately represented by BCGI and the defendant wireless carriers.[5] The First Circuit weighs three factors to assess adequacy of representation:

---

[4]    In the Federal Circuit, Freedom Wireless argued that Nextel had no right to intervene, and should not be permitted to intervene, in the appeal of C.A. No. 00-12234-EFH because, among other reasons, Nextel's application to intervene was excessively late. As indicated immediately above, Nextel countered that its "legal interest" "was not the subject of the case [C.A. No. 00-12234-EFH]" until the Injunction Order was issued. In granting Nextel intervention, the Federal Circuit accepted Nextel's timeliness argument: "Thus, Nextel was not made aware that its rights were the subject of the instant litigation [C.A. No. 00-12234-EFH] until the Injunction Order was entered." Order (December 15, 2005) (Exhibit D) (at 4). Having prevailed based on its argument that its "legal interest" was not at risk until the Injunction Order issued, Nextel is judicially estopped from taking an inconsistent position in this action. *New Hampshire v. Maine,* 532 U.S. 742, 742 (2001) ("Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . .).

[5]    Because Nextel may not intervene for the purpose of disqualifying Quinn Emanuel, see discussion *infra* at 8-9, Freedom Wireless does not address that alleged "interest" here.

> (1) Are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is that present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?

*United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982).

"[T]he burden of demonstrating inadequate representation remains with the putative intervenor throughout."  *In re Thompson*, 965 F.2d 1136, 1142 (1st Cir. 1992).  Here, Nextel cannot carry its burden because the interests of Nextel, if any, and the present defendants are perfectly aligned.  *See Int'l. Paper Co. v. Town of Jay*, 887 F.2d 338, 345 (1st Cir. 1989).

Nextel's burden of showing lack of adequate representation is especially heavy because:

> Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation.  To overcome that presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance.

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 54 (1st Cir. 1979).  The "ultimate goal" of defendants in this case and Nextel is identical – to obtain a final judgment that Freedom Wireless's patents are invalid or unenforceable and/or that the activities of BCGI and the defendant wireless carriers do not infringe those patents.  Nextel makes no effort to show "adversity of interest, collusion, or nonfeasance," *see, e.g., In re Thompson*, 965 F.2d at 1143 (concrete facts needed to establish inadequate representation), by BCGI and the defendant wireless carriers; because there is none.[6]

There is no need for this Court to hear cumulative arguments from a non-party, especially one that can advance its own arguments in C.A. No. 05-11061-EFH, when the existing parties

---

[6]    As to the remaining *United Nuclear Corp.* factors, BCGI and the wireless carrier defendants are "capable and willing to make" the arguments that would be advanced by Nextel regarding invalidity, unenforceability and non-infringement, and Nextel would not add any "necessary element to the proceedings which would not be covered by" the existing defendants.

are highly motivated to make the same arguments.  Nextel has no right to intervene.

### 3.    Nextel May Not Intervene To Introduce A Collateral Issue.

Nextel seeks to intervene for the "limited purpose" of disqualifying Quinn Emanuel, an issue totally unrelated to the patent infringement claims asserted by Freedom Wireless against BCGI and the wireless carriers in this case.  Thus, Nextel wants to introduce a collateral issue; but a collateral issue may not be the basis for intervention.[7]  *See United States v. New York*, 198 F.3d 360, 365 (2nd Cir. 1999) ("Intervention cannot be used as a means to inject collateral issues into an existing action.") (quotations omitted); *see also* 3B James W. Moore, et al., *Moore's Federal Practice* § 24.10[4] at 24-99 & n.12 (2nd ed. 1996 & 1996-97 supp.) ("Intervention will frequently be denied, even though common questions of law or fact are presented, if collateral or extrinsic issues would be brought in by the intervenor.")

The Supreme Court has noted, "one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.,* 321 U.S. 489, 498 (1944); *see Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001); *Lamprecht v. FCC*, 958 F.2d 382, 389 (D.C. Cir. 1992); 7C Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1920 at 489 (2nd ed. 1986).

Nextel seeks to intervene for the "limited purpose" of disqualifying Quinn Emanuel.  The *only* issue that it wants to introduce into this case is a collateral issue.  It may not do so.

---

[7]    Nextel has acknowledged that its efforts to disqualify Quinn Emanuel raise a collateral issue. *See, e.g.*, Federal Circuit Motion at 2 ("Nextel seeks to intervene to address a collateral matter, namely, the disqualification of one of Freedom's principal law firms"); 13 n.10 ("The issue is especially appropriate for intervention here because it is entirely collateral to the merits of the underlying dispute, . . ."). If the potential disqualification of Quinn Emanuel is a "collateral matter" in C.A. No. 00-12234-EFH, it is a "collateral matter" in this case.

**C.    Nextel Should Not Be Permitted To Intervene.**

Nextel should not be permitted to intervene pursuant to Fed. R. Civ. P. 24(b) for the same reasons that it may not intervene as a matter of right.  Nextel has not satisfied the standard for intervention of right and, *a fortiori*, fails the standard for permissive intervention.

For permissive intervention, an applicant must show that its "claim or defense and the main action have a question of law or fact in common" and that its "interests are not adequately represented by an existing party."  *In re Thompson*, 965 F.2d at 1142 n.10.  Nextel's "claim" (that Quinn Emanuel should be disqualified) has nothing in common with the questions of law or fact raised in this suit  Additionally, the named defendants adequately represent any interest Nextel might have in this case.  *See supra* at 6-9.

For permissive intervention, Nextel must also demonstrate that the "intervention would not result in undue delay or prejudice to the original parties."  *In re Thompson,* 965 F.2d at 1142 n.10.  The prejudice to Freedom Wireless, if required to replace Quinn Emanuel, is obvious.  Quinn Emanuel attorneys have lived with litigation concerning the infringement of Freedom Wireless's '067 and '823 patents for over five years and tried a fifty-one day jury trial and an eleven-day bench trial.  Quinn Emanuel's knowledge of the issues surrounding the validity, infringement and enforceability of these patents is irreplaceable.  If Freedom Wireless is forced to substitute counsel, it would be prohibitively expensive and wasteful.  It would also unnecessarily deprive Freedom Wireless of its choice of legal counsel.  *See Gorovitz v. Planning Board of Nantucket*, 394 Mass. 246, 249, 250 (1985).[8]  Adding another party to this case makes no sense and would serve only to further complicate it.  This Court should deny Nextel's request for permissive intervention.

---

[8]    The harm to Freedom Wireless that would be caused by Quinn Emanuel's disqualification is discussed at greater length *infra* at 15-16.

## II.    NEXTEL MAY NOT INTERVENE TO DISQUALIFY QUINN EMANUEL.

Because Freedom Wireless takes Nextel's charges of unethical conduct by its lead counsel very seriously, it will respond briefly to those charges.[9]  Quinn Emanuel's continued representation of Freedom Wireless in this case does not create a conflict of interest.[10]  Indeed, to prevent any such conflict, Freedom Wireless commenced a separate action against BCGI and Nextel (C.A. No. 05-11061-EFH) in which Freedom Wireless is represented by different counsel (Goodwin Procter LLP).  Furthermore, even if a conflict of interest did exist, the harm to Freedom Wireless caused by the disqualification of Quinn Emanuel would be so great that disqualification would be an unnecessary and inappropriately severe sanction.

Nextel's only basis for its Motion to Disqualify is that Quinn Emanuel concurrently represents Nextel "in a wide-variety of [unrelated] matters" and "seeks to continue representing Freedom Wireless in an action where it has already made assertions on behalf of Freedom Wireless that are adverse to Nextel and will continue to take positions that are inimical to Nextel's interests."  Motion to Disqualify at 1.[11]

Nextel then quotes a portion of Rule 1.7 of the Massachusetts Rules of Professional Conduct, and portions of certain Comments to that Rule, and concludes that Quinn Emanuel's

---

[9]    Quinn Emanuel is contemporaneously filing a separate opposition to the Nextel Motion addressing this issue in greater detail.

[10]    As explained herein, there is no conflict of interest.  It is noteworthy, however, that Nextel created the hypothetical conflict of which it complains in August 2002, more than two years after the commencement of C.A. No. 00-12234-EFH, by contracting with BCGI for prepaid wireless services.

[11]    Nextel must be referring to C.A. No. 00-12234 in which Quinn Emanuel, on behalf of Freedom Wireless, has advocated in the Federal Circuit concerning what Nextel calls the "interpretation" of the Injunction Order, the "'joint infringement' issue," and certain "statutory language" in the 1952 Patent Act in a manner which is, according to Nextel, "directly at odds with arguments set forth in Nextel's" filings in the Federal Circuit. Motion to Disqualify at 2 & Exhibit A at 1-2; Exhibit B at 2.

On December 16, 2005, Nextel filed a Motion to Disqualify Quinn Emanuel, Urquhart, Oliver & Hedges in the Federal Circuit.  Freedom Wireless will, of course, oppose that Motion in due course.  However, it is noteworthy that Nextel's arguments in the instant Motion are more properly addressed to the Federal Circuit. As discussed *supra* at 4-6, Nextel has repeatedly argued that its "legal interest" is not "at issue" in a case like this case unless and until an injunction is issued affecting its conduct.

"[l]egal representation of Freedom Wireless . . . in or in connection with this action is unethical conduct in violation of the applicable ABA Model Rules of Professional Conduct and warrants and requires their disqualification as counsel in this action."  Motion to Disqualify at 2.  *Ipse dixit.*  Nextel offers no explanation or analysis.  Simply stated, Nextel offers no basis to disqualify Quinn Emanuel.

### A.    Quinn Emanuel Is Not Representing Clients That Are "Directly Adverse."

Nextel relies exclusively on Rule 1.7.  "Rule 1.7 covers concurrent or simultaneous conflicts in two contexts.  A concurrent or simultaneous representation conflict of interest arises under Rule 1.7(a) when the representation of one client is *directly adverse* to another client.  A concurrent or simultaneous representation conflict of interest also is triggered under Rule 1.7(b) when the representation of one client may be materially limited by the lawyer's responsibilities to another client …"  G. Russell, Massachusetts Professional Responsibility, §7.01[1] at 7-9 (2d ed. 2003) (footnotes omitted) (emphasis added).

Rule 1.7(a) applies only when either a lawyer represents opposing parties in the same lawsuit[12] or when a lawyer sues one client on behalf of another client.  It is only in such contexts that a lawyer's representation is "directly adverse" to the clients.  Nextel is not a party in this case, and Quinn Emanuel is not suing Nextel, on behalf of Freedom Wireless or any other client, in any other case.  Therefore, Rule 1.7(a) does not apply here.[13]

The gist of Nextel's argument is that an attorney's duty of loyalty prohibits him from undertaking representation of any client where that representation entails advocating a legal position "directly at odds" with another client's interests.  Neither the Massachusetts Rules of

---

[12]    "Paragraph (a) prohibits representation of opposing parties in litigation."  Rule 1.7, cmt. 7.

[13]    For this reason, Nextel's quotations and citations to Comment 3 to Rule 1.7 are inapposite.  The conclusion to that Comment makes clear:  "Paragraph (a) applies only when the representation of one client would be directly adverse to the other."

Professional Conduct, nor the ABA Model Rules of Professional Conduct upon which those Rules are based, stands for so sweeping a prohibition. *See, e.g.,* Rule 1.7, cmt. 9 ("[a] lawyer may ordinarily represent parties having antagonistic positions on a legal question that has arisen in different matters"); Model Rule 1.7, cmt. 24 ("[t]he mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest").

The American Bar Association Standing Committee on Professional Responsibility has repeatedly stated that "use of the term 'directly adverse' in Rule 1.7(a) clearly differentiates the more general or indirect adverseness which is addressed in paragraph (b) of the Rule." ABA Formal Opinion No. 95-390 at 1001:260 (January 25, 1995). Although Nextel's "business interests" may be adversely affected by the resolution of the instant action, "that adverseness is, for purposes of Rule 1.7, indirect rather than direct, since its immediate impact is on [BCGI and the defendant wireless carriers], and only derivatively upon [Nextel]." *Id.* at 1001:267. Keeping in mind that Nextel itself has repeatedly distinguished between its "business interests" and its "direct legal interest," and that only the former and not the latter are "at issue" in this case, Quinn Emanuel is not "directly adverse" to Nextel in this case. In cases such as this, courts have repeatedly rejected claims of "direct adversity" where the allegedly adverse party is not a named party. *See, e.g., Vanderveer Group, Inc. v. Petruny,* 1993 WL 308720, *3 (E.D. Pa. 1993); *Jesse v. Danforth*, 169 Wis.2d 229, 245, 485 N.W.2d 63, 69 (1992).

In short, because Quinn Emanuel's representation of Freedom Wireless in this case is not "directly adverse" to Nextel, Rule 1.7(a) does not even apply. Although not raised by Nextel, Rule 1.7(b) states the governing standard. A conflict of interest exists under Rule 1.7(b) only where there is a "significant risk that a lawyer's action on behalf of one client will materially

limit the lawyer's effectiveness in representing another client in a different case."  Model Rule

1.7, cmt. 24.  Nextel does not claim that there is "a significant risk" that Quinn Emanuel's

representation of Freedom Wireless in this case "will materially limit" its "effectiveness in

representing" Nextel in different matters.  Nor could it.  To the contrary, Nextel points out that

Quinn Emanuel "continues to represent Nextel in a wide-variety of matters."  Nextel Motion at

1.  It can be safely assumed that a large, sophisticated client such as Nextel, which can and does

spread its legal business among many law firms, would not continue to retain Quinn Emanuel if

it believed that there was *any* risk that the firm would not zealously assert Nextel's positions in

all those matters.  *See* Preamble and Scope to Massachusetts Rules of Professional Conduct

("Preamble:  A Lawyer's Responsibilities," ¶ 2).

The court in *Sumitomo Corp. v. J.P. Morgan & Co., Inc.*, 2000 WL 145747 (S.D.N.Y.

2000), was presented with closely analogous facts.  In that case, the attorneys ("Paul Weiss")

represented Chase Manhattan Bank ("Chase") in several matters.  2000 WL 145747 at *2.  When

another client, Sumitomo Corp. ("Sumitomo"), informed Paul Weiss that it intended to sue

Chase, Paul Weiss indicated that it could not represent Sumitomo in the litigation because of the

direct conflict of interest.  *Id*.  Paul Weiss, however, did agree to represent Sumitomo in a related

action against a non-client, J.P. Morgan & Co., Inc.  *Id*.  Chase filed a motion to disqualify Paul

Weiss in the *Morgan* case, arguing such representation would "adversely affect" its interests.  *Id*.

The court denied the motion, finding no reason to question the "vigor" of Paul Weiss's

representation:

> In assessing [the conflict issue] it must be recognized that we are not dealing
> with an individual client who has placed his trust in an individual lawyer for a
> substantial period of time.  Chase is a huge financial institution and Paul Weiss
> is but one of many law firms with which it does business.  Moreover, the
> amount of business is not substantial given the size of the two institutions.
> Thus, there is no reason to suspect that Paul Weiss would fail to represent

Sumitomo vigorously as a result of a desire to please its client Chase. Indeed, the fact that Chase had made this motion demonstrated that Chase does not believe that Paul Weiss will not vigorously represent Sumitomo.

*Id*. at *4. Paraphrasing the *Sumitomo* court:

There is no danger that [Quinn Emanuel's] participation in this case will adversely impact its representation of [Nextel] in the other matters. The issues involved in this action are totally unrelated to the issues in the matters in which [Quinn Emanuel] represents [Nextel]. While one can understand that [Nextel] might be unhappy that a law firm which represents it in some matters was taking a position in litigation involving another client that, if adopted, would prejudice an argument that [Nextel] was advancing in a separate case, that does not mean that [Quinn Emanuel] is violating a confidence of its client or engaging in unethical conduct.

*Id*. at *4; *see also Elonex I.P. Holdings, Ltd. V. Apple Computer, Inc.,* 142 F.Supp. 2d 579, 582 (D. Del. 2001) (denying disqualification because no "confidential information has passed, or is likely to pass," among clients in unrelated matters).

Quinn Emanuel has not violated any ethical rule and there is no basis to disqualify the firm.

**B.    Even If A Conflict Exists, Disqualification Is Not Warranted.**

No conflict of interest exists;[14] but even if a conflict exists, disqualification of Quinn Emanuel is not warranted for several reasons. First, forcing Freedom Wireless to replace its counsel of choice after more than five years of litigation would not only be prohibitively expensive but would also deprive Freedom Wireless of an invaluable resource. Second, any appearance of alleged impropriety caused by Quinn Emanuel's continued representation of Freedom Wireless in this case is far less harmful to the judicial system than rewarding Nextel for using the Rules of Professional Conduct as a litigation tactic. Finally, deference to Quinn

---

[14]    "Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation." Rule 1.7, cmt. 15. The Supreme Judicial Court has stated: "We encourage deference to an attorney's best judgment as to whether her representation of a client brings her into conflict with any provisions of the disciplinary code." *Adoption of Erica*, 426 Mass. 55, 63 & n.8 (1997) (citations omitted).

Emanuel's proper decision not to abandon Freedom Wireless after over five years of patent litigation is especially appropriate in this case because Nextel created whatever hypothetical conflict of interest may have arisen in August 2002 when it initially contracted with BCGI for prepaid wireless services. Nextel, not Freedom Wireless, should bear the consequences of that business decision.

###    1.    Disqualification Would Cause Freedom Wireless Substantial Harm.

In the midst of Nextel's repeated attempts to disqualify Quinn Emanuel, Freedom Wireless's interests must be weighed. After considering the positions of all interested parties, this Court should not disqualify Quinn Emanuel because such a drastic measure would seriously harm Freedom Wireless. It is well settled that, because harm to an innocent client (such as Freedom Wireless) frequently arises, disqualification motions should rarely be granted. *Adoption of Erica*, 426 Mass. at 58 (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)) ("Disqualification … is a drastic measure which courts should hesitate to impose except when absolutely necessary.").

As this Court well knows, Quinn Emanuel has represented Freedom Wireless in protecting its rights in the patents-in-suit for over five years. Substitute counsel could never enjoy the same wealth of experience. *Adoption of Erica*, 426 Mass. at 65 n.11 ("Disqualification has very serious consequences for both client and lawyer. The client must obtain new counsel, who must be brought 'up to speed.'") (internal citations omitted).

Significantly, Quinn Emanuel is Freedom Wireless's counsel of choice and this Court should not allow Nextel (a stranger to this case) to countermand Freedom Wireless's decision to retain the lawyers in that firm. Although the right to counsel of one's choice is not absolute, s*ee McCourt Co., Inc. v. FPC Properties, Inc*., 386 Mass. 145, 151 (1982), that right is properly recognized as extremely important. *See Gorovitz*, 394 Mass. at 249, 250 ("Implicit in the right of

self-representation is the right of representation by retained counsel of one's choosing.")
(internal citations omitted).

Moreover, even if Quinn Emanuel's experience could be replicated, the cost to Freedom
Wireless would be prohibitively expensive. To prosecute this complex patent case would require
successor counsel to analyze over five years of formal and informal discovery and fact-gathering,
literally tens of thousands of documents, sixty-two days of trial testimony and over five hundred
exhibits admitted into evidence in C.A. No. 00-12234-EFH. *See Gen-Cor, LLC v. Buckeye
Corrugated, Inc.,* 111 F.Supp. 2d 1049, 1057 (S.D. Ind. 2000) (disqualification would cost client
"a great deal of time and money") *Gould, Inc. v. Mitsui Mining & Smelting Co*., 738 F.Supp.
1121, 1126-27 (N.D. Ohio 1990) (same).

Additionally, paraphrasing the *Gen-Cor, LLC* court, "[w]hile disqualifying [Quinn
Emanuel] may add some small benefit to the attorney-client relationship between [Quinn
Emanuel] and [Nextel], it would destroy another attorney-client relationship, that of [Quinn
Emanuel] and [Freedom Wireless]." 111 F.Supp. 2d at 1057.

The substantial, and in a very real sense irreparable, harm that Freedom Wireless would
suffer is too great to justify disqualification.[15]

## 2.    Nextel Should Bear the Consequences of Its Business Decision.

The substantial harm that Nextel desires to visit on Freedom Wireless is egregious when
viewed in light of the fact that any conflict of interest that may exist was created by Nextel.
Nextel contracted with BCGI in August 2002 "to implement its prepaid services." Nextel

---

[15]    In its proposed Motion for Reconsideration (at 2), Nextel claims that it "proposed a potential solution where
Quinn Emanuel could continue to represent Freedom Wireless on issues that did not adversely affect Nextel."
The proposed "solution" is disingenuous. Nextel suggests that it might agree to permit Quinn Emanuel to
represent Freedom Wireless in the Federal Circuit appeal with "some specific restriction to damages issues."
*Id.*, Exhibit A, at 2. In other words, Nextel's "solution" would require Freedom Wireless to retain separate
counsel to handle the appeal of such central issues as validity, infringement, enforceability and the scope of the
Injunction Order, among many others. The result would inevitably be a duplication of efforts and legal fees.

Communications, Inc.'s and Nextel Operations, Inc.'s Memorandum in Support of its Motion to

Intervene for Limited Purpose (No. 1952-2); Declaration of Phillip Cooke at 2, ¶¶ 5, 6. The

general rule is that a party may not force disqualification of its adversary's attorney if the conflict

arose from the party's own business decision.  *See*, *e.g.*, *Gen-Cor, LLC,* 111 F.Supp. 2d at 1053-

54 (refusing to disqualify firm despite existence of conflict); *Gould, Inc.,*738 F.Supp. at 1126-27

(same).  Nextel, a stranger to this case, certainly should not be permitted to force disqualification

of Freedom Wireless's law firm of choice.  *See id.*

     In analogous situations, courts have frequently cautioned against the dangers of allowing

parties to create conflicts as a litigation tactic.  One court warned that the "Court must also

ensure that this 'conflict by acquisition', particularly since it arose mid-litigation, does not

become a means […] to strategically disadvantage [an adversary]."  *Installation Software Techs.,*

*Inc. v. Wise Solutions, Inc.* 2004 WL 524829, at *6 (N.D. Ill. 2004) (not reported in F.Supp.2d);

*see also SWS Financial Fund A v. Salomon Bros., Inc., 790* F.Supp. 1392, 1402-03 (N.D. Ill.

1992); *Gould*, *Inc.*, 738 F.Supp. at 1126-27.  In effect, that is what Nextel did by contracting with

BCGI for prepaid wireless services in August 2002 ("mid-litigation").

     This admonishment is particularly pertinent where the conflict involves a large,

sophisticated client (Nextel) and a national law firm (Quinn Emanuel).  For example, in *SWS*

*Financial Fund A*, defendant, a large brokerage firm that was a client of plaintiffs' counsel in

unrelated matters, sought disqualification of plaintiffs' counsel arguing that his representation of

plaintiffs was "directly adverse" to defendant.  The court found that the attorney violated Model

Rule 1.7, but that disqualification was not warranted.  *Id.* 1399-1400.  The court recognized the

realities of the modern corporate and legal landscapes, noting that a "court deciding a motion to

disqualify in a case involving mega-firms and mega-parties should not be oblivious to 'the way

that attorneys and clients actually behave in the latter part of the twentieth century, and what they have come to expect from each other in terms of the continuation or termination of their relationship.'" *Id.* at 1402 (internal citations omitted).  The court observed that the assumption that any conflict of interest automatically warrants disqualification would have a tremendous and deleterious influence on the judicial system by providing an incentive to create conflicts.  *Id.*  In fact, the *SWS Financial Fund A* court predicted that, if courts automatically granted disqualification motions wherever a conflict of interests existed, large, wealthy clients would intentionally create conflicts by spreading their legal business among top law firms to ensure that those firms could never represent an adversary.  *Id.*  Such an outcome certainly would pervert the intended purposes of the Rules of Professional Responsibility.[16]

### 3.    Disqualification of Quinn Emanuel Would Harm the Judicial System.

The use of disqualification motions as a litigation tactic burdens the administration of justice.  Here, Nextel's motions to disqualify in C.A. No. 00-12234-EFH and in this case have already wasted court resources both by disrupting the "efficient administration of justice" and by requesting relief that would unavoidably cause a substantial delay in this complex patent case while substitute counsel "gets up to speed."  *See Masiello v. Perini Corp.*, 394 Mass. 842, 850 (1985) (denying motion where party knew of potential conflict but delayed moving to disqualify counsel).  On the other hand, disqualification would yield no benefit to Nextel since there is no suggestion that Quinn Emanuel does not continue to zealously represent Nextel in a "wide-variety of matters."  *See SWS Financial Fund A*, 790 F.Supp. at 1403 (denying motion to disqualify despite violation of Rule 1.7 because no evidence that attorney would "be less than

---

[16]    The facts that Nextel watched from the sidelines for years while the parties in C.A. No. 00-12234-EFH engaged in extensive and hotly contested discovery and motions practice, which culminated in a fifty-one-day jury trial and an eleven-day bench trial, and that it was only after final judgment and the Injunction Order had been entered, that Nextel raised its newly-discovered "conflict of interests," smacks of a litigation tactic.

fully zealous").

Granting the Nextel Motion would also encourage other litigants to emulate Nextel's "tactical attempts to divest [Freedom Wireless] of [its] counsel of choice." *Gould, Inc.*, 738 F.Supp. at 1126. Courts have recognized that "[c]ourt resources are sorely taxed by the increasing use of disqualification motions as harassment and dilatory tactics," *Gorovitz*, 394 Mass. at 250 n.7(internal citations omitted), and that such tactics diminish the esteem of the judicial system in the public's eye, *Gould, Inc.*, 738 F.Supp. at 1126. For these reasons "[c]ourts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just as likely – encouragement of vexatious tactics, which increase public cynicism about the administration of justice." *Id.* (citing *Panduit Corp. v. All States Plastic Mfg. Co., Inc.,* 744 F.2d 1564, 1576-77 (Fed. Cir. 1984)).

Properly viewed, the Nextel Motion is no more than a crude litigation tactic. Granting it would reward such tactics, encourage like-minded litigants to emulate them, and lessen public respect for the judicial system. "When needless disqualification occurs as a result of these tactics, the very rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process." *Borman v. Borman*, 378 Mass. 775, 787 (1979). *See* Rule 1.7, cmt. 15 (conflict objection by opposing counsel "should be viewed with caution, …, for it can be misused as a technique of harassment").

## III.    The Motion For Reconsideration of the Pro Hac Vice Orders Should be Denied.

Nextel should not be allowed to intervene. In any event, Nextel's Motion for Reconsideration should be denied. Courts are justifiably "loathe [to reconsider their interlocutory orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt*

*Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).  Accordingly, a court should grant a motion for reconsideration "*only* when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order."  *Davis v. Lehane*, 89 F.Supp. 2d 142, 147 (D. Mass. 2000) (emphasis added).  Nextel does not, and cannot, argue a change in the law, new evidence or a clear error of law.  Nextel merely rehashes its Motion to Intervene for Limited Purpose (No. 1952) in C.A. No. 00-12234-EFH, without even attempting to show how this Court's orders in that case or this case were "clearly erroneous" or "manifestly unjust."[17] The Motion for Reconsideration is groundless.

## CONCLUSION

For all the foregoing reasons, Freedom Wireless asks this Court (once again) to deny Nextel's Motion to Intervene.

Respectfully submitted,

FREEDOM WIRELESS, INC.
By their attorneys

  /s/John Kenneth Felter
Paul F. Ware, Jr. (BBO # 516240)
John Kenneth Felter (BBO # 162540)
Douglas C. Doskocil (BBO # 558949)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109-2881
Tel:  (617) 570-1000
Fax:  (617) 523-1231

Dated:  December 27, 2005

---

[17] In essence, the Nextel Motion, which reiterates the same arguments previously rejected by this Court, is a motion for reconsideration and should be denied for the same reasons.  *See, e.g., Center for Biological Diversity v. Leavitt,* 2004 WL 2940597, *2 (N.D. Cal. 2004) (denying motion to intervene on the ground that it was a "belated and inappropriate request for the Court to reconsider its prior rulings").  Nextel's repetition of rejected arguments is an attempt to obtain a "second bite at the apple," and is a waste of this Court's and Freedom Wireless's time and resources.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

                Plaintiff,

          v.

BOSTON COMMUNICATIONS GROUP,
INC., ET AL.,

                Defendants.

CIVIL ACTION No. 05-11062-EFH

**EXHIBITS TO OPPOSITION OF FREEDOM WIRELESS, INC. TO NEXTEL
COMMUNICATIONS, INC.'S MOTION TO INTERVENE FOR LIMITED
PURPOSE**

# EXHIBIT A

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

FREEDOM WIRELESS v BOSTON COMM, 06-1220

---

Motion to Intervene for Limited Purpose

---

Richard McMillan, Jr.
Clifton S. Elgarten
Michael J. Songer
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Attorneys for Putative Intervenors
Nextel Communications, Inc. and
Nextel Operations, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FREEDOM WIRELESS V. BOSTON COMM

No. 06-1020

CERTIFICATE OF INTEREST

Counsel for Intervenors Nextel Communications, Inc. and Nextel Operations, Inc. Nextel Communications, Inc. and Nextel Operations, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is: Nextel Communications, Inc. and Nextel Operations, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: NA

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Nextel Communications, Inc., Nextel Finance Corp., and Sprint Nextel Corp.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Crowell & Moring LLP: Richard McMillan, Jr., Clifton S. Elgarten, and Michael J. Songer.

Burns & Levinson: Dennis J. Kelly and Victoria L. Walton.

November 14, 2005

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone No.: (202) 624-2500
Facsimile No.: (202) 628-8844
e-mail: rmcmillan@crowell.com

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ........................................................................................................ 5

    I.     INTERVENTION OF RIGHT SHOULD BE GRANTED ................... 5

          A.     Nextel Has Moved to Intervene in a Timely Manner ...................................................................................... 6

          B.     Nextel Possesses Legally Protectable Interests ........................ 12

          C.     Nextel's Interests Will be Substantially Impaired .................... 14

          D.     Nextel's Interest is Not Capable of Being ................................ 15

    II.    PERMISSIVE INTERVENTION SHOULD BE GRANTED ........................................................................................ 18

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

### Cases

*Additive Controls & Measurements Sys., Inc. v. Flowdata, Inc.,*
  96 F.3d 1390 (Fed. Cir. 1996) ............................................................... 17

*Conservation Law Found. of New England, Inc. v. Mosbacher,*
  966 F.2d 39 (1st Cir. 1992) ..................................................................... 6

*Cotter v. Mass. Ass'n of Minority Law Enforcement Officers,*
  219 F.3d 31 (1st Cir. 2000) ................................................................... 16

*Cruz v. County of DuPage,*
  1997 WL 370194 (N.D. Ill. 1997) ......................................................... 13

*Fiandaca v. Cunningham,*
  827 F.2d 825 (1st Cir. 1987) ................................................................... 7

*Haworth, Inc. v. Steelcase, Inc.,*
  12 F.3d 1090 (Fed. Cir. 1993) ................................................................. 5

*In re Bushkin Assoc., Inc.,*
  864 F.2d 241 (1st Cir. 1989) ................................................................. 15

*In re Thompson,*
  965 F.2d 1136 (1st Cir. 1992) ............................................................... 18

*In re Yarn Processing Patent Validity Litig.,*
  530 F.2d 83 (5th Cir. 1976) ................................................................... 13

*Jansen v. City of Cincinnati,*
  904 F.2d 336 (6th Cir. 1990) ................................................................. 11

*Mangual v. Rotger-Sabat,*
  317 F.3d 45 (1st Cir. 2003) ..................................................................... 5

*Michael H. v. Gerald D.,*
  491 U.S. 110 (1989) ............................................................................... 17

*Southwest Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001)............................................................12

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972) ......................................................................15

*UAW v. Scofield,*
    382 U.S. 205 (1965) ....................................................................5, 17

*Utahns for Better Transp. v. U.S. Dept. of Transp.,*
    295 F.3d 1111 (10th Cir. 2002)......................................................16

**Other Authorities**

18A Wright, Miller, & Cooper, Federal Practice and Procedure:
    Jurisdiction 2d § 4449 (2002).........................................................17

**Rules**

Fed. R. Civ. P. 24(b) .........................................................................18

## INTRODUCTION

By this motion, Nextel Communications, Inc. and Nextel Operations, Inc. ("Nextel"),[1] a non-party in the case below, seeks to intervene solely to address two issues that arose as the case in the district court was concluding.

*First*, Nextel seeks to clarify or limit the scope of the injunction that the district court issued so that it will not extend to Nextel, a non-party. *See* Ex. A (Injunction Order). In the district court, Plaintiff-Appellant Freedom Wireless, Inc. ("Freedom") pursued a theory of "joint infringement" that depended on combined actions of multiple parties to make out an infringement. Thus, actions of principal Defendant-Appellee Boston Communications Group, Inc. ("BCGI") were not separately challenged as infringing in and of themselves. Rather, it was only the "joint" actions of several "pairs" of defendants that were found infringing. On four separate verdict sheets, the jury found that the joint actions of BCGI and (1) Cingular Wireless, LLC, (2) AT&T Wireless PCS, (3) CMT Partners, and (4) Western Wireless Corp., infringed the patents. *E.g.*, Ex. B (Jury Verdict).

---

[1]    Nextel is a national telecommunications company which recently merged with a subsidiary of Sprint Corporation to form Sprint Nextel Corporation ("Sprint Nextel"), the third-largest wireless service provider in the United States. Nextel Communications, Inc. is a subsidiary of Sprint Nextel; Nextel Operations, Inc. is an indirect wholly-owned subsidiary of Nextel Communications, Inc. and operates the wireless network here in issue.

Nextel was *not* part of these proceedings.  In fact, Freedom's claims of joint infringement involving BCGI and Nextel – allegedly arising from Nextel's contract with BCGI for services in connection with billing for prepaid wireless phone services – have become the subject of a separate lawsuit brought by Freedom earlier this year.  *See Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, No. 05-11061-EFH (D. Mass. filed May 20, 2005) ("Nextel Litigation"); *see also Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, No. 05-11062-EFH (D. Mass. filed May 20, 2005) ("Alltel Litigation").

Plaintiff Freedom nevertheless claims that the injunction in this case already binds Nextel.  When Freedom's construction of the trial court's joint infringement injunction was challenged below, the trial court rejected the request to clarify, without opinion.  Nextel seeks to intervene here to confine the trial court's injunction to its proper limits and to stay the injunction as to Nextel pending the conclusion of the appeal.  The motion to stay is being filed concurrent with this motion to intervene.

*Second*, Nextel seeks to intervene to address a collateral matter, namely, the disqualification of one of Freedom's principal law firms from their continued participation in this case.  Throughout the proceedings below, Freedom was represented by a firm that in a number of other substantial and ongoing matters

- 2 -

also represents Nextel.[2] Throughout these proceedings, that firm apparently sought to walk a careful line on its ethical duties – pursuing only joint infringement theories that did *not* involve Nextel – but it abruptly crossed that line when it pursued an interpretation of the court's injunction that would extend the injunction to the relationship between BCGI and Nextel.[3]

Unless disqualified, that firm is apparently prepared to continue to pursue that theory on this appeal. That argument has put the firm in a position directly adverse to a current client, Nextel. Nextel seeks to intervene to seek disqualification.

As shown below, all of the standards for intervention on these limited issues are met. When these issues arose in the district court with issuance of the Injunction Order, Nextel immediately moved to intervene for the limited purpose of clarifying or seeking other appropriate relief relating to the court's injunction.

---

[2]    Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") has represented Nextel since 1993, has received in the past several years millions of dollars from Nextel for its legal work, and continues to represent Nextel in a wide variety of matters. Quinn Emanuel issued a press release the day following release of the district court's injunction order, suggesting that the Injunction Order would affect companies such as Nextel.

[3]    The firm has exacerbated this conflict by recently filing the Alltel Litigation, simultaneous with and identical to the Nextel Litigation, in the same court and under circumstances where consolidated or coordinated proceedings will inevitably put the firm in further conflict with Nextel.

Ex. C (Oct. 25, 2005 Nextel's Motion and Memorandum to Intervene for Limited Purpose). On November 9, 2005, the district court denied Nextel's motion to intervene, as well as BCGI's motion to stay the injunction. Nextel has filed a notice of appeal from the denial of that motion to intervene.[4]

Nextel is filing simultaneously herewith its motion to stay. Nextel also attaches hereto the motion, supporting memorandum, and declarations that it sought to file as intervenor in the district court.[5] If intervention is permitted, Nextel will file a further brief addressing the limited issues for which it seeks intervention, in accordance with the briefing schedule to be imposed by this Court. Nextel has discussed this motion with the other parties to this appeal. Freedom objects and intends to respond.

---

[4] Nextel believes that the most expeditious and efficient means of addressing these issues is by intervening in this appeal. Although it has separately appealed from the trial court's denial of its motion to intervene, it is relatively clear that it would be redundant to press both appeals separately. Thus, this Court may choose to consolidate the appeals or take some other action to allow the issues to be addressed most efficiently.

[5] *See* Ex. C; Ex. D (Declaration of Phillip Cooke); Ex. E (Declaration of Terry Koehler); Ex. F (Declaration of Jamia Williams); Ex. G (Declaration of Brian Koide).

- 4 -

## ARGUMENT

Nextel moves to intervene both as of right and permissively. Under either standard, intervention is both warranted and proper.

## I.    INTERVENTION OF RIGHT SHOULD BE GRANTED

There is no separate rule for intervention in the Federal Rules of Appellate Procedure. Rather, the Supreme Court has held that the policy behind Rule 24 of the Federal Rules of Civil Procedure governs intervention at the appellate level. *UAW v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Rule 24(a) of the Federal Rules of Civil Procedure sets forth the following standard for intervention as of right:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).

This Court applies the law of the regional circuit to procedural matters, including motions to intervene. *Haworth, Inc. v. Steelcase, Inc.*, 12 F.3d 1090, 1092 (Fed. Cir. 1993). The First Circuit, from which this appeal arises, permits appellate intervention. *Mangual v. Rotger-Sabat*, 317 F.3d 45, 62 (1st Cir. 2003) ("[W]e have the discretion to permit intervenors at the appellate level, and we

- 5 -

choose to do so here."). The First Circuit has established that a party seeking to

intervene as of right under Rule 24(a)(2) must satisfy four elements:

1.    The application must be timely . . .;

2.    The applicant must claim an interest relating to the
      property or transaction which is the subject of the action;

3.    Disposition of the action may, as a practical matter,
      impair or impede that applicant's ability to protect the
      interest; and

4.    The applicant must show that the interest will not be
      adequately represented by existing parties.

*Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41

(1st Cir. 1992). Because Nextel's application satisfies each of the four elements,

Nextel is entitled to intervention as of right, and the Court should grant its motion.

A.    <u>Nextel Has Moved to Intervene in a Timely Manner</u>

The Injunction Order was not issued until post-verdict, and Nextel has

moved in timely fashion, both below and in this Court, following receipt of that

Order. While post-trial requests to intervene are unusual, the First Circuit has

specifically acknowledged that circumstances may well warrant such intervention:

> It is true that a motion to intervene must be filed in a
> timely fashion, and that in this case, intervention was
> sought only after the conclusion of the trial. However,
> the point to which a suit has progressed, while relevant,
> is not the dispositive factor in determining timeliness.
> Rather, "[t]imeliness is to be determined from all the
> circumstances." Furthermore, several courts have held
> that the standards of timeliness for a Rule 24(a) motion
> are less strict than for a Rule 24(b) motion because

- 6 -

greater interests are at stake in the former case.

*Fiandaca v. Cunningham*, 827 F.2d 825, 833-34 (1st Cir. 1987) (internal citations omitted) (granting motion to intervene – after conclusion of trial – where applicants moved to intervene "soon after learning that their interests may be affected...").

In considering "all the circumstances" relating to timeliness, First Circuit courts typically consider four factors:

(1) the length of time the applicants knew, or reasonably should have known, of their interest before they petitioned to intervene;

(2) the prejudice to existing parties due to applicants' failure to petition for intervention promptly;

(3) the prejudice that applicants would suffer if they were not allowed to intervene; and

(4) any unusual circumstances militating either for or against intervention.

*Id.* at 834 (internal citations omitted).

Before the filing of the Injunction Order there was no cause for Nextel to intervene in the litigation below. The district court let Freedom pursue only the "joint infringement" claims involving the named defendants, and the court repeatedly and consistently denied any attempts by Freedom to expand upon the relatively narrow focus of the litigation. The so-called joint infringement claims pursued by Freedom rested entirely on the theory that the *combined* actions of

- 7 -

BCGI and at least one other party – more precisely, BCGI and each of the wireless

defendants – infringed Freedom's patents.

Further, in a letter dated January 2005, Freedom itself made clear to Nextel

that Nextel's interests were not implicated this case:

> As you may know, Freedom Wireless has patent infringement litigation pending against Boston Communications Group, Inc. and a number of wireless carriers. <u>Freedom Wireless, Inc. v. Boston Communications Group, Inc. et al.</u>, Case No. 00-CV-12234-EFH, United States District Court of Massachusetts (the "BCGI Suit"). In the BCGI Suit, Freedom Wireless is seeking damages for infringement . . . *by the defendants* in their provision of prepaid wireless communications services, as well as an injunction prohibiting further infringing activity.
>
> * * *
>
> Based on information that we have obtained that Nextel Communications is a vendor of prepaid wireless services, it appears that Nextel Communications may be utilizing technology covered by one or more of the Freedom Wireless Patents . . .
>
> * * *
>
> Freedom Wireless has no interest in *further litigation* at this time, and understands that many companies would prefer to wait for the outcome of the BCGI Suit before making any determination as to the need for a license.

Ex. H (Jan. 25, 2005 Letter from Bramson to Donahue) at 1-2 (emphasis added).

Nextel also reasonably believed that Quinn Emanuel, its regular counsel, would act

as counsel to Freedom only in an ethical manner and not adverse to Nextel. Thus,

Nextel had no reason to intervene in this case before trial.

The district court, for its part, also declined to allow Freedom to inject any

issues concerning Nextel into the case.  To the contrary, it ruled that if Freedom

wished to pursue a claim of joint infringement resulting from the combined actions

of BCGI and any other wireless carrier, it would have to file a follow-on action.

The Court was quite specific in this regard, holding that the case before it "is not

an adjudication on the merits of any claims arising from conduct involving non-

defendant carriers . . . Freedom may pursue claims arising from conduct involving

non-defendant carriers in a separate action." Ex. I (Apr. 27, 2005 Order) at 1-2.

Freedom, in fact, did so, filing a separate action against BCGI and Nextel on May

20, 2005.  *See* Nextel Litigation, No. 05-11061-EFH (D. Mass. filed May 20,

2005); *see also* Alltel Litigation, No. 05-11062-EFH (D. Mass. filed May 20,

2005).  Nextel had every reason to believe that its rights would be determined in

that action, not through the back door (by way of an overly-expansive injunction),

in this one.

The Injunction Order, although dated October 12, 2005, was not entered

until October 17, 2005, at which time Nextel became aware of the Order. Ex. D ¶

4. However, when it sought this injunction, Freedom – in its briefs to the district

court – had assured the district court that the scope of its proposed injunction

would *not* extend beyond the "joint infringements" at issue in this case, and would

only address the actions of defendants found to infringe Freedom's patents:

> Freedom is not seeking to enjoin any conduct that the
> Court ruled was beyond the scope of this action, and that

- 9 -

was not presented at trial. Freedom is only seeking to
enjoin the conduct that was found to infringe Freedom's
patents-in-suit . . . Freedom is only seeking to enjoin
*defendants* from performing the same activities with the
same implementations *that were actually found to
infringe* Freedom's patents-in-suit.

Ex. J (Freedom's Reply Brief in Further Support of its Motion for Injunctive

Relief) at 6 (emphasis added).

However, shortly after issuance of the injunction, Quinn Emanuel issued a

press release asserting a contrary view:

"The injunction prohibits any of the defendants from
making, using, or selling prepaid wireless services based
on the systems found to infringe, either by themselves or
jointly *with any other companies*," said Bill Price, lead
trial lawyer for the plaintiff and chair of Quinn Emanuel
Urquhart Oliver & Hedges LLP's trial practice. It thus
prohibits BCGI *and its current carrier customers,
including Alltel and Cincinnati Bell, Inc. (CBB), which
were named in a recent patent infringement lawsuit by
Freedom Wireless, from selling prepaid wireless services
using the infringing BCGI systems.*[6]

Because the allegations of infringement in the Complaints filed by Freedom

against Nextel, Alltel, Cincinnati Bell, and others are substantially identical,

---

[6]     Ex. K (Press Release) at 1 (emphasis added). While not mentioning Nextel
by name, the press release specifically identifies other carriers, including Alltel
Corp. ("Alltel") and Cincinnati Bell, Inc. ("Cincinnati Bell"), which like Nextel
are not defendants in the litigation below. Like Nextel, Alltel and Cincinnati Bell have
also been sued in a follow-on litigation which is pending before this Court. *See*
Alltel Litigation, No. 05-11062-EFH (D. Mass. filed May 20, 2005).

counsel for Nextel promptly asked Quinn Emanuel to confirm that it had not

sought or obtained on behalf of Freedom an injunction that adversely affected the

interests of Nextel.[7]  Quinn Emanuel promptly responded, acknowledging that

Nextel was a longtime and substantial client of Quinn Emanuel, but claiming that

the firm had not analyzed whether the injunction reaches Nextel.[8]

Nextel immediately filed a timely motion to intervene at the district court

level on October 25, 2005, within approximately a week of first learning of the

injunction (on October 17) and of becoming aware of the press release (on October

18).

In sum, Nextel acted promptly.  There can be no credible claim of "delay."

Moreover, because this intervention is directed at the scope of the injunction – and

issues which arose after trial – there can be no plausible claim of prejudice. *See*

*Jansen v. City of Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990) ("Approximately

two weeks elapsed between the time in which the proposed intervenors learned of

their need to intervene and when they filed their motion to intervene.  Certainly,

this short period does not support a finding of undue delay.")  In this Court, Nextel

---

[7]     Ex. L (Oct. 19, 2005 Letter from McMillan to Urquhart).

[8]     Ex. M (Oct. 19, 2005 Letter from Urquhart to McMillan); *see also* Ex. N
(Quinn Emanuel Representative Clients) (stating that Quinn Emanuel represents
Nextel in intellectual property litigation, antitrust, class action, and appellate
matters).

- 11 -

would now be intervening at a time when all parties are first briefing and arguing

the issues, according to the schedule to be set by this Court.

Under the circumstances, Nextel has clearly moved in a timely fashion.

**B.    Nextel Possesses Legally Protectable Interests
Relating to the Injunction and Disqualification**

The First Circuit has recognized that a protectable interest requires that "the

intervenor's claims must bear a 'sufficiently close relationship' to the dispute

between the original litigants." *Mosbacher*, 966 F.2d at 42.

Nextel has two direct interests in this case, both of which are recognized as

proper bases for intervention as of right. First, Nextel has a direct interest in the

injunction to the extent that it would be construed to bar the continued relationship

of BCGI and Nextel. Nextel has relied on BCGI's services to run its prepaid

wireless phone service for several years under the brand "Boost Mobile." Ex. D ¶¶

5-6. Nextel uses BCGI's services for all of the prepaid wireless phone calls made

by its Boost Mobile customers in the United States. *Id.* ¶ 6. Prohibiting Nextel

from utilizing BCGI services within the period specified in the injunction would

seriously impact Nextel's ability to offer prepaid wireless phone calls. *Id.*

Accordingly, Nextel has a significant protectable interest. *See Southwest Ctr. for*

*Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("An applicant

demonstrates a 'significantly protectable interest' when 'the injunctive relief

- 12 -

sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'").

Second, Nextel has a direct interest in the disqualification issue. The relationship between a client and his or her law firm is fiduciary in nature; the client has a direct interest in insuring that its law firm not take positions adverse to the client in violation of the ethical principles that control that relationship.[9] The nature of the interest being protected virtually compels Nextel to intervene in order to protect that interest, now that the actions of Quinn Emanuel directly adverse to Nextel have been exposed. There is no other effective way to protect the underlying interest other than through intervention and a motion to disqualify.[10] Several courts have recognized that a party may intervene as of right to pursue disqualification issues. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (noting that non-party "could have intervened as of right under Rule 24(a) of the Federal Rules of Civil Procedure, and it could have pressed for the disqualification of" attorney); *Cruz v. County of DuPage*, 1997 WL 370194,

---

[9]    Nextel believes Quinn Emanuel must also separately be disqualified as counsel in the Alltel Litigation, an issue that will be the subject of a separate motion in the follow-on litigation in the lower courts.

[10]    The issue is especially appropriate for intervention here because it is entirely collateral to the merits of the underlying dispute, and thus cannot be addressed by the parties.

at *4-6 (N.D. Ill. 1997) (allowing non-party to intervene for purposes of ruling on

non-party's motion to disqualify counsel due to conflict of interest under Rule 1.7

of the Rules of Professional Conduct).

### C.    Nextel's Interests Will be Substantially Impaired

Once it is determined that an applicant for intervention of right has a legally

protectable interest, the First Circuit looks to see whether that interest will be

impaired by the action. *Mosbacher*, 966 F.2d at 41. Both of Nextel's two legally

protectable interests will be substantially impaired unless Nextel is allowed to

intervene in the action.

First, Nextel obviously has an interest in lifting or limiting an injunction that

is currently restricting its business activities. Freedom's interpretation of the

injunction – apparently acquiesced in by the district court -- that it applies to

Nextel's relationship with BCGI, impacts Nextel's ability to operate its prepaid

wireless phone service. *See* Ex. D ¶ 6. Transitioning to another comparable

service provider cannot reasonably be accomplished properly, with appropriate

testing and controls, within the injunction's 90-day time frame, but rather will

likely take several months longer. *Id.* ¶ 7. Moreover, in an industry where

reliability of service is paramount, shutting down Nextel's prepaid wireless phone

service – even for a few hours, let alone a few months – would irreparably harm

the Boost Mobile brand and jeopardize Nextel's prepaid wireless client base. *Id.* ¶

8. Thus, Nextel's direct interest in the injunction bears "a 'sufficiently close relationship' to the dispute between the original litigants," *Mosbacher*, 966 F.2d at 42, and is sufficient to sustain a right to intervene under Rule 24(a)(2).

Second, Nextel has a profound interest in the disqualification issue since Nextel's right to the loyalty of its counsel is being violated on an ongoing basis. By obtaining an injunction that purports to apply to all BCGI customers, Quinn Emanuel has acted in a manner directly adverse to a current client. Such a conflict of interest injures not only Nextel, but the integrity of the judicial system as a whole. *In re Bushkin Assoc., Inc.*, 864 F.2d 241, 246 (1st Cir. 1989) (attorney disqualification can be necessary "to protect the integrity of the judicial process, enforce its rules against transgressors, and maintain public confidence in the legal profession."). This ethical violation will go unchallenged if Nextel's motion to intervene is not granted.

### D.     Nextel's Interest is Not Capable of Being Adequately Represented by the Current Parties

Under First Circuit law, "[a]n intervenor need only show that representation *may be* inadequate, not that it is inadequate." *Mosbacher*, 966 F.2d at 44 (emphasis added) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Here, the existing parties are incapable of adequately representing Nextel.

First, Nextel is concerned only with the extension of the injunction in this case to itself, a non-party. None of the other wireless carrier defendants (*e.g.*,

- 15 -

Cingular) has any interest in limiting the scope of the injunction in this fashion. To the contrary, if the injunction reaches them, they should be all too happy to have it reach a competitor, Nextel, as well, notwithstanding that Nextel has not been found to have engaged in any wrongdoing.

As for BCGI, its interests in this appeal are much broader. BCGI will undoubtedly be devoting more efforts on this appeal to the infringement and invalidity issues rather than the precise scope of the injunction. Moreover, there is no assurance that BCGI will act in Nextel's best interest, whether in the short or long-term future. Nextel and BCGI are separate businesses, each interested in their own financial well-being. While the financial interests of BCGI and Nextel might coincide on issues concerning the scope of the injunction, they might not. BCGI could, at any time, agree to settle, rather than fight. Adequate representation cannot be present where such potential for a divergence of interest exists. *See Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 36 (1st Cir. 2000) ("[T]here is enough likelihood of conflict or divergence between the intervention applicants and the named defendants to overcome the final adequate-representation proviso."); *accord Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("'The possibility that the interests of the applicant and the parties may diverge 'need not be great' in order to satisfy this minimal burden [of inadequate representation].'")

- 16 -

Second, no party can adequately represent Nextel's interest in vindicating its own constitutional rights – namely, the district court's entry of an injunction against a non-party, Nextel, which was not present before the court. Our judicial system is founded upon a "deep-rooted historic tradition that everyone should have his own day in court." 18A Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4449, p. 346 (2002). Enjoining conduct by a non-party such as Nextel violates the "general rule that a court may not enter an injunction against a person who has not been made a party to the case before it." *Additive Controls & Measurements Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996). This constitutional right is intensely personal. *Michael H. v. Gerald D.*, 491 U.S. 110, 147 (1989) (Brennan, J., dissenting) ("procedural due process is, by and large, an individual guarantee"). As such, Nextel is the proper party to present the constitutional issues concerning the scope of the court's injunction.

Third, as noted above, no party presently involved in the litigation can adequately represent Nextel for purposes of its motion for disqualification of Quinn Emanuel as counsel for Freedom. This issue too can be vindicated only by Nextel and is unlikely to be pursued (even assuming that it could be pursued) by any other party.

- 17 -

## II.    PERMISSIVE INTERVENTION SHOULD BE GRANTED

Should the Court determine that the criteria for intervention as of right are not met, the Court -- in the alternative -- should allow Nextel to intervene under the principle of permissive intervention.  As noted above with respect to intervention as of right, the Supreme Court has held that the policy of Federal Rule of Civil Procedure 24 governs appellate intervention.  *UAW v. Scofield*, 382 U.S. at 217 n.10.  Rule 24(b) of the Federal Rules of Civil Procedure sets forth the standard for permissive intervention:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).  The First Circuit requires a party seeking to intervene permissively under Rule 24(b) to satisfy three elements:

> (1)    "[T]he applicant's claim or defense and the main action have a question of law or fact in common,"
>
> (2)    "the applicant's interests are not adequately represented by an existing party, *and*"
>
> (3)    "intervention would not result in undue delay or prejudice to the original parties."

*In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (emphasis in original).

Nextel meets all three requirements.

- 18 -

First, Nextel seeks intervention for purposes of staying the Injunction Order, clarifying its scope, and disqualifying Quinn Emanuel. The scope of the injunction implicates each of these issues – and is indeed intertwined and central to BCGI's appeal – and the issues of intervention thus share important issues of law and fact with the remaining issues before this Court.

Second, as described above, Nextel's interests are not adequately represented by any other party.

Finally, as also described above, Nextel's intervention will not unduly delay or prejudice any other parties.

Therefore, even if mandatory intervention is not found to be appropriate, permissive intervention should be allowed.

- 19 -

## CONCLUSION

Nextel's motion to intervene for limited purposes should be granted.


November 14, 2005                    Respectfully submitted,

                                     NEXTEL COMMUNICATIONS, INC.
                                     AND NEXTEL OPERATIONS, INC.
                                     By its attorneys,


                                     Richard McMillan, Jr.
                                     Clifton S. Elgarten
                                     Michael J. Songer
                                     CROWELL & MORING, LLP
                                     1001 Pennsylvania Avenue, N.W.
                                     Washington, D.C.  20004-2595
                                     Telephone: (202) 624-2500
                                     Facsimile:  (202) 628-5116

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, I caused true and correct copies

of the Motion to Intervene for Limited Purpose to be served on the following by

third-party commercial carrier for overnight delivery:

AT&T WIRELESS PCS, CINGULAR WIRELESS LLC, and CMT PARTNERS:
　　　　Claudia Wilson Frost
　　　　Mayer, Brown, Rowe & Maw, LLP
　　　　700 Louisiana Street, Suite 3600
　　　　Houston, TX 77002
　　　　Telephone: (713) 547-9636

BOSTON COMM. GROUP, INC. and WESTERN WIRELESS CORP.:
　　　　Donald R. Dunner
　　　　Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
　　　　901 New York Avenue, N.W., Suite 1100,
　　　　Washington, DC 20001-4413
　　　　Telephone: (202) 408-4062

FREEDOM WIRELESS, INC.:
　　　　Marshall M. Searcy, III
　　　　Quinn Emanuel Urquhart Oliver & Hedges, LLP
　　　　865 South Figueroa Street, 10th Floor,
　　　　Los Angeles, CA 90017
　　　　Telephone: (213) 443-3152

ROGERS WIRELESS, INC.:
　　　　Mark D. Wegener
　　　　Howrey LLP
　　　　1299 Pennsylvania Avenue, N.W.
　　　　Washington, DC 20004-2402
　　　　Telephone: (202) 783-0800

Brian M. Koide

# EXHIBIT B

06-1020, -1078, -1079

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

---

Freedom Wireless, Inc.,

*Plaintiff/Counterclaim Defendant-
Appellant,*

v.

Boston Communications Group, Inc., et al.,

*Defendant/Counterclaimant-
Cross Appellant.*

---

Reply in Support of Motion to Intervene for Limited Purpose

---

Richard McMillan, Jr.
Clifton S. Elgarten
Michael J. Songer
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile:  (202) 628-5116

*Attorneys for Movants-
Cross-Appellants
Nextel Communications, Inc. and
Nextel Operations, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FREEDOM WIRELESS V. BOSTON COMM

Nos. 06-1020, -1078, -1079

CERTIFICATE OF INTEREST

Counsel for Movants-Cross Appellants Nextel Communications, Inc. and Nextel Operations, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is: Nextel Communications, Inc. and Nextel Operations, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  NA

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  Nextel Communications, Inc., Nextel Finance Corp., and Sprint Nextel Corp.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Crowell & Moring LLP:  Richard McMillan, Jr., Clifton S. Elgarten, and Michael J. Songer.

Burns & Levinson:  Dennis J. Kelly and Victoria L. Walton.

November 28, 2005

*Richard McMillan*

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone No.:  (202) 624-2500
Facsimile No.:  (202) 628-8844
e-mail:  rmcmillan@crowell.com

# TABLE OF CONTENTS

**Page**

I.    Nextel's Need For Intervention Arose In Connection
With The Determination Of The Scope Of The Injunction
And Is Not "Excessively Late".................................................................... 1

II.   Nextel's Distinct Interests In The Scope Of The Injunction
Are Not Adequately Represented By Other Parties To The Appeal ........................ 5

III.  Nextel Has A Particularized Interest In Issues Concerning
Freedom's Counsel's Conflict Of Interest ................................................. 6

    A.    There Is No Rule Against Allowing Intervenors
Raising Collateral Issues Of The Type At Issue Here........................ 6

    B.    Nextel's Motion Cannot Be Rejected Because
"There Is No Basis to Disqualify Quinn Emanuel" ............................ 8

CONCLUSION................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Grand Jury Subpoena,*
        274 F.3d 563 (1st Cir. 2001)...................................................................................7

*International Rectifier Corp. v. Samsung Elec. Co.,*
        361 F.3d 1355 (Fed. Cir. 2004) ..............................................................................4

*International Rectifier Corp. v. Samsung Elec. Co.,*
        424 F.3d 1235 (Fed. Cir. 2005) ..............................................................................4

*United States  v. City of New York,*
        198 F.3d 360 (2d Cir. 1999) ...............................................................................6-7

Nextel Communications Inc. and Nextel Operations Inc. ("Nextel") submit this brief Reply to Freedom Wireless, Inc.'s ("Freedom's") Opposition to Nextel's Motion To Intervene For Limited Purposes.

**I.     Nextel's Need For Intervention Arose In Connection With The Determination Of The Scope Of The Injunction And Is Not "Excessively Late."**

Freedom's principal theory is that Nextel's motion to intervene is "excessively late" because Nextel's "business interest" in this case arose when it first contracted with Boston Communications Group, Inc. ("BCGI") in 2002, and Nextel monitored this case once Freedom filed a separate case against BCGI and Nextel earlier this year. Freedom confuses the nature of Nextel's *business* interests – which Nextel has in many business and litigation activities that could affect it – with Nextel's direct *legal* interest in these proceedings now, which form the basis for Nextel's requested intervention as of right. Nextel's legal interest, at issue here, arose when Freedom asserted that the district court's injunction directly barred conduct that was not the subject of the case, and which had not been determined to be infringing, namely, the combined actions of BCGI and Nextel. Nextel has a clear, cognizable legal interest in not having an injunction extend to its activities.

Although Freedom professes astonishment that Nextel did not intervene years ago, Freedom told Nextel in January 2005 that it had no interest in litigating with Nextel and expected Nextel to feel the same. *See* Motion to Intervene at 8. Indeed, more interesting than what Freedom does say in its brief is what is does not say: Freedom fails to explain how Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") – Nextel's

principal West Coast counsel for years -- could rationally conclude that Nextel's legal

interests were *not* being directly impacted in this case, while Nextel, from a less informed

position, was supposed to have concluded just the opposite.

These unexplained incongruities highlight the difference between the business

interest in this case that Freedom claims Nextel should have recognized long ago, and the

specific injury to cognizable legal interests, arising from Freedom's effort to extend the

injunction to encompass the ongoing contractual relationship between Nextel and BCGI,

that prompted Nextel to intervene. A party may have a *business* interest in monitoring a

patent case if someone with whom it is doing business is a defendant and the resolution

of the suit could affect the supply of a product or service. It may similarly have a

*business* interest in the suit if conduct that parallels its own conduct is alleged to infringe

and a party wants to understand why. But the law does not insist that such a party

intervene when its direct *legal* interests are *not* at issue, *i.e.*, where its own conduct was

not being judged. This is particularly clear in an extreme case like this where the court

had expressly held that the BCGI-Nextel relationship was not put at issue by Freedom's

joint infringement theories here.

Freedom's opposition to the motion to intervene ducks these core issues, and

instead argues from the unstated assumption that Freedom put Nextel's alleged "joint

infringement" with BCGI at issue from day one. But this is demonstrably false.

Freedom chose to pursue a case in which Freedom asserted that no single party infringed

by its own actions. The infringement claims were based on the combined actions of

specific pairs of parties, named defendants in this suit. To be sure, Nextel properly

- 2 -

monitored the proceedings – once it was sued directly in a separate lawsuit – so that it

would be alert to any turn of events in which its activities with BCGI were called into

question.  But without such a turn of events, Nextel had no reason or basis to intervene.

Indeed, the district court's orders initially made the limits of this lawsuit under

Freedom's joint infringement theory quite explicit.  The district court ruled that Freedom

could only proceed against the named pairs of "joint infringers," the specific parties to

the case.  *See* Motion to Intervene at 9.  This, in turn, prompted Freedom to file a separate

action against BCGI and Nextel.  *Id.*  Nextel properly expected issues concerning its

combined actions with BCGI to be judged in that action, not this one.

Finally, even in connection with the briefing in this case concerning the wording

of the injunction, there was no reason for Nextel to intervene.  The injunction was to

reflect findings of specific joint infringements by named pairs of defendants; Freedom

assured the district court that the proposed injunction would *not* extend beyond "the same

activities with the same implementations *that were actually found to infringe* Freedom's

patents-in-suit."  Ex. J to Motion to Intervene at 6. (emphasis added).  Freedom did not

flip flop on that limitation until *after* the injunction was issued, when it took the position

that the injunction encompassed the combined actions of BCGI and non-parties to this

suit, whose conduct had never been subject to this lawsuit.

Significantly, Freedom did nothing to discourage Nextel's belief that

notwithstanding whatever indirect interest Nextel may have had in this case, this case

would not *directly* affect Nextel.  Freedom's January 25, 2005 letter to Nextel did not

suggest that the combined activities of BCGI-Nextel were being adjudged in this case.

- 3 -

*See* Motion to Intervene at 8.  And Nextel and Sprint had reason to feel specially assured: one of their regular counsel was acting as counsel for Freedom in this case and was ethically barred from taking action directly adverse to them.  *See infra* Section III.C. Nextel had every reason to understand that this case would *not* determine the propriety of its combined activities with BCGI.

Not until after the injunction issued, and in connection with the motions in the district court to clarify the scope of the injunction, did Nextel have reason to intervene to protect a legal interest.  There is nothing inappropriate about a party seeking to intervene when it suddenly finds itself subject to a court's injunction in connection with an action in which the conduct to be enjoined had *not* been at issue in the suit.  *See, e.g., International Rectifier Corp. v. Samsung Elec. Co.*, 361 F.3d 1355, 1362 (Fed. Cir. 2004) (discussing non-party intervenor's motion in the district court to "clarify, vacate or modify the Permanent Injunction" to make clear that it did not reach its conduct and activities).[1]

Freedom actually disputes none of this, but sees no injustice in binding Nextel to

---

[1]    IXYS is referred to as the non-party appellant in the caption of this case. 361 F.3d at 1355.  A subsequent decision of this Court dealing with the same proceedings explains the procedural posture of the case in more detail.  424 F.3d 1235, 1240-41 (Fed. Cir. 2005).  It clearly appears that IXYS was not a party to the original infringement action against Samsung, which resulted in an injunction against Samsung and others acting in concert with Samsung.  When the plaintiff brought contempt proceedings, IXYS intervened to "clarify, vacate or modify" the injunction.  361 F.3d at 1357.  The district court denied the motion to modify the injunction, at which point IXYS appealed the denial of its motion to this Court.  This Court reversed, holding that IXYS, "as a non-party, cannot be bound by the Permanent Injunction."  *Id.* at 1362.

- 4 -

the injunction, or compelling Nextel to pay royalties. But if it is to be enjoined, Nextel

should be permitted to appear in this Court to defend itself.

## II.    Nextel's Distinct Interests In The Scope Of The Injunction Are Not Adequately Represented By Other Parties To The Appeal.

Freedom asserts that the interests of BCGI and Nextel are aligned, noting that

BCGI and Nextel have sought a similar partial stay of the injunction. But as a *non-party*

that suddenly finds its own continuing conduct subject to a federal injunction, Nextel has

a specific legal interest distinct from that of any other party. No other party is in a

position to argue the constitutional and jurisprudential impropriety of extending an

injunction to cover actions of a *non-party*.

Moreover, both BCGI's interests, and those of the other carrier defendants,

diverge significantly from Nextel's. Nextel is interested in pursuing issues in the

application of the injunction to it. The other carrier defendants – Nextel's competitors –

are economically adverse to Nextel on that issue. And while BCGI's economic interests

may, in theory, coincide with Nextel's to some degree, BCGI's business viability over the

course of this appeal is uncertain, and its economic predicament, at the very least, puts

pressure on BCGI to potentially reach a resolution that leaves an injunction in place that

extends to the combined actions of BCGI and Nextel.

In sum, Nextel has a particularized interest in limiting the application of the

injunction to *it* that is not adequately represented on appeal absent intervention. There

are important constitutional arguments that only Nextel has proper standing to assert, and

there are specific interests particular to Nextel that other parties in this far ranging appeal

cannot be depended upon to assert.  On these grounds alone, intervention is appropriate.

**III.    Nextel Has A Particularized Interest In Issues Concerning Freedom's Counsel's Conflict Of Interest.**

Freedom does not dispute that Nextel has an interest in the ethical conduct of

Freedom's counsel not possessed by BCGI.  Only Nextel can assert the conflict of

interest that requires disqualification of one of Freedom's counsel from its continued

participation in the case.  Although Freedom makes a variety of arguments about whether

intervention should include the disqualification issue, most of those arguments address

the merits of the future motion and are best resolved on full briefing.  Freedom asserts

that the disqualification issue would complicate the appeal.  But if the Court believes it

appropriate to separate the disqualification issues from the merits of the appeal, Nextel

would, of course, present its position on disqualification by way of motion separately

from, and prior to, briefing on the merits, if this is the Court's wish.

**A.    There Is No Rule Against Allowing Intervenors Raising Collateral Issues Of The Type At Issue Here.**

Freedom asserts that there is a rule against allowing a non-party to intervene to

raise "collateral" issues.  Suffice it to say that there is no such rule – at least in the sense

that the word "collateral" is being used here.  The case cited by Freedom, *United States

v. City of New York,* 198 F.3d 360 (2d Cir. 1999), involved an attempt to inject an

*extrinsic* "merits" issue into a case.  The Second Circuit properly rejected that attempt

because it is generally up to the parties – not an intervenor – to determine the scope of a

lawsuit, and what issues will be raised.  The proposed intervenor did not have a "'direct,

- 6 -

substantial, and legally protectable' interest" in the subject matter of the action, and thus intervention was not allowed. *Id.* at 365.

Issues of attorney disqualification are "collateral" in an entirely different sense. So long as a law firm with an obligation of loyalty to Nextel is acting in direct conflict to Nextel – *as Quinn Emanuel is now* by insisting that Nextel's ongoing combined activities with BCGI are barred by the district court's injunction – Nextel's right to loyal counsel is being directly and adversely trampled on an ongoing basis. This is intimately intertwined with the merits of the lawsuit, and is in fact tied directly to the scope of relief that Freedom – not Nextel – sought to put at issue. Having advocated an overly broad injunction directly adverse to the interests of a major client, Quinn Emanuel has itself injected the propriety of its behavior into this lawsuit. The motion to disqualify is the proper mechanism for vindicating the proper ethical standards that must govern this proceeding. A party seeking disqualification has a direct, substantial and legally protectable interest in the ongoing loyalty of its counsel.

Courts, including the First Circuit (which provides the controlling law here), have had little difficulty recognizing that intervention is appropriate to protect similar "collateral" interests. *See In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001) (finding privilege claims support intervention when privileged information would otherwise be disclosed pursuant to grand jury subpoena).

Although a disqualification motion is the time-honored means of addressing conflicts of counsel, the twist in this case is that the law firm in question is acting in a manner directly adverse to Nextel, *a non-party*, by seeking to extend an injunction to

encompass its ongoing activities with BCGI. Courts have rarely encountered such direct conflicts involving non-parties. When they have, however, they have recognized that the proper way to proceed to redress this continuing injury is for the injured party, here Nextel, to seek disqualification *via* a motion to intervene. *See* Motion to Intervene at 13-14 (citing *In re Yarn Processing* and *Cruz*).

**B.      Nextel's Motion Cannot Be Rejected Because "There Is No Basis to Disqualify Quinn Emanuel."**

Freedom also suggests that Nextel's motion to intervene to address the disqualification issue can be rejected on the merits because "there is no basis to disqualify Quinn Emanuel." Freedom Opp'n at 16. Freedom does not deny that Quinn Emanuel's effort to overextend the reach of the injunction to cover combined actions of Nextel and BCGI is a clear conflict of interest. Rather, Freedom's theory is that the conflict was created when Nextel contracted with BCGI for services in August 2002, and consequently was (a) created by Nextel and (b) is untimely asserted. Although these assertions and arguments more properly go to the merits of the disqualification motion, rather than intervention, Nextel will respond briefly here.

The conflict did *not* arise because Nextel contracted with BCGI. When Nextel contracted with BCGI, neither Quinn Emanuel nor Nextel perceived or asserted any conflict. Quinn Emanuel, for its part, did not perceive any conflict – as it clearly does now. To the contrary, as explained above in Section I, the case at that point was proceeding in a standard manner, where Nextel could be interested in a *business* sense

- 8 -

with the outcome, but Quinn Emanuel was not acting in a manner directly adverse to Nextel.

In light of the fact that Freedom has raised the issue, it is fair to document that Quinn Emanuel *assured* Nextel (and Sprint) that the case posed no conflict, and that Quinn Emanuel would not take actions adverse to Nextel. In connection with the Sprint-Nextel merger, Sprint asked Quinn Emanuel to identify "any actual or potential conflicts" that would exist if the merger were to go forward. Ex. A (Apr. 11, 2005 Letter from Gerke to Purcell). In response, Quinn Emanuel stated that no conflicts of interest existed with the entities listed on an attached document, which included the relevant entities for purposes of this case. Ex. B (Jul. 11, 2005 Conflict Interest Statement). Even earlier, in March 2005, Quinn Emanuel had assured Nextel by e-mail that it would not have any involvement in taking any actions with respect to Nextel in this case, or in the future. *See* Ex. C (Mar. 10, 2005 e-mail from Quinn Emanuel to Nextel) ("no one at my firm has any invovlement [sic] with anything to do with Nextel [with respect to] the [Freedom Wireless] case or will have in the future.").

That adversity was created – sharply, directly, and materially – when Quinn Emanuel purposefully sought and obtained an injunction that, according to the description in Quinn Emanuel's subsequently issued press release, would extend to BCGI and Nextel's combined activities. *See* Motion for Intervene at 10. At that point, whatever ethical line Quinn Emanuel had been walking, it stepped decisively over that line and asserted a claim directly adverse to Nextel.

- 9 -

Freedom argues that in determining whether disqualification is appropriate in a particular circumstance, it will be necessary to consider prejudice to Freedom from disqualification at this stage of the proceedings. On that issue, it is fair to observe that just as Quinn Emanuel was assuring Nextel that it would not and could not take actions adverse to Nextel, it had undoubtedly informed Freedom of that same fact long ago, as it was required to do.[2] These arguments about timeliness and prejudice may well have to be addressed on the merits. But Freedom has offered no reason why Nextel should not be allowed to intervene to present these issues for determination on the merits.

### CONCLUSION

The motion to intervene should be granted.

November 28, 2005                    Respectfully submitted,

                             NEXTEL COMMUNICATIONS, INC.
                             AND NEXTEL OPERATIONS, INC.
                             By its attorneys,

                             _Richard McMillan Jr._

                             Richard McMillan, Jr.
                             Clifton S. Elgarten
                             Michael J. Songer
                             CROWELL & MORING, LLP
                             1001 Pennsylvania Avenue, N.W.
                             Washington, D.C.  20004-2595
                             Telephone: (202) 624-2500
                             Facsimile:  (202) 628-5116

---

[2]      Freedom clearly knew of this issue.  When Freedom filed its separate cases against Alltel and Nextel, _see_ Motion to Intervene at 2, Quinn Emanuel did not serve as counsel to Freedom in the suit against Nextel.  A different firm, presumably fully capable of addressing the issues in suit, served as counsel.

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2005, I caused true and correct copies

of the Reply in Support of Motion to Intervene for Limited Purpose to be served on

the following by facsimile and by a third-party commercial carrier for overnight

delivery:

AT&T WIRELESS PCS, CINGULAR WIRELESS LLC, and CMT PARTNERS:
Claudia Wilson Frost
Mayer, Brown, Rowe & Maw, LLP
700 Louisiana Street, Suite 3600
Houston, TX 77002
Telephone: (713) 547-9636

BOSTON COMM. GROUP, INC. and WESTERN WIRELESS CORP.:
Donald R. Dunner
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, N.W., Suite 1100
Washington, DC 20001-4413
Telephone: (202) 408-4062

FREEDOM WIRELESS, INC.:
Paul F. Ware, Jr.
Goodwin Procter, LLP
Exchange Place
Boston, MA 02109-2881
Telephone: (617) 570-1000

ROGERS WIRELESS, INC.:
Mark D. Wegener
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402
Telephone: (202) 783-0800

Brian M. Koide





Thomas A. Gerke
EVP–General Counsel and External Affairs

Law & External Affairs
KSOPHF0410-4A203 – Eisenhower A
6200 Sprint Parkway
Overland Park, KS 66251-6117
Telephone (913) 794-1440
Fax (913) 523-7700

April 11, 2005

**ATTORNEY-CLIENT PRIVILEGED COMMUNICATION**

John Purcell
Quinn Emanuel Urquhart Oliver & Hedges
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

      Re:    Engagements for Sprint Corporation and Subsidiaries

Dear Mr. Purcell:

    Our records indicate that your firm is currently representing Sprint Corporation or one or more of its subsidiaries in legal matters. As you know, on December 15, 2004, Sprint and Nextel Communications, Inc. entered into an agreement to merge. Subject to various necessary approvals and other conditions, it is currently anticipated that the merger will close in the third quarter of 2005.

    Sprint's Outside Counsel Policy requires that you treat Sprint Corporation and all of its subsidiaries as your client for professional responsibility purposes. As a result, it will be necessary for your firm to update the conflicts check conducted at the outset of each of your representations to include the Nextel entities on the enclosed list. For your use in identifying all current Sprint matters handled by your firm, I also enclose a copy of the current Sprint entity list.

    Please provide information regarding any actual or potential conflicts that would exist if the merger is consummated, or complete the attached statement indicating that no such conflicts will exist, to Velinda Brown at the address below no later than May 20, 2005.

        Velinda Brown
        6450 Sprint Parkway
        Mailstop KSOPHN0304-3B418
        Overland Park, Kansas 66251

    If you have any questions regarding this request, please contact Nancy Shelledy at 913-315-9913 or Tonya Johnston at 913-315-9383. Thank you for the legal assistance you are providing Sprint and thank you in advance for your prompt response to the above request.

        Very truly yours,

        *Tom Gerke*

        Thomas A. Gerke

**B**

### Conflict of Interest Statement

Consistent with Sprint's Outside Counsel Policy, _Quinn Emanuel_ ("Firm") has conducted a review of its records, and has determined that no conflicts of interest exist with any of the entities listed on the two attachments to the April 2005 letter from Thomas A Gerke. Alternatively, if actual or potential conflicts of interest have been identified, they are described in an attachment to this statement.

_Quinn Emanuel_
Name of Firm

Signature of Authorized Representative

_John Purcell_
Printed Name of Signator

_7/11/05_
Date

C

**Koide, Brian**

| | |
|---|---|
| **From:** | Dominic Surprenant [dominicsurprenant@quinnemanuel.com] |
| **Sent:** | Thursday, March 10, 2005 5:28 PM |
| **To:** | Haller, Susan |
| **Subject:** | Freedom Wireless |

Sue.

My firm is trying a case in Boston called Freedom Wireless, where we represent the plaintiff versus a variety of cell providers in what I understand to be essentially a patent infringement lawsuit. Nextel is not a defendant and I have never been involved in the case in any fashion.

It is my understanding that when we took on the representation five years ago, we told our Freedom Wirless clients that we represented Nextel and could not be adverse to Nextel under any circumstances, and our clients agreed to that condition.

It is also my understanding that our FW clients hired another firm which specializes in licensing agreements and that firm sent out letters to a variety of cell providers, including Nextel, about taking out a license.

Finally, it is my understanding through the grapevine Nextel has a lawyer monitoring the trial, which started several days ago.

Obviously, no one at my firm has any invovlement with anything to do with Nextel w/r/t the FW case or will have in the future.

However, when I heard through the grapewine that our clients had otherwise contacted Nextel, and Nextel (per the rumor mill) is monitoring the trial, I told the relevant partners here that I wanted to make sure the firm's Nextel client was apprized of where things stand.

I think my firm's role, or my role here, is of course strictly limited to offering to be an honest broker to facilitate a sensible business deal, if Nextel should want us to do so.

If you have any questions, Sue, please let me know.

Thanks.

# EXHIBIT C

06-1020, -1078, -1079

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

Freedom Wireless, Inc.,

*Plaintiff/Counterclaim*
*Defendant-Appellant,*

v.

Boston Communications Group, Inc., et al.,

*Defendant/Counterclaimant-*
*Cross Appellant.*

Reply in Support of Motion to Stay Injunction Pending Appeal

Richard McMillan, Jr.
Clifton S. Elgarten
Michael J. Songer
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

*Attorneys for Movants-*
*Cross-Appellants*
*Nextel Communications, Inc. and*
*Nextel Operations, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

FREEDOM WIRELESS V. BOSTON COMM

Nos. 06-1020, -1078, -1079

CERTIFICATE OF INTEREST

Counsel for Movants-Cross Appellants Nextel Communications, Inc. and Nextel Operations, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is: Nextel Communications, Inc. and Nextel Operations, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  NA

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  Nextel Communications, Inc., Nextel Finance Corp., and Sprint Nextel Corp.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Crowell & Moring LLP:  Richard McMillan, Jr., Clifton S. Elgarten, and Michael J. Songer.

Burns & Levinson:  Dennis J. Kelly and Victoria L. Walton.

November 28, 2005

*Richard McMillan*

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone No.:  (202) 624-2500
Facsimile No.:  (202) 628-8844
e-mail: rmcmillan@crowell.com

## TABLE OF AUTHORITIES

<u>Page</u>

### <u>Cases</u>

*3D Systems, Inc. v. Aarotech Labs, Inc.*,
    160 F.3d 1373 (Fed. Cir. 1998) ........................................................................8

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
    96 F.3d 1390 (Fed. Cir. 1996) .........................................................................4

*Eli Lilly and Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) .......................................................................7

*Gerosa v. Columbia Metal Stamping & Die Co.*,
    8 F.2d 611 (6th Cir. 1925) ..............................................................................5

*International Rectifier Corp. v. Samsung Elec. Co.*,
    361 F.3d 1355 (Fed. Cir. 2004) .................................................................. 3-5

*International Rectifier Corp. v. Samsung Elec. Co.*,
    424 F.3d 1235 (Fed. Cir. 2005) .................................................................. 3-4

*Invitrogen Corp. v. Clontech Labs., Inc.*,
    --- F.3d ---, 2005 WL 3078495 (Fed. Cir. Nov. 18, 2005)..............................7

*New Jersey Patent Co. v. Schaeffer*,
    159 F. 171 (C.C.Pa. 1908)...............................................................................6

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998) .......................................................................7

*Robert Findlay Mfg. Co. v. Hygrade Lighting Fixture Co.*,
    288 F. 957 (E.D.N.Y. 1923) ........................................................................ 5-6

*Saxe v. Hammond*,
    21 F. Cas. 593 (D. Mass. 1875) (No. 12,411) .................................................6

## **Statutes**

35 U.S.C. § 101 ................................................................................................6

35 U.S.C. § 116 ................................................................................................6

35 U.S.C. § 271 ............................................................................................ 5-7

## **Rules**

Federal Rule of Civil Procedure 65(d) ...........................................................4

1.      Freedom Wireless, Inc. ("Freedom") acknowledges, as it must, that the district court extended its injunction to reach the continuing combined activities of Nextel[1] and Boston Communications Group, Inc. ("BCGI") that had *not* been put at issue below and did not form the basis for the jury's verdict. Freedom nonetheless claims the resulting injunction, though directed at Nextel (and other non-parties), is a perfectly ordinary, "standard-fare" injunction. It bases its argument on two false premises.

First, Freedom suggests that it has simply obtained a jury verdict directed at the individual activity of BCGI. Second, building on the first premise, it argues that by acquiring the right to enjoin BCGI from continuing, by its own actions, to infringe the patents in suit, Freedom thus (so goes the argument) could apply for and obtain a "typical" injunction that bars persons acting in "active concert with" the infringer – aiders and abettors – from facilitating further infringement. *See* Freedom Opp'n at 3.

Neither of Freedom's two rhetorical premises accurately reflects this case. Freedom did *not* proceed in this case by demonstrating that BCGI – acting alone – had infringed. As reflected on the four separate verdict form findings, it proceeded

---

[1]      As in their motion, Nextel Communications, Inc. and Nextel Operations, Inc. are collectively referred to as "Nextel."

on an untested, novel theory of joint infringement under which the combined

actions of various pairs of defendants were shown to have infringed,

notwithstanding the fact that the independent actions of no single defendant,

standing alone, did so. Nextel was not included in any of those pairs of defendants

whose combined actions were adjudged in this case. And both the district court

and Freedom made it quite clear – at least *before* the injunction issued – that the

question whether the BCGI and Nextel's combined actions (or BCGI and Alltel's

combined actions) also infringed was simply not at issue in this case. Those

questions were being determined in separate cases, in which the parties whose

actions were at issue had actually been named as defendants and were thus given

an opportunity to defend themselves. *See* Motion to Stay Injunction Pending

Appeal at 6. In connection with the injunction briefing before the trial court,

Freedom again made the limitations on the scope of the injunction clear. *Id.* at 7-8.

Thus, Freedom neither sought nor obtained a verdict directed at the

individual activities of BCGI, standing alone, and the scope of "in concert with"

relief that it might have obtained had it done so is beside the point. The issues

presented here instead arise out of Freedom's own decision to proceed and prevail

on a joint infringement theory – and then to jettison the implications of that theory

when seeking its injunction. Until the injunction, the BCGI-Nextel combination of

conduct was not at issue and Nextel was very much a non-party to the proceedings below.

Extending an injunction to reach conduct *not* adjudicated to be infringing, and to reach the actions of non-parties, is hardly the "standard-fare" approach that Freedom claims to be following. Quite the contrary, recent Federal Circuit precedent stands squarely for the proposition that an injunction directed against third parties in such circumstances would be improper. The Court has recently issued two opinions in the matter of *International Rectifier Corp. v. Samsung Elec. Co.*, 361 F.3d 1355 (Fed. Cir. 2004), *and* 424 F.3d 1235 (Fed. Cir. 2005), in a closely analogous fact pattern. In *Samsung*, the district court entered a permanent injunction, which it subsequently purported to broaden to reach the activities of a non-party ("IXYS"). IXYS then intervened to "clarify, vacate or modify" the injunction, on grounds that the court had exceeded its jurisdiction by directing it at IXYS's activities. The plaintiff responded by contending that the activities were simply "in concert" with the named defendant.

The Federal Circuit reversed the district court in both its opinions. In language that would apply perforce to Freedom's joint infringement theory, the Court first noted that the basis for the district court's injunction was "tantamount to conspiracy to infringe a patent, a theory which has no basis in law." 361 F.3d at 1361. The Court made clear in any case that the injunction improperly extended

- 3 -

beyond the activities at issue that were found to have infringed. *Id.* at 1362

("IXYS, as a non-party, cannot be bound by the Permanent Injunction.").

Moreover, in response to the contention that IXYS's rights could properly have

been evaluated in connection with issuance of the injunction, the Court held (in its

2005 opinion) that "It is difficult to imagine how a judgment that does not mention

a party or a claim asserted against a party can be considered" a proper basis for

relief. *Samsung*, 424 F.3d at 1240; *see also Additive Controls & Measurement*

*Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1394 (Fed. Cir. 1996). There is nothing

conventional or ordinary in the way that Freedom has interpreted this injunction to

extend to conduct that was not at issue in the case, or adjudicated to be improper,

and to persons who were not parties to this case.

Moreover, contrary to Freedom's suggestion, the question presented here

does not merely involve a non-party alleged to be "in active concert" with an

infringer, accused of "abetting" further infringement. *See* Fed. R. Civ. P. 65(d).

To be properly subject to the injunction, the non-party must be abetting the activity

actually found to be infringing. The liability finding upon which the injunction

was based here, however, involved joint infringement, where the act of

infringement itself involved at least two parties, each defendants in the action. For

a third party to be properly bound as the "aider and abettor" of the conduct found

to infringe, it would have to be acting "in active concert with" *both* defendants

- 4 -

whose combined actions constitute the infringement, not merely one, whose actions alone do not infringe.  The injunctive powers of the court cannot be used to render conduct unlawful that is not properly considered infringing under the Patent Statute.  *See Samsung*, 361 F.3d at 1361 (rejecting effort to use the injunction to create liability, in effect, for conspiracy to infringe, not specifically actionable under the Act).

In sum, this appeal poses significant issues in connection with Freedom's effort to extend the district court's injunction to conduct not adjudicated as unlawful in the underlying action, and to persons who were not parties to the underlying action.

2.     Freedom argues that Section 271 *sub silentio* preserved the common law doctrine of "joint infringement" under the heading of direct infringement, as captured by Section 271.  But joint infringement at common law was an entirely different concept from the joint infringement now sponsored by Freedom.  Prior to enactment of the 1952 Patent Act, joint infringement was an intentional tort.  *See, e.g., Gerosa v. Columbia Metal Stamping & Die Co.*, 8 F.2d 611, 611-12 (6th Cir. 1925) (finding joint infringement when the party "knowingly and intentionally had contributed to" the infringement); *Robert Findlay Mfg. Co. v. Hygrade Lighting Fixture Co.*, 288 F. 957, 958 (E.D.N.Y. 1923) ("'Where an infringement of a patent is brought about by concert of action between a defendant and complainant's

- 5 -

licensee, all engaged *directly and intentionally* become joint infringers.'")

(emphasis added) (quoting *New Jersey Patent Co. v. Schaeffer*, 159 F. 171, 173

(C.C.Pa. 1908)); *Saxe v. Hammond*, 21 F. Cas. 593, 594 (D. Mass. 1875) (No.

12,411) ("the mere manufacture of a separate element of a patented combination,

unless such manufacture be proved to have been conducted for the purpose, and

*with the intent of aiding infringement*, is not, in and of itself, infringement.")

(emphasis added). Joint infringement thus was the precursor not of direct

infringement, but of contributory infringement under 35 U.S.C. § 271(c) – which

requires "knowing" misconduct. As such, it was designed to reach only those

parties who knowingly and intentionally sought to aid and abet the acts of

infringement. *See, e.g., Gerosa*, 8 F.2d at 611-12; *Robert Findlay Mfg. Co.*, 288 F.

at 958; *Saxe*, 21 F. Cas. at 594. Thus, if as Freedom suggests, the concept of joint

infringement need only be coextensive with pre-1952 case law, that doctrine

clearly will not bear the weight that Freedom now seeks to impose on it.

Perhaps recognizing this difficulty, Freedom observes that the word

"whoever," which is used in the portion of Section 271 describing direct

infringement, is also a word which under a different statutory provision (Section

101) has been held to encompass joint inventorship. Freedom Opp'n at 6-7. Yet

this proves too much. First, joint inventorship – unlike joint infringement – is the

subject of a separate codified provision in the Patent Act, 35 U.S.C. § 116.

- 6 -

Second, joint inventorship, even if it were analogous to joint infringement, teaches only that two parties may assume *joint* responsibility under the Patent Act only when they knowingly *intend* to do so. *See Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004) ("Joint inventorship under section 116 can only arise when collaboration or concerted effort occurs . . . ."); *accord Invitrogen Corp. v. Clontech Labs., Inc.*, --- F.3d ---, 2005 WL 3078495, at *8 (Fed. Cir. Nov. 18, 2005) (holding that inventorship requires an understanding and appreciation of the invention, including "that [the inventor] understood his creation to have the features that, comprise the inventive subject matter at bar").

In any case, the provisions of Sections 101 and 271 are not parallel provisions, and this Court's precedents reflect that where general words are used in two different places in the patent law, they may be given a meaning in each that reflects the structure, policies and purposes of each section. *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1445 (Fed. Cir. 1998) (reasoning that it is "not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the Legislature intended it should have in each instance"). Thus, particularly in light of the alternative bases of liability expressly set forth in Section 271, it does no violence to the Patent Act to construe "whoever" as a single person in the context of Section 271, while recognizing that

"whoever" may encompass multiple, intentional collaborators in the context of Section 101.[2]

In sum, this case plainly presents substantial issues on the questions whether there is a separate doctrine of joint infringement and, if there is such a concept in the patent laws, what constitutes joint infringement.

3.    Freedom attempts to fall back on an additional and entirely contrived argument that the jury "might have" adjudicated BCGI's rights separately because it was improperly so instructed.  In support of this view, Freedom refers at various points to evidence that it says it presented in connection with other theories, and snippets from the jury instructions.  *See, e.g.*, Freedom Opp'n at 10 n.8.  Without citing the record, Freedom baldly and inaccurately states that "the jury's verdict [sic] did not set forth particular findings on these theories."[3]  Freedom is flatly

---

[2]    Moreover, even if "whoever" *could* refer to multiple persons in Section 271, this would not be mean that the standards under which their combined actions gives rise to liability would be precisely the same as the standards that would be applied to find joint inventorship in connection with Section 101.  The contexts are simply too different to suggest that standards developed in one arena can simply be carried over to another.  *See 3D Systems, Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 n.4 (Fed. Cir. 1998) (declining to apply the meaning of Section 102(b) "on sale" bar to Section 271 "offer for sale;" noting that underlying policies for patentability have "no resonance" with the underlying policies for infringement).

[3]    Citing to the trial transcript of April 13, 2005, Freedom claims that the jury was instructed "at length" on how use of the "system" would constitute infringement.  *See* Freedom Opp'n at 10-11.  This portion of the trial testimony, (continued...)

wrong. The judge sent this case to the jury only on joint infringement theories. All four jury verdict forms specifically and solely asked the jury to find if the BCGI-carrier pairings "jointly literally infringed" or "jointly infringed under the doctrine of equivalents." *See, e.g.*, Ex. B to Motion to Intervene for Limited Purpose (Jury Verdict). Accordingly, the jury based its finding of infringement solely on joint infringement.

        4.      Finally, Freedom invokes the rule that favors the grant of an injunction after a finding of infringement. That rule applies where the conduct that is the subject of the injunction has already been finally adjudged as infringing, and the party that is the subject of the injunction has been found to have infringed. That presumption has *no* application to conduct that has *not* yet been found to infringe, or to the extension of the injunction to persons who were *not* parties to the proceedings, and who have not been adjudged to have engaged in any improper activities. The stay sought by Nextel is confined to conduct that has not yet been adjudged as unlawful and parties who were not part of the proceedings below.

---

(…continued)

however, is merely the direct examination of BCGI's technical expert; no such instructions are present.

## CONCLUSION

To the extent the district court's injunction reaches the combined activities

of BCGI and Nextel, the injunction should be stayed pending appeal.

November 28, 2005                    Respectfully submitted,

                                     NEXTEL COMMUNICATIONS, INC.
                                     AND NEXTEL OPERATIONS, INC.
                                     By its attorneys,


                                     _Richard McMillan_

                                     Richard McMillan, Jr.
                                     Clifton S. Elgarten
                                     Michael J. Songer
                                     CROWELL & MORING, LLP
                                     1001 Pennsylvania Avenue, N.W.
                                     Washington, D.C.  20004-2595
                                     Telephone: (202) 624-2500
                                     Facsimile:  (202) 628-5116

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2005, I caused true and correct copies

of the Reply in Support of Motion to Stay Injunction Pending Appeal to be served

on the following by facsimile and by a third-party commercial carrier for overnight

delivery:

AT&T WIRELESS PCS, CINGULAR WIRELESS LLC, and CMT PARTNERS:
     Claudia Wilson Frost
     Mayer, Brown, Rowe & Maw, LLP
     700 Louisiana Street, Suite 3600
     Houston, TX 77002
     Telephone: (713) 547-9636

BOSTON COMM. GROUP, INC. and WESTERN WIRELESS CORP.:
     Donald R. Dunner
     Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
     901 New York Avenue, N.W., Suite 1100
     Washington, DC 20001-4413
     Telephone: (202) 408-4062

FREEDOM WIRELESS, INC.:
     Frank P. Porcelli
     Fish & Richardson P.C.
     225 Franklin Street
     Boston, MA 02110-2804
     Telephone: (617) 542-5070

ROGERS WIRELESS, INC.:
     Mark D. Wegener
     Howrey LLP
     1299 Pennsylvania Avenue, N.W.
     Washington, DC 20004-2402
     Telephone: (202) 783-0800

               Brian M. Koide

# EXHIBIT D

NOTE: Pursuant to Fed. Cir. R. 47.6, this order
is not citable as precedent.  It is a public order.

# United States Court of Appeals for the Federal Circuit

06-1020, -1078, -1079, -1098, -1099

FREEDOM WIRELESS, INC.,

Plaintiff-Cross Appellant,

v.

BOSTON COMMUNICATIONS GROUP, INC.,

Defendant-Appellant,

and

WESTERN WIRELESS CORPORATION (d/b/a Cellular One),

Defendant-Appellant,

and

AT&T WIRELESS PCS, CINGULAR WIRELESS LLC, and CMT PARTNERS
(d/b/a Cellular One of San Francisco),

Defendants-Appellants,

and

NEXTEL COMMUNICATIONS, INC. and NEXTEL OPERATIONS, INC.
(now known as Sprint Nextel Corporation),

Movants-Appellants,

v.

ROGERS WIRELESS, INC. (a/k/a Rogers AT&T Wireless),

Defendant-Appellee.

ON MOTION

Before MICHEL, Chief Judge, BRYSON and GAJARSA, Circuit Judges.

BRYSON, Circuit Judge.

### ORDER

Nextel Communications, Inc. and Nextel Operations, Inc. (collectively Nextel) move for leave to intervene in the appellants' and cross-appellant's appeals. Nextel moves for a stay, pending appeal, of the injunction issued by the United States District Court for the District of Massachusetts to the extent that it reaches Nextel. Boston Communications Group, Inc. (BCGI) moves to construe the injunction not to apply to non-defendants or, if it does, to stay the injunction, pending appeal. Cingular Wireless, LLC, AT&T Wireless, and CMT Partners (collectively Cingular) move for a stay, pending appeal, of the injunction as it applies to them. Freedom Wireless, Inc. opposes the motions. Nextel, BCGI, and Cingular move for leave to file replies, with replies attached. Freedom Wireless does not oppose the motions for leave to file replies.

### BACKGROUND

Freedom Wireless brought "joint infringement" claims against BCGI and Cingular Wireless LLC jointly; BCGI and AT&T Wireless PCS jointly; BCGI and CMT Partners jointly; and BCGI and Western Wireless Corporation jointly. Per the jury instruction, joint infringement was defined as:

> if separate companies work together to perform all of the steps of a claim of a patent, the companies are jointly responsible, that is, responsible as a group for the infringement of the patent. Even if no single company performs all of the steps of a claim, the companies are jointly responsible.

The district court explicitly held that contributory infringement and inducement were not applicable and those theories were not presented to the jury. The jury returned four

06-1020 et al.                                   2

verdicts finding that each of the four pairings jointly infringed the patents in suit literally and under the doctrine of equivalents.

Before trial, the district court held that Freedom Wireless, if it wished to pursue claims against non-defendant carriers, must do so in separate actions. Freedom Wireless filed separate follow-up actions, against BCGI and Nextel jointly and against BCGI and Alltel Corporation jointly. Those actions are pending in the district court. Apparently there is also a third action against BCGI and Cincinnati Bell, Inc.

Following the jury verdicts in this case, Freedom Wireless provided the district court with a proposed injunction. BCGI complained that the language was too broad and could be construed to cover BCGI's activities with the so-called "non-defendant carriers" who were not parties in the case. The district court's injunction enjoined those "acting in concert with any third party, other than a licensee of Freedom Wireless, Inc. to make, use, sell, or offer to sell any of these implementations, or any systems that are not colorably different." Shortly thereafter, counsel for Freedom Wireless, Quinn Emanuel Urquhart, issued a press release stating that the injunction prohibits "BCGI and its current carrier customers, including Alltel and Cincinnati Bell, Inc. (CBB), which were named in a recent patent infringement suit by Freedom Wireless, from selling prepaid wireless services using the infringing BCGI systems."

Nextel immediately moved for leave to intervene in the district court for the purpose of clarifying, staying, or amending the injunction and to disqualify Quinn Emanuel based on Quinn Emanuel's concurrent representation of Freedom Wireless and Nextel (in other patent litigation). The district court denied Nextel's motion for leave

to intervene without stating any reasons.  Nextel appealed the denial of its motion for leave to intervene and the denial of BCGI's motion to clarify or stay the injunction.

## NEXTEL'S MOTION FOR LEAVE TO INTERVENE

Nextel contends that its application is timely because it was filed only one week after the Injunction Order was entered.  Freedom Wireless responds that Nextel has been aware of Freedom Wireless's suit against BCGI since 2002, and thus "has known for years that [Nextel's] interests were at risk."  However, there is some indication that Nextel believed its rights would not be determined in the instant case, but rather in a separate, subsequent action filed by Freedom Wireless against BCGI and Nextel. Thus, Nextel was not made aware that its rights were the subject of the instant litigation until the Injunction Order was entered.  Accordingly, Nextel filed its application in a timely manner.

Nextel also states that it has a direct interest in the injunction because the injunction "may be construed to bar the continued relationship of BCGI and Nextel." Nextel points out that it relies upon BCGI's services to run its prepaid wireless phone service, and that the injunction could "seriously impact Nextel's ability to offer prepaid wireless phone calls."  Thus, it appears that Nextel has a legally protectable interest relating to the injunction and that the disposition of this appeal may impair Nextel's ability to protect its interest.

Nextel further argues that its interests cannot be adequately represented by existing parties to the appeal.  Freedom Wireless responds that the interests of Nextel and BCGI are "perfectly aligned."  However, Nextel points out that BCGI's interests in this appeal are much broader than Nextel's. According to Nextel, BCGI may devote the

bulk of its efforts on appeal to issues of infringement and invalidity, rather than the scope of the injunction. Furthermore, Nextel contends that BCGI's financial interests may not coincide with its own because BCGI may wish to settle, while Nextel seeks continued litigation. Because Nextel and BCGI are separate businesses with potentially divergent objectives on appeal, we are satisfied that Nextel has shown that its interests will not be adequately represented by an existing party. Accordingly, the court grants Nextel's motion for leave to intervene.

## THE PARTIES' MOTIONS TO STAY THE INJUNCTION

We turn to the parties' motions for a stay, pending appeal, of the injunction. For ease of reference and because BCGI is connected to each of the movants as a joint infringer or putative joint infringer, we refer primarily for purposes of this discussion to BCGI's arguments. At issue is whether BCGI has shown a likelihood of success or presented a substantial question regarding joint infringement, an argument common to all the motions for a stay, and whether the other injunction factors tip in its favor.

In deciding whether to grant a stay, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). See also Standard Havens Prods. v. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990). The factors regulating issuance of a stay are (1) whether the movant has made a strong argument that it is likely to succeed on the merits, (2) whether movant will be irreparably harmed absent a stay, (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987). To prevail, a party moving for

a stay pending appeal must establish a strong likelihood of success on the merits or,

failing that, must show that it has a substantial case on the merits and that the harm

factors militate in its favor.  Hilton, 481 U.S. at 778.

> BCGI argues that the
>
> judgment of infringement in this case rests entirely on Freedom's theory,
> adopted by the district court in its jury instructions, that there could be joint
> direct infringement even without a showing that BCGI controlled the actions
> of a carrier defendant (or vice versa).  That is, it is enough (following
> Freedom's joint infringement theory) if one party performs some of a claim's
> steps and a second party performs the remaining claims.  This Court,
> however, has never directly addressed whether such a "joint infringement"
> theory exists, much less adopted the theory.

BCGI points to the court's language in Cross Medical Products, Inc. v. Medtronic Sofamor

Danek, Inc., 424 F.3d 1293 (Fed. Cir. 2005), rejecting the patentee's argument that the

actions of surgeons could be joined with those of the defendant medical device

manufacturer to establish direct infringement, observing that no agency relationship

existed among the surgeons and the manufacturer.  In response, Freedom Wireless

argues that the theory of liability based on joint infringement existed before the 1952

Patent Act, remains viable today, and cannot be limited to "control" of one party by

another.  Freedom Wireless points to four district court cases that have embraced the

theory of joint infringement.

The question of the viability and scope of the theory of joint infringement is an

issue that will benefit from full briefing by the parties in this appeal.  This motions panel

thus declines to delve into the issue in any depth.  However, we conclude that BCGI has

demonstrated the existence of a substantial question whether the theory of liability

applied in the district court departs from this court's precedents regarding vicarious liability

for infringement in such a manner as to bring the verdict into question.  This court has not

directly addressed the theory of joint infringement and there is relatively little precedent on that issue.

With respect to the balance of harms, BCGI states that the injunction against continuing to supply services to its co-defendant carriers has left it "in an extremely tenuous financial position" and that its "survival hinges on the present motion succeeding," if the injunction applies to Nextel and BCGI's other non-defendant carriers. Nextel states that it uses BCGI's services for all its prepaid wireless customers in the United States. Cingular states that it is working to migrate its customers to other prepaid systems, but that its remaining customers will be harmed unless the injunction is stayed.

With respect to harm to Freedom Wireless, BCGI states that Freedom Wireless does not offer or sell prepaid services in the prepaid wireless market and can be compensated by money damages if it prevails on appeal. See DuPont, 835 F.2d at 278-79 (noting the comparative lack of harm to DuPont because DuPont did not practice the invention and never sought to exclude others from the market). With respect to the public interest, BCGI states that millions of subscribers will either be burdened with having to change service providers or be at risk of losing wireless service.

## CONCLUSION

In view of the above, we conclude that the appellants have shown that a substantial question exists regarding the theory of joint infringement and that the balance of harm tips in their favor. Accordingly, a stay of the injunction is warranted.

IT IS ORDERED THAT:

(1)    Nextel's motion for leave to intervene on appeal is granted.

(2)    The motions for a stay of the injunction, pending appeal, are granted.

(3)    The motions for leave to file replies are granted.

FOR THE COURT

DEC 15 2005
_____
Date

William C. Bryson
Circuit Judge

cc:    Marshall M. Searcy, III, Esq.
Donald Dunner, Esq.
Claudia Wilson Frost, Esq.
Richard McMillan, Jr., Esq.
Mark D. Wegener, Esq.
Vickie L. Henry, Esq.

s5

F.I.L.E.D
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

DEC 1 5 2005

JAN HORBALY
CLERK