## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON COMMUNICATIONS GROUP, INC., et al. <br><br> Defendants. | Civil Action No. 05-11062 EFH |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO (1) MOTION TO DISQUALIFY LAW FIRM OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP AND (2) MOTION FOR RECONSIDERATION OF PRO HAC VICE ADMISSION OF MARSHALL SEARCY AND ERICA TAGGART

### INTRODUCTION[1]

The law firm of Quinn Emanuel Urquhart Oliver & Hedges ("Quinn Emanuel") has been representing plaintiff Freedom Wireless, Inc. ("Freedom") for more than five years in highly complex patent lawsuits against Boston Communications Group, Inc. ("BCGI") and certain of BCGI's business partners. One of those cases, filed in 2000, resulted in a 60+ day trial before this Court. At the time the Freedom/BCGI litigation commenced, the putative intervenor here, Nextel Communications, Inc. ("Nextel"), had no business relationship whatsoever with BCGI; that relationship did not commence until

---

[1]    Quinn Emanuel submits this memorandum on its own behalf, since it is the target of the motion to disqualify. Freedom, through its other counsel in this litigation, is submitting a separate opposition.

2002. For more than two years *after* it contracted with BCGI, Nextel indisputably knew of Quinn Emanuel's representation of Freedom but nonetheless acquiesced in Quinn Emanuel's representation of Freedom, even now sending new (non-patent) commercial litigation engagements to the firm.

Disqualification should be denied for the following reasons:

1.      Quinn Emanuel does not have a "direct" conflict of interest, such as to require its disqualification as Freedom's counsel. Nextel is not, and there is no prospect that it will ever be, a party to the instant suit. Moreover, and although Quinn Emanuel may be arguing points of patent law which Nextel believes are generally against its business interests, such "positional" conflicts are not sufficient to justify the "drastic remedy" of disqualification.

2.      The purported conflict raised by Nextel has been "thrust upon" Quinn Emanuel as a consequence of business decisions made by Nextel *after* the commencement of Quinn Emanuel's representation of Freedom. Nextel entered the prepaid wireless business approximately two years *after* Quinn Emanuel first began representing Freedom in connection with the underlying patent infringement matters. It was only as a result of Nextel's later entry into an agreement with BCGI that Nextel now claims a disqualifying conflict.

3.      Disqualification would cripple Freedom's litigation capabilities, creating an unjustifiable hardship even if there was, arguably, a conflict.

4.      Nextel has waited too long to obtain disqualification. In this case, Nextel brings its motion more than three years after it knew or should have known that Quinn Emanuel was representing a probable adversary in connection with its prepaid wireless

business. Having waited until after Freedom has invested heavily in Quinn Emanuel's experience, expertise and involvement in these matters – and only after Freedom prevailed in the first trial – Nextel has waived its ability to bring the instant application.

## FACTUAL BACKGROUND

Nextel first became a client of Quinn Emanuel in 1993. At that time, and at all times thereafter, Quinn Emanuel was periodically engaged by Nextel in connection with a variety of commercial litigation matters, but never in respect to any patent infringement or patent-related litigation. Declaration of Marshall Searcy III at ¶ 2.

Quinn Emanuel was first engaged to represent Freedom in 2000 with respect to its patented prepaid wireless service technology. At the time of this engagement, Nextel had no involvement in the prepaid wireless market, or any business relationship whatsoever with BCGI. Nextel did not have any dealings with, and hence was not adverse to, Quinn Emanuel's client Freedom. Quinn Emanuel has never received any confidential information from Nextel concerning its patents or its prepaid wireless systems. *Id.* at 3.

During the nearly 6 years of the Freedom case, and with the exception of less than one hour of work charged by a Quinn Emanuel attorney in 2004, the Quinn Emanuel attorneys who have handled Nextel's commercial litigation matters are different from the attorneys who have appeared in the Freedom patent litigation *Id.* at 4.

Quinn Emanuel, on behalf of Freedom, filed its first suit in 2000 for patent infringement arising out of Freedom's patented prepaid wireless service technology. That first suit, against BCGI, Cingular Wireless and others was filed on March 30, 2000 in the United States District Court for the District of Massachusetts (Case No. 00-CV-12234) ("The Cingular suit"). *Id.* at 5.

In August 2002, more than two years after the filing of the Cingular suit, Nextel entered into a contract with Cingular to make use of the prepaid wireless services technology at issue in the Cingular suit. At the time it entered into this relationship with BCGI, Nextel presumably became aware of the Cingular suit and Quinn Emanuel's representation of Freedom in that suit. *Id.* at 6.

Following the commencement of Nextel's agreement with BCGI, Nextel did not express any objections to Quinn Emanuel about its concurrent representation of Freedom until well after the Cingular case was already in trial. In fact, after August 2002, Nextel continued to send new commercial litigation assignments to Quinn Emanuel. *Id.* at 7.

In early 2005, Robert Bramson, licensing counsel for Freedom (and not a Quinn Emanuel attorney), sent a series of letters to various telecommunication carriers, including Nextel, concerning the prepaid wireless technology at issue in the Cingular suit. Bramson advised the carriers of the pending dispute between Freedom and BCGI over the subject technology. Bramson thereafter entered into preliminary discussions with Nextel for a license on the Freedom patents. During those discussions, Nextel's representative told Bramson that, because Quinn Emanuel purportedly had a conflict, Nextel would seek to disqualify Quinn Emanuel. *Id.* at 8.

Following its receipt of the letter from Bramson, Nextel continued to engage Quinn Emanuel in connection with new commercial litigation matters. At no time has Nextel made any effort to terminate Quinn Emanuel as its counsel any of the non-patent litigation matters for which Quinn Emanuel has been hired as counsel. *Id.* at 9.

Trial for the Cingular case commenced on February 28, 2005 before Judge Edward F. Harrington. During the course of the trial (which encompassed a 51 day jury

trial and a 12 day bench trial), Nextel representatives were present in the courtroom and monitoring the proceedings. *Id.* at 10.

On March 10, 2005, while trial was proceeding in the Cingular case, Quinn Emmanuel partner Dominic Surprenant ("Surprenant") wrote an e-mail to Susan Haller ("Haller") Nextel's Chief Litigation Counsel and Senior Vice President. In that e-mail, Surprenant confirmed that Quinn Emanuel was counsel of record for Freedom in the Cingular suit and that it was pursuing patenting infringement claims on behalf of its client in respect to prepaid wireless service technology. *Id.* at 11.

On May 20, 2005, the jury reached a verdict of $128 million in the Cingular case in favor of Freedom. Following entry of judgment in Freedom's favor, the defendants filed an appeal in the U.S. Court of Appeals for the Federal Circuit. Quinn Emanuel is Freedom's counsel in connection with that appeal. *Id.* at 12.

On May 20, 2005 Freedom filed two separate complaints for patent infringement in connection with the same patented prepaid wireless technology: Case no. 05-CV-11062-EFH ("the Alltel suit") and Case no. 00-CV-05-11062-EFH ("the Nextel suit"). Quinn Emanuel represents Freedom in the Alltel suit, but not in the Nextel suit. *Id.* at 13.

In July of 2005, Quinn Emanuel again disclosed its representation of Freedom in the Cingular lawsuit to Nextel (As of this time, Nextel had merged with Sprint Communications). Following this disclosure, Sprint continued to send additional legal work to Quinn Emanuel. *Id.* at 14.

The nine attorneys at Quinn Emanuel primarily responsible for the Freedom matters have spent five years and thousands of hours to come to speed, litigate and try these complex claims. In fact, Quinn Emanuel has incurred several million dollars in

attorneys' fees over the past five years in connection with the Freedom litigation. Over the course of five years, attorneys at Quinn Emanuel attended over 150 depositions, drafted and opposed scores of motions, and participated in two other separate trials, related to the Freedom patents. *Id.* at 15.

In October, 2005, several months after the conclusion of the trial in the Cingular case, Nextel first sought to disqualify Quinn Emanuel in the Cingular case. At that time, Nextel Communications filed a motion with this Court to intervene for the purpose of, among others, and disqualifying Quinn Emanuel. This Court denied Nextel's motion. *Id.* at 16.

## ARGUMENT

Nextel has sought Quinn Emanuel's disqualification on the basis that Quinn Emanuel "has already made assertions on behalf of Freedom Wireless that are adverse to Nextel ..." Motion at ¶ 2. However, Nextel fails to identify any such assertions *in this case*. In fact, Nextel's motion is a tactical maneuver designed to severely prejudice Freedom and is both factually and legally unsupported.

Nextel fails to point to any evidence *in this case* that would justify the drastic and strongly disfavored remedy of disqualification. Instead, Nextel relies on briefs filed *in another action* – the Cingular action – in which Quinn Emanuel has allegedly taken legal positions which it claims are contrary to its interests. *Exhibits B(1)-(4) to Nextel motion.*

But as we demonstrate below, even a party to a particular suit – and Nextel is indisputably not a party to *this* suit – cannot obtain disqualification of counsel based on the fact that its counsel in other, unrelated matters may advocate a legal position which it asserts is adverse to its interests. Put simply, Quinn Emanuel is permitted, indeed

required, to vigorously advocate particular views on patent law on behalf of its client Freedom, even if Nextel (its client in unrelated, non-patent matters) disagrees with those views. To conclude otherwise would give every lawyer's client an unrestricted veto over the lawyer's ability to take engagements for new clients who may have competing economic interests with another existing client.

The motion also ignores the fact that Nextel created the supposed conflict when it contracted with BCGI, knowing (a) patent litigation was already pending against BCGI and other carriers involving the same technology and (b) Quinn Emanuel represented Freedom in that litigation. Having forced the supposed conflict on Freedom (and Quinn Emanuel), the law permits the Court the balance the hardships and exercise its discretion in resolving the motion.

The evidence also establishes that Nextel has, until its recent filing, repeatedly and consistently acquiesced in Quinn Emanuel's longstanding representation of Freedom in connection with the wireless prepaid technology matters. Having indisputably known about, and acquiesced in, that representation since at least 2002, Nextel is hardly in a position more than three years later to advance the pending disqualification motion.

## I.    Legal Standards For Disqualification of Counsel.

Motions to disqualify counsel are viewed by the courts with strong disfavor because they disrupt the relationship between a lawyer and his client and are increasingly being used as harassment and a dilatory tactic. *See Colonial Gas Co. v. Aetna Cas. & Sur. Co.* 144 F.R.D. 610, 612 (D.Mass. 1991); *Gorovitz v. Planning Board of Nantucket,* 394 Mass. 246, 250 (1985); *Borman v. Borman,* 378 Mass. 775, 787 (1979) ("the code has been used increasingly as a catalog of pretrial tactics" and when "needless

disqualification occurs as a result of these tactics, the very rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process").

Disqualification has therefore been recognized as "a drastic measure which courts should hesitate to impose except when absolutely necessary." *ebix.com, Inc. v. McCracken*, 312 F.Supp.2d 82, 91 (D.Mass. 2004) (quoting *Adoption of Erica*, 426 Mass. 55, 58 (1997)). Indeed, "disqualification may occur only if the trial court determines that [counsel's] continued participation as counsel taints the legal system or the trial of the cause before it." *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 610, 612 (D.Mass. 1991). Consequently, in order to obtain disqualification, a moving party carries a heavy burden and must satisfy a high standard of proof. *SWS Financial Fund A vs. Salomon Brothers, Inc.*, 790 F.Supp. 1392, 1400-01 (N.D. Ill. 1992).

## II.    Quinn Emanuel Is Not Subject To Disqualification Because Any Conflict Between It And Nextel Is "Indirect" And Therefore Legally Insufficient.

At the threshold, disqualification is only proper under Rule 1.7 if there is "direct" adversity between a lawyer and the interests of another client. As demonstrated below, Nextel cannot show any such "direct" adversity between it and Quinn Emanuel.

### A.    Because Nextel Is Not A Party To This Suit, Quinn Emanuel Cannot Possibly Be "Directly" Adverse to It.

In its moving papers, Nextel argues that because Quinn Emanuel is supposedly adverse to it in this matter, Quinn Emanuel should be disqualified. Motion at ¶ 4. But the underlying premise of this charge – that Nextel is a party to this suit – is obviously untrue. The defendants here are BCGI, Alltel and wireless carriers *other than Nextel*.

Nextel is a defendant in a *different case*, in which Quinn Emanuel does *not* represent Freedom.

Nextel's motion is premised on Rule 1.7 of the A.B.A Model Rules of Professional Conduct (5th ed. 2003), which has been adopted by statute in Massachusetts. See Mass. R. Prof. Conduct DR-1.7 (SIC Rule 3:07), incorporated in Local Rule 83.6(4)(B). That rule provides in pertinent part that a lawyer should not undertake "the representation of one client [which] will be *directly adverse* to another client." (Emphasis added.)

The comments to Rule 1.7 make it plain that the client seeking disqualification must be *a party to the case in which the lawyer is acting as an advocate*. Thus, Comment 6 to Rule 1.7 prohibits a lawyer acting "as an advocate *in one matter against a person the lawyer represents* in some other matter." (emphasis added). Thus, at the threshold, Nextel – a non-party to this lawsuit – falls outside the ambit of the Rule.

Of course, there is no prospect that Nextel will *ever* be in a position to remedy this fatal deficiency: as reflected in its pending, and as yet undecided, motion to intervene, Nextel seeks intervention not for any purpose having to do with the merits of the case, but only "for the limited purpose" of disqualifying Quinn Emanuel and seeking reconsideration of the Pro Hac Vice admission of two of the firm's lawyers to practice before this Court. Because of the limited – one might say strategic – purpose for which it seeks intervention, Nextel will thus never encounter lawyers from Quinn Emanuel in the ethically untenable position of directly advocating a position *against it*.

**B.     Even If Nextel Were A Party To This Suit, Any Adversity Is**

**"Indirect" And Hence Not a Proper Basis For Disqualification.**

The use of the phrase "directly adverse" in the text of the Rule 1.7(a) is

significant. Thus, to trigger Rule, ". . . the attorney's representation of one client must be

'directly adverse' to the interests of another client. *The use of "directly" to modify*

*adverse suggests that interests of client that are only indirectly or generally adverse does*

*not come within the scope of Rule 1.7(a). . . .. Such language rules out the mere*

*possibility of 'directly adverse' interests and inserts another factor of reasonable*

*probability in the determination. . . ." Chapman Engineers, Inc. vs. National Gas Sales*

*Co., Inc.*, 766 F.Supp. 949, 956 (D. Kansas 1991) (emphasis added).

Since Nextel is not a defendant in this case, Quinn Emanuel is not "directly

adverse" to Nextel.  While Quinn Emanuel may be advocating legal positions concerning

aspects of patent law with which Nextel may disagree, such advocacy has not been held

to constitute the kind of "direct adversity" which would support disqualification.  Indeed,

it is permissible for counsel to advocate a position on behalf of one client that creates

negative precedent for another client in an unrelated matter, unless "there is a significant

risk that a lawyer's action on behalf of one client will materially limit the lawyer's

effectiveness in representing another client in a different case."  See Comments to Rule

1.7 at § 24 (Conflicts in Litigation).

Nor can Quinn Emanuel be disqualified because Freedom Wireless may have

competing economic interests as against Nextel: "[T]here may not be a conflict if the

simultaneous representation concerns an unrelated matter involving clients whose

interests, such as competing economic interests, are only generally adverse.  Courts resist

disqualification in these situations, because they want to deter abusive litigation tactics and support a client's freedom to choose a lawyer." Annotation to Rule 1.7 (*citing Pioneer-Standard Elecs., Inc. v. Cap Gemeni Am., Inc.*, 2002 WL 553460 (N.D. Ohio Mar. 11, 2002); *Gen Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F.Supp. 2d 1334 (S.D. Fla. 2001); *Brown & Williamson Tobacco Corp. v. Pataki*, 152 F.Supp.2d 276 (S.D.N.Y. 2001); *Gen-Cor, LLc. V. Buckeye Corrugated, Inc.*, 111 F.Supp.2d 1049 (S.D. Ind. 2000)).

These exact principles were applied in *Sumitomo Corporation vs. J.P. Morgan & Co., Inc.*, 2000 WL 145747 (S.D.N.Y. 2000), a case dispositive of the pending motion. In that case, the law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss") sought to represent its longstanding client Sumitomo as to claims that Sumitomo wished to assert after it suffered a $2.6 billion loss arising out copper trading scheme.

Chase Manhattan Bank ("Chase"), also a longstanding Paul, Weiss client, was one of the potential defendants in respect to Sumitomo's claims. Paul, Weiss sought Chase's consent to represent Sumitomo in connection with Sumitomo's claims against Chase, but Chase declined to give its consent. Another law firm, Kronish Lieb Weiner & Hellman ("Kronish Lieb"), therefore handled Sumitomo's lawsuit against Chase.

In addition to Chase, there were other financial institutions that Sumitomo intended to sue in connection with the copper trading scheme. Among these defendants was J. P. Morgan ("Morgan"), which was not a Paul, Weiss client. Accordingly, after Kronish Lieb brought suit against Chase on behalf of Sumitomo ("the Chase action"), Paul, Weiss brought a parallel suit against Morgan on behalf of Sumitomo ("the Morgan action"). The Chase action was consolidated with the Morgan action.

Like Nextel in this case, Chase sought to disqualify Paul, Weiss in the lawsuit against Morgan. In seeking Paul, Weiss' disqualification in that suit, Chase argued (as does Nextel here) that (a) upon consolidation of the two actions, disqualification was necessary because such consolidation would create an impermissible conflict of interest, as Paul, Weiss' representation of Sumitomo would involve Paul, Weiss representing one client who was suing another client in a consolidated action; and (b) even if the cases were not consolidated, disqualification was warranted because although Chase was not a party to the Morgan action, Paul Weiss' representation in that action would, because of the overlap of the claims, adversely affect Chase.

In this closely analogous circumstance, the Court denied Chase's application to disqualify Paul, Weiss. Even though the two cases were consolidated – and even though Paul, Weiss would presumably be arguing positions in the Morgan action which would potentially be adverse to Chase – the Court declined to order disqualification.

Importantly, Paul Weiss' position in the Morgan action is exactly parallel to that of Quinn Emanuel in the instant case: Quinn Emanuel is advocating points of law in a case where its complaining client (Nextel) is not a party. Moreover, Nextel (like Chase in the *Sumitomo* case) is now moving for disqualification of counsel on the theory that Quinn Emanuel's efforts on behalf of its client will redound to its detriment because of the parallel nature of the cases. But as the *Sumitomo* Court held, such a prospect is insufficient to warrant disqualification. The Court held that such a drastic remedy would only be available (a) where an attorney's conflict of interests undermines a court's confidence in the vigor of the attorney's representation of his client; and (b) where the attorney is at least potentially in a position to use privileged information concerning the

LA1018067.1
20846410001
12/27/2005 et

12

other side obtained through prior representation, thus giving his present client an unfair advantage. *Id.* at 3.

Neither of these conditions is present in the case at bar. Put simply, there is no risk that Quinn Emanuel will not zealously advocate on behalf of its client Freedom; indeed, paraphrasing the language of the Court in *Sumitomo*, "the fact that [Nextel] had made this motion demonstrated that [Nextel] does not believe that [Quinn Emanuel] will not vigorously represent [Freedom Wireless]". *Id.* at 4.

Nor is there any prospect that Quinn Emanuel will not zealously advocate on behalf of Nextel in those unrelated cases in which it represents Nextel. As set forth in the Declaration of Marshall Searcy those cases are handled by Quinn Emanuel lawyers other than those who have participated in the Freedom matters. Moreover, and because those Nextel cases involve matters entirely unrelated to the Freedom litigation matters, there is no risk that Quinn Emanuel's professional obligations to Nextel will be compromised.

Finally, there is no risk that Nextel's confidential information will be shared with Freedom. Because there is no connection between the subject matter of the pending patent suit and Quinn, Emanuel's unrelated engagements for Nextel, there is no chance that Freedom can obtain an unfair advantage in the pending suit.

III.   **Because Any Conflict Of Interest Was Created By Nextel, Such A Conflict Cannot Be Invoked As a Basis for Quinn Emanuel's Disqualification.**

Quinn Emanuel commenced the Cingular case on behalf of Freedom in 2000. At that time, Nextel did not offer prepaid wireless services. In fact, it was not until after Nextel contracted with BCGI in August 2002 that Nextel launched its prepaid wireless services. And it was not until August of 2002, over two and one-half years *after* Quinn

Emanuel commenced the BCGI litigation for Freedom Wireless, and over four years after receiving written notice of Freedom's patents, that Nextel first contracted with BCGI.[2]

A party may not force disqualification of its adversary's attorney if the conflict arose from the party's own business decision. See, e.g., *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F.Supp. 1121, 1126-27 (N.D. Ohio 1990) ("disqualification of counsel in an action which has been pending for some time. . . is a drastic measure which courts will not impose unless absolutely necessary") (refusing to disqualify firm after adversary merged with client despite existence of conflict); *see also Gen-Cor, LLC v. Buckeye Corrugated, Inc.*, 111 F. Supp. 2d 1049, 1053-54 (S.D. Ind. 2000) (same). Thus, in *Installation Software Technologies, Inc. vs. Wise Solutions, Inc.*, 2004 WL 524829 (N.D. Ill. 2004), the Court addressed whether Baker & McKenzie should be disqualified because it represented Installation Technologies against Wise Solutions, Inc. The conflict arose because following the commencement of Baker's engagement on behalf of Installation, another Baker client, Altiris, Inc., acquired Wise. In denying Altiris' motion to disqualify Baker, the Court held as follows:

> "The conflict of interest in this cause of action was initiated by
> Altiris' acquisition by Wise, not by any action of Installshield or Baker.
> As with *Gould*, there is no accusation or indication that Altiris created the
> conflict to impair Baker's ability to represent Installshield. Nonetheless,
> the Court must ensure that neither party receives an advantage because of

---

[2]    Given Nextel's sophistication and financial resources, we fully expect that Nextel was aware of the already pending BCGI lawsuit (filed in 2000) when it contracted with BCGI (in 2002). Nextel does not claim otherwise.

this acquisition. In ensuring that no advantage is gained because of this conflict, the Court must make certain that no ethical rules are violated. However, the Court must also ensure that this 'conflict by acquisition', particularly since it arose mid-litigation, does not become a means for Altiris to strategically disadvantage Installshield." *Installation Software, supra*, at 6.

A similar conclusion was reached in *Gould, Inc. vs. Mitsui Mining & Smelting Co., supra*, as follows:

"Here, Jones, Day did not create the IGT conflict. Rather, the conflict was created by an acquisition of the client for legitimate business reasons. The improper action on Jones, Day's part was its failure to call this conflict to Pechiney's attention at the earlier point in time required by DR 5-105(c), and to either obtain Pechiney's consent or indicate that because of the conflict, it would withdraw from further representation of IGT. While not the situation in this case, it is clear that courts would not permit one party in a case to create a conflict which forces the disqualification or withdrawal of opposing counsel by buying up companies which opposing counsel represent. Nothing indicates that Pechiney has been prejudiced by Jones, Day's failure to notify. The court fails to see how the rules of ethics will be furthered by forcing Jones, Day to withdraw as counsel for Gould, or why the rules will not be served as well by giving Jones, Day a chance to choose how to extricate itself from

a conflict it did not create, but to which it was unethically slow in responding." *Gould, supra*, at 1127.

Finally, granting Nextel's motion in this case would encourage other litigants to emulate Nextel's "tactical attempts to divest [Freedom Wireless] of [its] counsel of choice." *Id.* ("Courts must exercise extreme caution not to act under the misguided belief that disqualification raises the standard of legal ethics and the public's respect; the opposite effect is just as likely – encouragement of vexatious tactics, which increase public cynicism about the administration of justice") (citing *Panduit v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed. Cir. 1984), *overruled on other grounds, Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).[3]

## IV.    Even If There Were A Proper Basis To Order Disqualification, It Is Not Warranted In This Case.

Even if there were an arguable basis disqualification in this case, the Court should nonetheless deny Nextel's application. The existence of a conflict does not, as Nextel's motion assumes, make disqualification mandatory, particularly in the attenuated circumstances presented here. *See, e.g., U.S. v. Miller*, 623 F.2d 1198, 1201 (3rd Cir. 1980); *Central Milk Producers Co-op v. Sentry Food Stores*, 573 F.2d 988, 991 (8Th Cir. 1978); *W.T. Grant Co. v. Holmes*, 531 F.2d 671, 677 (2nd Cir. 1976). This is so for two

---

[3]    Although not argued in its motion, Nextel has previously asserted that statements by Quinn Emanuel in a press release after the Cingular trial justify disqualification. But the press release is just that – it is not a pleading or statement of legal position. This Court's injunction in the Cingular case essentially tracks the language of Rule 65 and Nextel – which had not even entered the prepaid wireless business when the Cingular case was commenced – cannot premise disqualification on an injunction contemplated by the Rules of Civil Procedure.

independent reasons: first, the principles underlying Rule 1.7 would not be served by disqualifying Quinn Emanuel in this case; and second, Nextel has waived any right to urge Quinn Emanuel's disqualification in this case by having unreasonably delayed in bringing this issue forward.

**A.**     **The Underlying Purposes Behind Rule 1.7 Would Not Be Served By Quinn Emanuel's Disqualification In This Case.**

Even if there were a legal basis for the disqualification of Quinn Emanuel, it should not be ordered in this case because the purposes behind Rule 1.7 would not be served by such an action. This principle is illustrated by the case of *SWS Financial Fund A vs. Salomon Brothers, Inc.*, 790 F.Supp.1392 (N.D. Ill. 1992). In that case, the law firm of Schiff, Hardin & Waite represented a group of investors in litigation against Schiff Hardin client Salomon Brothers.

The law firm resisted Salomon's disqualification motion by arguing, among other things, that Salomon was a former, and not a current, client. Although the Court found that Salomon was in fact a current client of the firm, it declined to order disqualification. The Court ruled that although Schiff Hardin's conflict constituted a violation of the pertinent ethical rules, disqualification would not necessarily follow as an "automatic" consequence of an ethical violation:

> "Disqualification . . . is a blunt device. The sanction of disqualification foists substantial costs upon innocent third parties. The innocent client . . . may suffer delay, inconvenience and expense and will be deprived of its choice of counsel. When disqualification is granted, sometimes the new attorney may find it difficult to master fully the subtle legal and factual

> nuances of a complex case (like this one), actually impairing the
> adversarial process. Of course, the court may also lose the time and labor
> invested in educating itself in the proceedings prior to disqualification. It
> is no secret that motions to disqualify are frequently brought as dilatory
> tactics intended to 'divert . . . the litigation from attention to the merits.'"
> *SWS Financial Fund A & S vs. Salomon Brothers, Inc., Supra*, 790
> F.Supp. at 1400-01.

In finding that disqualification was not justified, the court identified as the two
purposes behind Rule 1.7 a prophylactic to protect confidences that a client may have
shared with his or her counsel; and a means to safeguard loyalty as a feature of the
lawyer-client relationship. *Id.* at 1401.

As to the first issue, the Court concluded that Schiff Hardin – like Quinn Emanuel
in the instant case – had other engagements for Salomon which were unrelated to the
pertinent engagement. Because Schiff Hardin's other engagements for Salomon posed no
possible threat that confidential information could be communicated to its present client,
the Court found that the firm's disqualification would not serve this purpose behind Rule
1.7. And, as demonstrated above, the same situation pertains here: in view of the
"unrelatedness" of Quinn Emanuel's prior engagements for Nextel and the instant case,
there is likewise no risk of the dissemination of confidential information.

As to the principle of loyalty, the court noted that "this case is at the polar
extreme from the case in which an individual has a personal relationship with a particular
attorney who provides for all or substantially all of that client's legal needs." *Id.* at 1402.
By the same token, it is undisputed that the Quinn Emanuel attorneys who have provided

legal services to Nextel are different from the Quinn Emanuel attorneys who have

represented Freedom both in Cingular case and in the instant matter. As a consequence –

even assuming there were legal grounds to order the disqualification of Quinn Emanuel –

such disqualification of would not serve the purposes behind Rule 1.7.

**B.    Nextel's Attempt To Disqualify Quinn Is Untimely.**

"It is well settled that a former client who is entitled to object to an attorney

representing an opposing party on the ground of conflict of interest but who knowingly

refrains from asserting it promptly is deemed to have waived that right." *Trust Corp. of

Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). Courts in other circuits

have also emphasized a party with knowledge will not be allowed to delay the

disqualification motion for tactical reasons. *See, e.g., Redd v. Shell Oil Co.*, 518 F.2d

311, 315 (10th Cir. 1975); *Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th

Cir. 1988); *Central Milk Producers Coop. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992

(8th Cir. 1978).

Nextel certainly did not raise disqualification with "reasonable promptness." The

Cingular action was commenced on March 30, 2000. Nextel does not claim to have been

unaware of that lawsuit when it contracted with BCGI in 2002, which it must have known

could create a risk of claims against it. Nextel also had been monitoring the Cingular

case. Thus, Nextel was aware, at least since it contracted with BCGI in August 2002, that

Freedom Wireless, represented by Quinn Emanuel, asserted claims against wireless

carriers which were "using" the very same infringing implementations offered by BCGI

that Nextel "uses." Nextel must also have known, through its monitoring, that Quinn

Emanuel was advocating injunctive relief on the basis of a theory of joint infringement.[4]

Nonetheless, Nextel opted to hold its motion to disqualify in reserve until after a trial it

was monitoring. Whatever slim grounds Nextel may have had to disqualify Quinn

Emanuel, they were lost by Nextel's failure to raise them in a "reasonably prompt"

fashion.

        WHEREFORE, Quinn Emanuel respectfully requests that this Court deny

putative intervenor Nextel Communications, Inc.'s motion to disqualify it as acting as

counsel to plaintiff Freedom in this action.

                        Respectfully submitted,

                        QUINN EMANUEL URQUHART
                         OLIVER & HEDGES LLP
                        By their attorneys

                        LOEB & LOEB LLP (specially appearing)
                        ROBERT A. MEYER (pro hac vice admission pending)
                        PETER S. SELVIN (pro hac vice admission pending)

                    By: _____ / PSS
                        ROBERT MEYER
                        LOEB & LOEB LLP
                        10100 Santa Monica Boulevard, Suite 2200
                        Los Angeles, California 90067
                        Telephone: (310) 282-2000
                        Facsimile: (310) 282-2200
Dated: December 27, 2005    rmeyer@loeb.com

---

    [4]    As noted earlier, the injunction issued essentially tracks the language of Rule
65. Accordingly, nothing in a press release issued after the trial should have any impact
on the outcome of this motion.

## Certificate of Service

I, Marshall M. Searcy, III, hereby certify that on December 27, 2005, I caused copies of the foregoing document to be served upon all counsel of record electronically and/or by first-class mail, postage-prepaid.

Dated: December 27, 2005

Marshall M. Searcy, III

LIBA/1660212.1