IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

        Plaintiff,

v.

BOSTON COMMUNICATIONS GROUP, INC., et al.

        Defendants.

Civil Action No. 05-11062 EFH

### AFFIDAVIT OF MARSHALL SEARCY III IN OPPOSITION TO (1) MOTION TO DISQUALIFY LAW FIRM OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP AND (2) MOTION FOR RECONSIDERATION OF PRO HAC VICE ADMISSION OF MARSHALL SEARCY III AND ERICA TAGGART

I, Marshall M. Searcy III, declare as follows

1. I am a member of the Bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"), attorneys for plaintiff Freedom Wireless, Inc. ("Freedom"). I make this declaration of my personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Nextel Communications, Inc. ("Nextel") first became a client of Quinn Emanuel in 1993. At that time, and at all times thereafter, Quinn Emanuel was periodically engaged by Nextel in connection with a variety of commercial litigation matters, but never in respect to any patent infringement or patent-related litigation.

3. Quinn Emanuel was first engaged to represent Freedom Wireless, Inc. in 2000 with respect to its patented prepaid wireless service technology. At the time of this engagement, Nextel had no involvement in the prepaid wireless market, or any business relationship whatsoever with the Boston Communication Group, Inc. ("BCGI"). Nextel did not have any dealings with, and hence was not adverse to, Quinn Emanuel's client Freedom. Quinn Emanuel has never received any confidential information from Nextel concerning its patents or its prepaid wireless systems.

4. During the nearly 6 years of the Freedom case, and with the exception of less than one hour of work charged by a Quinn Emanuel attorney in 2004, the Quinn Emanuel attorneys who have handled Nextel's commercial litigation matters are different from the attorneys who have appeared in connection with the Freedom patent litigation

5. Quinn Emanuel, on behalf of Freedom, filed its first suit in 2000 for patent infringement arising out of Freedom's patented prepaid wireless service technology. That first suit, against BCGI, Cingular Wireless and others was filed on March 30, 2000 in the United States District Court for the Northern District of California ("The Cingular suit"). This suit was thereafter transferred to the District of Massachusetts.

6. In August 2002, more than two years after the filing of the Cingular suit, Nextel entered into a contract with BCGI to make use of the prepaid wireless services technology at issue in the Cingular suit. At the time Nextel entered into this relationship with BCGI, I am informed and believe that Nextel was aware of the Cingular suit and Quinn Emanuel's representation of Freedom in that suit. Among other things, BCGI published information about the suit in its public filings.

7.  Following the commencement of Nextel's agreement with BCGI – and presumably Nextel's knowledge of Quinn Emanuel's role as Freedom's counsel against BCGI and others -- Nextel did not express any objections or concerns to Quinn Emanuel about its concurrent representation of Freedom until well after the Cingular case was already in trial. In fact, after August 2002, Nextel continued to send new commercial litigation assignments to Quinn Emanuel.

8.  In early 2005, Robert Pressman of Bramson and Pressman, licensing counsel for Freedom, informed me that he sent a series of letters to various telecommunication carriers concerning the prepaid wireless technology at issue in the Cingular suit. In those letters, licensing counsel advised the carriers of the pending dispute between Freedom and BCGI over the subject technology. He also advised that to the extent that any of those carriers were utilizing Freedom's patented technology those carriers would be required to purchase a license from Freedom. Pressman informed me that one of the recipients of this letter was Nextel. Attached hereto as Exhibit A is a true and correct copy of the January 25, 2005 letter to Nextel. Bramson entered into preliminary discussions with Ross Vincenti ("Vincenti") of Nextel's Legal Department concerning the prospect of Nextel's purchasing a license on the Freedom patents. During those discussions, Vincenti told Mr. Bramson that Quinn Emanuel had a conflict and that Nextel might seek to disqualify Quinn Emanuel.

9.  Following its receipt of the January 25, 2005 letter from Freedom, Nextel continued to engage Quinn Emanuel in connection with new commercial litigation matters. At no time has Nextel made any effort to terminate Quinn Emanuel as its counsel in connection with any of the non-patent litigation matters for which Quinn

Emanuel has been hired as counsel. In fact, Nextel recently sent an e-mail stating that it would continue to retain and compensate Quinn Emanuel in the cases where the firm is acting as its attorney.

10. Trial for the Cingular case commenced on February 28, 2005 in the United States District Court before Judge Edward F. Harrington. During the course of the trial (which encompassed a 51 day jury trial and a 12 day bench trial), I am informed and believe that representatives of Nextel were present in the courtroom and monitoring the proceedings.

11. On March 10, 2005, while trial was proceeding in the Cingular case, Quinn Emanuel partner Dominic Surprenant ("Surprenant") wrote an e-mail to Susan Haller ("Haller") Nextel's Chief Litigation Counsel and Senior Vice President. In that e-mail, Surprenant confirmed that Quinn Emanuel was counsel of record for Freedom in the Cingular suit and that it was pursuing patent infringement claims on behalf of its client in respect to prepaid wireless service technology. Surprenant further indicated in the e-mail that in view of its relationship with Nextel, Quinn Emanuel would take no action adverse to Nextel. Attached hereto as Exhibit B is a true and correct copy of the March 10, 2005 e-mail.

12. On May 20, 2005, the jury reached a verdict of $128 million in the Cingular case in favor of Freedom. Following entry of judgment in Freedom's favor, the defendants filed an appeal in the U.S. Court of Appeals for the Federal Circuit. Quinn Emanuel is Freedom's counsel in connection with that appeal.

13. On May 20, 2005 Freedom filed two separate complaints for patent infringement in connection with the same patented prepaid wireless technology: Case no.

In August 2002, more than two years after the filing of the Cingular suit, Nextel entered into a contract with Cingular to make use of the prepaid wireless services technology at issue in the Cingular suit. At the time it entered into this relationship with BCGI, Nextel presumably became aware of the Cingular suit and Quinn Emanuel's representation of Freedom in that suit. *Id.* at 6.

Following the commencement of Nextel's agreement with BCGI, Nextel did not express any objections to Quinn Emanuel about its concurrent representation of Freedom until well after the Cingular case was already in trial. In fact, after August 2002, Nextel continued to send new commercial litigation assignments to Quinn Emanuel. *Id.* at 7.

In early 2005, Robert Bramson, licensing counsel for Freedom (and not a Quinn Emanuel attorney), sent a series of letters to various telecommunication carriers, including Nextel, concerning the prepaid wireless technology at issue in the Cingular suit. Bramson advised the carriers of the pending dispute between Freedom and BCGI over the subject technology. Bramson thereafter entered into preliminary discussions with Nextel for a license on the Freedom patents. During those discussions, Nextel's representative told Bramson that, because Quinn Emanuel purportedly had a conflict, Nextel would seek to disqualify Quinn Emanuel. *Id.* at 8.

Following its receipt of the letter from Bramson, Nextel continued to engage Quinn Emanuel in connection with new commercial litigation matters. At no time has Nextel made any effort to terminate Quinn Emanuel as its counsel any of the non-patent litigation matters for which Quinn Emanuel has been hired as counsel. *Id.* at 9.

Trial for the Cingular case commenced on February 28, 2005 before Judge Edward F. Harrington. During the course of the trial (which encompassed a 51 day jury

05-CV-11062-EFH ("the Alltel suit") and Case no. 00-CV-05-11061-EFH ("the Nextel suit"). Quinn Emanuel represents Freedom in the Alltel suit, but not in the Nextel suit.

14. In July of 2005, Quinn Emanuel again disclosed its representation of Freedom in the Cingular lawsuit to Nextel. (As of this time, Nextel had merged with Sprint Communications). Thus, in a July 13, 2005 e-mail from Quinn Emanuel partner John Purcell ("Purcell") to Pascale Zaldivar of Sprint's law department, Purcell advised that "our firm recently represented plaintiffs in the Freedom Wireless trial in Boston ...Although Sprint was not a defendant in this action, this matter could have an impact on the prepaid wireless market." Attached hereto as Exhibit C is a true and correct copy of that e-mail. Following this disclosure, Sprint continued to send additional legal work to Quinn Emanuel.

15. During the same time period, my partner Mr. Surprenant had a conversation with an in house attorney from Nextel, who stated that she was unhappy that Quinn Emanuel represented Freedom. She indicated that Nextel might not give Quinn Emanuel additional business. However, after the conversation, Nextel sent several new cases to Quinn Emanuel.

16. The nine attorneys at Quinn Emanuel primarily responsible for the Freedom matters have spent 5 years and thousands of hours to come up to speed, litigate and try these complex claims. In fact, Quinn Emanuel has incurred well over several million dollars in attorneys' fees over the past five years in connection with the Freedom litigation. Over the course of 5 years, attorneys at Quinn Emanuel attended over 150 depositions, drafted and opposed scores of motions, and participated in two other separate trials, related to the Freedom Wireless patents. I have been an attorney for 12 years.

Almost half my career has been spent on this case. Other attorneys at our firm have spent almost their entire career working for Freedom.

17. In October, 2005, several months after the conclusion of the trial in the Cingular case, Nextel first sought to disqualify Quinn Emanuel in the Cingular case. At that time, Nextel Communications filed a motion with this Court to intervene for the purpose of, among others, and disqualifying Quinn Emanuel.

This Court denied Nextel's motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of December 2005, at Los Angeles, California.

_____
MARSHALL M. SEARCY III

## Certificate of Service

I, Marshall M. Searcy, III, hereby certify that on December 27, 2005, I caused copies of the foregoing document to be served upon all counsel of record electronically and/or by first-class mail, postage-prepaid.

Dated: December 27, 2005

Marshall M. Searcy, III

LIBA/1660212.1

**BRAMSON & PRESSMAN**
1100 E. Hector Street
Suite 410
Conshohocken, PA 19428
610-260-4444
Fax: 610-260-4445

January 25, 2005

**VIA FEDERAL EXPRESS**

Mr. Timothy Donahue
Chief Executive Officer
Nextel Communications Inc.
2001 Edmund Halley Dr.
Reston, VA 20191

Re: Freedom Wireless, Inc. Patents on Prepaid Wireless Communications

Dear Mr. Donahue:

This firm has been engaged by Freedom Wireless, Inc. in connection with the licensing and enforcement of United States Patents Numbers 5,722,067, 5,778,313, 5,854,975, 6,157,823, 6,236,851 and 6,434,378 (the "Freedom Wireless Patents"). Copies of the Freedom Wireless Patents are enclosed for your information.

Freedom Wireless has been awarded patent claims by the United States Patent and Trademark Office that are directed to important aspects of prepaid wireless communications systems, and apply to activities of certain prepaid wireless operators and mobile virtual network operators. For example, the Freedom Wireless Patents have claims directed at switched-based systems and methods of completing and processing calls to and from prepaid wireless subscribers and methods for increasing the balance of a prepaid account through the use of vended media, such as a prepaid wireless telephone card.

As you may know, Freedom Wireless has patent infringement litigation pending against Boston Communications Group, Inc. and a number of wireless carriers. Freedom Wireless, Inc. v. Boston Communications Group, Inc. et. al., Case No. 00-CV-12234-EFH, United States District Court of Massachusetts (the "BCGI Suit"). In the BCGI Suit, Freedom Wireless is seeking damages for infringement of U.S. Patents Numbers 5,722,067 and 6,157,823 by the defendants in their provision of prepaid wireless communications services, as well as an injunction prohibiting further infringing activity. Motions for summary judgment that were filed by BCGI and the other defendants were denied by the Court and the trial of the BCGI Suit is scheduled to commence on February 22, 2005.

January 25, 2005
Page 2

Based on information that we have obtained that Nextel Communications is a vendor of prepaid wireless services, it appears that Nextel Communications may be utilizing technology covered by one or more of the Freedom Wireless Patents in its prepaid wireless offerings. To illustrate the nature and scope of the Freedom Wireless Patents, we call your attention to claims 10 and 15 of U.S. Patent Number 5,722,067, claims 1, 33, 34, and 35 of U.S. Patent No. 6,157,823, and claims 1, 26, 53 and 54 of U.S. Patent No. 6,236,851.

We believe that certain prepaid wireless service vendors, in addition to those identified in the BCGI Suit, should have an interest in a license under the Freedom Wireless Patents, and are prepared to offer licenses on reasonable terms and conditions to any interested party. Freedom Wireless has no interest in further litigation at this time, and understands that many companies would prefer to wait for the outcome of the BCGI Suit before making any determination as to the need for a license. However, you should be aware that we are quite optimistic about the upcoming trial and the preferential terms that we are currently prepared to offer will no longer be available if and when Freedom Wireless prevails against BCGI.

If you have an interest in exploring the possibility of a license in good faith, please contact me so we can discuss next steps.

We look forward to a prompt response to this letter.

Sincerely yours,

Robert S. Bramson

RSB/clb
Enclosures

cc: Larry L. Day

**Koide, Brian**

**From:** Dominic Surprenant [dominicsurprenant@quinnemanuel.com]
**Sent:** Thursday, March 10, 2005 5:28 PM
**To:** Haller, Susan
**Subject:** Freedom Wireless

Sue,

My firm is trying a case in Boston called Freedom Wireless, where we represent the plaintiff versus a variety of cell providers in what I understand to be essentially a patent infringement lawsuit. Nextel is not a defendant and I have never been involved in the case in any fashion.

It is my understanding that when we took on the representation five years ago, we told our Freedom Wirless clients that we represented Nextel and could not be adverse to Nextel under any circumstances, and our clients agreed to that condition.

It is also my understanding that our FW clients hired another firm which specializes in licensing agreements and that firm sent out letters to a variety of cell providers, including Nextel, about taking out a license.

Finally, it is my understanding through the grapevine Nextel has a lawyer monitoring the trial, which started several days ago.

Obviously, no one at my firm has any invovlement with anything to do with Nextel w/r/t the FW case or will have in the future.

However, when I heard through the grapevine that our clients had otherwise contacted Nextel, and Nextel (per the rumor mill) is monitoring the trial, I told the relevant partners here that I wanted to make sure the firm's Nextel client was apprized of where things stand.

I think my firm's role, or my role here, is of course strictly limited to offering to be an honest broker to facilitate a sensible business deal, if Nextel should want us to do so.

If you have any questions, Sue, please let me know.

Thanks.

1

**Peter Selvin**

Sent:       Thursday, July 14, 2005 7:30 AM
Subject:    RE: Conflict


Mime.822 (5 KB)

    Thanks, John.  I'll try to shepherd this so that you're not doing it a third time.  Hope all is well.

Pascale Zaldivar
Attorney - Sprint Law Department
6450 Sprint Parkway, Building 14
Mailstop:  KSOPHN0412-4A512
Overland Park, KS  66251
Phone:  913-315-9467
PCS:    816-699-4213
Fax:    913-523-9609

pascale.h.zaldivar@mail.sprint.com

IMPORTANT:  This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of the message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately. Thank you.


-----Original Message-----
From: John Purcell [mailto:johnpurcell@quinnemanuel.com]
Sent: Wednesday, July 13, 2005 6:46 PM
To: Zaldivar, Pascale H [CC]
Subject: Conflict


Attached is the conflict of interest statement.  We are not currently adverse to Sprint and we are not currently aware of any conflicts of interest.  That being said, our firm recently represented plaintiffs in the Freedom Wireless trial in Boston.  This was a patent case involving the pre-paid wireless market.  Although Sprint was not a defendant in this action, this matter could have an impact on the prepaid wireless market.  Let me know if you have any questions.


<<Mime.822>>