# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON COMMUNICATIONS GROUP, INC., et al., <br><br> Defendants | Civil Action No. 05-11062-EFH |

## PLAINTIFF FREEDOM WIRELESS, INC.'S OPPOSITION TO DEFENDANTS REGIONAL CARRIERS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND DEFENDANT SOUTH CANAAN CELLULAR COMMUNICATIONS COMPANY LP'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

Plaintiff Freedom Wireless, Inc. hereby submits its opposition to defendants Bluegrass Cellular, Inc., Cellular Properties, Inc. (d/b/a Cellular One of East Central Illinois), Centennial Cellular Operating Co., LLC, Cincinnati Bell Wireless LLC, Dobson Cellular Systems, Inc., East Kentucky Network, LLC (d/b/a Appalachian Wireless), Farmers Cellular Telephone, Inc. (d/b/a Farmers Wireless), Great Lakes of Iowa, Inc., Marseilles Cellular, Inc. (d/b/a Illinois Valley Cellular), MTA Communications (d/b/a MTA Wireless), Mid-Missouri Cellular LLP, Southern Illinois RSA Partnership (d/b/a First Cellular of Southern Illinois), South #5 RSA Limited Partnership (d/b/a Brazos Cellular Communications, Ltd.), Thumb Cellular, Unitah Basin Electronic Telecommunications (d/b/a UBET Wireless) motion to dismiss for lack of personal jurisdiction, and defendant South Canaan Cellular Communications Company LP's' motion to dismiss, or in the alternative, transfer venue.[1]

## Preliminary Statement

When Freedom brought its first case ("Freedom I"), defendant Boston Communications Group, Inc. ("BCGI") successfully moved to have the case transferred to this Court. In its motion to transfer, BCGI argued that the most relevant witnesses, documents, and events relating to infringement were in this jurisdiction. In this case, BCGI and the largest wireless carrier co-defendant, Alltel Corporation, do not dispute that the District of Massachusetts is the proper forum.

However, with the present motion, the so-called "Regional Carrier" defendants, which also use BCGI's prepaid wireless service bureau, urge the Court to require that Freedom bring dozens of separate actions against them, together with BCGI, in courts across the country. Under

---

[1]    Freedom submits a single opposition to the two motions to dismiss filed by the moving defendants, which for the convenience of the Court, it refers to collectively as the "Regional Carriers." Accordingly, Freedom has not sought leave to file an oversized brief.

the applicable case law, jurisdiction is appropriate in a district where infringement occurs and where it is fair and reasonable.  Here, it cannot be disputed that:

- each defendant earns revenue by using BCGI's prepaid wireless service bureau;

- use of these services require numerous and sustained contacts and communications between personnel of BCGI and the carrier defendants;

- each defendant has a contract with co-defendant BCGI for the provision of prepaid wireless services;

- those contracts for the provision of prepaid wireless services are governed by Massachusetts law;

- BCGI has likely indemnified defendants for the claims in this suit.

Further, it is fair and reasonable to allow Freedom's claims against all alleged infringers to proceed together in one single case in the forum that co-defendant BCGI chose.  Considering that at least some of the claims involve joint infringement of each defendant with BCGI, Freedom's claims against the Regional Carriers and BCGI should proceed in the same court. Otherwise, different courts would adjudicate the same infringing actions in separate fora, with BCGI indemnifying the defense in each far-flung jurisdiction.  This proliferation of suits would squander not only judicial resources, but Freedom's as well.

In any event, defendants' motions are premature.  No discovery has been taken, and Freedom has had no opportunity to evaluate the extent of defendants' contacts with Massachusetts.  As at least defendant South Canaan concedes, the issues raised are more appropriately decided on summary judgment.

### Statement of Facts

BCGI's Transfers Original Case to District of Massachusetts.  Freedom first filed suit for patent infringement against BCGI and its then-customers in the Northern District of California in

March 2000.[2]  Freedom chose Northern California in part because one of the regional carrier defendants in that case, Western Wireless, was based in Northern California.  Shortly thereafter, BCGI successfully moved to transfer venue to the District of Massachusetts, claiming that Massachusetts "was the center of infringing activity," where all of the witnesses and facts were located.[3]  In particular, BCGI claimed that "all back-end processing of pre-paid cellular telephone calls performed by the C2C Wireless Prepaid System, including accounting and billing functions are performed at Boston's Woburn facility, and all documents relating to such processing and function are located at the Woburn facility."[4]  (That center has since moved to New Bedford).  BCGI also asserted that its wireless carrier customers regularly traveled to Massachusetts to learn about and negotiate a contract for its prepaid wireless service bureau (known then as the C2C Prepaid Wireless system).[5]  All of the carrier defendants in that case, including Western Wireless, assented to or joined BCGI's motion, with the exception of Canadian defendant Rogers Wireless, which disputed that it was subject to United States patent laws in any United States court.

---

[2]  Complaint, dated March 29, 2000, Freedom Wireless, Inc. v. Boston Communications Group, Inc., AT&T Wireless PCS, Inc., Airtouch Communications, Inc., a/k/a Airtouch Cellular; Alltel Communications Products, Inc., Bell Atlantic Mobile, Inc., a/k/a BANM, Bellsouth Cellular Corp., Bellsouth Mobility, Inc., Cellular One, a/k/a Cellular One of San Francisco, Primeco Personal Communications, Rogers Wireless, Inc., Western Wireless Corp., a/k/a and d/b/a Cellular One, and Does 1-20 (attached as Exhibit A to the Affidavit of Marshall M. Searcy III, filed concurrently herewith ("Searcy Aff., Exh. A").

[3]  Defendant Boston Communications Group, Inc.'s Motion to Transfer Venue, dated June 16, 2000 (Searcy Aff., Exh. B).  See also Corrected Declaration of William D. Wessman in Support of Defendant Boston Communications Group Inc.'s Motion to Transfer Venue, dated June 16, 2000 ("Corr. Wessman Decl.") at ¶¶9-13 (Searcy Aff., Exh. C).

[4]  Corr. Wessman Decl. at ¶13 (Searcy Aff., Exh. C).

[5]  Declaration of Kimberly Obremski in Support of Defendant Boston Communications Group, Inc.'s Motion to Transfer Venue, dated June 15, 2000 at ¶5 ("Obremski Decl.") (Searcy Aff. Exh. D).

<u>The Court Dismisses Canadian Defendant Rogers Wireless</u>.  After venue was transferred to the District Massachusetts, Rogers Wireless, Inc., moved for summary judgment based on lack of personal jurisdiction and non-infringement.[6]  When Rogers first made a motion to dismiss based on lack of jurisdiction, the Court denied the motion and allowed Freedom to proceed with discovery on the issue of Rogers' contacts with the United Sates.[7]  Following this discovery, Rogers subsequently renewed its motion in the form of a motion for summary judgment.

Rogers focused its argument on its supposed lack of activities in the United States, arguing that:

> Rogers is the only foreign defendant in this action.  Every other telecommunications carrier named as a defendant provides service to U.S. residents using equipment located in the United States. Rogers provides service only to Canadians, using equipment in Canada.  Rogers should not be haled into a U.S. court to answer claims that it infringed a U.S. patent when it has not committed any relevant acts in the United States.[8]

After extensive briefing, the Court held that it lacked personal jurisdiction over Rogers.[9] The Court's decision emphasized that Rogers was a foreign defendant, who "is not licensed to conduct business in the United States . . . does not own any assets or property in the United

---

[6]  Memorandum in Support of Motion of Defendant Rogers Wireless, Inc. for Summary Judgment for Lack of Personal Jurisdiction and for Non-infringement, November 29, 2001 (Searcy Aff., Exh. U).

[7]  Order, dated February 14, 2001 at ¶3 (Searcy Aff. Exh. E).

[8]  Memorandum in Support of Motion of Defendant Rogers Wireless, Inc. for Summary Judgment for Lack of Personal Jurisdiction and for Non-infringement, November 29, 2001, at 1 (Searcy Aff., Exh. U).

[9]  <u>Freedom Wireless, Inc. v. BCGI</u>, 198 F. Supp. 2d 19, 24 (D. Mass. 2002) (Searcy Aff. Exh. F).

States and does not maintain an office here."[10]  The Court thus held, "[b]ecause Rogers is a

foreign corporation, in addition to the usual burden being forced to travel to the forum state, it

has the additional burden of being forced 'to submit its dispute . . . to a foreign nation's judicial

system."[11]  The Court also found that "Freedom Wireless made a conscious business decision not

to file for a Canadian patent," and "although the forum state has legitimate interests in commerce

and scientific development, those interests are substantially diminished with respect to activity

that occurs outside of the borders of the domestic market."[12]  The Court noted that "[t]he

Supreme Court has warned that great care and reserve should be exercised when extending our

notions of personal jurisdiction into the international field."[13]

        The Current Suit Against BCGI and United States-based Carrier Defendants.  Since the

filing of Freedom I in March of 2000, BCGI has entered into contracts with many additional

wireless companies, including the Regional Carrier defendants, which have brought the present

motions.  Although Freedom had requested damages in Freedom I for BCGI's infringement with

these carriers, the Court held that Freedom must file a separate lawsuit that included the new

carrier customers and BCGI.[14]  Thus, Freedom filed the present action.

        Although no discovery has occurred about the extent of the carriers' contacts with

Massachusetts, it is undisputed that they each have a contract with BCGI to provide prepaid

---

[10]  Id. at 22 (Searcy Aff. Exh. F).

[11]  Id. at 25 (Searcy Aff. Exh. F).

[12]  Id.  (Searcy Aff. Exh. F).

[13]  Id.  (Searcy Aff., Exh. F) (internal citations and quotations omitted).  The Court's decision to dismiss Rogers Wireless for lack of personal jurisdiction is currently the subject of an appeal before the Federal Circuit.  Notice of Appeal of Freedom Wireless, September 30, 2005 (Searcy Aff., Exh. G).

[14]  Order, April 27, 2005 (Searcy Aff., Exh. H) ("Freedom may pursue claims arising from conduct involving non-defendant carriers in a separate action.").

wireless services.  BCGI named each of these carrier defendants as its wireless carrier customers

in response to an interrogatory in Freedom I.[15]  Indeed, each of the Regional Carriers stipulated

that the second amended complaint correctly identifies the companies who have a contract with

BCGI for prepaid wireless services.[16]  Unlike Rogers Wireless, the Regional Carriers are all

domestic companies, three of which admit to having one or more contacts with Massachusetts-

based entities, in addition to their relationship with BCGI.[17]  In fact, all the Regional Carriers

except for South Canaan Cellular are represented by the same law firm.[18]  Furthermore, under at

least some of the contracts (most have not yet been produced in discovery in this case), BCGI

and the carrier defendants chose Massachusetts law as the governing law for their prepaid

wireless services contract.[19]

      Pursuant to these contracts, and according to the sworn statements of BCGI, all Regional

Carrier subscriber information and other data from *each* and *every* one of their prepaid calls is

---

[15]  Defendant Boston Communications Group, Inc.'s Second Supplemental Answers to Plaintiff Freedom Wireless, Inc.'s First Set of Interrogatories, dated July 18, 2003, at 3 (Searcy Aff., Exh. I).

[16]  Joint Stipulation to File Second Amended Complaint, December 6, 2005 (Searcy Aff., Exh. J) ("the Second Amended Complaint reflects changes to correct the names of several companies who are corporate entities that have contracted with or are subject to contracts with BCGI to offer prepaid wireless services").

[17]  Defendants Regional Carriers' Motion to Dismiss for Lack of Personal Jurisdiction (hereinafter "Defs. Mot."), note 1.  Bluegrass Cellular, Inc., Centennial Cellular Operating Co., LLC, and Uintah Basin Electronic Telecommunications have Massachusetts contacts unrelated to the present action.

[18]  Email from Leo Lam to Jeanine Zalduendo and Erica Taggart, November 21, 2005 (Searcy Aff., Exh. K) ("Attached is a list of the 15 carriers represented by KVN [Keker & Van Nest] and on behalf of whom we agree to accept service and will respond to Freedom's amended complaint.").

[19]  See, e.g., Prepaid Connection Service Agreement between Cellular Express, Inc. d/b/a Boston Communications Group and Marseilles Cellular, Inc. d/b/a Illinois Valley Cellular, §10.8, at BCG 25605 (Searcy Aff., Exh. L) ("This Agreement shall be construed in accordance with the laws of the Commonwealth of Massachusetts.").

sent directly to the database server in Massachusetts, which checks the prepaid account balance, determines the cost of the required call, calculates the maximum duration for the call, and sends this information back to the customer's phone.[20]

Lack of Any Discovery In The Present Case. Defendants have brought their motions to dismiss in lieu of an answer to Freedom's Second Amended Complaint. No party has served any written discovery or taken any depositions. Freedom has thus had no opportunity to view many of the contracts between BCGI and the Regional Carriers, to learn about their contract negotiation process, nor calculate the level of service BCGI provides to each Regional Carrier. Freedom is thus limited to the information it was able to obtain in Freedom I, and the affidavits attached to Regional Carriers' motion.

## Argument

**I.    REGIONAL CARRIERS' CONTRACTS WITH AND CONTINUOUS USE OF BCGI'S SERVICES AND FACILITIES SATISFY THE CONSTITUTIONAL "MINIMUM CONTACTS" REQUIREMENT FOR PERSONAL JURISDICTION**

To ascertain whether it may properly exercise personal jurisdiction over a non-resident defendant, courts conduct a two-step inquiry. "First, the district court determines whether a provision makes the defendant amenable to process, which usually depends on whether the defendant could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district is located." Red Wing Shoe Co. v. Hockerson-Halberstadt, 148 F.3d 1355, 1358 (Fed. Cir. 1998) (internal citations and quotations omitted). "Second, the district court ensures that 'maintenance of the suit does not offend 'traditional notions of fair play and

---

[20]    Corr. Wessman Decl. at ¶15 (Searcy Aff., Exh. C).

substantial justice" that are embodied in the Due Process Clause." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).[21]

A constitutional exercise of personal jurisdiction can be either specific or general. Specific jurisdiction exists where "the cause of action at issue arises out of or relates to" the defendant's minimum contacts with a state, allowing "a court [to] properly assert personal jurisdiction, even if those contacts are 'isolated and sporadic.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985). The standard for specific jurisdiction considers: (1) whether the "[defendant] 'purposefully directed [his] activities at residents of' the forum;" (2) and if so, "whether claim results arises out of or is related to those activities;" and (3) "whether assertion of jurisdiction is reasonable and fair." Freedom I, 198 F. Supp. 2d at 24 (quoting Arko Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).

### A.    The Regional Carriers Purposefully Direct Their Activities Towards Massachusetts

The Regional Carriers urge dismissal, stating that their "only contacts with Massachusetts are their contracts with BCGI for prepaid wireless services." (Motion at 6). However, "even a single act can support jurisdiction," so long as it creates a "substantial connection," rather than an "attenuated affiliation," with the forum. Burger King, 471 U.S. at 475. See also McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957). Indeed, under such circumstances, the Supreme Court upholds the exercise of jurisdiction, noting that "the Due Process Clause may not

---

[21]    As defendants concede, (Motion at 4), the Massachusetts long arm statute reaches to the full extent of constitutional Due Process requirements. See Freedom Wireless, Inc. v. BCGI, 198 F. Supp. 2d 11, 24 (D. Mass. 2002); Red Wing Shoe, 148 F.3d at 1359. Thus, the Court can proceed with an inquiry into the sufficiency of the contacts between defendants and the forum state.

be wielded as a territorial shield to avoid interstate obligations" Burger King, 471 U.S. at 474-75.

Here, the Regional Carriers have made a conscious business decision to engage BCGI's prepaid wireless services.[22] This relationship is centered in Massachusetts, where BCGI maintains the specific operations the Regional Carriers have sought out--the same operations which are the subject of this suit. In fact, co-defendant BCGI's own sworn statements indicate that, even putting aside technical issues, this relationship is far more than an "attenuated affiliation." When Freedom I was originally filed by Freedom in the Northern District of California, BCGI successfully had it transferred to Massachusetts, swearing in an affidavit that:

- "In all sales of Boston Communications' C2C pre-paid wireless services we encourage the potential customer to visit our headquarters facility in Woburn, Massachusetts, for a demonstration of the C2C service and a thorough discussion of all aspects of the service."[23]

- "Every or nearly every carrier to which we have sold our C2C service has made at least one [] visit during the sales process that has led to the negotiation and execution of a pre-paid wireless service agreement for our C2C service."[24]

- "In every case the negotiation of the final terms and conditions, as embodied in the final pre-paid wireless service agreement, has involved numerous communications between Boston Communications and the carrier customer, some of which have taken place at meetings in Massachusetts."[25]

---

[22]  See Foster-Miller, Inc. v. Babcock and Wilcox Canada, 46 F.3d 138, 145 (1st. Cir. 1995) ("The seminal jurisdictional fact-that [defendant] voluntarily dispatched a representative to Massachusetts for commercial advantage pursuant to a written contract with a Massachusetts firm-cannot be gainsaid.")

[23]  Obremski Decl., at ¶ 4 (Searcy Aff., Exh. D).

[24]  Id. (Searcy Aff., Exh. D).

[25]  Id. (Searcy Aff., Exh. D).

- "[A]ccount management and sales services often entail regular visits by representatives of each customer of Boston Communications in Massachusetts. We also conduct an annual three-day user meeting in Massachusetts."[26]
- "Boston Communications bills all its carrier customers for the C2C service from Boston Communications' billing office in Massachusetts, and all payments are received by Boston Communications in Massachusetts and deposited at our company's banking facility in Massachusetts."[27]

As such, the Regional Carriers fostered a business relationship with a Massachusetts corporation; a relationship which requires substantial and continuous action in Massachusetts on their behalf.  As co-defendant BCGI explained:

> they are engaged in an ongoing, important commercial relationship with a
> Massachusetts company involving a telecommunications system as to which
> claims of patent infringement are certainly foreseeable, as indicated by references
> in the customer service agreements to the handling of such possible claims. . . .
> even the alleged tortious acts that were committed outside Massachusetts resulted
> from, and were integrally related to, an established business relationship with a
> Massachusetts-based firm.[28]

Courts have upheld the exercise of personal jurisdiction over non-residents based on similar contractual business relationships.  See Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 984 (1st Cir. 1986) ("Harrods sent at least two letters to Ealing in Massachusetts requesting business information. Ealing had to obtain approval from Harrods for minutiae of the operation: obtaining a post office box and a telephone number, setting up facilities, and the handling of customer inquiries, orders and payments." ); Daynard v. Ness, Motley, Loadholt, Richardson & Poole,

---

[26]    Id. at ¶ 5 (Searcy Aff., Exh. D).

[27]    Id. at ¶ 6 (Searcy Aff., Exh. D).

[28]    BCGI's Motion for Transfer of Venue, at 14 (Searcy Aff., Exh. B).

P.A., 290 F.3d 42, 55 (1st. Cir. 2002) (holding that, personal jurisdiction over one defendant could be imputed over the other where that defendant's actions in the forum were on behalf of and for the benefit of the other). The Court should reach the same conclusion here.

**B.    The Alleged Infringement of Freedom's Patents Arose Out Of Regional Carriers' Coordinated Activities With BCGI In Massachusetts**

Similarly unavailing is the Regional Carriers' argument that Freedom's claims for patent infringement do not arise out of their contacts with Massachusetts. "The relatedness test is, relatively speaking, a flexible, relaxed standard." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) (finding relatedness to be self-evident where the document that represented the forum-related activity was itself the cause of the lawsuit). The only activity at issue in Freedom's complaint-- patent infringement--would not have arisen if the Regional Carriers did not contract for and utilize BCGI's Massachusetts-based technology and services.

Nonetheless, the Regional Carriers argue that they "do not use" the processing component of BCGI's service bureau, which is located in Massachusetts. (Motion at 7). Defendant South Canaan denies that any data processing occurs in Massachusetts, but identifies Maine and Pennsylvania as the location of such processing. (Motion at 3). Again, however, these assertions directly contradict the statements made by co-defendant BCGI in transferring venue of Freedom I to Massachusetts. As BCGI argued, "the center of the accused activity is clearly in Woburn, Massachusetts."[29] Indeed, BCGI identifies Massachusetts as the site where: (1) it has entered agreements that "enable" its customers "to utilize, offer for sale, and sell pre-paid wireless services that utilize [BCGI]'s C2C Prepaid Wireless System;"[30] (2) it "performs the support that enables its customers, and their retail customers, to use the C2C Prepaid Wireless

---

[29]    Id. at 5 (Searcy Aff., Exh. B).

[30]    Obremski Decl. ¶¶3-4 (Searcy Aff., Exh. D).

System;"[31] (3) it "processes all the data that enable the pre-paid customers to make their wireless telephone calls and that enable the defendant customers of [BCGI] to sell and utilize the C2C Prepaid Wireless System."[32]

Relying on GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (internal quotations omitted), BCGI noted that "[i]n a patent infringement action, as a general rule, the preferred forum is that which is the center of the accused activity. . . . The trier of fact ought to be as close as possible to the milieu of the infringing device and hug of activity center around its production."[33]  As in Freedom I, "[p]lainly it is Boston Communications' facilities in Massachusetts that are the center of the allegedly infringing activity that is at issue in this patent-infringement case."[34]

Further, as noted above, representatives of BCGI have testified that the contracts which created a relationship between BCGI and its customers in the first instance were all negotiated in Massachusetts.  It is undisputed that the contracts spell out the terms of the services BCGI would provide the Regional Carriers through the use of BCGI's pre-paid wireless technology in Massachusetts.  If suit were brought to enforce a contract between BCGI and a Regional Carrier, the District of Massachusetts would clearly be an appropriate forum.  See Pritzker, 42 F.3d at 61. It follows that Massachusetts would still be appropriate forum for a suit brought by a third party harmed by this contractual relationship.  See Miller v. Jones, 779 F. Supp. 207, 212 (D. Conn. 1991) ("by reaching out to contract with Jones in the Virgin Islands, Megatrend availed itself of

---

[31]  Id. at ¶5 (Searcy Aff., Exh. D).

[32]  Corr. Wessman Decl. (Searcy Aff., Exh. C), at ¶¶13-18.

[33]  BCGI's Motion for Transfer of Venue at 5 (Searcy Aff., Exh. B).

[34]  Id.

Virgin Islands law and could have been sued there on the contract. The fact that the plaintiff here is Miller, not Jones, works no jurisdictional prejudice against Megatrend").

    **C.**    **The Regional Carriers ' Reliance on the Court's Ruling Regarding Canadian Defendant Rogers Wireless Is Misplaced**

    Despite this, the Regional Carriers argue that dismissal is proper because they are out-of-state corporations that supposedly "have no telecommunications equipment, assets, employees, distributors, or offices in Massachusetts . . . do not own, lease, or rent property in Massachusetts . . . [and] do not pay Massachusetts taxes." (Motion at 6). Defendants then suggest that the Court should grant their motions because "[b]ased on these facts," the Court dismissed claims against Canadian defendant, Rogers Wireless, in <u>Freedom I</u>.

    The Regional Carriers' reliance on the Court's ruling with respect to a foreign defendant is entirely misplaced. Rogers Wireless is a *Canadian* corporation, and its contacts with Massachusetts were scrutinized more closely in order to balance concerns of foreign policy and national sovereignty. <u>See</u> <u>Freedom I</u>, 218 F. Supp. 2d at 24-25. Unlike Rogers Wireless, the Regional Carriers are U.S. corporations; and the present action does not implicate matters of foreign policy or national sovereignty. Further, the bulk of the Court's analysis in <u>Freedom I</u> centered on Rogers' lack of contacts and interaction with the U.S. in general, indicating that it was this, rather than the nature of Roger's connections to Massachusetts specifically, which was of greatest concern to the Court. <u>Freedom I</u>, 218 F. Supp. 2d at 24. Here, however, there are no restrictions on the Regional Carriers' ability to maintain services for customers who travel to Massachusetts, something Rogers was unable to do. The Regional Carriers can claim no unfamiliarity with U.S. federal law, and U.S. patent law in particular. The Regional Carriers are aware that their situation is not "severe" like Rogers argued, as the only thing they complain of regarding the burden they would face defending themselves in Massachusetts is that "all their

relevant witnesses and sources of proof" are located elsewhere. (Motion at 8). Not only does

such a statement disregard the multitude of evidence which will and has been supplied by BCGI

regarding their business dealings with the Regional Carriers, it also ignores the fact that Freedom

did not choose the forum and shoulders the same burden of litigating in an inconvenient locale.

D.    **The Regional Carriers Have Failed To Meet Their Burden Of Showing That Jurisdiction Is Unreasonable**

Finally, the Regional Carriers argue that the exercise of jurisdiction over them would be

unreasonable and unfair. However, Freedom's interest in finally obtaining relief for the

infringement of its patents, in addition to the efficiency of litigating this action in Massachusetts,

cannot be overcome by the slight burden to the domestic Regional Carries in defending in a

forum where they have engaged in business activities.

"The test for unreasonableness under Federal Circuit law is a 'multi-factored balancing

test that weighs any burdens on the defendant against various countervailing considerations,

including the plaintiff's interest in a convenient forum and the forum state's interest in resolving

the controversies flowing from in-state events.'" Freedom I, 218 F. Supp. 2d at 25 (quoting

Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996)). This

balancing test requires an analysis of the following factors: "(1) the burden on the defendant; (2)

the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate

judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the

interests of the states in furthering their social policies." Id. The balance of these factors weigh

in favor of exercising jurisdiction.

1.    **Unlike Freedom Wireless, the Regional Carriers Do Not Face An Unreasonable Burden Defending This Action in Massachusetts**

Freedom did not choose to bring its original suit, Freedom I, in Massachusetts. As

described above, BCGI successfully sought to have Freedom I transferred to Massachusetts, the

nucleus of BCGI's and co-defendants' alleged infringing activity.[35]  BCGI convinced the Court in

the Northern District of California that the District of Massachusetts would properly exercise

jurisdiction over all defendants.  Of those defendants, only one, Rogers Wireless, a foreign

company, was dismissed for lack of jurisdiction.

　　　　The Court in Freedom I did not find Freedom's interest compelling as compared to the

possible burden placed on Rogers because Freedom, "made a conscious business decision not to

file for a Canadian patent.  The fact that it cannot extend its United States patent rights to cover

the Canadian market was a risk that was freely assumed."  Freedom I, 218 F. Supp. 2d at 25.

Freedom did however, file a United States patent to protect against infringement in the U.S., and

specifically those actions which are alleged against the Regional Carriers.

　　　　The Regional Carriers claim that Freedom can simply "sue each Regional Carrier in the

respective district(s) in which they are properly subject to personal jurisdiction."  (Motion at 9).

Such a solution however, would be wasteful of both Freedom's and all of the Regional Carriers'

resources.  Freedom is a small company of four employees.  To require them to bring 16 separate

suits to enforce their patents would be beyond the scope of its capacity, and certainly

unreasonable.  Additionally, BCGI provides a common thread between each Regional Carrier

and the infringement of Freedom's patents.  It is unlikely that any separate suit against a Regional

Carrier would not involve BCGI as a party, and thus would not run the risk of being again

---

[35]    According to BCGI:  "The choice of California as the forum state was obviously not
dictated by the occurrence of the key operative facts of the alleged infringement in California.
Those facts occurred in Massachusetts, the principal place of business of Boston
Communications, the developer of the C2C Prepaid Wireless System and the company whose
continuing technical support of its C2C Prepaid Wireless System through the processing of the
pre-paid data for every C2C call through its facility in Massachusetts makes it feasible for the
other defendants to sell and use that system." BCGI's Motion for Transfer of Venue, at 7-8
(Searcy Aff., Exh. B).

transferred to this Court.  Litigating independently would also rob the Regional Carriers of the efficiencies of a joint defense.

> **2.     The Resolution Of This Action In This Forum Which Has Overseen The Litigation For Over 5 Years Will Be Most Efficient For The Judicial System**

The District of Massachusetts has been home to the Freedom litigation since the year 2000.  Not only has the Court been exposed to a very long jury and bench trial on Freedom's allegations, but through it has gained extensive knowledge of and familiarity with this extremely complex case.  There is an obvious efficiency in maintaining this action, and all parties thereto, in this Court, even if not completely identical to Freedom I.  The Court's knowledge of facts and issues is well beyond any other judge in any other district.  To begin again from scratch, in multiple forums across the country would certainly not serve judicial economy.

## II.     THE PENDING MOTIONS ARE PREMATURE; AND FREEDOM SHOULD BE PERMITTED TO PROPOUND DISCOVERY INTO THE PERSONAL JURISDICTIONAL CLAIMS MADE BY REGIONAL CARRIERS

General jurisdiction allows a court to exercise personal jurisdiction over a defendant with "continuous and systematic" business contacts with a state, even if the cause of action does not arise from them.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

In support of their motions, the Regional Carriers have submitted 16 affidavits in which a witness for each defendant makes factual assertions.  As such, the Regional Carriers' motions are properly considered motions for summary judgment (a fact which at least defendant South Canaan acknowledges.  See South Canaan Motion at 4).

To make matters worse, each of these affidavits contains particularized factual assertions which Freedom has not been given the opportunity to challenge with discovery.  For example, the general manager of Bluegrass Cellular, Inc., avers that the company "has no

telecommunications equipment, assets, employees, distributors, or offices in Massachusetts" and "does not own, lease or rent property in Massachusetts."[36]  However, the same witness admits that BlueGrass Cellular has at least "one other contact with Massachusetts" because it "contracts with another Massachusetts company, Lightbridge, for the purpose of conducting credit checks."[37]  Such contacts could support the exercise of general jurisdiction over one or more of the Regional Carriers.  As for the "typical" operation of BCGI's prepaid wireless system, defendants rely entirely upon the trial testimony in Freedom I, (Motion at 3), which undisputedly did not address the implementations of the Regional Carriers, or other facts that could support general jurisdiction.

Discovery has not even begun in this action.  As a result, Freedom has had no opportunity to depose the many affiants, consider documentary evidence, to discover whether the Regional Carriers' use of BCGI's prepaid wireless system is "typical," or in any way explore and challenge the contacts of the Regional Carriers with Massachusetts.  Even without discovery, Freedom has pointed to sufficient facts to defeat the present motions for summary judgment, and thus, support the denial of the motions with prejudice.  Nonetheless, the present motions may also be denied as premature; and Freedom should be permitted the opportunity to take discovery relating to the personal jurisdiction issue.[38]  As in Freedom I, personal jurisdiction could then be reexamined at the summary judgment phase when record has been developed.[39]

---

[36]  Declaration of Ron Smith, Exhibit A to the Regional Carriers' Motion to Dismiss, at ¶¶ 5-6.

[37]  Id. at ¶ 9.

[38]  Federal Rules of Civil Procedure 56(f) states that when faced with a motion for summary judgment, the "court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."  See also Celotex Corp. v. Catret, 477 U.S. 317, 326 (1986).  Although Freedom contacted defendants' counsel regarding the possibility of taking (footnote continued)

III.   **REGIONAL DEFENDANTS HAVE WAIVED A PERSONAL JURISDICTION DEFENSE BY APPEARING BEFORE THE COURT TO REQUEST A STAY OF PROCEEDINGS PENDING FEDERAL CIRCUIT APPEAL**

In <u>Network Professionals, Inc. v. Network International Limited</u>, 146 F.R.D. 179, 181-82 (D. Minn. 1993), the district court stated that Rule 12 "sets the outer limits of waiver; it does not preclude waiver by implication" and further observed that "preliminary matters such as personal jurisdiction . . .should be raised and disposed of before a court considers the merits or quasi-merits of a controversy."  The Court reasoned that, defendants by calling on the court to decide plaintiff's preliminary injunction motion, even informally as defendants argued, required the Court to consider the case's merits, and therefore waived their personal jurisdiction defense.

The Regional Carriers, as well as BCGI in its motion to stay, argued that the substantive overlap between <u>Freedom I</u> and this action required this action to be stayed to avoid needless litigation of potentially moot threshold issues.  The Regional Carriers, by requesting the Court to so rule, set before the Court an analysis of the merits of <u>Freedom I</u>, and their relation to the merits of the present action.[40]  As <u>Network Professionals</u> sets out, a ruling on the merits of a claim is clearly an exercise of the Court's jurisdiction.  Having moved the Court to stay this

---

some limited discovery before responding to defendants' motion, the parties were unable to reach agreement on the scope of such discovery prior to filing Freedom's opposition.  <u>See</u> Letters among Counsel for Freedom and Counsel for Regional Carriers and South Canaan, January 5-10, 2006 (Searcy Aff., Exhs. N-T).  Indeed, defendant South Canaan failed to respond to Freedom's request in any way.   In the event that the Court determine that it requires additional facts about the contacts of each individual defendant to decide defendants' personal jurisdiction arguments, Freedom proposes that the Court deny defendants' motions without prejudice to re-filing following discovery.

[39]   In <u>Freedom I</u>, Freedom sought and received the opportunity to propound discovery into the business activities of Rogers Wireless in order to determine the existence and extent of their contacts with Massachusetts.

[40]   <u>See</u> Regional Carrier Defendants Notice of Joinder and Joinder in Boston Communications Groups, Inc.'s Motion for Stay of Proceedings Pending Resolution of Federal Circuit Appeals, dated November 30, 2005 (Searcy Aff., Exh. M).

action, the Regional Carriers have proceeded under the jurisdiction of this Court to such an extent that they have waived any future challenges to personal jurisdiction as stated in Rule 12(h).

## IV.    VENUE IS PROPER IN THE DISTRICT OF MASSACHUSETTS

In its separate motion, defendant South Canaan urges a transfer of venue to the Eastern District of Pennsylvania as an alternative to dismissal.

However, the Northern District of California has already considered the issue of the most appropriate forum for the present litigation, and agreed with BCGI that it is the District of Massachusetts.  In keeping with the Court's prior ruling, Freedom brought the present suit in Massachusetts, and "plaintiff's choice of forum should rarely be disturbed."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1973).

Even though BCGI's co-defendants are different in this action from those joined in Freedom I, their relationship with BCGI and the prepaid services they provide are the same.  If South Canaan were successful in transferring Freedom's suit against it to Pennsylvania, the suit against the remaining defendants will nonetheless proceed in Massachusetts, wasting the time and resources for all parties and the judicial system.  See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st. Cir. 1987) ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision.").

Now, after almost six years of litigation on this matter, it is unlikely that another venue could proceed more efficiently than the District of Massachusetts.  In BCGI's own words, "the

alleged patent infringement emanates from Massachusetts."[41]  Regardless of the location of the

Regional Carriers, or the area to which they provide services, the key operative facts (at least

according to co-defendant BCGI):

> occurred in Massachusetts, the principle place of business of Boston
> Communications, the developer of the C2C Prepaid Wireless System, and the
> company whose continuing technical support of its C2C Prepaid Wireless System
> through the processing of the pre-paid data for every C2C call through its facility
> in Massachusetts makes it feasible for the other defendants to sell and use that
> system.[42]

Nonetheless, South Canaan asserts that the case should be transferred to the Eastern

District of Pennsylvania because it is an "available" and "adequate" forum.  In so doing, South

Canaan also argues that it is a smaller company than Freedom and should not be made to bear the

burden of litigating in Massachusetts instead of Pennsylvania.  Yet, there is no mention of the

actual number of South Canaan employees--Freedom has 4--nor is there any mention why the

three or so employees of South Canaan cannot take the short plane trip to Boston.

Accordingly, the Court should also deny South Canaan's request, in the alternative, for a

transfer of venue.

## Conclusion

For the foregoing reasons, the Court should deny defendants Bluegrass Cellular, Inc.,

Cellular Properties, Inc. (d/b/a Cellular One of East Central Illinois), Centennial Cellular

---

[41]    Defendant Boston Communications Group, Inc.'s Motion to Transfer Venue, page 2
(Searcy Aff., Exh. B).

[42]    Id. at 7-8.  BCGI even acknowledged that their pre-paid wireless services might be
sold by their customers in other states, but those customers, "have no familiarity with the
development of the C2C Prepaid Wireless System, no familiarity with the details of the operation
of the C2C Prepaid Wireless System, and the support services provided by Boston
Communications to its C2C customers."  Id. at 7.

Operating Co., LLC, Cincinnati Bell Wireless LLC, Dobson Cellular Systems, Inc., East

Kentucky Network, LLC (d/b/a Appalachian Wireless), Farmers Cellular Telephone, Inc. (d/b/a

Farmers Wireless), Great Lakes of Iowa, Inc., Marseilles Cellular, Inc. (d/b/a Illinois Valley

Cellular), MTA Communications (d/b/a MTA Wireless), Mid-Missouri Cellular LLP, Southern

Illinois RSA Partnership (d/b/a First Cellular of Southern Illinois), South #5 RSA Limited

Partnership (d/b/a Brazos Cellular Communications, Ltd.), Thumb Cellular, Unitah Basin

Electronic Telecommunications (d/b/a UBET Wireless) motion to dismiss for lack of personal

jurisdiction, and defendant South Canaan Cellular Communications Company LP's' motion to

dismiss, or in the alternative, transfer venue.

Dated:  January 10, 2006                    Respectfully submitted,

                                            FREEDOM WIRELESS, INC.
                                            By their attorneys


                                            /s/ Marshall M. Searcy III
                                            Paul F. Ware, Jr., P.C. (BBO #516240)
                                            Douglas C. Doskocil (BBO #558949)
                                            Goodwin Procter, LLP
                                            Exchange Place
                                            Boston, MA  02109-2881
                                            Tel:  (617) 570-1000
                                            Fax:  (617) 523-1231

                                            Marshall M. Searcy III
                                            Erica P. Taggart
                                            Quinn Emanuel Urquhart Oliver & Hedges, LLP
                                            865 South Figueroa Street, 10th Floor
                                            Los Angeles, CA  90017
                                            Tel:  (213) 443-3000
                                            Fax:  (213) 443-3100
                                            (pro hac vice)

                                            Attorneys for plaintiff Freedom Wireless, Inc.

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 10, 2006.

/s/ Douglas C. Doskocil
_____
Douglas C. Doskocil

Attorney for plaintiff Freedom Wireless, Inc.