# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FREEDOM WIRELESS, INC., | ) | Civil Action No. 05-11062-EFH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOSTON COMMUNICATIONS GROUP, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**AFFIDAVIT OF MARSHALL M. SEARCY III IN SUPPORT OF
PLAINTIFF FREEDOM WIRELESS, INC.'S OPPOSITION TO
DEFENDANTS REGIONAL CARRIERS MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND
DEFENDANT SOUTH CANAAN CELLULAR COMMUNICATIONS COMPANY LP'S
MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

I, Marshall M. Searcy III, declare as follows:

1.      I am a member of the Bar of the State of California and a partner at Quinn

Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff Freedom Wireless, Inc. I make

this declaration of my personal, firsthand knowledge and, if called and sworn as a witness, I could

and would testify competently thereto.

2.      Attached as Exhibit A is a true and correct copy of the Complaint, dated March

29, 2000, Freedom Wireless, Inc. v. Boston Communications Group, Inc., AT&T Wireless PCS,

8930/1813496.1                                        1

Inc., Airtouch Communications, Inc., a/k/a Airtouch Cellular; Alltel Communications Products,

Inc., Bell Atlantic Mobile, Inc., a/k/a BANM, Bellsouth Cellular Corp., Bellsouth Mobility, Inc.,

Cellular One, a/k/a Cellular One of San Francisco, Primeco Personal Communications, Rogers

Wireless, Inc., Western Wireless Corp., a/k/a and d/b/a Cellular One, and Does 1-20.

3.      Attached as Exhibit B is a true and correct copy of the Defendant Boston

Communications Group, Inc.'s Notice of Motion and Motion of Defendant Boston

Communications Group, Inc. to Transfer Venue; Memorandum of Points and Authorities, dated

June 16, 2000.

4.      Attached as Exhibit C is a true and correct copy of the Corrected Declaration of

William D. Wessman in Support of Defendant Boston Communications Group Inc.'s Motion to

Transfer Venue, dated June 16, 2000.

5.      Attached as Exhibit D is a true and correct copy of the Declaration of Kimberly

Obremski in Support of Defendant Boston Communications Group, Inc.'s Motion to Transfer

Venue, dated June 15, 2000.

6.      Attached as Exhibit E is a true and correct copy of the Order, dated February 14,

2001.

7.      Attached as Exhibit F is a true and correct copy of Freedom Wireless, Inc. v.

BCGI, 198 F. Supp. 2d 19 (D. Mass. 2002).

8.      Attached as Exhibit G is a true and correct copy of the Notice of Appeal of

Freedom Wireless, dated September 30, 2005.

9.      Attached as Exhibit H is a true and correct copy of the Order, dated April 27,

2005.

AFFIDAVIT OF MARSHALL M. SEARCY III

10. Attached as Exhibit I is a true and correct copy of the Defendant Boston Communications Group, Inc.'s Second Supplemental Answers to Plaintiff Freedom Wireless, Inc.'s First Set of Interrogatories, dated July 18, 2003.

11. Attached as Exhibit J is a true and correct copy of the Joint Stipulation to File Second Amended Complaint, dated December 6, 2005.

12. Attached as Exhibit K is a true and correct copy of the email from Leo Lam to Jeanine Zalduendo and Erica Taggart, dated November 21, 2005.

13. Attached as Exhibit L is a true and correct copy of the Prepaid Connection Service Agreement between Cellular Express, Inc. d/b/a Boston Communications Group and Marseilles Cellular, Inc. d/b/a Illinois Valley Cellular, dated January 2001.

14. Attached as Exhibit M is a true and correct copy of the Regional Carrier Defendants Notice of Joinder and Joinder in Boston Communications Groups, Inc.'s Motion for Stay of Proceedings Pending Resolution of Federal Circuit Appeals, dated November 30, 2005.

15. Attached as Exhibits N-T are true and correct copies of Letters, dated January 5-10, 2006, among counsel for Freedom and counsel for the Regional Carriers and South Canaan.

15. Attached as Exhibits U is a true and correct copy of the Memorandum in Support of Motion of Defendant Rogers Wireless, Inc. for Summary Judgment for Lack of Personal Jurisdiction and for Non-infringement, dated November 29, 2001, filed under seal.

AFFIDAVIT OF MARSHALL M. SEARCY III

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th  day of January, 2006, in Los Angeles, California.

/s/ Marshall M. Searcy III
Marshall M. Searcy III

AFFIDAVIT OF MARSHALL M. SEARCY III

# EXHIBIT A

**COPY**



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     A. William Urquhart (Bar No. 140996)
      Steven M. Anderson (Bar No. 144014)
3     Michael T. Zeller (Bar No. 196417)
   865 South Figueroa Street, 10th Floor
4  Los Angeles, California  90017-2543
   (213) 624-7707
5
   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
6     Charles K. Verhoeven (Bar No. 170151)
   2479 E. Bayshore Road, Suite 820
7  Palo Alto, California  94303
   (650) 494-3900
8
   Attorneys for Plaintiff
9  Freedom Wireless, Inc.

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13  FREEDOM WIRELESS, INC.,              )   CASE NO.
14                  Plaintiff,           )   **C 00 1129**
15          v.                           )   COMPLAINT FOR PATENT
                                         )   INFRINGEMENT
16  BOSTON COMMUNICATIONS GROUP, INC.;)
17  AT&T WIRELESS PCS, INC.; AIRTOUCH )   DEMAND FOR JURY TRIAL
    COMMUNICATIONS, INC., a/k/a         )
18  AIRTOUCH CELLULAR; ALLTEL           )
    COMMUNICATIONS PRODUCTS, INC.;      )
19  BELL ATLANTIC MOBILE, INC., a/k/a )
    BELL ATLANTIC NYNEX MOBILE, a/k/a )
20  BANM; BELLSOUTH CELLULAR CORP.;     )
    BELLSOUTH MOBILITY, INC.; CELLULAR)
21  ONE, a/k/a CELLULAR ONE OF SAN      )
    FRANCISCO; PRIMECO PERSONAL         )
22  COMMUNICATIONS; ROGERS WIRELESS,    )
    INC., a/k/a ROGERS AT&T WIRELESS; )
23  SOUTHWESTERN BELL MOBILE SYSTEMS, )
    INC.; WESTERN WIRELESS              )
24  CORPORATION, a/k/a and d/b/a        )
    CELLULAR ONE; and DOES 1-20,        )
25                                       )
                    Defendants.          )
26  _____)

27

28

02624/0292256.1  COMPLAINT FOR PATENT INFRINGEMENT;
                 DEMAND FOR JURY TRIAL

1        Plaintiff Freedom Wireless, Inc. ("Freedom") alleges as

2 follows:

3

4                   JURISDICTION AND VENUE

5

6       1.   This action arises under the Patent Act, 35 U.S.C.

7 § 271(a)-(c).  This Court has original jurisdiction over the

8 patent infringement claims in this action under 28 U.S.C. §§ 1331

9 and 1338(a).

10       2.   Venue is proper in this Court pursuant to

11 28 U.S.C. §§ 1391(b)-(c) and 1400(b).  Defendants reside in the

12 Northern District of California, and a substantial part of the

13 events giving rise to the claims occurred in the Northern

14 District of California.

15

16                INTRADISTRICT ASSIGNMENT

17

18       3.   This action is appropriate for assignment to the

19 San Francisco division of this Court because a substantial part

20 of the events or omissions giving rise to Freedom's claims

21 occurred in the counties located within the San Francisco

22 division of this Court.

23

24                      PARTIES

25

26       4.   Plaintiff Freedom Wireless, Inc. is a Nevada

27 corporation with its principal place of business in Phoenix,

28 Arizona.

1        5.    Upon information and belief, defendant Boston
2    Communications Group, Inc. is a Massachusetts corporation with
3    its principal place of business in Woburn, Massachusetts and is
4    doing business in the State of California and this judicial
5    district.

6        6.    Upon information and belief, defendant AT&T
7    Wireless PCS, Inc. is a Delaware corporation with its principal
8    place of business in Redmond, Washington and is doing business in
9    the State of California and this judicial district.

10        7.    Upon information and belief, defendant AirTouch
11    Communications, Inc., also known as AirTouch Cellular, is a
12    California corporation with its principal place of business in
13    Walnut Creek, California and is doing business in the State of
14    California and this judicial district.

15        8.    Upon information and belief, defendant Alltel
16    Communications Products, Inc. is a Delaware corporation with its
17    principal place of business in Little Rock, Arkansas and is doing
18    business in the State of California and this judicial district.

19        9.    Upon information and belief, defendant Bell
20    Atlantic Mobile, Inc., also known as Bell Atlantic NYNEX Mobile
21    and BANM, is a Delaware corporation with its principal place of
22    business in Bedminster, New Jersey and is doing business in the
23    State of California and this judicial district.

24        10.    Upon information and belief, defendant BellSouth
25    Cellular Corp. is a Georgia corporation with its principal place
26    of business in Atlanta, Georgia and is doing business in the
27    State of California and this judicial district.

28

COMPLAINT FOR PATENT INFRINGEMENT;
DEMAND FOR JURY TRIAL                 -3-

11.   Upon information and belief, defendant BellSouth Mobility, Inc. is a Georgia corporation with its principal place of business in Atlanta, Georgia and is doing business in the State of California and this judicial district.

12.   Upon information and belief, defendant Cellular One, also known as Cellular One of San Francisco, is a partnership between Vodafone AirTouch Plc, of Newbury, England and AT&T Wireless Services, of Redmond, Washington, with its principal place of business in South San Francisco, California and is doing business in the State of California and this judicial district.

13.   Upon information and belief, defendant PrimeCo Personal Communications is a partnership between Vodafone AirTouch Plc, of Newbury, England and Bell Atlantic, of New Jersey, with its principal place of business in Westlake, Texas and is doing business in the State of California and this judicial district.

14.   Upon information and belief, defendant Rogers Wireless, Inc., also known as Rogers AT&T Wireless, is a Canadian corporation with its principal place of business in Montreal, Quebec, Canada and is doing business in the State of California and this judicial district.

15.   Upon information and belief, defendant Southwestern Bell Mobile Systems, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas and is doing business in the State of California and this judicial district.

1     16.  Upon information and belief, defendant Western

2  Wireless Corporation, also known as and doing business as

3  Cellular One, is a Washington corporation with its principal

4  place of business in Bellevue, Washington and is doing business

5  in the State of California and this judicial district.

6     17.  Freedom is unaware of the true names and

7  capacities, whether individual, corporate, associate, or

8  otherwise, of defendants Does 1 through 20, inclusive, or any of

9  them, and therefore sues these defendants, and each of them, by

10  such fictitious names.  Freedom will seek leave of Court to amend

11  this Complaint when the identities of these defendants are

12  ascertained.

13

14                FIRST CLAIM FOR RELIEF

15          (Patent Infringement--35 U.S.C. § 271(a)-(c))

16

17     18.  Freedom realleges and incorporates herein by

18  reference each and every allegation contained in paragraphs 1

19  through 17 above, as though set forth at length.

20     19.  Freedom is the assignee and owner of United States

21  Patent No. 5,722,067 (the "'067 patent") entitled "Security

22  Cellular Telecommunications System," a copy of which is attached

23  to this Complaint as Exhibit A.  The '067 patent was duly and

24  legally issued by the United States Patent and Trademark Office

25  on February 24, 1998.

26     20.  The '067 patent relates to, among other things, a

27  novel cellular telecommunications system that allows pre-paid

28  users to complete cellular telephone calls without the necessity

1  of entering additional account codes and further allows account

2  usage to be monitored in real time so that usage may be

3  terminated upon exhaustion of a pre-paid account.

4      21.  On information and belief, the market for such

5  pre-paid cellular telecommunications systems and services will be

6  in excess of $20 billion.

7      22.  Defendants are not licensed or otherwise

8  authorized by Freedom to make, use, offer for sale, or sell any

9  telecommunications system or method claimed in the '067 patent.

10      23.  Upon information and belief, defendants have been

11  and are infringing the '067 patent by making, using, offering for

12  sale, and selling in the Northern District of California and

13  elsewhere pre-paid cellular programs and systems that utilize

14  telecommunications systems and methods claimed in the '067

15  patent, including the Boston Communications Group C2C Wireless

16  Prepaid System.

17      24.  Upon information and belief, defendants are aiding

18  and abetting and actively inducing and contributing to

19  infringement of the '067 patent by each other defendant and by

20  nonparties.

21      25.  By reason of defendants' infringing activities,

22  Freedom has suffered, and will continue to suffer, substantial

23  damages, in an amount to be proven at trial.

24      26.  Defendants' acts complained of herein have damaged

25  and will continue to damage Freedom irreparably.  Freedom has no

26  adequate remedy at law for these wrongs and injuries.  Freedom is

27  therefore entitled to an injunction restraining and enjoining

28  defendants and their agents, servants, and employees, and all

1 | persons acting thereunder, in concert with, or on their behalf,

2 | from infringing the claims of the '067 patent.

3 |        27.    Upon information and belief, defendants'

4 | infringement has been and continues to be willful.

5 |

6 |                    PRAYER FOR RELIEF

7 |

8 |        WHEREFORE, plaintiff Freedom prays for judgment in

9 | favor of plaintiff and against defendants as follows:

10 |

11 |        A.    That United States Patent No. 5,722,067 is valid

12 | and enforceable;

13 |        B.    That defendants have infringed and are infringing

14 | United States Patent No. 5,722,067 and that such infringement is

15 | willful;

16 |        C.    That defendants and their officers, agents,

17 | representatives, servants, and employees and all persons in

18 | active concert or participation with them be enjoined from

19 | continued infringement of United States Patent 5,722,067;

20 |        D.    That defendants be ordered to pay Freedom its

21 | damages caused by defendants' infringement of United States

22 | Patent No. 5,722,067, and that such damages be trebled, together

23 | with interest thereon;

24 |        E.    That this case be declared exceptional pursuant to

25 | 35 U.S.C. § 285 and that Freedom be awarded its reasonable

26 | attorneys' fees and costs; and

27 |

28 |

2624/0292256.1 | COMPLAINT FOR PATENT INFRINGEMENT;
DEMAND FOR JURY TRIAL          -7-

1       F.   That Freedom have such other and further relief as

2 the Court deems just and proper.

3 DATED:  March 29, 2000

4

5                      QUINN EMANUEL URQUHART OLIVER &
                      HEDGES, LLP

6

7

8 By _____
       A. William Urquhart

9        Attorneys for Plaintiff
       Freedom Wireless, Inc.

10

1    <u>DEMAND FOR JURY TRIAL</u>

2

3        Plaintiff Freedom Wireless, Inc. hereby demands a jury

4    trial.

5

6    DATED:    March 29, 2000

7                                QUINN EMANUEL URQUHART OLIVER &
                                 HEDGES, LLP
8

9

10   By

11                                A. William Urquhart
                                  Attorneys for Plaintiff
12                                Freedom Wireless, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT;
                                    DEMAND FOR JURY TRIAL              -9-

US005722067A

# United States Patent [19]

## Fougnies et al.

[11] Patent Number: 5,722,067

[45] Date of Patent: Feb. 24, 1998

[54] **SECURITY CELLULAR TELECOMMUNICATIONS SYSTEM**

[75] Inventors: **Douglas V. Fougnies; Dan B. Harned,** both of Tempe, Ariz.

[73] Assignee: **Freedom Wireless, Inc.,** Las Vegas, Nev.

[21] Appl. No.: **364,479**

[22] Filed: **Dec. 23, 1994**

[51] Int. Cl.⁶ ............................................ H04Q 7/20
[52] U.S. Cl. ................... 455/406; 455/408; 455/415; 379/114; 379/127
[58] Field of Search ...................... 379/58, 59, 60, 379/33.2, 144, 114, 115, 127; 455/33.1, 33.2, 406–411, 414, 415

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,756,020 | 7/1988 | Fodale | 379/112 |
| 4,852,149 | 7/1989 | Zwick et al. | 379/67 |
| 4,860,341 | 8/1989 | D'Avello et al. | 379/91 |
| 5,046,088 | 9/1991 | Margulies | 379/211 |
| 5,127,040 | 6/1992 | D'Avello et al. | 379/58 |
| 5,233,642 | 8/1993 | Renton | 379/59 |
| 5,265,155 | 11/1993 | Castro | 379/112 |
| 5,274,802 | 12/1993 | Altine | 395/600 |
| 5,291,543 | 3/1994 | Freese et al. | 379/59 |
| 5,297,189 | 3/1994 | Chabernaud | 379/58 |
| 5,309,501 | 5/1994 | Kozik et al. | 379/58 |
| 5,321,735 | 6/1994 | Breeden | 379/58 |
| 5,327,144 | 7/1994 | Stilp et al. | 342/387 |
| 5,341,414 | 8/1994 | Popke | 379/142 |
| 5,353,335 | 10/1994 | D'Urso | 379/67 |
| 5,359,642 | 10/1994 | Castro | 379/121 |
| 5,440,621 | 8/1995 | Castro | 379/112 |
| 5,592,535 | 1/1997 | Klotz | 379/58 |

### OTHER PUBLICATIONS

*AT&T Technical Journal,* Summer 1991; pp. 11–25, 44–57, and 72–84.

*Proceedings of the IEEE,* vol. 79, No. 1, Jan. 1991; pp. 7–20.

Primary Examiner—Dwayne Bost
Assistant Examiner—Nay Maung
Attorney, Agent, or Firm—Cahill, Sutton & Thomas P.L.C.

[57] **ABSTRACT**

A cellular telecommunications system having a security feature which allows only pre-authorized users no complete cellular telephone calls. The system and method recognizes a cellular radiotelephone's pre-programmed a pre-selected telephone number and a automated number identification code (ANI). The pre-selected telephone number is reserved to the pre-paid cellular telecommunications system. The cellular radiotelephone transmits the ANI and a dialed number identification system code (DNIS) to a cellular switch, which contacts a host computer for call validation the pre-paid service provider.

**21 Claims, 6 Drawing Sheets**



EXHIBIT A



FIG. 1

EXHIBIT A



**FIG. 2 (PRIOR ART)**

EXHIBIT A



FIG. 3

FIG. 4

EXHIBIT A

U.S. Patent        Feb. 24, 1998        Sheet 4 of 6        5,722,067



**FIG. 5**

EXHIBIT A

_19_



```
                                        ┌─118
              ┌─────────────────────┐
              │  WAIT FOR HOST       │
              │  COMPUTER            │
              │  OFF-HOOK            │
              └─────────────────────┘
                        │
                        ▼             ┌─120
              ┌─────────────────────┐
              │  GO OFF-HOOK TO      │
              │  HOST COMPUTER,      │
              │  PRESENT DIAL TONE   │
              └─────────────────────┘
                        │
                        ▼             ┌─122
              ┌─────────────────────┐
              │  RECEIVE DIALED      │
              │  DIGITS AND ROUTE    │
              │  DIALED NUMBER       │
              └─────────────────────┘
                        │
                        ▼             ┌─124
              ┌─────────────────────┐
              │  WAIT FOR OFF-HOOK   │
              │  AT CALLED NUMBER    │
              └─────────────────────┘
```

**FIG. 6**

```
                              ┌─126
    ┌───┐   ┌─────────────────────┐
    │ D │──▶│  WAIT FOR OFF-HOOK   │
    └───┘   │  AT CALLED NUMBER    │
            └─────────────────────┘
                      │
                      ▼           ┌─128
            ┌─────────────────────┐◀───────┐
            │  DECREMENT ACCOUNT   │        │
            │  BALANCE 1 MINUTE    │        │
            └─────────────────────┘        │
                      │                     │
                      ▼        ┌─130        │
       YES        ╱─────────╲              │
      ◀──────────╱ SUBSCRIBER ╲            │
                 ╲ OR CALLED   ╱           │
                  ╲ NUMBER    ╱   133       │
                   ╲ON-HOOK? ╱             │
                    ╲───────╱              │
                      │ NO                  │
         ┌─135         ▼      ┌─132        │
         │         ╱─────────╲              │
         │        ╱  ACCOUNT  ╲   YES       │
         │        ╲  BALANCE   ╱───────────┘
         │         ╲VALID FOR 1╱
         │          ╲MORE MIN? ╱
         │           ╲───────╱
         │             │ NO
         │             ▼        ┌─134
         │   ┌─────────────────────┐
         └──▶│  LOG CALL TO        │
             │  DATABASE           │
             └─────────────────────┘
                      │
                      ▼        ┌─136
             ┌─────────────────────┐
             │  ISSUE VOICE        │
             │  MESSAGE TO         │
             │  SUBSCRIBER         │
             └─────────────────────┘
```

**FIG. 7**

EXHIBIT A



FIG. 8A



FIG. 8B

EXHIBIT A

5,722,067

| 1 | 2 |

# SECURITY CELLULAR
# TELECOMMUNICATIONS SYSTEM

## BACKGROUND OF THE INVENTION

The present invention relates generally to a cellular telecommunications system having a security feature which allows only pre-authorized users to complete cellular telephone calls. More particularly, the cellular telecommunications system of the present invention permits cellular telecommunications providers to obtain pre-paid subscribers and eliminate credit-risk problems. In addition, the present invention provides anti-fraud protection for cellular service providers by allowing subscribers to designate protection codes which must be dialed before a telecommunications event will be completed.

Conventional cellular telecommunications systems require the cellular provider to undertake credit screening and certify credit-worthy subscribers before enabling a user to access the cellular telecommunications system. Customarily, a potential subscriber will apply to the cellular service provider, who then undertakes a verification process to determine whether the potential subscriber is credit-worthy. If the potential subscriber has a positive credit rating, the subscriber is given access to the cellular system and is able to initiate or receive unlimited cellular telecommunications events during a certain period of time or during a certain number of billing cycles. If the subscriber regularly pays invoices for the telecommunications services, the subscriber's access to the telecommunications system continues unfettered. If the subscriber fails to pay invoices as they become due, the cellular service provider has the ability to discontinue the subscriber's access until the invoice is paid. Thus, pre-paid telecommunications access is a desirable feature to prevent fraudulent use of the telecommunications system. Additionally, the present invention provides anti-fraud capabilities by requiring that a pass-code or personal identification number (PIN) be dialed along with the called number before a telecommunications event will be completed.

Up to now, the cellular service provider had no means available to offer cellular telecommunications services on a pre-paid basis, monitor the subscriber's cellular telecommunications usage in real time and discontinue access to the cellular telecommunications services immediately upon exhaustion of a pre-paid account balance. Additionally, up to now, cellular service providers had no means available to prevent cellular theft by unscrupulous persons retrieving equipment serial numbers from cellular signal transmissions and "cloning" or reprogramming other cellular equipment to replicate a subscriber's telecommunications profile.

## DESCRIPTION OF THE PRIOR ART

Land-based telecommunications systems have devised a method for allowing pre-paid telephone usage and limiting telecommunications usage to only a period of time equivalent to the pre-paid value. Perhaps the best example of such a land-based telecommunications system is found in U.S. Pat. No. 5,353,335 issued Oct. 4, 1994, to D'Urso (hereinafter the "D'Urso" patent).

The D'Urso patent discloses a public switched telephone network (PSTN) which operates on a pre-payment system and has multilingual capabilities. A telephone user purchases a predetermined quantum of service, i.e., telecommunications time before access and is provided a card imprinted with a unique account number. The user is also given a series of toll free, commonly Known as "1-800" number which allows the user to access the prepaid telephone system. Activation of each of the toll free numbers causes the system described in the D'Urso patent to interact with the user in the user'native language or in a language which the user desires to interact with the telecommunications system. Upon dialing an appropriate toll free telephone number at a PSTN node, the user is connected through a switching system with a host computer. The host computer prompts the user, typically by digital voice commands, to enter the user's account number, using the PSTN node keypad, imprinted on the user's account card. The authenticity of the entered account number and the available amount of credit is determined by the host computer. Account authentication and credit balance checking is accomplished by local area network connection with a service management computer which manages a card database containing account information for each outstanding account card. If the account valid and an available balance is verified, the host computer prompts the user to enter a speed dialing alias or destination telephone number. The user is given a pre-set number of attempts to enter a valid alias or destination number. The system performs editing checks on the alias or destination number. Improper entry of a speed dialing alias or destination for the pre-set number of attempts will cause the host computer to disconnect the user. Upon proper entry of a speed dialing alias or destination number, the host computer compares the available card balance against the balance required to make a one minute phone call to the desired destination. If the available balance is greater than or equal to the balance required to make that one minute call, a voice response unit (VRU) plays an announcement in the user's chosen language informing the user that the call is being processed. The VRU computer uses a stored call rate associated with the caller's destination number and the available credit balance to determine the available call duration. A call duration timer is set in response to the determination of the available call duration.

The VRU computer is then directed to outpulse the digits of the destination number to a network node. When the host computer detects an off-hook condition from the destination, the call duration timer is started and the available call balance is depleted while the call is in progress. When the host computer detects that the available call balance is close to depletion, the VRU computer is bridged onto the call and plays a pending disconnect announcement in the users chosen language. Upon exhaustion of the call balance, the VRU plays a disconnect announcement, the call is disconnected and the host computer sends a message to the service management computer and database that the balance on the card is depleted.

Alternatively, if an on-hook condition at the destination occurs before the card balance is depleted, the host computer calculates the remaining available balance based upon the condition of the call timer and compares the computed balance to the minimum credit threshold. The host computer then causes a VRU computer to notify the caller, in the chosen language, whether the remaining balance exceeds the minimum credit threshold, and the value of the available balance and then disconnects the calling party. The host computer then sends an update message to the service management computer and the database, notifying them of the calculated remaining balance. The service management computer then overwrites the present balance in the database with the calculated balance sent by the host computer.

While the D'Urso telecommunications system allows for pre-paid telecommunications activity, it is wholly dependent upon user first calling a toll free number, inputting account

EXHIBIT A

5,722,067

**3**

information, waiting for account validation, inputting the called destination, waiting for destination validation and then either being connected or not. The D'Urso system requires a plurality of input events by the user before a call can be passed to the destination. Moreover, the D'Urso system lacks direct interface with the remote database for real time account balance adjustment during a telecommunications event. Rather, in the D'Urso system a host computer queries a remote management server database to determine an available credit balance. The host computer then looks up a telecommunications rate for the destination number called, calculates a time value corresponding to the credit balance for the destination number and either authorizes or rejects the attempted call on the basis of the calculated time value. If the attempted call is authorized, a calculated time value timer is set. Upon occurrence of an off-hook condition at the destination called, the calculate time value timer at the host computer is decremented until a pre-determined threshold value. As the threshold value is reached, a voice message is bridged onto the call to advise the user of the remaining calculated time value. Upon expiration of the calculated time value, the call is disconnected. After disconnection due to either 1) expiration of the calculated time value, or 2) an on-hook condition at the called desalination, the host computer re-calculates the credit balance from the remaining time value and sends an update record to the management server and database and overwrites the previous credit balance information stored at the database. In this manner, the database is not actively updated as the telecommunications activity is occurring.

Those skilled in the art will understand and appreciate that the prepaid land-based telecommunications system described in the D'Urso patent is fundamentally different from the cellular-based telecommunications system of the present invention.

## SUMMARY OF THE INVENTION

A need has been recognized for a cellular telecommunications system which permits access by pre-paid users, without the need for modifying the cellular radiotelephones commonly in use. The present invention provides a system and method which recognizes cellular radiotelephones preprogrammed with a pre-selected telephone number and an automated number identification code (ANI). The preselected telephone number is reserved to the pre-paid cellular telecommunications system. The user merely enters the destination telephone number and activates an off-hook condition, typically by depressing a "send" button on the keypad of the cellular radiotelephone. The cellular radiotelephone then transmits the ANI and a dialed number identification system code (DNIS). Because all cellular systems operate on the basis of discrete cell sites, which re-transmit the received signal to a central cellular service organization cellular switch, both the ANI and the DNIS are transmitted to the cellular switch. At the cellular switch, the ANI is recognized as one reserved to the pre-paid cellular system and is re-directed, along with the DNIS, to the pre-paid cellular system switch via T1 land lines or via cellular re-transmission.

At the pre-paid cellular system switch, a host computer authenticates both the ANI and DNIS. Upon recognition of a valid ANI, the host computer establishes communications via either a local area network (LAN) or wide-area network (WAN) with a remote computer database server. At the remote computer database server, a database is maintained with pre-paid subscriber information. The pre-paid subscriber database contains records of each pre-paid sub-

**4**

scriber. Each subscriber record in the database includes, at least the ANI assigned to that pre-paid subscriber, a pre-paid account balance and a time rate for telecommunications charges. The host computer validates the received ANI by comparison to the ANI information in the database. Upon validation of the received ANI, account balance information for the account associated with the received ANI is queried to determine if there is a positive credit balance. Upon verification that the account has a positive credit balance, the host computer outputs the dialed destination telephone number to a local exchange carrier, such as one of the Regional Bell Operating Companies.

During the call progress, tile account balance information at the computer database server is decremented based upon elapse of pre-determined time periods at the predetermined time value for cellular telecommunications. It is important to note the time value is deducted from the account balance at regular intervals of time while the call is in progress.

The present invention allows a pre-paid user to access the cellular telecommunications system and have authentication and accounting occur transparently without any preliminary input by the user. The present invention accomplishes this by using the ANI as the file link to identify and authenticate the cellular telephone against the database. Thus, cellular telephone users are freed of the need to carry and use cards, are freed of the need to enter account information as a first step in the authentication process and the possibility of fraud on the cellular service providers is minimized.

These and other objects, features, and advantages of the present invention will become more apparent to those skilled in the art from the following more detailed description of the present invention when taken with reference to the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a diagrammatic view of a typical cellular telecommunications system interfaced with the cellular telecommunications system of the present invention.

FIG. 2 is a diagrammatic call flow of the prior art pre-paid land-based telecommunications system.

FIG. 3 is a call flow diagram from a typical cellular radiotelephone.

FIG. 4 is a call flow diagram at a cellular switch in accordance with the present invention.

FIG. 5 is a flow diagram illustrating call validation processing at a host computer in accordance with the present invention.

FIG. 6 is a flow diagram illustrating call processing at the central office in accordance with the present invention.

FIG. 7 is a flow diagram illustrating call accounting processing at a host computer in accordance with the present invention.

FIG. 8A is a flow diagram illustrating a first embodiment of incoming call processing in accordance with the present invention.

FIG. 8B is a flow diagram illustrating a second embodiment of incoming call processing in accordance with the present invention.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The prepaid cellular telecommunications system of the present invention is best illustrated with reference to the accompanying drawings in which FIGS. 1 and 3 through 8B

EXHIBIT A

5,722,067

| 5 | 6 |
|---|---|

generally describe the system of the present invention and FIG. 2 depicts the prior art system described in the D'Urso patent.

With particular reference to FIG. 1, the pre-paid cellular system 10 of the present invention is illustrated. The pre-paid cellular system 10 interfaces with a conventional cellular telecommunications switched network 2. Conventional cellular telecommunications switched network 2 is a network consisting of a plurality of cellular antenna, such as antenna 4, capable of receiving cellular band RF signals 5, with each antenna being located in a discrete cell site, such as site 6. Each antenna is electrically linked to cellular switch 8 which governs the operation of the cellular telecommunications switched network 2 and links the network 2 to local exchange carrier 20 via the T1 land line 12.

In accordance with the present invention, a cellular service provider 14 is linked to the cellular telecommunications switched network 2 cellular switch 8 via T1 land lines 15. The cellular service provider 14 has a plurality of cellular telephone numbers reserved to it for pre-paid subscribers. Each reserved cellular telephone number has a unique automated number identifier (ANI) associated with the reserved telephone number. These reserved cellular telephone numbers are stored in a switch computer resident at switch 8. The cellular service provider 14 is electrically linked to the local exchange carrier 20 via T1 land lines 17 to communicate cellular telephone calls from the service provider 14 to the local exchange carrier's regular network.

The service provider 14 has host computer 16 which is preferably networked through either a local area network (LAN) or wide area network (WAN) 21 to a remote server computer 18. In this manner a plurality of service providers may, within a single cellular service, operate from the same remote server computer 18. The remote server computer 18 has an associated database 19 of pre-paid subscribers, which is independently accessible by each of the service providers.

The host computer is preferably based upon a multi-processor platform such as those made by Intel Corporation and based upon the 486 or PENTIUM microprocessor, with each host computer having a plurality of modems and network interface circuit boards capable of simultaneous bi-directional processing of telecommunications data between the T1 land lines 15 and the modems and between the host computer and the remote server. The remote server is also preferably a multi-processor based platform capable of distributed load processing, and fitted with a plurality of network interface circuit boards. The database is preferably stored across a plurality of hard disk drives configured as a redundant array of independent drives (RAID).

In the foregoing manner, a cellular transmission 5 received by an antenna 4 within a cell size 6 is received at switch 8. If the ANI and DNIS transmitted with the cellular transmission 5 is one of the reserved pre-paid cellular telephone numbers, the switch 8 re-directs the transmission 5 to the service provider via the T1 land line 15. The transmission 5 is communicated to the service provider's host computer 16, which then authenticates the ANI and DNIS by accessing the server computer 18 and database 19. Upon valid authentication of the ANI and DNIS, the subscriber identity is validated. The database 19 will have records indicative of the subscriber's account balance. A check of the subscriber's account balance in the database 19 is made to validate the presence of a pre-paid balance sufficient to supply a pre-determined quantum of telecommunications, e.g., one minute, at a predetermined telecommunications charge rate associated with both the

dialed number and the time of day in which the call is placed. Upon account balance validation, the host computer 16 validates the call and passes it to the local exchange carrier 20 via the T1 land lines 17.

A pre-payment telecommunications system 30 of the prior art is illustrated with reference to FIG. 2. The system 30 requires that a pre-paid user first dial a toll free access number at block 32. Upon connection with the toll free access number, the user must enter an assigned account number imprinted on a card at block 34. After the card account number is validated at block 3G, a counter is set at block 44 and a check is made at block 46 to determine whether a call on the entered account is in progress. A negative validation at block 36 will cause an invalid card flag to be initiated at block 38 and an appropriate voice message from a voice response unit (VRU) announced at block 40. If an affirmative response is elicited from the check at block 46, the VRU prompts the user to enter a destination telephone number at block 48. A validation check is made at block 58 of the dialed number entered in response to the VRU prompt at block 48. If the validation check at block 50 is affirmative, a database associated with a management computer is called at block 54 and the account's records are retrieved for credit balance determination. A check is made of the credit associated with the account at block 54 to determine whether the user's account has any available credit at block 56 and whether the available credit exceeds a pre-determined minimum threshold at block 52. An additional check is made to determine whether sufficient credit in the user's account balance to pay for a threshold time value of a call, e.g., one minute, based upon a time value rate for the destination being called is determined at block 58. If the determinations made at blocks 52, 56 and 58 are affirmative the call is passed by outpulsing the dialed number at block 50. If a negative determination at any of blocks 52, 56 or 58 is made, an appropriate voice message is played by the VRU at block 40 and the user is disconnected at block 42.

Upon connection with the destination number, an off-hook condition of the destination is sensed at block 62. If an off-hook condition exists at the destination, a timer is started at block 64 which continues until act on-hook condition exists at the destination and the timer is stopped at block 66. Upon a stop timer condition at block 66, the management computer is called and updated by overwriting the user's account record with updated information based upon the elapsed time of the call and the time value of the call at block 68. The VRU then issues an appropriate voice message 40 to advise the user of the revised account balance and the user is disconnected at block 42.

As will be understood by those skilled in the art, the foregoing description of the pre-paid telecommunications system of the prior art 30 requires the user to first access a toll-free number to be linked to a host computer, and then must enter an account code and wait for validation and then enter a destination number, and wait for validation before the call is passed. The present invention operates advantageously with a cellular telecommunications system to eliminate the need for a toll free host computer to interact directly with the user, and eliminate the need for the pre-paid user to make multiple keypad entries. Rather, as will be more apparent from the following description of the preferred embodiment, the user only enters the destination number and all call processing is handled by the host computer in conjunction with the cellular switch.

Turning now to FIGS. 3–3B, call flow in the pre-paid cellular telecommunications system of the present invention is illustrated. It is important to note that the cellular radio-

EXHIBIT A

5,722,067

7

telephones used by pre-paid subscribers are of a conventional type, without special circuitry, modification or programming. Rather, each cellular radiotelephone used by pre-paid subscribers is programmed, in the normal manner, with a pre-defined cellular telephone number reserved to the pre-paid cellular telecommunications system 10.

FIG. 3 illustrates call initiation by a pro-paid cellular telecommunications subscriber. The subscriber initiates a cellular call at block 72 by entering the destination number directly at the keypad of the cellular radiotelephone. After the subscriber enters the called number, the subscriber sends the destination number (DNIS) by activating a send key on the keypad of the cellular radiotelephone at block 74. The cellular radiotelephone then transmits the DNIS and an ANI unique to the transmitting cellular radiotelephone at block 76 as cellular signals 5 to the nearest antenna within the cell site.

FIG. 4 illustrates call processing by the cellular switch 8. The cellular switch 8 is constantly in a wait condition for receipt of cellular transmissions from a plurality of subscribers within the coverage area of the cellular switch. The cellular switch receives the transmitted DNIS at block 78 and the transmitted ANI at block 79. Upon recognition of the ANI as a unique ANI identifying a subscriber in the inventive pre-paid cellular system, the cellular switch routes the cellular call through a direct line to a host computer of the inventive cellular system at block 80 and goes off-hook to the host computer at block 82. The cellular switch then waits for receipt of a wink signal at block 84. Upon receipt of a first wink signal at block 84, the cellular switch sends the DNIS to the host computer at block 86. Upon receipt of a second wink signal at block 84, the cellular switch sends the ANI to the host computer at block 88. Those skilled in the art will understand that the sequential order of sending the DNIS and ANI may be reversed. After sending the DNIS and ANI, the cellular switch waits for an off-hook condition from the host computer to connect the call. If the host computer fails to go off-hook within a pre-determined period of time, the cellular switch drops the caller.

Call processing at the host computer is illustrated in FIG. 5. The host computer's initiated zero state is to wait for a cellular switch off-hook condition to the host Upon receipt of an off-hook condition from the cellular switch, the host computer sends a first wink signal to the cellular switch at block 102 which tells the cellular switch to send the DNIS. The host computer then receives the DNIS 103 from the cellular switch at block 104. After receiving the DNIS at block 104, the host computer sends a second wink signal to the cellular switch at block 106 which tells the cellular switch to send the ANI. The host computer then receives the ANI 107 from the cellular switch at block 108. The host computer accesses the subscriber database from the remote server 11 and loads the database record corresponding to the received ANI to memory at block 109. The received ANI is validated against the database record in memory as one belonging to a pre-paid subscriber at block 110. Upon ANI validation at block 110, the host computer then validates the subscriber's pre-paid balance based upon the DNIS and time of day rate, e.g., peak or off-peak time rates, at block 112.

Those skilled in the art will understand and appreciate that the processing of the DNIS and ANI signals may occur in reverse order, and that different cellular service providers may use alternative signals to represent the dialed number and the subscriber's cellular radiotelephone. For example, the cellular radiotelephone's electronic serial number (ESN) may be transmitted instead of the ANI. The ANI is referenced herein only by way of example.

8

Upon balance validation at block 112, the host computer goes off-hook to the cellular provider at block 113 and a pre-determined minimum time rate is decremented from the subscriber's balance in memory at block 114 and then the call accounting loop is initiated at block D. While at present time, it is preferable to use memory, those skilled in the art will understand that future improvements in LAN and WAN communication speeds and database read-write speeds may obviate the desirability of loading the account balance to memory to facilitate subsequent call accounting processing. The host computer then outpulses the DNIS, or another host computer-qualified signal including the called telephone number, such as a pass-code or PIN number, or the DNIS stripped of the area code, to the local exchange carrier for connection at block 98 to obtain a central office (CO) line.

Turning now to FIG. 6, the CO is in a zero state waiting for an off-hook from the host computer at block 118. Upon an off-hook condition from the host computer at block 118, the CO goes off hook to the host computer and presents a dial tone at block 120. After the T1 land line has been seized, the DNIS or a host-computer modified DNIS, is received and routed over the T1 land line to the number dialed out by the host computer at block 122. The CO then waits for an off-hook condition at the called telephone number at block 124 and connects the call.

Immediately upon occurrence of an off-hook condition at the called number, the call accounting flow illustrated in FIG. 7 is executed. While the CO negotiates and seizes a T1 line from the local exchange carrier, the host computer waits at block 126 for an off-hook condition at the called number. Immediately upon occurrence of an off-hook condition at the called number, the account balance in memory is decremented by a predetermined value, corresponding to a minimum time rate based upon the DNIS and the time of day rate, e.g., $0.02 for each six seconds of telecommunications time at an off-peak, i.e., after 7:00 p.m. local time. Thus, for example, immediately upon occurrence of an off-hook condition at the destination number, a minimum time value of one minute is decremented from the account balance resident in memory.

In accordance with the preferred embodiment of the present invention, the account balance read into memory is translated to a time value based upon the called number (DNIS) and the time of day rate applicable. In this manner, the account balance is converted to a time value, e.g., number of seconds or number of minutes, and the time value is decremented based upon elapse of pre-determined time periods while either the subscriber's cellular telephone or the called number are off-hook.

After the elapse of a time period equal to the pre-determined minimum time value, the account balance is queried at block 132 to determine if there is a sufficient account balance for an additional quantum of the minimum time value. If a sufficient account balance is determined to exist at block 132, the process loops back 133 and decrements the account balance by the pre-determined minimum time value at block 128. Process loop 133 continues to execute until either the subscriber or the called number are on-hook at block 130 or until a negative response issues to the account balance validation at block 132. If either an on-hook condition at the subscriber or the called party at block 130 or the account balance is not validated at block 132, a disconnection occurs, accounting ceases and the call, including the DNIS and the elapsed time of the call are logged to the database resident at the remote server (not shown) and the remaining account balance is written to the database at block 134. The system then bridges to a voice

*EXHIBIT A*

5,722,067

9          10

response unit and issues a voice message to the subscriber advising the subscriber of the remaining account balance at block 136. Where it is technically feasible to decrement the account balance directly from the database, without loading the account balance to memory at the host computer, those skilled in the art will understand that the step of writing the adjusted account balance to the database may not be a necessary step.

The foregoing describes the call handling process for outgoing calls from a cellular subscriber. In those cellular service areas where the cellular service is offered only on a "calling party pays" basis, there is no need to monitor or control telecommunications events incoming to the subscriber. However, in those cellular service areas where cellular service is offered on the basis that the subscriber pays telecommunication charges irrespective of whether the subscriber is originating or receiving a call, the present system provides a method for monitoring and controlling incoming cellular telephone calls to the pre-paid subscriber and adjusting the pre-paid subscriber's account balance for incoming calls.

FIGS. 8A and 8B illustrate alternative embodiments of the system adapted to monitor and control incoming calls to a pre-paid cellular service provider. It must be understood that the operation and construction of the cellular switch, host computer, CO and local exchange carrier are identical to that for outgoing calls made by the pre-paid subscriber. The principal difference is, however, in the sequence of events which occur to activate the call accounting and control functions of the inventive cellular telecommunications system.

We turn now specifically to FIG. 8A which illustrates a first embodiment of the inventive pre-paid cellular telecommunications system. In FIG. 8A, an originating party initiates a land line telephone call at block 150. The initiated call consists of the pre-paid subscriber's telephone number unique to the pre-paid cellular system. The call is handed to a co at block 152 and redirected to the host computer based upon the dialed number matching a pre-paid subscriber's telephone number. The host computer is initialized in a wait for CO off-hook state and waits for an incoming off-hook signal from the CO at block 154. Upon receiving an incoming call at block 154, the host computer validates the dialed number against the pre-paid subscriber database and determines whether a sufficient account balance exists for the pre-determined minimum time value for a telecommunications event, as described above with reference to FIG. 7. Upon validation of the dialed number and the available account balance, the host computer outpulses the dialed number to the cellular switch 156 which routes the call to the cellular subscriber at block 158. Upon occurrence of an off-hook condition at the cellular subscriber at block 158, the cellular switch returns 157 the off-hook condition to the host computer and call accounting as described above with reference to FIG. 7 occurs.

In accordance with a second embodiment for incoming call handling in accordance with the present invention, and as illustrated in FIG. 8B, the originating party at block 160 and the CO at block 162 function identically as described above with reference to FIG. 8A. However, in this second embodiment, the CO outpulses the mobile identifier directly to the cellular switch at block 164, and the cellular switch passes 165 the mobile identifier to the host computer at block 166 to enable the host computer to validate both the mobile identifier and the available balance. Upon such validation, the host computer at block 166 directs the cellular switch to pass the call to the subscriber at block 168.

Again, upon occurrence of an off-hook condition at the subscriber, the host computer executes call accounting as previously described with reference to FIG. 7.

Thus, in the present invention, the disadvantages of the prior art are overcome, particularly as those disadvantages would affect a cellular user. By eliminating the need for the user to make unnecessary dialing entries and limit the user's dialing entry only to the destination number the present invention represents a valuable and needed advance in the art. Additionally, by using the ANI to identify the subscriber, rather than the situs of the call, the present invention provides for transparent call processing for the end-user and achieves a fraud tolerance level not presently available to service providers.

While the invention has been described with reference to its preferred embodiments, those skilled in the art will understand and appreciate from the foregoing that variations in equipment, operating conditions and configuration may be made and still fall within the spirit and scope of the present invention which is to be limited only by the claims appended hereto.

What is claimed is:

1. A method of cellular telecommunications, comprising the steps of:

(a) establishing a pre-paid subscriber account balance linked to a pre-determined cellular telephone number assigned to a subscriber;

(b) writing the established pre-paid subscriber account balance to a database;

(c) initiating a cellular telecommunications event, by a subscriber, by the subscriber entering a dialed call destination number and transmitting the dialed call destination number as a dialed number identification system (DNIS) code and transmitting an automated number identification code (ANI) uniquely identified with a subscriber's cellular radiotelephone;

(d) receiving the DNIS and ANI at a cellular switch, the cellular switch recognizing the ANI as belonging to a pre-paid subscriber;

(e) sending an off-hook signal from the cellular switch to a host computer;

(f) the host computer serially sending a first signal to the cellular switch to obtain the DNIS signal therefrom, receiving the first signal, sending a second signal to the cellular switch to obtain the ANI signal therefrom, and receiving the second signal at the host computer;

(g) establishing communication between the host computer and a remote server computer, the remote server computer being in communication with the subscriber database, and validating the ANI received from the cellular switch as belonging to a subscriber;

(h) validating existence of a pre-determined subscriber account balance in the subscriber database based upon the DNIS and the time of day of the telecommunications event;

(i) establishing communications between the host computer and a local exchange carrier to obtain an available telecommunications line and sending the DNIS only if an affirmative validation at step (h) occurs;

(j) checking for an off-hook condition at the DNIS destination and, upon occurrence thereof, decrementing the subscriber account balance at regular intervals during the telecommunications event until an on-hook condition exists as the DNIS destination; and

(k) disconnecting the telecommunications event at the host server upon occurrence of a negative validation at step (h) or an on-hook condition exists at step (j).

EXHIBIT A

5,722,067

11

2. A cellular telecommunications system for pre-paid subscribers, said system comprising:

(a) a plurality of cellular telephones, each cellular telephone being capable of transmitting an automated number identification code (ANI);

(b) a cellular switch in communication with said plurality of cellular telephones;

(c) a local exchange carrier;

(d) a pre-paid service provider including

(1) a host computer for providing pre-paid cellular service, said host computer being coupled to said local exchange carrier via switched lines and being coupled to said cellular switch via unswitched lines;

(2) a server computer coupled to and remote from said host computer, said server computer including a database containing a plurality of records identified by ANI and representing the accounts of pre-paid subscribers, each of which accounts contains information on the balance in the account; and

(3) means in said host computer for receiving a signal indicative of a pending call from said cellular switch and for forwarding the call to the local exchange carrier after confirming that the balance in the account corresponding to the ANI is greater than a predetermined minimum,

whereby said cellular switch forwards calls from the pre-paid subscribers to said pre-paid service provider via said unswitched lines.

3. The cellular telecommunications system of claim 2, wherein said host computer communicates with said local exchange carrier and said cellular switch over land-lines.

4. The cellular telecommunications system of claim 2, wherein said server computer and said host computer communicate over a local area network.

5. The cellular telecommunications system of claim 2, wherein said server computer and said host computer communicate over a wide area network.

6. The cellular telecommunications system of claim 2, wherein said database is contained in a redundant array of mass storage devices.

7. The cellular telecommunications system of claim 2, wherein said host computer includes a memory for storing subscriber account information from the database and wherein said host computer includes means revising the subscriber account information during call after connection with a dialed number.

8. The cellular telecommunications system of claim 7, wherein said host computer includes means for sending revised subscriber account information from said memory to said server computer and wherein said server computer updates the database after receipt of the revised subscriber account information.

9. The cellular telecommunications system of claim 2, wherein

said receiving and forwarding means in said host computer terminates a call when the balance in the account corresponding to the ANI is not greater than the predetermined minimum.

10. A method for pre-paid cellular telephone service, said method comprising the steps of:

forwarding to a pre-paid switching system a dialed number identification system code (DNIS) and an automated number identification code (ANI) representing a call from a cellular telephone;

at the pre-paid switching system, verifying a positive balance in an account identified by the ANI;

12

forwarding the call to an LEC; and

decrementing the balance in the account at regular intervals during the call until the call is terminated or until the balance is no longer positive, whichever occurs first.

11. The method as set forth in claim 10 wherein said verifying step includes the steps of:

finding the ANI; and

retrieving a balance associated with the ANI.

12. The method as set forth in claim 11 including a database of ANIs remote from the pre-paid switching system and said finding step includes the step of:

accessing the database via a remote server.

13. The method as set forth in claim 12 wherein said accessing step includes the step of:

sharing access to the database with other pre-paid switching systems.

14. The method as set forth in claim 10 and including the step of:

terminating the call when the balance in the account becomes zero.

15. A method for pre-paid cellular telephone service, said method comprising the steps of:

receiving an automated number identification code (ANI) representing a call at a cellular switch;

at the cellular switch checking the ANI against each stored reserved pre-paid cellular telephone number identifying a pre-paid subscriber; and

if the ANI is found in the stored reserved pre-paid cellular telephone numbers, then forwarding the call directly to a pre-paid service provider.

16. A method as set forth in claim 15 and further including the steps

at the pre-paid service provider, verifying a positive balance in an account associated with the ANI that was received from the cellular switch;

forwarding the call to a telecommunication service provider; and

decrementing the balance in the account at regular intervals during the call until the call is terminated.

17. The method as set forth in claim 16 wherein said decrementing step continues until the call is terminated or until the balance in the account becomes zero.

18. The method as set forth in claim 16 and including the step of:

terminating the call when the balance in the account becomes zero.

19. The method as set forth in claim 16 wherein said verifying step includes the steps of:

validating the existence of the ANI against the reserved pre-paid cellular telephone numbers; and

retrieving a balance in an account associated with the stored ANI.

20. The method as set forth in claim 19 wherein the reserved pre-paid cellular telephone numbers are stored in a database remote from the pre-paid service provider and said checking step is preceded by the step of:

accessing the database via a remote server.

21. The method as set forth in claim 20 wherein said accessing step includes the step of:

sharing access to the database with other pre-paid service providers.

* * * * *

EXHIBIT A

# EXHIBIT B

1  TODD E. THOMPSON (No. 123534)
   SIMON J. FRANKEL (No. 171552)
2  HOWARD, RICE, NEMEROVSKI, CANADY,
        FALK & RABKIN
3  A Professional Corporation
   Three Embarcadero Center, 7th Floor
4  San Francisco, California 94111-4065
   Telephone:  415/434-1600
5  Facsimile:  415/217-5910

6  PHILIP C. SWAIN (Cal. Bar No. 150322)
   VERNE W. VANCE, JR.
7  STEPHEN B. DEUTSCH
   FOLEY, HOAG & ELIOT LLP
8  One Post Office Square
   Boston, Massachusetts 02109
9  Telephone:  617/832-1000
   Facsimile:  617/832-7000

10
   Attorneys for Defendant
11 BOSTON COMMUNICATIONS GROUP, INC.

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                    OAKLAND DIVISION

15 FREEDOM WIRELESS, INC.,            No. C-00-1129-SBA

16                    Plaintiff,      NOTICE OF MOTION AND MOTION
                                      OF DEFENDANT BOSTON
17      v.                            COMMUNICATIONS GROUP, INC. TO
                                      TRANSFER VENUE; MEMORANDUM
18 BOSTON COMMUNICATIONS GROUP,       OF POINTS AND AUTHORITIES
   INC.; AT&T WIRELESS SERVICES,
19 INC.; AIRTOUCH CELLULAR; ALLTEL    Date:     July 25, 2000
   COMMUNICATIONS PRODUCTS, INC.;     Time:     11:30 a.m.
20 BELL ATLANTIC MOBILE, INC., a/k/a  Place:    Courtroom 3,
   BELL ATLANTIC NYNEX MOBILE,                  The Hon. Saundra B.
21 a/k/a BANM; BELLSOUTH CELLULAR               Armstrong
   CORP.; BELLSOUTH MOBILITY, INC.;
22 CELLULAR ONE, a/k/a CELLULAR ONE
   OF SAN FRANCISCO; PRIMECO
23 PERSONAL COMMUNICATIONS;
   ROGERS WIRELESS, INC. a/k/a ROGERS
24 AT&T WIRELESS; SOUTHWESTERN
   BELL MOBILE SYSTEMS, INC.;
25 WESTERN WIRELESS CORPORATION,
   a/k/a and d/b/a CELLULAR ONE; and
26 DOES 1-20,

27                    Defendants.

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION                                                    1

RELIEF SOUGHT                                                                  1

MEMORANDUM OF POINTS AND AUTHORITIES                                           I

STATEMENT OF FACTS                                                            1

I.    THIS COURT HAS DISCRETION TO TRANSFER THIS
      ACTION TO ANOTHER JUDICIAL DISTRICT IN THE
      INTEREST OF JUSTICE AND FOR THE CONVENIENCE OF
      THE PARTIES AND WITNESSES.                                              3

II.   THE INTEREST OF JUSTICE, AND THE CONVENIENCE OF
      PARTIES AND WITNESSES, REQUIRE THAT THIS ACTION
      BE TRANSFERRED TO THE DISTRICT OF
      MASSACHUSETTS.                                                          4

III.  THIS ACTION MIGHT HAVE BEEN BROUGHT, OR COULD
      HAVE BEEN BROUGHT, IN THE DISTRICT OF
      MASSACHUSETTS.                                                          8

      A.   Venue With Respect To This Action Is Proper In
           Massachusetts.                                                     9

           1.   Massachusetts Has Personal Jurisdiction Over All
                Defendants With Respect To Freedom's Patent
                Infringement Claim.                                          10

           2.   The Massachusetts Long-Arm Statute Confers Personal
                Jurisdiction Over All Of The Out-Of-Massachusetts
                Defendants.                                                  10

           3.   Personal Jurisdiction In Massachusetts Over All
                Defendants With Respect To The Patent Infringement
                Claim Of Freedom Meets Constitutional Requirements.          12

CONCLUSION                                                                   15

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

### TABLE OF AUTHORITIES

Page(s)

#### Cases

Anadigics, Inc. v. Raytheon Co., 903 F. Supp. 615 (S.D.N.Y. 1995)    4, 5, 7, 8

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)    13, 14

Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7 (1st Cir. 1987)    3

Continental Grain Co. v. The FBL-585, 364 U.S. 19 (1960)    6

Doe v. American Red Cross, 112 F.3d 1048 (9th Cir. 1997)    12, 13

Energy Capital and Services LP, II v. Hill Refrigeration, Inc., 989 F. Supp. 353 (D. Mass. 1997)    11

GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517 (E.D. Va. 1999)    5

Hoffman v. Blaski, 363 U.S. 335 (1960)    9

Hologic Inc. v. Lunar Corp., 36 U.S.P.Q.2d 1182 (D. Mass. 1995)    10, 11

Hoover Group, Inc. v. Custom Metalcraft, Inc., 84 F.3d 1408 (Fed. Cir. 1996)    9

Injection Research Specialists Inc. v. Polaris Industries, L.P., 18 U.S.P.Q. 2d 1800 (D. Col. 1991)    9

Max Planck v. General Electric Co., 858 F. Supp. 380 (S.D.N.Y. 1994)    5, 8

Muldoon v. Tropitone Furniture Co., 1 F.3d 964 (9th Cir. 1993)    4

Nowak v. Tak How Investments, Ltd., 94 F.3d 708 (1st Cir. 1996)    10, 13, 14

Packer v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc., 728 F. Supp. 8 (D.D.C. 1989)    3

Pennwalt Corp. v. Purex Industries, Inc., 659 F. Supp. 287 (D. Del. 1986)    7

Regents of Univ. of Cal. v. Eli Lilly & Co., 734 F. Supp. 911 (N.D. Cal. 1990)    9

Santrade Ltd. v. Berndorf ICB International Conveyor Belts, Inc., 1992 WL 470482 (D.S.C. 1992)    5

Tatro v. Manor Care, Inc., 416 Mass. 763 (1994)    12

Tranor v. Brown, 913 F. Supp. 388 (E.D. Pa. 1996)    7

United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080 (1st Cir. 1992)    10

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1

TABLE OF AUTHORITIES

2

Page(s)

3

Van Dusen v. Barrack, 376 U.S. 612 (1964)                            3, 9

4

5

Statutes

6

28 U.S.C.
  §1391(c)                                                            9
  §1400(b)                                                            9
  §1404(a)                                                     1, 3, 4, 8
  §1406(a)                                                  1, 3, 4, 6, 8

9

Mass. Gen. Laws c. 223A, §3(a)                                        10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
*A Professional Corporation*

<u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on July 25, 2000, at 11:30 a.m. or as soon thereafter as the matter may be heard in Courtroom 3 before the Honorable Saundra B. Armstrong,  pursuant to Sections 1404(a) and/or 1406(a) of Title 28 of the United States Code and Civil L.R. 7-2, Defendants Boston Communications Group, Inc., Western Wireless, Inc. and CMT Partners, d/b/a Cellular One of San Francisco, will and hereby do move for an order transferring this action from this Court to the United States District Court for the District of Massachusetts, in the interest of justice and for the convenience of the parties and the witnesses.  This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declarations of William D. Wessman and Kimberly Obremski filed concurrently herewith, the record and pleadings on file in this action, and such other evidence and argument as may be submitted to the Court prior to or at the hearing on this motion.

<u>RELIEF SOUGHT</u>

Moving defendants seek an order transferring this action from this District to the District of Massachusetts.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

STATEMENT OF FACTS

Plaintiff Freedom Wireless, Inc. ("Freedom"), a Nevada corporation with its principal place of business in Phoenix, Arizona, has sued eleven companies from all over the country, and one from Canada, in this Court.  The suit involves Freedom's allegation that its United States Patent No 5,722,067 ("the '067 patent") is infringed by a prepaid cellular telephone system developed and operated by the principal defendant in this action, Boston Communications Group, Inc., a Massachusetts corporation with a principal place of business in Woburn, Massachusetts ("Boston Communications").  Boston Communications operates its prepaid cellular system, called the C2C Wireless PrePaid System or the C2C network,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    from its offices in Massachusetts and provides its services to most (but not all)[1] of the other

2    named defendants pursuant to written agreements between Boston Communications and those

3    defendants.

4          Freedom does not allege that it does business in California or, indeed, anywhere

5    else. None of Freedom's witnesses with respect to the development of its system, the

6    obtaining of its patent, or any business that Freedom may do with respect to the sale of its

7    pre-paid cellular system, and none of Freedom's documents, are located in California. Except

8    for the two defendants who are California companies, Airtouch and Cellular One, this case

9    has little if anything to do with the State of California.

10          Boston Communications is the first-named defendant, and it is Boston

11    Communications' C2C Wireless Prepaid System, and the pre-paid wireless programs and

12    systems that use Boston Communications' C2C platform/network, that are identified by

13    Freedom in its Complaint and, more particularly, in its Initial Disclosure of Asserted Claims.

14    Thus, the alleged patent infringement emanates from Massachusetts, where, as shown by the

15    declarations of Kimberly Obremski and William D. Wessman, Boston Communications:

16        (1)   developed the C2C Prepaid Wireless System;

17        (2)   entered into the agreements with the other named defendants that enable
18              those defendants to offer for sale, and sell pre-paid wireless services that
               utilize Boston Communications' C2C Prepaid Wireless System;

19        (3)   performs the support services that enable its customers, and their retail
20              customers, to use the C2C Prepaid Wireless System;

21        (4)   processes the data that enable the pre-paid customers to make their cellular
               telephone calls and enable the defendant customers of Boston
22              Communications to sell and utilize the C2C Prepaid Wireless System; and

23        (5)   bills all of its customers for its C2C Prepaid Wireless services and receives
               and deposits all payments from those customers for those services.

24

25    _____

26    [1]Boston Communications does not provide services or have a contract with Defendant
     PrimeCo Personal Communications. Declaration of Kimberly Obremski in Support of
     Boston Communication Group, Inc.'s Motion To Transfer ("Obremski Decl.") ¶7. Also,
27    Boston Communications no longer provides services or has a contract with Defendant
     Western Wireless Corporation.
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1    Moreover, as shown below, most of the principal witnesses on the Defendants'

2  side of the case will be present or former employees of Boston Communications who are

3  based in Massachusetts and who will testify with respect to the design and development of

4  the C2C system, the operation of the C2C system, Boston Communications' agreements with

5  its customers with respect to their use of the C2C system and the support services provided by

6  Boston Communications to its C2C customers. In addition, all documents pertaining to

7  Boston Communications' C2C system with respect to its development, marketing, operations,

8  customer support and operating results are located at Boston Communications' headquarters

9  or elsewhere in Massachusetts.

10

11                                    I.

12         THIS COURT HAS DISCRETION TO TRANSFER THIS ACTION
           TO ANOTHER JUDICIAL DISTRICT IN THE INTEREST OF
13         JUSTICE AND FOR THE CONVENIENCE OF THE PARTIES
                           AND WITNESSES.
14

15         Where venue is proper with respect to the action, and the court has personal

16  jurisdiction over all the defendants, the court has discretion to transfer this action to another

17  judicial district "for the convenience of parties and witnesses" and "in the interest of justice,"

18  pursuant to 28 U.S.C. §1404(a). The purpose of Section 1404(a) is to protect litigants,

19  witnesses and the public, including the courts, against unnecessary inconvenience and

20  expense and to avoid the waste of time, energy and money. Van Dusen v. Barrack, 376 U.S.

21  612, 616 (1964). Section 1404(a) was also intended, in part, to avoid "forum shopping" by

22  plaintiffs. Packer v. Kaiser Found. Health Plan, Inc., 728 F. Supp. 8, 12 (D.D.C. 1989).

23  Courts have broad discretion in ruling on Section 1404(a) motions to transfer, and a court's

24  decision on such a motion may be reviewed only for abuse of discretion. Cianbro Corp. v.

25  Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987).

26         Even where venue is proper in the original district, but the court determines that it

27  lacks personal jurisdiction over a defendant, the court may still effect transfer pursuant to

28  Section 1404(a) or pursuant to 28 U.S.C. §1406(a), which permits the transfer of an action

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  where venue is laid in the wrong judicial district or where that district lacks personal

2  jurisdiction over a defendant, in the interest of justice, as an alternative to dismissal.

3  Muldoon v. Tropitone Furniture Co., 1 F.3d 964, 967 (9th Cir. 1993). Defendants Bell South

4  Mobility and Bell South Cellular Corporation are apparently moving for dismissal of the

5  action against them for lack of personal jurisdiction over them. Another defendant, Rogers

6  Wireless, is a Canadian company, which has not yet appeared in this action. Rogers Wireless

7  apparently does not do business in California. If venue is proper in this District and the Court

8  were to allow any of such personal-jurisdiction motions, a transfer of venue with respect to

9  the successful moving defendant or defendants could be effected, as noted above, pursuant to

10  either Section 1404(a) or Section 1406(a).

11

12                                          II.

         THE INTEREST OF JUSTICE, AND THE CONVENIENCE OF
13       PARTIES AND WITNESSES, REQUIRE THAT THIS ACTION BE
         TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS.
14

15          The basic criterion for transfer of an action under both Sections 1404(a) and

16  1406(a) is whether such transfer would serve "the interest of justice." The convenience of the

17  parties and witnesses is also listed as a criterion for transfer under Section 1404(a) but not

18  under Section 1406(a). However, the convenience of parties and witnesses is often an

19  element of "the interest of justice" and thus should also be considered in requests for transfer

20  under Section 1406(a).

21          There is no fixed formula to evaluate where the interest of justice lies in

22  considering a motion to transfer. The courts typically consider not only the convenience of

23  parties and witnesses but also such other factors as the weight to be accorded to the plaintiff's

24  choice of forum, the locus of operative facts, the location of relevant documents and relative

25  ease of access to sources of proof and the avoidance of duplicative litigation. See Anadigics,

26  Inc. v. Raytheon Co., 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (citing cases). Not all of these,

27  or other possible factors, are significant in every case, but it rests with the sound judgment of

28  the court to determine what factors are significant in any given case.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    In a patent infringement action, "as a general rule, 'the preferred forum is that

2    which is the center of the accused activity . . . . "The trier of fact ought to be as close as

3    possible to the milieu of the infringing device and the hub of activity centered around its

4    production.""" <u>GTE Wireless, Inc. v. Qualcomm, Inc.</u>, 71 F. Supp. 2d 517, 519 (E.D. Va.

5    1999) (quoting <u>Santrade Ltd. v. Berndorf ICB International Conveyor Belts, Inc.</u>, 1992 WL

6    470482, *2 (D.S.C. 1992)); <u>see also</u> <u>Anadigics, Inc.</u>, 903 F. Supp. at 617; <u>Max Planck v.</u>

7    <u>General Electric Co.</u>, 858 F. Supp. 380 (S.D.N.Y. 1994)  In this case, "the center of the

8    accused activity" is clearly Woburn, Massachusetts, where:

9    Boston Communications developed its C2C Prepaid Wireless System (Declaration
10   of William D. Wessman in Support of Motion of Defendant Boston
     Communications Group, Inc. to Transfer Venue ("Wessman Decl.") ¶¶9-10);

11   Boston Communications entered into the agreements with the other named
12   defendants who have utilized the C2C Prepaid Wireless System that enable those
     defendants to utilize, offer for sale,  and sell pre-paid wireless services that utilize
     Boston Communications' C2C Prepaid Wireless System (Obremski Decl. ¶¶3-4);

13   Boston Communications performs the support services that enable its customers,
14   and their retail customers, to use the C2C Prepaid Wireless System (<u>Id.</u> ¶5);

15   Boston Communications processes all the data that enable the pre-paid customers
16   to make their wireless telephone calls and that enable the defendant customers of
     Boston Communications to sell and utilize the C2C Prepaid Wireless System
17   (Wessman Decl. ¶¶13-18); and

18   Boston Communications bills all its customers for its C2C Prepaid Wireless
     services and receives and deposits all payments from those customers for those
19   services. (Obremski Decl. ¶6)

20   Plainly it is Boston Communications' facilities in Massachusetts that are the center

21   of the allegedly infringing activity that is at issue in this patent-infringement case.  Thus, by

22   the principle of <u>GTE Wireless</u> and the other cases cited above, Massachusetts is the

23   "preferred forum" for this patent infringement action.

24   Transfer of this action to the District of Massachusetts would obviously be

25   convenient for the primary Defendant Boston Communications and would be no less

26   convenient than California for Plaintiff Freedom, which has no office in California, or for any

27   defendant other than Airtouch and Cellular One of San Francisco.  And, by not opposing this

28   motion, Airtouch and Cellular One of San Francisco have indicated that they are willing to

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
<i>A Professional Corporation</i>

1  accept whatever inconvenience a transfer to Massachusetts would occasion for them.

2       Furthermore, transfer of the action to Massachusetts would greatly serve the

3  convenience of many key Boston Communications witnesses and would be no less

4  convenient for the witnesses of Freedom or any defendant except, again, Airtouch and

5  Cellular One, who do not oppose a transfer to Massachusetts, in any event.  Among the

6  witnesses Boston Communications expects to call in defense of this action who reside in

7  Massachusetts are:

8       1.    John Cooper, one of the developers of the C2C system;

9       2.    Paul Senn, a developer of the C2C system;

10      3.    John Hayes, a developer of the C2C system;

11      4.    Ken Sonberg, a Boston Communications operator/user of the C2C system;

12      5.    Brian Scanlon, a Boston Communications operator/user of the C2C system;

13      6.    William D. Wessman, a developer/user of the C2C system, who is now
             Boston Communications' Executive Vice President and Chief Technology
14           Officer.  (Wessman Decl. ¶11)

15      It is these witnesses on whom Boston Communications expects to rely to provide

16  the critical testimony regarding how the C2C system was developed, how it functions and

17  how it differs from Freedom's pre-paid system.

18       In addition, the many Boston Communications documents that could be prime

19  sources of proof in this case with respect to such matters as the development and functioning

20  of Boston Communications' C2C Prepaid Wireless System are all located at Boston

21  Communications' headquarters in Massachusetts.  Wessman Decl. ¶12.  None of the

22  documents on which Freedom would rely for its proof would appear to be in California,

23  where Freedom does not allege that it even does business.[2]

24

25      [2]Another important concern that is considered in venue transfer motions is the
    avoidance of possible duplicative litigation.  See, e.g., Continental Grain Co. v. The FBL-
26  585, 364 U.S. 19, 26 (1960).  While as yet there is no duplicative litigation in place, there
    could well be such if the motions to dismiss for lack of personal jurisdiction in California are
27  successful.  If granted, those motions would call for dismissal of those defendants from this
    action unless the Court were to allow the alternative remedy of transfer to another district
28  under 28 U.S.C. §1406(a).  Thus, Freedom would be presented with the alternatives of
                                                                (continued . . . )

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1    Although the plaintiff's choice of forum is often given significant weight in a

2  court's consideration of a venue-transfer motion, that is not the case where there is "'little

3  material connection' between the chosen forum and the facts or issues of the case,"

4  (Anadigics, 903 F. Supp. at 617), or where the plaintiff is not a resident of the forum it has

5  selected. Tranor v. Brown, 913 F. Supp. 388, 391 (E.D. Pa. 1996); Pennwalt Corp. v. Purex

6  Indus., Inc., 659 F. Supp. 287, 289 (D. Del. 1986). The crux of the matter here is that this

7  case has almost nothing to do with the Northern District of California, or any part of

8  California for that matter, and almost everything to do with Massachusetts.

9    As shown above, Freedom, the Plaintiff here, is not incorporated in California,

10  does not have its principal place of business in California and, indeed, does not even allege

11  that it is doing business in California. The only connection alleged between the events giving

12  rise to this action and the State of California is that two of the eleven specifically named

13  defendants are alleged to have their principal places of business in California. Neither of

14  those defendants is the one—Boston Communications—who is accused of being the primary

15  infringer of Freedom's '067 patent and whose C2C system is the basis of liability against

16  every other defendant. There is, understandably, no allegation that any injury to Freedom has

17  been suffered in California, since, as noted above, Freedom has alleged no connection

18  whatsoever between itself and California. In these circumstances, Freedom's reasons for

19  selecting the Northern District of California as the forum can only be guessed at, as there is

20  no apparent reason for that choice.

21    The choice of California as the forum state was obviously not dictated by the

22  occurrence of the key operative facts of the alleged infringement in California. Those facts

23  occurred in Massachusetts, the principal place of business of Boston Communications, the

---

( . . . continued)
dismissal of this action as against some of the defendants, with the possibility of filing new
actions against them in proper jurisdictions, or of transfer to another, proper judicial district.
Without a transfer of the entire action by this Court, either of the above alternatives could
present the problematic situation of overlapping litigation in at least two different federal
forums if Freedom were to opt to pursue its patent infringement claim against the two
dismissed defendants. Such duplicative litigation would not only be a waste of resources of
courts and parties, but also would pose the risk of inconsistent rulings.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1    developer of the C2C Prepaid Wireless System and the company whose continuing technical

2    support of its C2C Prepaid Wireless System through the processing of the pre-paid data for

3    every C2C call through its facility in Massachusetts makes it feasible for the other defendants

4    to sell and use that system.  Although some pre-paid wireless services utilizing Boston

5    Communications' C2C Prepaid Wireless System may be sold in California, all such sales are

6    by Boston Communications' C2C pre-paid customers, who have no familiarity with the

7    development of the C2C Prepaid Wireless System, no familiarity with the details of the

8    operation of the C2C Prepaid Wireless System, and the support services provided by Boston

9    Communications to its C2C customers.  In addition, all documents pertaining to Boston

10   Communications' C2C Wireless Prepaid System with respect to its development, marketing,

11   operations, customer support, and operating results are located at Boston Communications'

12   headquarters or elsewhere in Massachusetts.

13           In sum, there are many factors that support the conclusion that transfer of this

14   action from the Northern District of California to the District of Massachusetts would be in

15   the interest of justice and none that indicate otherwise.  Such a transfer would clearly serve

16   the convenience of the principal defendant—Boston Communications—and its witnesses and

17   would be no less convenient for the Plaintiff than the Northern District of California.  The

18   only defendants for which Massachusetts would be less convenient than California, Airtouch

19   and Cellular One, do not oppose this motion to transfer.

20

21                                III.

22                THIS ACTION MIGHT HAVE BEEN BROUGHT,
              OR COULD HAVE BEEN BROUGHT, IN THE DISTRICT OF
23                            MASSACHUSETTS.

24           A federal district court may transfer an action under Section 1404(a) only to a

25   federal court in another judicial district where the action "might have been brought," or,

26   under Section 1406(a), to a federal court in another judicial district where the action "could

27   have been brought."  28 U.S.C. §§1404(a), 1406(a).  The Supreme Court has interpreted those

28   provisions to permit such a transfer only to another judicial district in which venue is proper

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1    and the defendants are subject to personal jurisdiction. See, e.g., Van Dusen, 376 U.S. at

2    622-24; Hoffman v. Blaski, 363 U.S. 335, 344 (1960).

3

4        A.    Venue With Respect To This Action Is Proper In Massachusetts.

5              There is no question that for this federal patent infringement action venue is

6    proper in the District of Massachusetts.  For patent cases, venue is proper, among other

7    districts, "in the district in which the defendant resides."  28 U.S.C. §1400(b).  A corporate

8    defendant "resides" in any district in which the defendant is subject to personal jurisdiction.

9    28 U.S.C. §1391(c); Hoover Group, Inc. v. Custom Metalcraft, Inc., 84 F.3d 1408, 1410 (Fed.

10   Cir. 1996) (reading Section 1391(c) in conjunction with Section 1400(b)); Regents of Univ.

11   of Cal. v. Eli Lilly & Co., 734 F. Supp. 911, 913-14 (N.D. Cal. 1990) (same).  A partnership

12   also "resides" in any district in which it is subject to personal jurisdiction.  Injection Research

13   Specialists Inc. v. Polaris Indus., L.P., 18 U.S.P.Q. 2d 1800, 1802-04 (D. Col. 1991).  Since

14   the Supreme Court's interpretation of the "might have been brought" requirement mandates

15   that the judicial district to which transfer of an action is sought must have personal

16   jurisdiction over the defendants, a determination that the transferee district would have

17   personal jurisdiction over the defendants in this action, all of which are corporations, would

18   establish that alternative basis for venue as well.  As shown in Section III.B below, all the

19   Defendants joining in this motion are subject to personal jurisdiction in Massachusetts.

20             Freedom's only claim is that the C2C Prepaid Wireless System of Defendant

21   Boston Communications, a company whose principal office is in Massachusetts, is infringing

22   Freedom's '067 patent on its pre-paid wireless system through the C2C marketing activities

23   of Boston Communications, including entering into customer service agreements with the

24   other named defendants, and the cellular sales activities of those defendants pursuant to such

25   agreements, all of which sales activities are viable only because the pre-paid data for every

26   C2C call is processed through Boston Communications' data processing facility in

27   Massachusetts.  It is clear from these facts that the primary events that give rise to Freedom's

28   claim of infringement of its '067 patent are not whatever is happening in California but the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    marketing, customer support and data processing activities in Massachusetts of Boston

2    Communications with respect to its allegedly infringing C2C system.  Massachusetts is not

3    only a judicial district in which venue with respect to Freedom's patent infringement claim is

4    proper; it is the judicial district with the strongest basis for venue over that claim.

5

6        1.    Massachusetts Has Personal Jurisdiction Over All Defendants With Respect

7              To Freedom's Patent Infringement Claim.

8            In this case the District of Massachusetts has personal jurisdiction over all

9    defendants with respect to the federal patent infringement claim alleged by Freedom.  The

10    principal Defendant, Boston Communications, is, as noted above, a Massachusetts

11    corporation and has its principal place of business in Massachusetts.  All of the other

12    defendants are non-Massachusetts corporations or partnerships that do not have their

13    principal places of business in Massachusetts.  Thus, the exercise of such jurisdiction by the

14    federal district courts of Massachusetts over each of them is proper if two conditions are

15    satisfied:  first, that the Massachusetts long-arm statute purports to grant jurisdiction over the

16    defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with

17    requirements of the United States Constitution.  See, e.g., Nowak v. Tak How Investments,

18    Ltd., 94 F.3d 708 (1st Cir. 1996); United Elec., Radio & Mach. Workers of Am. v. 163

19    Pleasant Street Corp., 960 F.2d 1080 (1st Cir. 1992); Hologic Inc. v. Lunar Corp., 36

20    U.S.P.Q.2d 1182 (D. Mass. 1995) (applying requirements to patent case).

21

22        2.    The Massachusetts Long-Arm Statute Confers Personal Jurisdiction Over All

23              Of The Out-Of-Massachusetts Defendants.

24            The Massachusetts long-arm statute provides that a Massachusetts court may

25    exercise jurisdiction over a person "as to a cause of action . . . arising from the person's . . .

26    transacting any business in this commonwealth." Mass. Gen. Laws c. 223A, §3(a).  The

27    federal courts in Massachusetts have applied that statute broadly, both in terms of the

28    "transacting any business" requirement and in terms of the "arising from" requirement, in

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   exercising specific personal jurisdiction over out-of-state defendants.  They have held that the

2   "transacting business" requirement was met by continuing financial and operational contacts

3   between a New Jersey defendant and a Massachusetts plaintiff with respect to performance

4   by the Massachusetts plaintiff of a contract with the defendant that was negotiated, executed

5   and performed in New Jersey (see Energy Capital & Serv., LP, II v. Hill Refrigeration, Inc.,

6   989 F. Supp. 353 (D. Mass. 1997)), and by "somewhat limited" advertising and promotion in

7   Massachusetts, including display at a trade show in Massachusetts, of a device that could not

8   be sold in Massachusetts, or elsewhere in the United States because it had not been approved

9   by the Food and Drug Administration but was alleged to infringe the plaintiff's patent.  See

10  Hologic Inc. v. Lunar Corp., 36 U.S.P.Q.2d 1182 (D. Mass. 1995).

11          Every one of the defendants meets the Massachusetts long-arm statute's

12  "transacting business" requirement through Massachusetts contacts that are more extensive

13  than those in either the Energy Capital or the Hologic case.  As shown by the Declaration of

14  Kimberly Obremski, some part of the negotiations of all of Boston Communications' service

15  contracts, pursuant to which the Boston Communications customer defendants use and sell

16  the C2C system as part of their pre-paid wireless offerings, were negotiated in Massachusetts,

17  either in person or through communications directed by the Defendants into Massachusetts,

18  and all such contracts became effective only after execution thereof by Boston

19  Communications in Massachusetts. Obremski Decl. ¶¶3-4.  Thus, every defendant customer

20  of Boston Communications initiated contacts with Massachusetts for the important business

21  purpose of obtaining the right to use and sell Boston Communications' C2C system.  As

22  further shown by the Declarations of Ms. Obremski and William D. Wessman, all such

23  defendants maintain continuing contacts with Massachusetts through utilization of Boston

24  Communications' C2C operational support services, through continuing payments into

25  Massachusetts for their use of the C2C system, and through the continuing use of Boston

26  Communications' data processing facility in Massachusetts to process all of the data that

27  enables the C2C system to function. Obremski Decl. ¶5; Wessman Decl. ¶¶13-18.

28          All the customer defendants of Boston Communications also meet the requirement

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

BOSTON COMMUNICATIONS' MOTION TO TRANSFER VENUE          C-00-1129-SBA
-11-

1  of the Massachusetts long-arm statute that the plaintiff's cause of action must have arisen

2  from the transaction of business in Massachusetts by the defendant. The Massachusetts state

3  courts, whose interpretation of the Massachusetts long-arm statute the federal courts in

4  Massachusetts are obliged to follow, employ the same "but for" test in determining whether

5  the plaintiff's cause of action arose from the defendant's transacting of business in

6  Massachusetts that the Court of Appeals for this Circuit applies in determining whether a

7  plaintiff's cause of action arose out of, or is related to, an out-of-state defendant's contacts

8  with the forum so as to confer specific personal jurisdiction over the defendant. See, e.g.,

9  Doe v. American Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997).

10         In Tatro v. Manor Care, Inc., 416 Mass. 763 (1994), the Massachusetts Supreme

11  Judicial Court held that Massachusetts had personal jurisdiction under its long-arm statute

12  over an action by a Massachusetts resident against a California hotel for injuries suffered at

13  that hotel because the hotel's solicitations of business in Massachusetts constituted

14  transacting business and but for such solicitation the plaintiff would not have traveled to the

15  defendant's hotel and been injured there. By that test, but for the out-of-state defendants'

16  entering into customer service agreements with Boston Communications in Massachusetts,

17  and continuing to utilize the customer support and data processing services of Boston

18  Communications in Massachusetts, those defendants would not be able to sell the C2C

19  services that allegedly infringe Freedom's '067 patent and would not be in a position to

20  continue to make such allegedly infringing sales.

21

22         3.   Personal Jurisdiction In Massachusetts Over All Defendants With Respect
23              To The Patent Infringement Claim Of Freedom Meets Constitutional
                Requirements.

24         In addition to meeting the statutory requirements of the Massachusetts long-arm

25  statute, specific personal jurisdiction over the out-of-state defendants is proper only if

26  applicable constitutional requirements for such jurisdiction are also met. Such jurisdiction

27  requires a showing that (1) an out-of-state defendant has purposefully established a

28  significant contact with the forum state, and (2) the plaintiff's cause of action arises out of or

HOWARD
RICE
NEMEROVSKI
·CANADY
FALK
·&RABKIN
A Professional Corporation

1    is related to that contact or contacts with the forum state. Burger King Corp. v. Rudzewicz,

2    471 U.S. 462, 472, 486 (1985); Nowak, 94 F.3d at 712-13.

3    　　　　Each Defendant fully meets these requirements. As shown above, the requirement

4    that the Defendants' Massachusetts contacts relate to Freedom's cause of action is met under

5    the "but for" test employed by the Court of Appeals for this Circuit. Doe v. American Red

6    Cross, 112 F.3d at 1051. There can be no doubt that the Massachusetts contracts of Boston

7    Communications with its defendant customers, and the implementation of those contracts by

8    Boston Communications' Massachusetts-based customer support and data processing

9    services, constitute the direct driving factor that has led to Freedom's patent infringement

10   claims against every one of those defendants. But for the negotiation and implementation of

11   those Massachusetts-based contracts, the Boston Communications customer defendants

12   would never have had the C2C Prepaid Wireless System to sell and thus there would have no

13   basis for any patent infringement claim against any of them arising from their use and sale of

14   the C2C system.

15   　　　　The "relatedness" requirement is also met under the somewhat different approach

16   used by the Court of Appeals for the First Circuit in evaluating the constitutional aspect of

17   specific personal jurisdiction. That Circuit principally adheres to a proximate cause test to

18   protect out-of-state defendants against unforeseeable Massachusetts-related risks of harm

19   from their conduct. The court then tempers the proximate cause test with "a small overlay"

20   of "but for." The critical inquiry under First Circuit law is whether the defendant could

21   reasonably foresee or anticipate that its efforts to enter into a contract with a Massachusetts

22   resident could lead to the commission of a tort for which the defendant might be held to

23   answer in a court in Massachusetts. Nowak, 94 F.3d at 715-16.

24   　　　　In the Nowak case the court held that personal jurisdiction in Massachusetts over a

25   Hong Kong hotel operator was proper with respect to an action for wrongful death resulting

26   from a drowning in the hotel's swimming pool because the deceased had been induced to stay

27   at the defendant's hotel as a result of a long-established business relationship that the hotel

28   had fostered with the deceased's husband's Massachusetts employer. The court concluded

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1  that it was entirely foreseeable by the Hong Kong defendant that the relationship could result

2  in a tort action against the defendant in a Massachusetts court.

3         The same elements are present here with respect to the out-of-state defendants. As

4  shown above, they are engaged in an ongoing, important commercial relationship with a

5  Massachusetts company involving a telecommunications system as to which claims of patent

6  infringement are certainly foreseeable, as indicated by references in the customer service

7  agreements to the handling of such possible claims. In both this case and Nowak, even the

8  alleged tortious acts that were committed outside Massachusetts resulted from, and were

9  integrally related to, an established business relationship with a Massachusetts-based firm.

10         The requirement of purposeful availment is also met with respect to all the out-of-

11  state defendants. The purposeful availment requirement ensures that jurisdiction is not

12  premised on "'random, isolated, or fortuitous' contacts with the forum state." Nowak, 94

13  F.3d at 716. All the out-of-state defendants voluntarily entered into the business relationship

14  with Boston Communications in Massachusetts and, as noted above, certainly must have

15  foreseen that the business relationship could bring them into the Massachusetts courts to

16  defend a case or cases arising from it.

17         Finally, the Burger King and the Nowak cases list several so-called "Gestalt

18  factors" to which the courts may look to satisfy themselves that personal jurisdiction over all

19  defendants in a particular judicial district would comport with traditional notions of fair play

20  and substantial justice. Those factors, like the factors considered under Section 1404(a) itself,

21  focus on the interests and burdens on the plaintiff and defendants, the forum state's interest in

22  adjudicating the dispute, and the interest of the judicial system in obtaining the most effective

23  resolution of the dispute.

24         The key point under the Gestalt factors is that Massachusetts, as the principal

25  place of business of the principal defendant and the place where the business relationships

26  between that defendant and the other defendants were forged and are ongoing, certainly has a

27  more substantial interest in adjudicating the dispute than does California, in which but two of

28  the secondary defendants reside and in which the Plaintiff apparently does not even do

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1    business. As is evident by the filing of this motion, the Defendants do not regard

2    Massachusetts as any more inconvenient as a forum than California. None of the Gestalt

3    factors cuts against the exercise of personal jurisdiction over the out-of-state defendants.

4

5                                CONCLUSION

6            For the foregoing reasons, this Court should grant the motion to transfer this action

7    to the federal district court for the District of Massachusetts.

8

9    DATED: June 16, 2000.

                                        Respectfully,

10

11                                      TODD E. THOMPSON
                                        SIMON J. FRANKEL
                                        HOWARD, RICE, NEMEROVSKI, CANADY,
12                                           FALK & RABKIN
                                        A Professional Corporation

13

14                                      PHILIP C. SWAIN
                                        VERNE W. VANCE, JR.
                                        STEPHEN B. DEUTSCH
15                                      FOLEY, HOAG & ELIOT LLP

16

17                                      By: _____
                                              SIMON J. FRANKEL

18                                      Attorneys for Defendant BOSTON
                                        COMMUNICATIONS GROUP, INC.
19

20

21

22

23

24

25

26

27

28   WD 061600/f-1385801/W12/845290/v1

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

PROOF OF SERVICE

1

2    I, Joanne M. Henderson, declare:

3    I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is Three Embarcadero Center, 7th Floor,

4    San Francisco, California 94111-4065. On June 16, 2000, I served the foregoing document(s) described as **NOTICE OF MOTION AND MOTION OF DEFENDANT**

5    **BOSTON COMMUNICATIONS GROUP, INC. TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF**

6    **KIMBERLY OBREMSKI IN SUPPORT OF DEFENDANT BOSTON COMMUNICATIONS GROUP, INC.'S MOTION TO TRANSFER VENUE;**

7    **DECLARATION OF WILLIAM D. WESSMAN IN SUPPORT OF DEFENDANT BOSTON COMMUNICATION GROUP INC.'S MOTION TO TRANSFER VENUE;**

8    **[PROPOSED] ORDER GRANTING MOTION OF DEFENDANT BOSTON COMMUNICATIONS GROUP, INC. TO TRANSFER VENUE:**

9

10    ☒    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

11    ☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California

12         addressed as set forth below.

13    ☐    by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth below.

14    ☐    by placing the document(s) listed above in a sealed _____

15         envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery

16

17    ☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

18

19    William A. Urquhart, Esq.
     Quinn Emanuel Urquhart Oliver &
     Hedges, LLP

20    2479 E. Bayshore Rd., Ste. 820
     Palo Alto, CA 94303

21    Tel: (213) 624-7707
     Fax: (213) 624-0643

22

23    I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal

24    Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal

25    cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

26    I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on June 16, 2000.

27                                          _Joanne Henderson_ (signature)

28                                          Joanne Henderson

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1

## PROOF OF SERVICE BY MAIL

2       I am employed in the City and County of San Francisco, State of California.  I am

3   over the age of eighteen (18) years and not a party to the within action; my business address

4   is Three Embarcadero Center, 7th Floor, San Francisco, California  94111-4065.

5       I am readily familiar with the practice for collection and processing of documents

6   for mailing with the United States Postal Service of Howard, Rice, Nemerovski, Canady, Falk

7   & Rabkin, A Professional Corporation, and that practice is that the documents are deposited

8   with the United States Postal Service with postage fully prepaid the same day as the day of

9   collection in the ordinary course of business.

10      On June 16, 2000, I served the foregoing document(s) described as **NOTICE OF**

11  **MOTION AND MOTION OF DEFENDANT BOSTON COMMUNICATIONS**

12  **GROUP, INC. TO TRANSFER VENUE; MEMORANDUM OF POINTS AND**

13  **AUTHORITIES; DECLARATION OF KIMBERLY OBREMSKI IN SUPPORT OF**

14  **DEFENDANT BOSTON COMMUNICATIONS GROUP, INC.'S MOTION TO**

15  **TRANSFER VENUE; DECLARATION OF WILLIAM D. WESSMAN IN SUPPORT**

16  **OF DEFENDANT BOSTON COMMUNICATION GROUP INC.'S MOTION TO**

17  **TRANSFER VENUE; [PROPOSED] ORDER GRANTING MOTION OF**

18  **DEFENDANT BOSTON COMMUNICATIONS GROUP, INC. TO TRANSFER**

19  **VENUE** on the persons listed below by placing the document(s) for deposit in the United

20  States Postal Service through the regular mail collection process at the law offices of Howard,

21  Rice, Nemerovski, Canady, Falk & Rabkin, A Professional Corporation, located at Three

22  Embarcadero Center, 7th Floor, San Francisco, California, to be served by mail addressed as

23  follows:

24                    *Please see attached Service List*

25      I declare under penalty of perjury under the laws of the State of California that the

26  foregoing is true and correct.  Executed at San Francisco, California on June 16, 2000.

27                                    JOANNE HENDERSON

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

WD 061400/1-1385801/57/845151/v1                          -1-

PROOF OF SERVICE

Service List

1

2

3  Norma Formanek, Esq.
   Farella, Braun & Martel, LLP
4  235 Montgmery Street, 30th Floor
   San Francisco, CA 94104
5  Tel: (415) 954-4400
   Fax: (415) 954-4480
6

7  James G. Gilliland, Jr., Esq.
   K.T. Cherian, Esq.
8  Townsend & Townsend & Crew, LLP
   Two Embarcadero Center, 8th Floor
9  San Francisco, CA 94111
   Tel: (415) 576-0200
10 Fax: (415) 576-0300

11 H. Mark Lyon
   Gibson Dunn & Crutcher, LLP
12 1530 Page Mill Road
   Palo Alto, CA 94304
13 Tel: (650) 849-5300
   Fax: (650) 849-5333
14

15 Kent E. Thomson
   Torys Law Firm
16 Maritime Life Tower, Suite 3000
   Box 270, TD Centre
17 Toronto, Ontario M5K1N2
   Tel: (416) 865-7507
18 Fax: (416) 865-7380

J. David Hadden, Esq.
McCutchen, Doyle, Brown & Enersen,
LLP
3150 Porter Drive
Palo Alto, CA 94304
Tel: (650) 849-4900
Fax: (650) 849-4800

Stephen M. Everett, Esq.
Limbach & Limbach
2001 Ferry Building
San Francisco, CA 94111
Tel: (415) 433-4150
Fax: (415) 956-0994

Kimberly F. Rich, Esq.
Baker & McKenzie
4500 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Tel: (214) 978-3000
Fax: (214) 978-3099

Philip C. Swain, Esq.
Foley, Hoag & Eliot, LLP
One Post Office Square
Boston, MA 02109
Tel: (617) 832-1000
Fax: (617) 832-7000

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

WD 061400/1-1385801/57/845151/v1

-2-

PROOF OF SERVICE

# EXHIBIT C

1  TODD E. THOMPSON (No. 123534)
    SIMON J. FRANKEL (No. 171552)
2  HOWARD, RICE, NEMEROVSKI, CANADY,
       FALK & RABKIN
3  A Professional Corporation
    Three Embarcadero Center, 7th Floor
4  San Francisco, California 94111-4065
    Telephone:  415/434-1600
5  Facsimile:   415/217-5910

6  PHILIP C. SWAIN (CA State Bar No. (150322)
    VERNE W. VANCE, JR.
7  STEPHEN B. DEUTSCH
    FOLEY, HOAG & ELIOT LLP
8  One Post Office Square
    Boston, Massachusetts 02109
9  Telephone:  617/832-1000
    Facsimile:   617/832-7000

10

11  Attorneys for Defendant
    BOSTON COMMUNICATIONS GROUP, INC.

12

13            UNITED STATES DISTRICT COURT

14         NORTHERN DISTRICT OF CALIFORNIA

15              OAKLAND DIVISION

16

| | |
|---|---|
| FREEDOM WIRELESS, INC., | No. C-00-1129-SBA |
| Plaintiff, | |
| v. | CORRECTED DECLARATION OF WILLIAM D. WESSMAN IN SUPPORT OF DEFENDANT BOSTON COMMUNICATION GROUP INC.'S MOTION TO TRANSFER VENUE |
| BOSTON COMMUNICATIONS GROUP, INC., AT&T WIRELESS SERVICES, INC., AIRTOUCH CELLULAR; ALLTEL COMMUNICATIONS PRODUCTS, INC.; BELL ATLANTIC MOBILE, INC., a/k/a BELL ATLANTIC NYNEX MOBILE, a/k/a BANM; BELLSOUTH CELLULAR CORP.; BELLSOUTH MOBILITY, INC.; CELLULAR ONE, a/k/a CELLULAR ONE OF SAN FRANCISCO; PRIMECO PERSONAL COMMUNICATIONS; ROGERS WIRELESS, INC. a/k/a ROGERS AT&T WIRELESS; SOUTHWESTERN BELL MOBILE SYSTEMS, INC.; WESTERN WIRELESS CORPORATION, a/k/a and d/b/a CELLULAR ONE; and DOES 1-20, | DATE:     July 25, 2000<br>TIME:    11:30 a.m.<br>PLACE:  Courtroom 3 |
| Defendants. | |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

WD 061400/1-1385801/25/845238/v1

1

2          I, William D. Wessman, do hereby declare as follows:

3          1.       I am an Executive Vice-President and the Chief Technology Officer of Boston

4    Communications Group, Inc. ("Boston Communications"), one of the named defendants in this

5    action. Unless otherwise indicated, I have personal knowledge of the facts stated herein and, if called

6    as a witness, could and would testify competently thereto.

7

8                    **JOB TITLES AND RESPONSIBILITIES AT BOSTON COMMUNICATIONS**

9          2.       I was hired by Boston Communications to serve as its Manager of

10   Implementation and Quality Assurance at its principal facility in Woburn, Massachusetts, in April

11   1995. In that capacity I was responsible for supervising and directing the implementation, or the

12   deployment and installation at customer sites, of Boston Communications telecommunications

13   products and services and quality assurance issues, including testing, relating to such products and

14   services.

15         3.       Between April 1995 and the present, I have held a number of increasingly

16   more senior positions and titles at Boston Communications' principal facility in Woburn,

17   Massachusetts, relating to implementation and quality assurance, including Director of

18   Implementation and Quality Assurance beginning in the spring of 1996, Vice-President of

19   Implementation and Account Management beginning in January 1997, and Vice-President of

20   Implementation and QA beginning in the fall of 1997, until my promotion to Executive

21   Vice-President and Chief Technology Officer in February 2000.  In my current capacity as Executive

22   Vice-President and the Chief Technology Officer, I am responsible for and supervise all of the

23   technical resources of Boston Communications, including product development.

24         4.       In my various capacities at Boston Communications I have worked closely and

25   on a regular basis with the developers of Boston Communications' various products and services,

26   including the C2C Wireless Prepaid System that is currently offered for sale by Boston

27   Communications and that Plaintiff Freedom Wireless, Inc. ("Freedom") has alleged infringes United

28   States Patent No. 5,722,067 ("the '067 patent"). In fact, between the fall of 1995 and February of

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   2000, the majority of my duties were directed at Boston Communications' pre-paid cellular products

2   and services, including the C2C Wireless Prepaid System. In addition to being responsible for all

3   implementation of and all quality assurance relating to the C2C Wireless Prepaid System, I also

4   served as project manager of the development project that resulted in the C2C Wireless Prepaid

5   System and was responsible for creating the project plan, interfacing and providing feedback

6   regularly to the developers of the system, and supervising all testing of the system.

7

8                    **BOSTON COMMUNICATIONS' FACILITIES AND PERSONNEL**

9                    5.       Boston Communications' corporate offices and the overwhelming majority of

10  Boston Communications' personnel and engineering facilities are located in Massachusetts. Boston

11  Communications does not have any corporate offices or engineering facilities and does not maintain

12  any engineering or operational personnel in California.

13                   6.       From April 1995 through the present, the corporate offices and principal

14  engineering and development facilities of Boston Communications have been located at 100 Sylvan

15  Road, Woburn, Massachusetts (the "Woburn facility"). With the exception of two Vice-Presidents,

16  each of the corporate officers of Boston Communications work at the Woburn facility. The

17  overwhelming majority of the development and technical personnel of Boston Communications also

18  are located at the Woburn facility. Since late 1995 or early 1996, Boston Communications has

19  maintained a facility in Tulsa, Oklahoma (the "Tulsa facility"), where the remaining two

20  Vice-Presidents and remaining technical and development personnel of Boston Communications are

21  located.

22                   7.       Boston Communications also maintains three call centers, or customer support

23  centers, that handle all calls originating throughout the nation from pre-paid cellular subscribers

24  whose carriers use the Boston Communications C2C Wireless Prepaid system. Two of the call

25  centers are located in Massachusetts at Lowell and Burlington, while the third call center is located in

26  Delane, Florida.

27                   8.       Boston Communications does not have any engineering facilities or call

28  centers or maintain any engineering or operational personnel in California. Boston Communications

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

DECLARATION OF WILLIAM D. WESSMAN                      C-00-1129-SBA
WD 061400/1-1385801/25/845238/v1                -3-

1    does maintain approximately 50 so-called "Node Sites" throughout the country, including Node Sites

2    in Anaheim, Rancho Cordova, and Santa Clara, California. These Node Sites, however, are not

3    staffed with any personnel and simply house telecommunications equipment. Moreover, as discussed

4    below, the Node Sites and the equipment housed therein play a relatively minor role in the operation

5    of the C2C Wireless Prepaid System.

6

7    <center>**DEVELOPMENT AND MAINTENANCE OF BOSTON COUMMUNICATIONS'**</center>

8    <center>**C2C SYSTEM IN MASSACHUSETTS**</center>

9          9.    The overwhelming majority of the development work that led to Boston

10    Communications' C2C Wireless Prepaid System occurred at Boston Communications' Woburn

11    facility, and the remainder occurred at a Boston Communications' facility in Tulsa, Oklahoma, and a

12    third party facility in Nashua, New Hampshire. Moreover, virtually all documents relating to the

13    development of the C2C Wireless Prepaid System are located at Boston Communications' Woburn

14    facility, and all but one of the persons most knowledgeable regarding the development of the system

15    are still employed by Boston Communications at its Woburn facility. None of the development work

16    relating to Boston Communications' C2C Wireless Prepaid System occurred in California, and none

17    of the documents relating to the development of the system or the persons most knowledgeable

18    concerning the development are located in California.

19          10.    The overwhelming majority of the development work relating to C2C Wireless

20    Prepaid System occurred at Boston Communications' Woburn facility, where I and the principal

21    developers of the C2C Wireless Prepaid System, including Paul Senn, John Cooper, John Hayes,

22    Brian Scanlon and Ken Sonberg, were employed. The remaining portion of the development work

23    occurred in Boston Communications' Tulsa facility and a third party facility in Nashua, New

24    Hampshire, where some of the developers worked off-site on a temporary basis for a period of

25    approximately three months.

26          11.    Moreover, the persons at Boston Communications most knowledgeable

27    regarding the development of the C2C Wireless Prepaid System, including myself, John Cooper,

28    John Hayes, Brian Scanlon and Ken Sonberg, continue to work out of the Woburn facility. In

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

<center>DECLARATION OF WILLIAM D. WESSMAN</center>
<center>-4-</center>

C-00-1129-SBA

1    addition, Paul Senn, one of the principal developers of the system who is no longer employed by

2    Boston Communications, currently works and resides in Massachusetts. To the best of my

3    knowledge, no witnesses with personal knowledge of the development of the C2C Wireless Prepaid

4    System reside in California.

5         12.   Likewise, the overwhelming majority of existing documentation relating to the

6    development of the C2C Wireless Prepaid System are located in the Woburn facility. To the extent

7    any documentation relating to the development may exist other than in the Woburn facility, such

8    documentation would be located in Boston Communications' Tulsa facility. To the best of my

9    knowledge, no documentation relating to the development of the C2C Wireless Prepaid System is

10   located in California or at any of the un-staffed Node Sites maintained by Boston Communications in

11   California.

12        13.   Finally, all back-end processing of pre-paid cellular telephone calls performed

13   by the C2C Wireless Prepaid System, including accounting and billing functions, are performed at

14   Boston Communications' Woburn facility, and all documentation relating to such processing and

15   functions are located at the Woburn facility. Moreover, the persons at Boston Communications most

16   knowledgeable concerning the back-end processing and functions and the documentation relating

17   thereto are employed at the Woburn facility.

18

19            **BRIEF DESCRIPTION OF BOSTON COMMUNICATIONS'**

20            **CALL PROCESSING IN ITS WOBURN FACILITY**

21        14.   When a prepaid cellular subscriber initiates a call, the cellular switch operated

22   by the subscriber's carrier identifies the subscriber as a prepaid cellular subscriber and forwards the

23   call to one of Boston Communications' Node Sites. The Node Site then forwards information

24   relating to the subscriber's identity and location and the destination telephone number to Boston

25   Communications' back-end processing system located at the Woburn facility.

26        15.   Upon receipt of the information relating to the subscriber's identity and

27   location and the destination telephone number, the back-end processing system performs what is

28   known in the industry as a "rating" function. Based on account information contained in a subscriber

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

1   database (the "Subscriber Database"), the rating function determines whether the subscriber has a

2   sufficient balance in his or her account to call the destination telephone number and calculates the

3   maximum duration for the call.  The back-end processing system in the Woburn facility forwards this

4   information to the Node Site.

5          16.    If the subscriber has a sufficient balance to call the destination telephone

6   number, the Node Site will (a) issue a voice prompt informing the subscriber of the maximum

7   duration of the call and permit the call to proceed, (b) initiate a call timer that measures the duration

8   of the call, and (c) monitor the call.  At a predetermined time (that is less than the maximum call

9   duration), the Node Site will issue a voice prompt advising the subscriber of the maximum remaining

10  duration of the call.

11         17.    If the maximum call duration is reached before the Node Site senses an

12  "on-hook" condition from either the subscriber's cellular telephone or the destination telephone

13  number, the Node Site will cause the call to be terminated and will forward the value of the call

14  timer, in this case, the maximum call duration, to the back-end processing system at Boston

15  Communications' Woburn facility.  If the Node Site senses an "on-hook" condition before the

16  maximum call duration is reached, the Node Site will forward the current value of the call timer, in

17  this case, the actual call duration, to the back-end processing system at Boston Communications'

18  Woburn facility.

19         18.    Upon termination of the call and receipt of the call duration from the Node

20  Site, the back-end processing system at the Woburn facility updates the Subscriber Database

21  accordingly.  In addition to containing information relating to the remaining account balance of a

22  subscriber, the back-end processing system at Boston Communications' Woburn facility also stores

23  detailed information in the Subscriber Database relating to each call made by a pre-paid subscriber,

24  which information is used by each subscriber's carrier to prepare billing information for the pre-paid

25  subscriber and by Boston Communications to bill its carrier customers that use the C2C Wireless

26  Prepaid System.  The Subscriber Database and all archives and back-ups generated by Boston

27  Communications relating thereto is maintained solely at Boston Communications' Woburn facility.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1

2     I declare under penalty of perjury under the laws of the United States that the

3     foregoing is true and correct and that I executed this declaration on June 14, 2000, in Woburn,

      Massachusetts.

4

5                                                 _____
                                                  WILLIAM D. WESSMAN
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              DECLARATION OF WILLIAM D. WESSMAN

<u>PROOF OF SERVICE BY MAIL</u>

1

2     I am employed in the City and County of San Francisco, State of California.  I am

3     over the age of eighteen (18) years and not a party to the within action; my business address

4     is Three Embarcadero Center, 7th Floor, San Francisco, California  94111-4065.

5     I am readily familiar with the practice for collection and processing of documents

6     for mailing with the United States Postal Service of Howard, Rice, Nemerovski, Canady, Falk

7     & Rabkin, A Professional Corporation, and that practice is that the documents are deposited

8     with the United States Postal Service with postage fully prepaid the same day as the day of

9     collection in the ordinary course of business.

10    On June 16, 2000, I served the foregoing document(s) described as

11    **CORRECTED DECLARATION OF WILLIAM D. WESSMAN IN SUPPORT OF**

12    **DEFENDANT BOSTON COMMUNICATION GROUP INC.'S MOTION TO**

13    **TRANSFER VENUE** on the persons listed below by placing the document(s) for deposit in

14    the United States Postal Service through the regular mail collection process at the law offices

15    of Howard, Rice, Nemerovski, Canady, Falk & Rabkin, A Professional Corporation, located

16    at Three Embarcadero Center, 7th Floor, San Francisco, California, to be served by mail

17    addressed as follows:

18    *Please see attached Service List*

19    I declare under penalty of perjury under the laws of the State of California that the

20    foregoing is true and correct.  Executed at San Francisco, California on June 16, 2000.

21

22    JOANNE HENDERSON

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

WD 061400/1-1385801/57/845151/v1

-1-

PROOF OF SERVICE

1

Service List

2

3    Norma Formanek, Esq.
     Farella, Braun & Martel, LLP
4    235 Montgmery Street, 30th Floor
     San Francisco, CA 94104
5    Tel: (415) 954-4400
     Fax: (415) 954-4480
6

J. David Hadden, Esq.
McCutchen, Doyle, Brown & Enersen,
LLP
3150 Porter Drive
Palo Alto, CA 94304
Tel: (650) 849-4900
Fax: (650) 849-4800

7    James G. Gilliland, Jr., Esq.
     K.T. Cherian, Esq.
8    Townsend & Townsend & Crew, LLP
     Two Embarcadero Center, 8th Floor
9    San Francisco, CA 94111
     Tel: (415) 576-0200
10   Fax: (415) 576-0300

Stephen M. Everett, Esq.
Limbach & Limbach
2001 Ferry Building
San Francisco, CA 94111
Tel: (415) 433-4150
Fax: (415) 956-0994

Kimberly F. Rich, Esq.
Baker & McKenzie
11   H. Mark Lyon                              4500 Trammell Crow Center
     Gibson Dunn & Crutcher, LLP               2001 Ross Avenue
12   1530 Page Mill Road                       Dallas, TX 75201
     Palo Alto, CA 94304                       Tel: (214) 978-3000
13   Tel: (650) 849-5300                       Fax: (214) 978-3099
     Fax: (650) 849-5333

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

14

15   Kent E. Thomson                          Philip C. Swain, Esq.
     Torys Law Firm                           Foley, Hoag & Eliot, LLP
16   Maritime Life Tower, Suite 3000          One Post Office Square
     Box 270, TD Centre                       Boston, MA 02109
17   Toronto, Ontario M5K1N2                   Tel: (617) 832-1000
     Tel: (416) 865-7507                      Fax: (617) 832-7000
18   Fax: (416) 865-7380

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2          I, Joanne M. Henderson, declare:

3          I am a resident of the State of California and over the age of eighteen years, and
not a party to the within action; my business address is Three Embarcadero Center, 7th Floor,
4    San Francisco, California  94111-4065.  On June 16, 2000, I served the foregoing
document(s) described as **CORRECTED DECLARATION OF WILLIAM D.**
5    **WESSMAN IN SUPPORT OF DEFENDANT BOSTON COMMUNICATION GROUP
INC.'S MOTION TO TRANSFER VENUE:**

6

7    ☒    by transmitting via facsimile the document(s) listed above to the fax number(s)
set forth below on this date before 5:00 p.m.

8    ☒    by placing the document(s) listed above in a sealed envelope with postage
thereon fully prepaid, in the United States mail at San Francisco, California
9          addressed as set forth below.

10   ☐    by causing personal delivery by _____ of the document(s) listed
above to the person(s) at the address(es) set forth below.

11

12   ☐    by placing the document(s) listed above in a sealed _____
envelope and affixing a pre-paid air bill, and causing the envelope to be
delivered to a _____ agent for delivery

13

14   ☐    by personally delivering the document(s) listed above to the person(s) at the
address(es) set forth below.

15

16   William A. Urquhart, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
17   2479 E. Bayshore Rd., Ste. 820
Palo Alto, CA  94303
18   Tel:  (213) 624-7707
Fax: (213) 624-0643

19

20          I am readily familiar with the firm's practice of collection and processing
correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal
21   Service on that same day with postage thereon fully prepaid in the ordinary course of
business.  I am aware that on motion of the party served, service is presumed invalid if postal
22   cancellation date or postage meter date is more than one day after date of deposit for mailing
in affidavit.

23          I declare under penalty of perjury that the foregoing is true and correct.  Executed
at San Francisco, California on June 16, 2000.
24

25                                                            _____
                                                                Joanne Henderson
26

27

28

WD 061600/1-1385801/57/845731/v1

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# EXHIBIT D

1    TODD E. THOMPSON (No. 123534)
     SIMON J. FRANKEL (No. 171552)
2    HOWARD, RICE, NEMEROVSKI, CANADY,
         FALK & RABKIN
3    A Professional Corporation
     Three Embarcadero Center, 7th Floor
4    San Francisco, California  94111-4065
     Telephone:   415/434-1600
5    Facsimile:    415/217-5910

6    PHILIP C. SWAIN (CA State Bar No. (150322)
     VERNE W. VANCE, JR.
7    STEPHEN B. DEUTSCH
     FOLEY, HOAG & ELIOT LLP
8    One Post Office Square
     Boston, Massachusetts  02109
9    Telephone:   617/832-1000
     Facsimile:    617/832-7000
10
     Attorneys for Defendant
11   BOSTON COMMUNICATIONS GROUP, INC.

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14                              OAKLAND DIVISION

15

16   FREEDOM WIRELESS, INC.,                    No. C-00-1129-SBA

17              Plaintiff,                       [The Hon. Saundra B. Armstrong]

18        v.                                     DECLARATION OF KIMBERLY
                                                 OBREMSKI IN SUPPORT OF
19   BOSTON COMMUNICATIONS GROUP,                DEFENDANT BOSTON
     INC., AT&T WIRELESS SERVICES,               COMMUNICATIONS GROUP, INC.'S
20   INC., AIRTOUCH CELLULAR; ALLTEL             MOTION TO TRANSFER VENUE
     COMMUNICATIONS PRODUCTS, INC.;
21   BELL ATLANTIC MOBILE, INC., a/k/a
     BELL ATLANTIC NYNEX MOBILE,                 DATE:       July 25, 2000
22   a/k/a BANM; BELLSOUTH CELLULAR              TIME:        11:30 a.m.
     CORP.; BELLSOUTH MOBILITY, INC.;            PLACE:      Courtroom 3
23   CELLULAR ONE, a/k/a CELLULAR ONE
     OF SAN FRANCISCO; PRIMECO
24   PERSONAL COMMUNICATIONS;
     ROGERS WIRELESS, INC. a/k/a ROGERS
25   AT&T WIRELESS; SOUTHWESTERN
     BELL MOBILE SYSTEMS, INC.;
26   WESTERN WIRELESS CORPORATION,
     a/k/a and d/b/a CELLULAR ONE; and
27   DOES 1-20,

28              Defendants.

                       DECLARATION OF KIMBERLY OBREMSKI

WD 061400/1-1385801/25/845263/v1                                    C-00-1129-SBA

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Registered Corporation

1    I, Kimberly Obremski, do hereby declare as follows:

2         1.    I have held various positions in sales and marketing at Boston

3    Communications Group, Inc. ("Boston Communications") for the past seven years and

4    presently hold the position of Vice President - Sales and Marketing of Boston

5    Communications. In that position I head up the company's sales force and its corporate

6    marketing team. My organization is responsible for, among other things, all sales and

7    marketing activities for the company's C2C pre-paid wireless telephone services.

8         2.    Boston Communications sells its C2C pre-paid wireless services to domestic

9    and international wireless carrier companies. Those services encompass two principal

10   components: (1) access to our C2C pre-paid wireless network; and (2) customer care services

11   by which we enable our carrier customers to make the best and most valuable use of their

12   access to our C2C network.

13

## NEGOTIATION AND EXECUTION OF BOSTON COMMUNICATIONS'
## C2C WIRELESS PRE-PAID AGREEMENTS IN MASSACHUSETTS

16        3.    I was the first sales representative hired by Boston Communications and in

17   1996 I sold, and negotiated the first pre-paid wireless service agreements for, the company's

18   C2C pre-paid wireless services to its first two wireless carrier customers. Since that time I

19   have been extensively involved in the sale of, and the negotiation of the pre-paid wireless

20   service agreements for, the company's C2C pre-paid wireless services to all the other carriers

21   to which the company provides such services.

22        4.    In all sales of Boston Communications' C2C pre-paid wireless services we

23   encourage the potential customer to visit our headquarters facility in Woburn, Massachusetts,

24   for a demonstration of the C2C service and a thorough discussion of all aspects of the service.

25   Every or nearly every carrier to which we have sold our C2C service has made at least one

26   such visit during the sales process that has led to the negotiation and execution of a pre-paid

27   wireless service agreement for our C2C service. When a carrier has made the decision to buy

28   the C2C service, we have negotiated the particular pricing provisions for the service with

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

DECLARATION OF KIMBERLY OBREMSKI

1    each customer and then incorporated those into a standard pre-paid wireless service

2    agreement of terms and conditions. In every case the negotiation of the final terms and

3    conditions, as embodied in the final pre-paid wireless service agreement, has involved

4    numerous communications between Boston Communications and the carrier customer, some

5    of which have taken place at meetings in Massachusetts and all of which have involved

6    numerous communications by telephone and E-mail between Boston Communications in

7    Massachusetts and the carrier located outside of Massachusetts. In every case when

8    agreement has been reached on the final form of the contract, we have sent copies of the

9    pre-paid wireless service agreement to the carrier customer for signature by it. When the

10   carrier has signed the agreement the carrier has then returned the copies that have been signed

11   by it to Boston Communications, and we then signed the agreement to consummate the

12   transaction.

13
14   **BOSTON COMUNICATIONS' CUSTOMER SUPPORT SERVICES ARE**
15   **PROVIDED FROM, AND ENTAIL REGULAR VISITS BY CUSTOMERS**
16   **TO MASSACHUSETTS**

17         5.    After entering into the pre-paid wireless service agreement with each carrier

18   customer, we have assigned an account management team and a sales team to that customer.

19   The basic function of the account management team is to monitor the day-to-day operation of

20   the customer's account to ensure that all the details for the effective use of the C2C services

21   are being taken care of effectively and efficiently. Such details customarily include such

22   things as making changes in the database of the carrier's customers and making changes in the

23   personal identification numbers of those customers. The basic function of the sales team is to

24   identify and market to the customer new features that can add value to the "plain vanilla"

25   C2C pre-paid service. These account management and sales services often entail regular

26   visits by representatives of each customer to Boston Communications in Massachusetts. We

27   also conduct an annual three-day user meeting in Massachusetts for our C2C customers at

28   which Boston Communications updates all carrier customers on the latest developments

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
&RABKIN
A Professional Corporation

DECLARATION OF KIMBERLY OBREMSKI

C-00-1129-SBA

1    pertaining to the C2C service and responds to any matters relating to that service by the

2    carrier customers.

3

4    ## ALL OF BOSTON COMMUNICATIONS' BILLING AND ACCOUNTING

5    ## ACTIVITIES ARE PERFORMED IN MASSACHUSETTS

6          6.    Boston Communications bills all its carrier customers for the C2C service

7    from Boston Communications' billing office in Massachusetts, and all payments are received

8    by Boston Communications in Massachusetts and deposited at our company's banking facility

9    in Massachusetts.  All documents pertaining to such billings and payments for Boston

10   Communications' C2C pre-paid wireless services are kept at Boston Communications'

11   facilities in Massachusetts.

12

13   ## PRIMECO PERSONAL COMMUNICATIONS HAS NEVER BEEN A C2C

14   ## PRE-PAID CUSTOMER OF BOSTON COMMUNICATIONS

15         7.    Boston Communications has never provided C2C pre-paid wireless services

16   to Primeco Personal Communications and has never had a contract with Primeco to do so.

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

DECLARATION OF KIMBERLY OBREMSKI

WD 061400/1-1385801/25/845263/v1

C-00-1129-SBA

1    I declare under penalty of perjury under the laws of the United States that the

2  foregoing is true and accurate and that I executed this declaration on June 15, 2000, in

3  Woburn, Massachusetts.

4

5                          Kimberly Obremski

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | 00-12234-EFH |
| ) | |
| BOSTON COMMUNICATIONS ) | |
| GROUP, INC., ET AL., ) | |
| Defendants. ) | |

## O R D E R

February 14, 2001

HARRINGTON, D.J.

After hearing, the Court rules on the parties' motions as follows:

1.    The Court grants Motion of Plaintiff Freedom Wireless, Inc. for Leave

to File Amended Complaint [No. 33];

2.    The Court denies Motion of Defendant Boston Communications

Group, Inc. to Bifurcate Trial and Stay Damages Discovery [Nos. 6-1,

6-2];

3.    The Court denies Motion of Defendant Rogers Wireless, Inc. to

Dismiss for Lack of Personal Jurisdiction [No. 14].  The Court shall

entertain a motion for summary judgment filed by the Defendant

Rogers Wireless, Inc.;

4.   The Court orders that fact discovery be concluded on or before

     March 15, 2002;

5.   The Court declines to set deadlines at this time for the filing of motions

     for joinder and motions to amend the pleadings; and

6.   The Court declines to set a <u>Markman</u> hearing schedule at this time.

SO ORDERED.


EDWARD F. HARRINGTON
United States District Judge

-2-

# EXHIBIT F

Westlaw.

218 F.Supp.2d 19                                                              Page 1

218 F.Supp.2d 19
(Cite as: 218 F.Supp.2d 19)

**H**
Briefs and Other Related Documents

United States District Court,D. Massachusetts.
FREEDOM WIRELESS, INC., Plaintiff,
v.
BOSTON COMMUNICATIONS GROUP, INC., et
al., Defendants.
No. Civ.A. 00-12234-EFH.

Sept. 3, 2002.

Owner of patents for system of providing prepaid
wireless telephone services brought infringement
action against Canadian service provider. After
summary judgment was granted for provider, 198
F.Supp.2d 11, plaintiff moved to amend complaint.
The District Court, Harrington, Senior District
Judge, held that court lacked personal jurisdiction
over defendant.

Motion denied.

West Headnotes

**[1] Constitutional Law 92 ⟜305(5)**

92 Constitutional Law
    92XII Due Process of Law
        92k304 Civil Remedies and Proceedings
            92k305 Actions
                92k305(4) Jurisdiction and Venue
                    92k305(5)   k.   Nonresidents   in
General. Most Cited Cases

**Patents 291 ⟜288(1)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k288 Jurisdiction
                291k288(1) k. In General. Most Cited
Cases
Federal district court has personal jurisdiction over

non-resident defendant in patent case only if forum
state's long-arm statute has authorized exercise of
jurisdiction and it is not otherwise inconsistent with
requirements   of   due   process.   U.S.C.A.
Const.Amend. 14.

**[2] Courts 106 ⟜12(2.1)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction
in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2)   Actions   by   or   Against
Nonresidents; "Long-Arm" Jurisdiction in General
                    106k12(2.1) k. In General. Most
Cited Cases
Massachusetts long-arm statute is coextensive with
limits of due process. U.S.C.A. Const.Amend. 14;
M.G.L.A. c. 223A, § 3.

**[3] Constitutional Law 92 ⟜305(5)**

92 Constitutional Law
    92XII Due Process of Law
        92k304 Civil Remedies and Proceedings
            92k305 Actions
                92k305(4) Jurisdiction and Venue
                    92k305(5)   k.   Nonresidents   in
General. Most Cited Cases
Exercise of personal jurisdiction over non-resident
defendant comports with due process only if he has
purposefully directed actions toward forum state
sufficient to satisfy finding of minimum contacts
and  exercise  of  jurisdiction  would  not  be
unreasonably burdensome. U.S.C.A. Const.Amend.
14.

**[4] Courts 106 ⟜96(5)**

106 Courts
    106II   Establishment,   Organization,   and
Procedure
        106II(G) Rules of Decision

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

218 F.Supp.2d 19                                                   Page 2

218 F.Supp.2d 19
(Cite as: 218 F.Supp.2d 19)

106k88 Previous Decisions as Controlling or as Precedents
106k96 Decisions of United States Courts as Authority in Other United States Courts
106k96(5) k. Decisions in Other Circuits. Most Cited Cases

**Courts 106 ☞96(7)**

106 Courts
106II Establishment, Organization, and Procedure
106II(G) Rules of Decision
106k88 Previous Decisions as Controlling or as Precedents
106k96 Decisions of United States Courts as Authority in Other United States Courts
106k96(7) k. Particular Questions or Subject Matter. Most Cited Cases
In suit for patent infringement, law of United States Court of Appeals for Federal Circuit controls issue of personal jurisdiction.

**[5] Patents 291 ☞288(3)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k288 Jurisdiction
291k288(3) k. Residence and Place of Infringement. Most Cited Cases
District court has personal jurisdiction over non-resident defendant in patent case if: (1) defendant purposefully directed its activities at residents of forum; (2) claim arises out of or is related to those activities; and (3) assertion of personal jurisdiction is reasonable and fair.

**[6] Patents 291 ☞288(3)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k288 Jurisdiction
291k288(3) k. Residence and Place of Infringement. Most Cited Cases
Canadian wireless telephone service provider who served only Canadian customers lacked sufficient minimum contacts with Massachusetts to subject it

to personal jurisdiction of federal court hearing patent infringement action there; provider's reliance on Massachusetts billing service to provide prepaid wireless service in manner described by patents did not constitute purposeful direction of activities at residents of state, and exercise of jurisdiction would unreasonably burden provider.

**[7] Federal Courts 170B ☞76.15**

170B Federal Courts
170BII Venue
170BII(A) In General
170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
170Bk76.15 k. Transacting or Doing Business. Most Cited Cases
Mere act of purchasing from in-state seller is usually insufficient basis for assertion of personal jurisdiction over non-resident.

**Patents 291 ☞328(2)**

291 Patents
291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
291k328 Patents Enumerated
291k328(2) k. Original Utility. Most Cited Cases
5,722,067, 6,157,823. Cited.

*20 F. Dennis Saylor, IV, Douglas C. Doskocil, Cheryl L. Brunetti, Goodwin Procter, LLP, Boston, MA, Michael T. Zeller, Steven D. Anderson, A. William Urquhart, Johanna Y. Ong, Erica P. Taggart, John J. Quinn, Diane C. Hutnyan, Charles K. Verhoeven, Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, Los Angeles, CA, Robert A. Pressman, Bramson & Pressman, Conshohocken, PA, for Plaintiff.
Philip C. Swain, Vickie L. Henry, John E. Nilsson, Stephen B. Deutsch, Foley, Hoag & Eliot, Boston, MA, Susan E. Stenger, Perkins, Smith & Cohen, Boston, MA, for Boston Communications Group, Inc.
Susan E. Stenger, Lawrence G. Green, Perkins, Smith & Cohen, Boston, MA, Christopher B. Hockett, J. David Hadden, James G. Snell, Eric F.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

218 F.Supp.2d 19                                                        Page 3

218 F.Supp.2d 19
(Cite as: 218 F.Supp.2d 19)

Pierson, Patrick T. Weston, Michael E. Woods, Mary T. Huser, Adrienne L. Taclas, S. Christian Platt, Bingham McCutchen, LLP, East Palo Alto, CA, Rebecca Hooley, Bingham McCutchen, LLP, San Francisco, CA, for At & T Wireless PCS.

Laura Brutman, Edward V. DiLello, Guy Yonay, Frank Maldari, Darby & Darby, PC, New York City, Jennifer L. Conrad, Douglas Kline, Karen L. Febeo, Testa, Hurwitz & Thibeault, LLP, Boston, MA, for Airtouch Communications, Inc.

*21 Laura Brutman,Frank Maldari, Edward V. DiLello, Scott Lindvall, Pierre R. Yanney, James Hanft, Robert Laurenzi, Guy Yonay, Darby & Darby, New York City, Peter D. Baird, Richard A. Halloran, Lewis & Roca, Phoenix, AZ, Jennifer L. Conrad, Testa, Hurwitz & Thibeault, LLP, Boston, MA, Norma G. Formanek, Nan E. Joesten, Farella, Braun & Martel, LLP, San Francisco, CA, Joan M. Griffin, Cooke, Clancy & Gruenthal, Boston, MA, Bell Atlantic Mobile.

Susan E. Stenger, Perkins, Smith & Cohen, Boston, MA, Christopher B. Hockett, J. David Hadden, James G. Snell, Eric F. Pierson, Patrick T. Weston, Michael E. Woods, Mary T. Huser, Adrienne L. Taclas, S. Christian Platt, Bingham McCutchen, LLP, East Palo Alto, CA, East Palo Alto, CA, Rebecca Hooley, Bingham McCutchen, LLP, San Francisco, CA, for CMT Partners.

Mark P. Spzak, Luke T. Cadigan, Christopher R. Dillon, Ropes & Gray, Boston, MA, Martin F. Cunniff, Edward Han, Mark D. Wegener, Howrey & Simon, Washington, DC, for Rogers Wireless, Inc.

Philip C. Swain, Vickie L. Henry, John E. Nilsson, Stephen B. Deutsch, Foley, Hoag & Eliot, Boston, MA, for Western Wireless Corp.

Nicholas G. Papastauros, Nixon Peabody, Boston, MA, Monique M. Drake, Gibson, Dunn & Crutcher, LLP, Denver, CO, Cingular Wireless LL.

Scott G. Lindvall, Pierre R. Yanney, James Hanft, Robert Laurenzi, Darby & Darby, New York City, for Airtouch Communications, Inc.

Laura Brutman, Edward V. DiLello, Guy Yonay, Darby & Darby, New York City, Jennifer L. Conrad, Testa, Hurwitz & Thibeault, LLP, Boston, MA, for Cillco Partnership.

HARRINGTON, Senior District Judge.

Defendant Rogers Wireless, Inc. ("Rogers") is a Canadian corporation that is accused of infringing upon patents held by Plaintiff Freedom Wireless, Inc. ("Freedom Wireless"). On November 29, 2001, Rogers brought a motion for summary judgment arguing that this Court lacked personal jurisdiction over Rogers and, alternately, that Rogers did not make, use, or sell the patented invention "within the United States" as required under Title 35, Section 271(a), of the United States Code. *Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 531, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972). On April 16, 2002, this Court granted Rogers' motion for summary judgment on the ground that Rogers did not use the patented invention "within the United States." *Freedom Wireless, Inc. v. Boston Communications Group, Inc.,* 198 F.Supp.2d 11, 12 (D.Mass.2002). At that time, this Court declined to address the issue of personal jurisdiction because the territoriality requirement of Section 271(a) provided an alternative, non-constitutional basis for reaching the same conclusion. *Id.* at 14 & n. 7.

In response to this Court's decision to grant Rogers' motion for summary judgment, Freedom Wireless filed a motion requesting leave to amend its complaint to add a new cause of action against Rogers under Section 271(f)(2). That section, which expands infringement to include anyone who "supplies or causes to be supplied in or from the United States any component of a patented invention," allows a plaintiff to maintain a suit for infringement even if the patented invention is not used within the United States. *See* 35 U.S.C. § 271(f)(2). In defense of its motion to amend, Freedom Wireless argues that it was unaware of the facts underlying the alleged Section 271(f)(2) violation until *22 Rogers filed its motion for summary judgment. Nevertheless, because this Court now rules that it lacks personal jurisdiction over Rogers and the proposed amendment would be futile, Freedom Wireless' motion to amend must be denied.

MEMORANDUM

**I.** *Background*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

218 F.Supp.2d 19                                                                                              Page 4

218 F.Supp.2d 19
(Cite as: 218 F.Supp.2d 19)

The facts relevant to the issue of personal jurisdiction are essentially the same as those that were relevant to the issue of extraterritorial infringement addressed in this Court's Order granting summary judgment dated April 16, 2002. Consequently, the following background facts have been recycled from the April 16 Order. *See Freedom Wireless,* 198 F.Supp.2d at 12-14.

Prepaid wireless is a form of wireless telephone communications that allows users to pay in advance for cellular telephone service. Traditional wireless service is provided on credit, and the provider bills the user for the service at the end of each month. Prepaid wireless service, on the other hand, works something like a deposit system, with the subscriber paying a certain sum of money into an account and drawing upon that account each time the service is used. By allowing customers to pay for wireless telephone subscriptions in advance, prepaid wireless is an effective means of supplying wireless service to those customers whose poor credit histories would otherwise make this impossible.

Rogers is a Canadian wireless telephone service provider-sometimes called a carrier-that sells wireless telephone equipment and services exclusively to Canadian residents. Rogers is not licensed to conduct business in the United States. It does not own any assets or property in the United States and does not maintain an office here. Rogers does not direct any advertising or marketing toward the United States, and its services and equipment are not available for purchase by United States residents.

In addition to providing basic wireless telephone service, Rogers also offers prepaid wireless service to its customers. During the relevant time period, however, Rogers lacked either the technology or the desire to create and manage its own prepaid wireless billing system. Therefore, to provide its customers with the option of prepaid wireless service, Rogers contracted with co-defendant Boston Communications Group, Inc. ("BCGI") to provide the prepaid billing services that were necessary for Rogers to supply prepaid wireless service to its customers.

BCGI is a Massachusetts based company that provides prepaid wireless billing services to wireless carriers, such as Rogers, through the use of its C2C platform. Described in its most generic sense, the C2C platform is simply BCGI's proprietary name for a system where wireless calls that have been designated as prepaid are rerouted from the outside carrier-in this case Rogers-to BCGI's C2C network. The C2C network, in turn, is BCGI's name for its prepaid billing processing system, which consists of multiple receiving stations, called nodes, linked to a central computer database that analyzes the calls to determine whether the caller has sufficient funds to complete the call and the maximum duration of the call.

The prepaid wireless service that Rogers provided to its customers through its use of BCGI's billing system operated in the following manner: A Rogers prepaid wireless customer would place a telephone call by dialing a destination phone number and pressing the send key on the telephone. That call, along with signaling information that included the caller's identifying phone number, would be received in Canada by one of Rogers' radio-towers and then transmitted to one of Rogers' *23 mobile telephone switching offices, which were also located exclusively within Canada. The mobile telephone switching office would then identify the call as coming from a prepaid subscriber and would reroute the call to one of the BCGI nodes located in Canada.

Once the BCGI node, located in Canada, had received the call forwarded by Rogers, it would send the call, along with information relating to the caller's identity and location, to the BCGI central database located in Woburn, Massachusetts. The BCGI database, which had current information relating to the caller's prepaid account balance stored in its memory, would then check the caller's current prepaid account balance, determine the cost of the requested call, calculate the maximum duration for the call, and send this information back across the border to the BCGI node located in Canada. Finally, the BCGI node in Canada would forward the call, along with the information collected from the database in Massachusetts, back to Rogers' mobile telephone switching office so that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the call could be connected.

## II. *Analysis*

[1] [2] This Court cannot compel Rogers to defend a lawsuit for patent infringement unless it is subject to personal jurisdiction within this forum. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed.Cir.1994). A Federal District Court has personal jurisdiction over a non-resident defendant in a patent case only if the forum state's long-arm statute has authorized the exercise of jurisdiction and it is not otherwise inconsistent with the requirements of the Due Process Clause of the United States Constitution. *HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 (Fed.Cir.1999); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1358-59 (Fed.Cir.1998). In this case, because the Massachusetts Supreme Judicial Court has interpreted the state's long-arm statute as coextensive with the limits of due process, it is possible to "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard v. Ness,* 290 F.3d 42, 52 (1st Cir.2002) (citing *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441, 280 N.E.2d 423 (1972)).

[3] Due process requires that a defendant must have "certain minimum contacts" with the forum state in order to be subject to personal jurisdiction. *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. Furthermore, these minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Asahi Metal Indus. Co. v. California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). This ensures that the state and federal courts do not transgress the "territorial limitations" that mark the outer boundaries of their sovereignty. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Thus, before

a defendant may be haled into court to defend a lawsuit, he must have purposefully directed actions toward the forum state sufficient to satisfy a finding of minimum contacts. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026.

In addition to minimum contacts, due process also forbids a court from exercising personal jurisdiction over a defendant "under circumstances that would offend 'traditional notions of fair play and substantial justice.' " *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026 (quoting *\*24Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). In other words, even if minimum contacts exist, a court still cannot exercise jurisdiction where it would create an unreasonable burden on the defendant in light of the combined interests of the plaintiff and the forum state. *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559. This is because, in addition to recognizing the territorial limitations of the forum, due process also "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *Id.*

[4] [5] In a suit for patent infringement, the law of the United States Court of Appeals for the Federal Circuit controls the issue of personal jurisdiction. *3D Systems, Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1376-77 (Fed.Cir.1998); *Beverly Hills Fan,* 21 F.3d at 1564. The Federal Circuit has outlined a three-factor test to determine whether a district court has personal jurisdiction over a defendant in a patent case. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545-46. Under this three-factor test, personal jurisdiction depends on: "(1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *HollyAnne Corp.,* 199 F.3d at 1307-08 (citing *Akro,* 45 F.3d at 1545-46).

[6] Beginning with the first factor in the Federal Circuit's test for personal jurisdiction, this Court finds that Rogers did not purposefully direct any activities at the residents of Massachusetts or the United States. *See Akro,* 45 F.3d at 1546; *HollyAnne,* 199 F.3d at 1307. Rogers is a Canadian corporation that conducts business

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

218 F.Supp.2d 19                                                                                                        Page 6

218 F.Supp.2d 19
(Cite as: 218 F.Supp.2d 19)

exclusively in Canada with Canadian residents. Rogers does not conduct any business in the United States. Rogers has no equipment, assets, employees, distributors, or offices in the United States. Rogers has not directed any advertising or marketing at the United States, and its products and services are not available for purchase by United States residents.

Rogers' only connection with Massachusetts-and its only relevant connection with the United States-is that it contracted to purchase billing services from BCGI. BCGI, which is based in Massachusetts, helped Rogers calculate the cost and maximum duration of prepaid wireless telephone calls so that Rogers could accurately bill its clients' accounts. This arrangement worked so that every time one of Rogers' clients placed a prepaid wireless telephone call, Rogers would forward the call-along with information relating to the caller's identity and location-to a BCGI node located in Canada. The BCGI node would then read the information and send an electronic query to its central database in Woburn, Massachusetts, which would perform the necessary calculations and send a prompt response back to the node in Canada. Once the BCGI node had received the response from the central database, it would forward the information to Rogers and the call could be completed.

[7] Nothing about Rogers' arrangement with BCGI can be construed as the purposeful direction of activities at the residents of Massachusetts. *See 3D Systems*, 160 F.3d at 1380. Rogers made no attempt to solicit business in Massachusetts or to benefit from the Massachusetts market. *World-Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. 559. Although Rogers purchased services from a Massachusetts business, the mere act of purchasing from an in-state seller is usually an insufficient basis for the assertion of personal jurisdiction. *E.g., Health Communications, Inc. v. Mariner Corp.,* 860 F.2d 460, 464 (D.C.Cir.1988) (" Appellant seems to confuse a distant purchaser '4 reaching out' to a seller in the forum state with a seller *25 'reaching out' to a distant state in order to, do, business there."). Thus, even considering Rogers' arrangement with BCGI, Rogers did not purposefully direct any activities at the residents of

Massachusetts or the United States.

Having found that Rogers did not direct any activities at the residents of the forum state, it logically follows that the claim could not have arisen out of activities that were directed at the residents of the forum state. *See Akro,* 45 F.3d at 1547; *HollyAnne,* 199 F.3d at 1307. Therefore, proceeding to the third factor in the Federal Circuit's test for personal jurisdiction, this Court rules that assertion of personal jurisdiction over Rogers in this case would be unreasonable and unfair. *Id.* at 1307-08. The test for unreasonableness under Federal Circuit law is a " multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424, 429 (Fed.Cir.1996). More specifically, the interests to be balanced under this test include: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interests of the states in furthering their social policies." *Id.*

In this case, the burden that would be placed on Rogers if it were required to defend itself in this forum is severe. In *Asahi,* the Supreme Court stated that the burden of defending a suit in a foreign jurisdiction is particularly severe where the defendant is a resident of a foreign nation. 480 U.S. at 114, 107 S.Ct. 1026 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Because Rogers is a foreign corporation, in addition to the usual burden being forced to travel to the forum state, it has the additional burden of being forced "to submit its dispute ... to a foreign nation's judicial system." *Asahi,* 480 U.S. at 114, 107 S.Ct. 1026.

In contrast to the heavy burden that would be borne

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

218 F.Supp.2d 19

Page 7

218 F.Supp.2d 19
(Cite as: 218 F.Supp.2d 19)

by Rogers if it were forced to submit to the jurisdiction of this Court, the interests of the plaintiff and the forum state are slight. Plaintiff Freedom Wireless made a conscious business decision not to file for a Canadian patent. The fact that it cannot extend its United States patent rights to cover the Canadian market was a risk that was freely assumed. Furthermore, although the forum state has legitimate interests in commerce and scientific development, those interests are substantially diminished with respect to activity that occurs outside of the borders of the domestic market. *See Asahi,* 480 U.S. at 114-15, 107 S.Ct. 1026. Finally, "[b]ecause the plaintiff is not a [Massachusetts] resident, [Massachusetts'] legitimate interests in the dispute have considerably diminished." *Id.*

The Supreme Court has warned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi,* 480 U.S. at 115, 107 S.Ct. 1026 (quoting *United States v. First National City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)). In such cases, the interests of the defendant's home nation, "as well as the Federal Government's interest in its foreign relations policies, will best be served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an *unwillingness\*26 to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.*" *Asahi,* 480 U.S. at 115, 107 S.Ct. 1026 (emphasis added). Therefore, in light of the interests and policies involved, this Court finds that this is one of those "rare situation[s] in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro,* 45 F.3d at 1549.

Because Rogers does not have minimum contacts with Massachusetts or the United States to justify the exercise of jurisdiction, and because the exercise of jurisdiction under the circumstances would be unreasonable and unfair, this Court lacks personal jurisdiction over Rogers. Additionally, in

light of this Court's lack of personal jurisdiction over Rogers, any attempt by Freedom Wireless to amend its complaint to add an additional cause of action against Rogers would be futile. Thus, Freedom Wireless' motion for leave to amend its complaint and for reconsideration of the Court's April 16, 2002 Order is denied.

D.Mass.,2002.
Freedom Wireless, Inc. v. Boston Communications Group, Inc.
218 F.Supp.2d 19

Briefs and Other Related Documents (Back to top)

• 2005 WL 2454200 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Support of Their Motion for Remittitur or, in the Alternative, Motion for a New Trial with Respect to Damages (Aug. 17, 2005)
• 2005 WL 2454199 (Trial Motion, Memorandum and Affidavit) Plaintiff Freedom Wireless, Inc.'s Opposition to Defendants' Motion to Admit Documents Concerning Concealment of Csi and Cominex Materials (as Evidence of Intent to Mislead) (Aug. 12, 2005)
• 1:00cv12234 (Docket) (Oct. 30, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 SEP 30 ⁱ³ 3: 27

| | | |
|---|---|---|
| FREEDOM WIRELESS, INC., | ) | Civil Action No. 00-CV-12234-EFH |
| Plaintiff, | ) | U.S. DISTRICT COURT |
| | ) | DISTRICT OF MASS. |
| v. | ) | |
| BOSTON COMMUNICATIONS GROUP, INC., et al. | ) | |
| Defendants. | ) | |
| And Related Counterclaims | ) | |

**NOTICE OF APPEAL
TO THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

Notice is hereby given that plaintiff Freedom Wireless, Inc., above named, hereby appeal

to the United States Court of Appeals for the Federal Circuit from the Court's Order granting

Defendant Rogers Wireless' Motion for Summary Judgment for Lack of Personal Jurisdiction

and Non-infringement entered in the above entitled action on April 16, 2002; from the Court's

Order denying Plaintiff Freedom Wireless, Inc.'s Motion for Leave to File Amended Complaint

and Plaintiff Freedom Wireless, Inc.'s Motion for Reconsideration of the Court's April 16, 2002

Order, entered in the above entitled action on July 29, 2002; and from the Court's Order granting

Motion for Judgment as a Matter of Law of no willful infringement by Cingular Wireless, AT&T

Wireless, and CMT Partners, entered in the above entitled action on April 19, 2005. Judgment

was entered in this case on September 1, 2005.

Dated:  September 30, 2005                     Respectfully submitted,

                                              FREEDOM WIRELESS, INC.
                                              By their attorneys


                                              _____
                                              Paul Ware (BBO #512240)
                                              Douglas C. Doskocil (BBO #558949)
                                              Goodwin Procter, LLP
                                              Exchange Place
                                              Boston, MA  02109-2881
                                              Tel:  (617) 570-1000
                                              Fax:  (617) 523-1231

                                              A. William Urquhart
                                              Marshall M. Searcy III
                                              Erica Taggart
                                              Quinn Emanuel Urquhart Oliver & Hedges, LLP
                                              865 South Figueroa Street, 10th Floor
                                              Los Angeles, California 90017
                                              (pro hac vice)

                                              Attorneys for plaintiff Freedom Wireless, Inc.

02624/681793.2                                2

### CERTIFICATE OF SERVICE

I, Erica P. Taggart, hereby certify that on September 30, 2005, I caused a true copy of the foregoing Notice of Appeal to the United States Court of Appeals for the Federal Circuit to be served by overnight courier, by hand and facsimile to counsel of record.

Dated:  September 30, 2005

Erica P. Taggart

LIBA/1588393.1

# EXHIBIT H

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FREEDOM WIRELESS, INC.,
                            Plaintiff

v.                                          CIVIL ACTION NO.:
                                            00-12234-EFH

BOSTON COMMUNICATIONS GROUP,
INC., ET AL.,
                            Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## O R D E R

April 27, 2005

HARRINGTON, S.D.J.

The Court grants Plaintiff Freedom Wireless, Inc.'s Motion for Clarification of the Court's

Ruling on Boston Communication Group, Inc.'s Motion for Judgment as a Matter of Law with

Respect to Conduct Involving Non-Defendant Carriers.

The Court clarifies said ruling as follows:

1.    To the extent that the Court found that there was insufficient evidence for the jury

      to find a claim against BCGI with respect to conduct involving non-defendant

      carriers, the basis for that finding is that Freedom was not permitted to present

      evidence of the minutes of use and revenues that BCGI derived from its infringing

      acts with respect to the non-defendant carriers;

2.    As a consequence, the ruling is not an adjudication on the merits of any claims

      arising from conduct involving non-defendant carriers; and

3.    Freedom may pursue claims arising from conduct involving non-defendant carriers

in a separate action.

SO ORDERED.


/s/ Edward F. Harrington
EDWARD F. HARRINGTON
United States Senior District Judge

# EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., | CIVIL ACTION No. 00-CV-12234-EFH |
| Plaintiff, | |
| | **DEFENDANT BOSTON** |
| v. | **COMMUNICATIONS GROUP, INC.'S** |
| | **SECOND SUPPLEMENTAL ANSWERS TO** |
| BOSTON COMMUNICATIONS GROUP, | **PLAINTIFF FREEDOM WIRELESS, INC.'S** |
| INC., et al., | **FIRST SET OF INTERROGATORIES** |
| Defendants. | |

Defendant Boston Communications Group, Inc. ("Boston Communications") hereby

submits the following supplemental answers and objections to Plaintiff Freedom Wireless, Inc.'s

First Set Of Interrogatories To Defendant Boston Communications Group, Inc. as follows:

### General Objections

The following objections apply to each of plaintiff's interrogatories, whether or not stated

separately in response to each particular interrogatory.

    1.      Boston Communications objects to each and every interrogatory to the extent that

it seeks information that is not relevant to the subject matter of the pending action or reasonably

calculated to lead to discovery of admissible evidence.

    2.      Boston Communications objects to each and every interrogatory to the extent that

it seeks information subject to the attorney-client privilege, the work product doctrine, the joint

defense privilege, the common interest privilege, or any other privilege or protection, or

information otherwise not discoverable within the meaning of the Federal Rules of Civil

Procedure.

    3.      Boston Communications objects to plaintiff's definition "F" of "prepaid wireless

service" because it is overly broad, unduly burdensome, and vague and ambiguous in that it

CONFIDENTIAL

**EXHIBIT
PLF 1278-1**

7.     Boston Communications objects to the interrogatories on the grounds that the Interrogatories 1-16 and each discrete subpart therein collectively exceed the 25 interrogatory limit imposed by Federal Rule of Civil Procedure 33(a).

8.     Boston Communications objects to plaintiff's definition "C" of "Cellular Express" as vague and ambiguous. Boston Communications understands that plaintiff had or has an affiliated or predecessor company by that name. Boston Communications also has a subsidiary known as Cellular Express, Inc. Boston Communications interprets plaintiff's use of "Cellular Express," based on its use in the interrogatories, to refer to plaintiff's affiliated or predecessor company only.

### Specific Objections and Answers

Boston Communications' specific supplemental answers to interrogatories are subject to and without waiver of the foregoing general objections. Boston Communications also reserves the right to object on any ground to the use of any interrogatory, or answer thereto, and to revise, supplement, or clarify any of the answers set forth below:

INTERROGATORY NO. 1:

Identify all prepaid wireless services that you advertised, sold, leased, licensed, or otherwise provided from January 1, 1994 to the present, including for each the name under which you market(ed) the services, a description of the services, a description and the location of all equipment used to provide the prepaid wireless services, the identity of any other entity involved in providing the services, and the dates such services were provided.


SUPPLEMENTAL ANSWER NO. 1: Boston Communications supplements its July 15, 2002 response with the following list of markets, by carrier, where Boston Communications has offered its bcgi Prepaid Wireless Service and Prepaid Connection Service, as well as the

CONFIDENTIAL                    - 3 -

platform technology in use when the market went live, any change in the platform and the date

for that change and other information: see Chart A.

BOSTON COMMUNICATIONS GROUP, INC.

By its attorneys,

Signed as to objections,

*Vickie L Henry*

Michael B. Keating (BBO # 263360)
Philip C. Swain (BBO # 544632)
Vickie L. Henry (BBO # 632367)
John E. Nilsson (BBO # 644085)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110
(617) 832-1000

Dated: July 18, 2003

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other plaintiff
party by (hand) (mail) on ___July 18, 2003___.
*Vickie L Henry*

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document
was served upon the attorney of record for each other defendant
party by (hand) or email on ___July 18, 2003___.
*Vickie L Henry*

**CONFIDENTIAL**

- 4 -

**EXHIBIT**
**PLF 1278-3**

**Chart A**

**Confidential**

**EXHIBIT**
**PLF 1278-4**

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| SNET - Connecticut | 14001 | MF | May-96 | Apr-01 | | | |
| SNET - Providence/New Bedford | 14002 | MF | Jul-96 | Apr-01 | | | |
| Bell Atlantic Mobile Southeast Region | 16004 | MF | Sep-96 | | SS7 | Jun-02 | |
| Bell Atlantic Mobile Washington D.C. | 16001 | MF | Sep-96 | | SS7 | | |
| SBC Wireless - Cellular One Boston | 11001 | MF | Aug/Sep-96 | Apr-01 | | | |
| SBC Wireless - Dallas | 11004 | MF | Oct-96 | Dec-00 | | | |
| SBC Wireless - St. Louis | 11008 | MF | Oct-96 | Mar-01 | | | |
| SBC Wireless - Upstate New York | 11009 | MF | Nov-96 | Mar-01 | | | |
| AirTouch Sacramento, CA | 15012 | MF | Dec-96 | | SS7 | Oct-01 | |
| Los Angeles Cellular California | 13001 | MF | Dec-96 | Oct-01 | | | |
| BellSouth Mobility Miami, FL | 10023 | MF | Dec-96 | | Pre-IN | Apr-02 | |
| SBC Wireless - Central Illinois | 11003 | MF | Nov/Dec-96 | Mar-01 | | | |
| SBC Wireless - Kansas City | 11005 | MF | Dec-96 | Mar-01 | | | |
| SBC Wireless - Oklahoma | 11007 | MF | Nov/Dec-96 | Nov-00 | | | |
| SBC Wireless - San Antonio | 11011 | MF | Dec-96 | Jan-01 | | | |
| WESTERN WIRELESS | 17007 | SS7 | Dec-96 | Oct-99 | | | |
| SBC Wireless - Cellular One Washington | 11002 | MF | Jan/Feb-97 | Apr-01 | SS7 | May-00 | |
| SBC Wireless - West Texas | 11010 | MF | Feb/Mar-97 | Feb-01 | | | |
| BellSouth Mobility Birmingham, AL | 10005 | MF | Mar-97 | | Pre-IN | Apr-02 | |
| AirTouch Atlanta | 15001 | MF | Apr-97 | | SS7 | Jun-00 | |
| AirTouch Nevada | 15030 | MF | Apr-97 | | SS7 | Sep-01 | |
| BellSouth Mobility Atlanta, GA | 10003 | MF | Apr-97 | | Pre-IN | Apr-02 | |
| BellSouth Mobility Huntsville, AL | 10008 | MF | Apr-97 | | Pre-IN | Apr-02 | |
| BellSouth Mobility Lexington, KY | 10012 | MF | Apr-97 | | Pre-IN | Jun-02 | |
| BellSouth Mobility Louisville, KY | 10013 | MF | Apr-97 | | Pre-IN | Jun-02 | |
| SBC Wireless - Little Rock | 11006 | MF | Apr-97 | Dec-00 | | | |
| Frontier Cellular | 18001 | MF | May-97 | | SS7 | Jun-02 | |
| BellSouth Mobility Chattanooga, TN | 10006 | MF | May-97 | | Pre-IN | Apr-02 | |
| BellSouth Mobility Memphis, TN | 10016 | MF | May-97 | | Pre-IN | Apr-02 | |
| BellSouth Mobility Nashville, TN | 10017 | MF | May-97 | | Pre-IN | May-02 | |
| AirTouch Detroit | 15007 | MF | Jun-97 | | SS7 | May-02 | |
| AirTouch San Diego, CA | 15015 | MF | Jun-97 | | SS7 | May-02 | |

EXHIBIT
PLF 1278-5

Confidential

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| AirTouch Vector 10 Denver, CO | 15031 | MF | Jun-97 | | SS7 | May-02 | |
| AirTouch Vector 10 Minneapolis, MN | 15032 | MF | Jun-97 | | SS7 | Apr-01 | |
| AirTouch Vector 10 Omaha, NE | 15033 | MF | Jun-97 | | SS7 | Apr-01 | |
| AirTouch Vector 10 Portland, OR | 15034 | MF | Jun-97 | | SS7 | May-00 | |
| AirTouch Vector 10 Salt Lake City, Utah | 15035 | MF | Jun-97 | | SS7 | May-00 | |
| AirTouch Vector 10 Seattle, WA | 15022 | MF | Jun-97 | | SS7 | Apr-02 | |
| BellSouth Mobility Baton Rouge, LA | 10004 | MF | Jun-97 | | Pre-IN | May-02 | |
| BellSouth Mobility Lafayette, LA | 10011 | MF | Jun-97 | | Pre-IN | Jan-02 | |
| BellSouth Mobility New Orleans, LA | 10018 | MF | Jun-97 | | Pre-IN | Apr-02 | |
| AirTouch Los Angeles, CA | 15008 | MF | Jul-97 | | SS7 | May-01 | |
| BellSouth Mobility Daytona, FL | 10007 | MF | Jul-97 | | Pre-IN | Nov-02 | |
| BellSouth Mobility Melbourne, FL | 10015 | MF | Jul-97 | | Pre-IN | Nov-02 | |
| BellSouth Mobility Orlando, FL | 10019 | MF | Jul-97 | | Pre-IN | Nov-02 | |
| BellSouth Mobility Jacksonville, FL | 10009 | MF | Aug-97 | | Pre-IN | Jan-02 | |
| Cellular One SF Bay Area | 22001 | MF | Sep-97 | Oct-01 | | | |
| BellSouth Mobility Indianapolis, IN | 10010 | MF | Sep-97 | | Pre-IN | Aug-02 | |
| AirTouch Cincinnati | 15004 | MF | Oct-97 | | SS7 | Jun-00 | |
| AirTouch Cleveland | 15005 | MF | Oct-97 | | SS7 | Jun-00 | |
| AirTouch Columbus | 15006 | MF | Oct-97 | | SS7 | Jun-00 | |
| AirTouch Phoenix, AZ | 15011 | MF | Oct-97 | | SS7 | Jun-00 | |
| Bakersfield, CA | 10002 | MF | Oct-97 | Oct-01 | | | |
| BellSouth Mobility Macon, GA | 10014 | MF | Oct-97 | | Pre-IN | Apr-02 | |
| BellSouth Mobility Jackson, MS | 10020 | MF | Oct-97 | | Pre-IN | Feb-02 | |
| BellSouth Mobility Acadiana, LA | 10021 | MF | Oct-97 | | Pre-IN | Jan-02 | |
| BellSouth Mobility Hammond, LA | 10022 | MF | Oct-97 | | Pre-IN | Apr-02 | |
| AirTouch Albuquerque, NM | 15017 | MF | Nov-97 | | SS7 | May-02 | |
| AWS Alaska | 19003 | MF | Nov-97 | Jun-01 | | | |
| AWS Colorado | 19005 | MF | Nov-97 | Mar-01 | | | |
| AWS Idaho | 19007 | MF | Nov-97 | Jun-01 | | | |
| AWS Nevada | 19008 | MF | Nov-97 | Jun-01 | | | |
| AWS Oregon | 19009 | MF | Nov-97 | Jul-01 | | | |
| AWS South Coast | 19011 | MF | Nov-97 | Apr-01 | | | |

EXHIBIT
PLF 1278-6

Confidential

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| AWS Utah | 19012 | MF | Nov-97 | Apr-01 | | | |
| AWS Washington | 19013 | MF | Nov-97 | Apr-01 | | | |
| Bell Atlantic Mobile New York Area | 16002 | MF | Nov-97 | | SS7 | Jun-02 | |
| Bell Atlantic Mobile Philadelphia Area | 16003 | MF | Nov-97 | | SS7 | Jun-02 | |
| AWS Minneapolis | 19015 | MF | Dec-97 | Oct-01 | | | |
| AWS New York/New Jersey | 19020 | MF | Dec-97 | Jul-01 | | | |
| AWS Pittsburgh | 19021 | MF | Dec-97 | Dec-00 | | | |
| AWS Sacramento Valley | 19010 | MF | Dec-97 | Apr-01 | | | |
| BellSouth Mobility Mobile, AL | 10027 | MF | Dec-97 | | Pre-IN | May-02 | |
| Rogers ATT Ontario | 21001 | MF | Dec-97 | Mar-01 | | | |
| AWS Hawaii | 19006 | MF | Jan-98 | Oct-01 | | | |
| AWS Southeast Miami, FL | 19024 | MF | May-98 | Sep-00 | | | |
| Bell Atlantic Mobile Pittsburgh Area | 16006 | MF | May-98 | | SS7 | Aug-01 | |
| Rogers ATT Alberta | 21002 | MF | May-98 | Mar-01 | | | |
| Rogers ATT British Columbia | 21005 | MF | May-98 | Mar-01 | | | |
| Rogers ATT Quebec | 21004 | MF | May-98 | Mar-01 | | | |
| Aliant | 23001 | MF | Jun-98 | Mar-00 | | | |
| BellSouth Mobility DCS | 10028 | MF | Jun-98 | Jan-01 | | | |
| Dobson Cellular Maryland Market | 24002 | MF | Jul-98 | Jul-02 | SS7 | Jul-02 | Became PPC Jul-02 |
| Rogers ATT Atlantic Region | 21007 | MF | Jul-98 | Mar-01 | | | |
| Rogers ATT Midwest Region | 21006 | MF | Jul-98 | Mar-01 | | | |
| SOUTHWESTCO            (1) | 12004 | MF | Jul-98 | Mar-00 | | | |
| Bell Atlantic Mobile New England Region | 16007 | MF | Aug-98 | | SS7 | Jul-02 | |
| Rogers ATT National | 21003 | MF | Oct-98 | Mar-01 | | | |
| Bellsouth Evansville, IN | 10024 | MF | Oct-98 | | to Pre-IN | Jun-02 | |
| Bellsouth Allen, KY | 10029 | MF | Oct-98 | | to Pre-IN | Jul-02 | |
| Dobson Leavenworth Cellular | 24003 | MF | Nov-98 | Jul-02 | SS7 | Jul-02 | Became PPC Jul-02 |
| BellSouth Mobility West Florida PCS | 10025 | MF | Dec-98 | | Pre-IN | Apr-02 | |
| BellSouth Mobility PCS Montgomery | 10030 | MF | Dec-98 | | Pre-IN | May-02 | |
| Dobson Cellular Oklahoma | 24004 | MF | Dec-98 | Jul-02 | SS7 | Jul-02 | Became PPC Jul-02 |
| Honolulu | 10031 | MF | Feb-99 | May-00 | | | |
| AWS Jacksonville | 19028 | MF | Aug-99 | Jan-01 | | | |

EXHIBIT
PLF 1278-7

Confidential

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| AWS Orlando | 19027 | MF | Aug-99 | Jan-01 | | | |
| AWS Tampa | 19026 | MF | Aug-99 | Jan-01 | | | |
| BellSouth Mobility Houston, TX | 10040 | MF | Aug-99 | | Pre-IN | May-02 | |
| Cincinnati Bell Wireless | 19030 | SS7* | Oct-99 | | Pre-IN | Oct-02 | "Launched MF; changed to SS7 w/in week |
| BellSouth North Florida PCS | 10052 | MF | Jan-00 | | Pre-IN | Nov-02 | |
| BellSouth Mississippi PCS | 10054 | MF | Feb-00 | | Pre-IN | Feb-02 | |
| BellSouth Mobility Alexandria | 10060 | MF | Feb-00 | | Pre-IN | Jan-02 | |
| BellSouth Mobility Houma | 10059 | MF | Feb-00 | | Pre-IN | Jan-02 | |
| BellSouth Mobility Lake Charles | 10055 | MF | Feb-00 | | Pre-IN | Jan-02 | |
| BellSouth Mobility Monroe | 10061 | MF | Feb-00 | | Pre-IN | Jan-02 | |
| BellSouth Mobility Shreveport | 10062 | MF | Feb-00 | | Pre-IN | Jan-02 | |
| GTE - Bakersfield | 43008 | MF | Oct-00 | | SS7 | Jun-02 | |
| GTE - Birmingham | 43013 | MF | Oct-00 | | SS7 | Feb-02 | |
| GTE - Charleston | 43019 | MF | Oct-00 | | SS7 | Apr-02 | |
| GTE - Evansville | 43016 | MF | Oct-00 | | SS7 | by 10-01 | |
| GTE - Fresno | 43007 | MF | Oct-00 | | SS7 | Oct-01 | |
| GTE - Greensboro | 43020 | MF | Oct-00 | | SS7 | Apr-02 | |
| GTE - Houston | 43005 | MF | Oct-00 | | SS7 | by 8-01 | |
| GTE - Huntsville | 43010 | MF | Oct-00 | | SS7 | Feb-02 | |
| GTE - Indianapolis | 43003 | MF | Oct-00 | | SS7 | May-01 | |
| GTE - Kansas City | 43012 | MF | Oct-00 | | SS7 | Aug-01 | |
| GTE - Knoxville | 43014 | MF | Oct-00 | | SS7 | Feb-02 | |
| GTE - Las Vegas | 43011 | MF | Oct-00 | | SS7 | Jan-01 | |
| GTE - Louisville | 43015 | MF | Oct-00 | | SS7 | Feb-02 | |
| GTE - Memphis | 43001 | MF | Oct-00 | | SS7 | Feb-02 | |
| GTE - Nashville | 43009 | MF | Oct-00 | | SS7 | Sep-01 | |
| GTE - Newport News | 43021 | MF | Oct-00 | | SS7 | by 10-01 | |
| GTE - Raleigh | 43018 | MF | Oct-00 | | SS7 | Apr-02 | |
| GTE - Richmond | 43022 | MF | Oct-00 | | SS7 | by 10-01 | |
| GTE - San Francisco | 43006 | MF | Oct-00 | | SS7 | Oct-01 | |

EXHIBIT PLF 1278-8

Confidential

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| GTE - St. Louis | 43004 | MF | Oct-00 | | SS7 | by 8-01 | |
| GTE Chicago | 43002 | MF | Oct-00 | | SS7 | by 8-01 | |
| Primeco - Austin | 42007 | MF | Oct-00 | | SS7 | Sep-01 | |
| Primeco - Dallas | 42005 | MF | Oct-00 | | SS7 | by 9-01 | |
| Primeco - Jacksonville | 42001 | MF | Oct-00 | | SS7 | Sep-01 | |
| Primeco - Miami - Jupiter Switch | 42004 | MF | Oct-00 | | SS7 | Sep-01 | Feb-03 Pre-IN |
| Primeco - Milwaukee | 42009 | MF | Oct-00 | | SS7 | Jul-01 | |
| Primeco - New Orleans | 42008 | MF | Oct-00 | | SS7 | Sep-01 | |
| Primeco - Orlando | 42002 | MF | Oct-00 | | SS7 | Sep-01 | |
| Primeco - San Antonio | 42006 | MF | Oct-00 | | SS7 | Sep-01 | |
| Primeco - Tampa | 42003 | MF | Oct-00 | | SS7 | Sep-01 | |
| Bluegrass Cellular | 60015 | MF | Oct-00 | | SS7 | Oct-02 | PPC |
| Bravo | 60020 | MF | Oct-00 | Oct-01 | | Sep-01 | PPC |
| C1 Arizona | 60010 | MF | Oct-00 | | | | PPC; Migrating to SS7 |
| Price Communications Wireless | 60005 | MF | Oct-00 | | SS7 | Nov-02 | Verizon purchase/PPC to PPW |
| Thumb Cellular | 60040 | MF | Dec-00 | | | | PPC; Migrating to SS7 |
| Great Lakes of Iowa | 60030 | MF | Jan-01 | | | | PPC |
| UBET Wireless | 60025 | MF | Jan-01 | | | | PPC |
| Illinois Valley Cellular | 60045 | MF | Mar-01 | | SS7 | Oct-02 | PPC; Migrating to SS7 |
| GTE - Danville | 43021 | MF | May-01 | | SS7 | Sep-01 | |
| Alabama Wireless | 60055 | MF | May-01 | | | | PPC |
| GTE El Paso | 43017 | MF | May-01 | | SS7 | Apr-02 | |
| Verizon Helena | 15035 | MF | May-01 | | SS7 | Apr-02 | |
| Verizon Pueblo | 15031 | MF | May-01 | | SS7 | Apr-02 | |
| Verizon Rock Springs | 15031 | MF | May-01 | | SS7 | Apr-02 | |
| Cingular Alexandria | 10060 | MF | May-01 | ther Cingular mar| | Pre-IN | Jan-02 | |
| Cingular Houma | 10059 | MF | May-01 | ther Cingular mark | Pre-IN | Jan-02 | |
| Cingular Lake Charles | 10055 | MF | May-01 | ther Cingular mark | Pre-IN | Jan-02 | |

Confidential

EXHIBIT
PLF 1278-9

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| Cingular Monroe | 10061 | MF | May-01 | ther Cingular mark | Pre-IN | Jan-02 | |
| Cingular Shreveport | 10062 | MF | May-01 | | Pre-IN | Jan-02 | |
| Nebraska Wireless | 60050 | SS7 | Jun-01 | May-03 | | | PPC using modified SS7 |
| South Canaan | 60065 | MF | Jul-01 | | | | PPC |
| MTA Wireless | 60060 | MF | Jul-01 | | | | PPC |
| First Cellular of Southern Illinois | 60070 | MF | Aug-01 | | | | |
| Brazos Cellular | 60035 | MF | Oct-01 | | | | PPC |
| Cellular One of Danville | 60075 | SS7 | Nov-01 | | | | PPC |
| Farmers Cellular | 60090 | SS7 | Mar-02 | | | | PPC |
| Verizon Hawaii | 43025 | MF | Feb-02 | | SS7 | May-02 | |
| Dobson-Richmond | 60104 | SS7 | Jun-02 | | | | PPC |
| Dobson-Morgantown | 60106 | SS7 | Jun-02 | | | | PPC |
| Dobson-Cambridge | 60105 | SS7 | Jun-02 | | | | PPC |
| Cingular Tulsa, OK | 10114 | Pre-In | Jul-02 | | | | |
| Cingular Washington/Baltimore | 10110 | Pre-In | Jul-02 | | | | |
| Dobson-Summit | 60107 | SS7 | Jul-02 | | | | PPC |
| Dobson-Youngstown | 60108 | SS7 | Jul-02 | | | | PPC |
| Dobson-Wausau | 60117 | SS7 | Jul-02 | | | | PPC |
| Dobson-Duluth | 60113 | SS7 | Jul-02 | | | | PPC |
| Dobson-Baxter | 60114 | SS7 | Jul-02 | | | | PPC |
| Dobson-Tulsa | 60119 | SS7 | Jul-02 | | | | PPC |
| Dobson-Cheyenne | 60120 | SS7 | Jul-02 | | | | PPC |
| Dobson-Frederick | 60101 | SS7 | Jul-02 | | | | PPC |
| Dobson-Easton | 60102 | SS7 | Jul-02 | | | | PPC |
| Dobson-Leavenworth | 60118 | SS7 | Jul-02 | | | | PPC |
| Cingular Dallas | 10117 | Pre-In | Aug-02 | | | | |
| Cingular Little Rock | 10116 | Pre-In | Aug-02 | | | | |
| Cingular Philly | 10111 | Pre-In | Aug-02 | | | | |
| Cingular St. Louis | 10123 | Pre-In | Aug-02 | | | | |
| Mountain Cellular | 60080 | SS7 | Aug-02 | | | | PPC |
| Nextel (Boost) | 50000 | Pre-In | Aug-02 | | | | |

Confidential

EXHIBIT
PLF 1278-10

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| Nextel Roaming East | 50500 | Pre-In | Aug-02 | | | | |
| Nextel Roaming CST | 50501 | Pre-In | Aug-02 | | | | |
| Nextel Roaming MST | 50502 | Pre-In | Aug-02 | | | | |
| Nextel Roaming PST | 50503 | Pre-In | Aug-02 | | | | |
| Nextel Roaming Hawaii | 50504 | Pre-In | Aug-02 | | | | |
| Mid-Missouri | 60095 | SS7 | Aug-02 | | | | PPC |
| ALLTEL Jonesboro | 20001 | Pre-In | Sep-02 | | | | |
| ALLTEL Little Rock | 20002 | Pre-In | Sep-02 | | | | |
| ALLTEL Fayetteville/Ft. Smith | 20003 | Pre-In | Sep-02 | | | | |
| ALLTEL El Paso | 20004 | Pre-In | Sep-02 | | | | |
| ALLTEL Tyler/Longview | 20005 | Pre-In | Sep-02 | | | | |
| ALLTEL Killeen/Temple/ Waco | 20006 | Pre-In | Sep-02 | | | | |
| ALLTEL Louisiana | 20008 | Pre-In | Sep-02 | | | | |
| ALLTEL Springfield | 20011 | Pre-In | Sep-02 | | | | |
| ALLTEL Kansas | 20012 | Pre-In | Sep-02 | | | | |
| ALLTEL Grand Island | 20013 | Pre-In | Sep-02 | | | | |
| ALLTEL Omaha | 20014 | Pre-In | Sep-02 | | | | |
| ALLTEL Panama City | 20021 | Pre-In | Sep-02 | | | | |
| ALLTEL Montgomery | 20028 | Pre-In | Sep-02 | | | | |
| ALLTEL Tri Cities | 20046 | Pre-In | Sep-02 | | | | |
| ALLTEL Columbia | 20015 | Pre-In | Sep-02 | | | | |
| ALLTEL Charleston | 20016 | Pre-In | Sep-02 | | | | |
| ALLTEL Greenville SC | 20017 | Pre-In | Sep-02 | | | | |
| ALLTEL Jacksonville-PCS | 20018 | Pre-In | Sep-02 | | | | |
| ALLTEL Gainesville | 20019 | Pre-In | Sep-02 | | | | |
| ALLTEL Tallahassee | 20020 | Pre-In | Sep-02 | | | | |
| ALLTEL Mobile/Pensacola | 20022 | Pre-In | Sep-02 | | | | |
| ALLTEL Tampa | 20023 | Pre-In | Sep-02 | | | | |
| ALLTEL Ft. Myers | 20024 | Pre-In | Sep-02 | | | | |
| ALLTEL Augusta | 20025 | Pre-In | Sep-02 | | | | |
| ALLTEL Savannah | 20026 | Pre-In | Sep-02 | | | | |
| ALLTEL Albany | 20027 | Pre-In | Sep-02 | | | | |

EXHIBIT
PLF 1278-11

Confidential

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| ALLTEL Charlotte | 20029 | Pre-In | Sep-02 | | | | |
| ALLTEL Fayetteville NC | 20030 | Pre-In | Sep-02 | | | | |
| ALLTEL Raleigh | 20031 | Pre-In | Sep-02 | | | | |
| ALLTEL Wilmington | 20032 | Pre-In | Sep-02 | | | | |
| ALLTEL Greensboro | 20033 | Pre-In | Sep-02 | | | | |
| ALLTEL Hickory | 20034 | Pre-In | Sep-02 | | | | |
| ALLTEL Rocky Mount | 20035 | Pre-In | Sep-02 | | | | |
| ALLTEL Clearwater/St. Petersburg | 20036 | Pre-In | Sep-02 | | | | |
| ALLTEL Cleveland | 20037 | Pre-In | Sep-02 | | | | |
| ALLTEL Akron/Canton | 20038 | Pre-In | Sep-02 | | | | |
| ALLTEL Toledo/Marion | 20039 | Pre-In | Sep-02 | | | | |
| ALLTEL Youngstown | 20040 | Pre-In | Sep-02 | | | | |
| ALLTEL Mansfield | 20041 | Pre-In | Sep-02 | | | | |
| ALLTEL St. Clairesville | 20042 | Pre-In | Sep-02 | | | | |
| ALLTEL Richmond | 20043 | Pre-In | Sep-02 | | | | |
| ALLTEL Charlottesville | 20044 | Pre-In | Sep-02 | | | | |
| ALLTEL Norfolk | 20045 | Pre-In | Sep-02 | | | | |
| ALLTEL Albuquerque | 20007 | Pre-In | Sep-02 | | | | |
| ALLTEL Phoenix | 20009 | Pre-In | Sep-02 | | | | |
| ALLTEL Tucson | 20010 | Pre-In | Sep-02 | | | | |
| Appalachian Wireless | 60150 | SS7 | Sep-02 | | | | PPC |
| Dobson-Cara | 60116 | SS7 | Sep-02 | | | | PPC |
| Dobson-Manchester | 60103 | SS7 | Sep-02 | | | | PPC |
| Cingular Abilene | 10118 | Pre-In | Sep-02 | | | | |
| Cingular Albany | 10127 | Pre-In | Sep-02 | | | | |
| Cingular Amarillo | 10119 | Pre-In | Sep-02 | | | | |
| Cingular Austin | 10122 | Pre-In | Sep-02 | | | | |
| Cingular Chicago | 10100 | Pre-In | Sep-02 | | | | |
| Cingular Chicago (New Berlin) | 10100 | Pre-In | Sep-02 | | | | |
| Cingular Buffalo (New Castle) | 10107 | Pre-In | Sep-02 | | | | |
| Cingular Chicago (W. Chicago) | 10100 | Pre-In | Sep-02 | | | | |
| Cingular Kansas City | 10125 | Pre-In | Sep-02 | | | | |

Confidential

EXHIBIT
PLF 1278-12

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| Cingular Lubbock | 10115 | Pre-In | Sep-02 | | | | |
| Cingular Midland | 10120 | Pre-In | Sep-02 | | | | |
| Cingular Oklahoma City, OK | 10124 | Pre-In | Sep-02 | | | | |
| Cingular Rochester | 10108 | Pre-In | Sep-02 | | | | |
| Cingular San Antonio | 10122 | Pre-In | Sep-02 | | | | |
| Cingular South Texas | 10121 | Pre-In | Sep-02 | | | | |
| Cingular Springfield | 10101 | Pre-In | Sep-02 | | | | |
| Cingular Syracuse (Partoun Albany) | 10109 | Pre-In | Sep-02 | | | | |
| Nextel CA | 50000 | Pre-In | Sep-02 | | | | |
| Cingular Boston | 10113 | Pre-In | Oct-02 | | | | |
| Cingular Conn. (Meridian, New Haven) | 10112 | Pre-In | Oct-02 | | | | |
| Cingular Cleveland, OH | 10105 | Pre-In | Nov-02 | | | | |
| Cingular Columbus, OH | 10103 | Pre-In | Nov-02 | | | | |
| Cingular Cincinnati | 10104 | Pre-In | Nov-02 | | | | |
| Cingular Detroit | 10102 | Pre-In | Nov-02 | | | | |
| Cingular Madison | 10126 | Pre-In | Nov-02 | | | | |
| Cingular Milwaukee | 10106 | Pre-In | Nov-02 | | | | |
| Centennial-Fort Wayne | 60160 | SS7 | Dec-02 | | | | PPC |
| Centennial-Kalamazoo | 60165 | SS7 | Dec-02 | | | | PPC |
| Centennial-South Bend | 60170 | SS7 | Dec-02 | | | | PPC |
| Centennial-Central Mich. | 60155 | SS7 | Dec-02 | | | | PPC |
| Centennial-Alexandria | 60175 | SS7 | Dec-02 | | | | PPC |
| Centennial-Lafayette | 60185 | SS7 | Dec-02 | | | | PPC |
| Centennial-Beaumont | 60180 | SS7 | Dec-02 | | | | PPC |
| Centennial-Lake Charles | 60190 | SS7 | Dec-02 | | | | PPC |
| BTC Mobility | 60085 | MF | Jan-03 | | | | PPC |
| Dobson-Traverse City | 60115 | SS7 | Jan-03 | | | | PPC |
| Dobson-Brownwood | 60110 | SS7 | Mar-03 | | | | PPC |
| Dobson-Kingman | 60111 | SS7 | Mar-03 | | | | PPC |
| MobileTel | 60135 | SS7 | Mar-03 | | | | PPC |
| Dobson-Bastrop | 60109 | SS7 | Mar-03 | | | | PPC |

Confidential

PLF' 1278-13
EXHIBIT

| MARKET FULL NAME (1) | CARRIER CODE | Technology | Market Start Date | Market Stop Date (if any) | Technology Change (if any) | Change Date | Comments |
|---|---|---|---|---|---|---|---|
| (1) The market names that Boston Communications adopted internally often have not been amended to reflect subsequent corporate activity by the wireless carriers, including mergers, partnerships, or consolidations. For example, Boston Communications did not change the name of markets from AirTouch to Verizon when AirTouch began participating in Cellco Partnership. | | | | | | | |

EXHIBIT
PLF 1278-14

Confidential

## Jurat

The above answers to interrogatories were prepared with the assistance of agents or employees of Boston Communications Group, Inc. ("Boston Communications"). The answers are based upon and therefore necessarily limited by the records and information still in existence, currently recollected, thus far discovered in the course of Boston Communications' investigation of this matter, and currently available to Boston Communications. Subject to the limitations set forth herein, said answers are true and correct to the best of my present knowledge, recollection, information, and belief. I certify under penalty of perjury on behalf of Boston Communications that the foregoing is true and correct. Executed on July 16, 2003.

William Wessman

CONFIDENTIAL                                      - 5 -

**EXHIBIT**
**PLF 1278-15**

# EXHIBIT J

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-11062-EFH |
| v. ) | |
| ) | |
| BOSTON COMMUNICATIONS GROUP, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## JOINT STIPULATION TO FILE SECOND AMENDED COMPLAINT

WHEREAS on May 20, 2005, plaintiff Freedom Wireless ("Freedom")

filed the instant action in the United States District Court for the District of

Massachusetts Case No. 05-11062-EFH;

WHEREAS, on September 16, 2005, Freedom filed and served a First

Amended Complaint to include additional defendants who entered into or are subject to

carrier agreements with Boston Communications Group, Inc. ("BCGI") in the allegations

of patent infringement;

WHEREAS, the names of the several companies in the First Amended complaint did not correctly identify the corporate entity that contracted or are subject to contracts with BCGI to offer prepaid wireless services;

WHEREAS, the Second Amended Complaint reflects changes to correct the names of several companies who are corporate entities that have contracted with or are subject to contracts with BCGI to offer prepaid wireless services;

WHEREAS, the parties below affected by this amended complaint, by being added to or dismissed from the First Amended Complaint, agree and stipulate through their respective attorneys of record to this amended complaint;

WHEREAS, the parties below agree that their stipulation to this amendment will not act as a waiver of any challenges to the Court's jurisdiction;

IT IS HEREBY STIPULATED by and between the parties hereto through their respective attorneys of record, and subject to this Court's approval, that the Second Amended Complaint, an original copy of which is attached hereto as Exhibit 1, shall be deemed filed.

IT IS FURTHER STIPULATED, that the following corporate entities identified in the First Amended Complaint shall be dismissed without prejudice: Dobson Communications Corporation, Illinois Valley Cellular RSA 2 Inc., South Canaan Telephone Company, Matanuska Telephone Association, First Cellular of Southern Illinois, Brazos Cellular, Inc., Cellular One of East Central Illinois, Farmers Cellular, Mid-Missouri Telephone Company, and Bauce Communications of Beaumont, Inc.

IT IS FURTHER STIPULATED, that this second amended complaint

supersedes the first amended complaint and will be answered on or before Monday,

December 19, 2005.

IT IS SO STIPULATED.

Dated:  December 6, 2005                Respectfully submitted,

                                        FREEDOM WIRELESS, INC.
                                        By their attorneys


                                            /s/ Paul F. Ware
                                        Paul F. Ware, Jr., P.C. (BBO #516240)
                                        Douglas C. Doskocil (BBO #558949)
                                        Goodwin Procter, LLP
                                        Exchange Place
                                        Boston, MA  02109-2881
                                        Tel:  (617) 570-1000
                                        Fax:  (617) 523-1231

                                        Marshall M. Searcy III
                                        Erica P. Taggart
                                        Quinn Emanuel Urquhart Oliver &
                                        Hedges, LLP
                                        865 South Figueroa Street, 10th Floor
                                        Los Angeles, CA  90017
                                        Tel:  (213) 443-3000
                                        Fax:  (213) 443-3100

                                        Attorneys for Plaintiff Freedom Wireless, Inc.

3

Dated:  December 6, 2005

        /s/ Timothy Perry
Timothy J. Perry,
Preti Flaherty Beliveau Pachios & Haley LLP
10 High Street, 5th Floor
Boston, MA 02110
Tel: (617) 226-3800
Fax: (617) 226-3801

Attorney for Defendant South Canaan Cellular
Communications Company and former
defendant South Canaan Telephone Company

4

Date: December 6, 2005

                                         __/s/ Dean Bostock__
                                         Patrick J. Sharkey (BBO #454820)
Dean G. Bostock (BBO #549747)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Facsimile:  (617) 542-2241

Attorneys for Defendants
Alltel Corporation
Bluegrass Cellular, Inc.
Boston Communications Group, Inc.
Cellular Properties, Inc. (d/b/a Cellular One of
East Central Illinois)
Centennial Cellular Operating Co. LLC
Cincinnati Bell Wireless LLC
Dobson Cellular Systems, Inc.
East Kentucky Network LLC (d/b/a
Appalachian Wireless)
Farmers Cellular Telephone, Inc. (d/b/a Farmers
Cellular)
Great Lakes of Iowa, Inc.
Marseilles Cellular, Inc. (d/b/a Illinois Valley
Cellular)
Mid-Missouri Cellular LLP
MTA Communications (d/b/a MTA Wireless)
Southern Illinois RSA Partnership (d/b/a First
Cellular of Southern Illinois)
South #5 RSA Limited Partnership (d/b/a
Brazos Cellular Communications, Ltd.)
Thumb Cellular
Uintah Basin Electronic Telecommunications
(d/b/a UBET Wireless)

LIT 1552696v.1

5

# EXHIBIT K

## Erica Taggart

| | |
|---|---|
| **From:** | LADOMAIN.GWIA.LLam@kvn.com |
| **Sent:** | Monday, November 21, 2005 11:24 AM |
| **To:** | Jeanine Zalduendo; Erica Taggart |
| **Cc:** | dbostock@mintz.com |
| **Subject:** | Freedom Wireless II |

**Attachments:** Part.001; carriers_list.pdf; Mime.822

  

Part.001 (2 KB)  carriers_list.pdf (12    Mime.822 (20 KB)
KB)

Jeanine, Erica:

Attached is a list of the 15 carriers represented by KVN and on behalf of whom we agree to
accept service and will respond to Freedom's amended complaint.
Per your request, in each instance we've provided the proper name of the carrier who
contracts with BCGI (Freedom's current complaint mis-names some corporate entities and/or
mis-targets parent companies who don't contract with BCGI).

You're correct that the time to respond to any amended complaint is within 10 days after
service of the amended complaint or within the response time for the original complaint,
whichever is longer.  Thus, we won't need to file any stipulated extension assuming you
get Freedom's amended complaint filed this week.  Thanks.

 <<carriers_list.pdf>>
Leo L. Lam
Keker & Van Nest
710 Sansome Street
San Francisco, California 94111
(415) 391-5400
fax:  (415) 397-7188

1

*Freedom Wireless v. BCGI et al.* (D. Mass. Civil Action No. 05-11062-EFH)

| | Carriers represented by Keker & Van Nest |
|---|---|
| 1 | Centennial Cellular Operating Co. LLC (subsidiary of Bauce Communications of Beaumont, Inc. d/b/a Centennial Communications Corp.) |
| 2 | Bluegrass Cellular, Inc. |
| 3 | Cellular Properties, Inc. d/b/a Cellular One of East Central Illinois |
| 4 | Cincinnati Bell Wireless LLC |
| 5 | Dobson Cellular Systems, Inc. (subsidiary of Dobson Communications Corp.) |
| 6 | East Kentucky Network LLC d/b/a Appalachian Wireless |
| 7 | Farmers Cellular Telephone, Inc. d/b/a Farmers Wireless |
| 8 | Southern Illinois RSA Partnership d/b/a First Cellular of Southern Illinois |
| 9 | Great Lakes of Iowa, Inc. |
| 10 | Marseilles Cellular, Inc. d/b/a Illinois Valley Cellular |
| 11 | MTA Communications d/b/a MTA Wireless (subsidiary of Matanuska Telephone Association) |
| 12 | Mid-Missouri Cellular LLP |
| 13 | South #5 RSA Limited Partnership d/b/a Brazos Cellular Communications, Ltd. |
| 14 | Thumb Cellular LLC |
| 15 | Uintah Basin Electronic Telecommunications d/b/a UBET Wireless |

# EXHIBIT L



# Prepaid Connection Service Agreement

Between

**Cellular Express, Inc. d/b/a Boston Communications Group**

and

**Marseilles Cellular, Inc. d/b/a Illinois Valley Cellular**

BCG 25596
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT
PLF 1007-1**

# TABLE OF CONTENTS

1. INTRODUCTION ........................................................................................ 1

2. SERVICES PROVIDED ............................................................................. 2

3. OBLIGATIONS OF BCGI .......................................................................... 2

4. OBLIGATIONS OF CARRIER ................................................................... 2

5. CHARGES ............................................................................................... 4

6. TERM AND TERMINATION .....................................................................

7. CUSTOM ALTERATIONS ......................................................................... 4

8. LIABILITY OF BCGI ................................................................................. 4

9. LIABILITY OF CUSTOMER ...................................................................... 5

10. OTHER TERMS AND CONDITIONS ....................................................... 5

11. NOTICES ............................................................................................... 8

## EXHIBITS

A.                                 PREPAID CONNECTION SERVICE PRICING
B.                                                             CONFIDENTIALITY
C.                                                       SERVICE DESCRIPTON
D.                                 MAINTENANCE/TECHNICAL SERVICES

BCG 25597
**Restricted Confidential**
**Attorney's Eyes Only**

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the
parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT**
**PLF 1007-2**

## 1. INTRODUCTION

This Agreement (the "Agreement") is made this January 2, 2001                , by and
between Cellular Express, Inc. d/b/a Boston Communications Group, a Massachusetts
Corporation with its principal place of business at 100 Sylvan Road, Suite 100, Woburn, MA
01801 ("BCGI"), and (Illinois Valley Cellular) having a principal place of business at 455
Main Street, Marseilles, IL 61341

## 2. SERVICES PROVIDED

BCGI will provide Customer with the Prepaid Connection Service as described in Exhibit C,
which shall be governed by the terms and conditions of this Agreement.

## 3. OBLIGATIONS OF BCGI

3.1     BCGI will install the BCGI owned hardware configured for the needed prepaid
subscriber capacity as stated by the Customer at the Customer's designated location. The
hardware has BCGI owned software for call processing, voice messaging and digit collection
from the Customer's prepaid subscribers and from roaming wireless prepaid subscribers.
The combination of BCGI owned hardware and software is the Prepaid Connection Node.

3.2     BCGI is responsible for a data connection from the Prepaid Connection server
complex to BCGI's main prepaid wireless server complex to allow national roaming.

3.3     BCGI shall generate personal identification numbers ("PIN's") with pre-set monetary
values as requested by Customer.

3.4     BCGI's will provide its Roamerplus Service which provides call processing,
completion and billing services for roamers who are not allowed automatic roaming in the
Customer's service area and are routed through the Prepaid Connection Node.

3.5     . BCGI will provide Remote Maintenance/Technical Services ("Technical Services")
as outlined in Exhibit D.

3.6     BCGI has the capability during certain database outages to invoke the Post Call
Debiting feature. BCGI will notify Carrier via email to the BCGI designated email account if
Post Call Debiting has been invoked during an outage. Post Call Debiting allows Carrier to
continue to process calls through the Prepaid Connection platform during certain database
outages ("Post Call Debiting Period"). When full service has been restored, Subscribers'
account balances are decremented, up to the available balance of the account, for the minutes
processed during the Post Call Debiting Period. In some instances during Post Call Debit
Periods, subscribers use minutes beyond their available balance. In such cases the
Subscriber's account balance is decremented, up to the available balance. BCGI does not
charge Carrier for minutes beyond the available balance and is not responsible for

BCG 25598
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the
parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT
PLF 1007-3**

reimbursing Carrier for such minutes. BCGI is not responsible for lost revenues or profits due to an outage.

3.7    Customer will designate an employee of Customer to act as System Manager. BCGI will train the System Manager in methods and procedures to effectively use the troubleshoot the Prepaid Connection Node as outlined in Exhibit D. This training will be conducted during the installation process thereby requiring the System Manager be present during the installation period. Additional training will be made available for other customer delegated participants at either an onsite training session or a training session at a BCGI facility. The prices for either of these training sessions will be quoted as requested. Other training and documentation may also be ordered separately from BCGI at then current prices.

## 4.    OBLIGATIONS OF CUSTOMER

4.1    Customers is responsible for provisioning and maintaining a data connection (MCI Worldcomm frame relay "Hyperstream") from the Prepaid Connection Node to a central Prepaid Connection server complex. Customer will complete, sign and return the Pre-Install Checklist which outlines the required telecommunications and other site conditions.

4.2    Customer is required to route all unregistered and "authorization denied" traffic to the Prepaid Connection Node for processing.

4.3    Customer is responsible for providing customer care to subscribers utilizing BCGI's web based care software. Customer is allowed 5 simultaneous Web care users at no charge. If Customer requires additional users, Customer will be charged as outlined in Exhibit A.

4.4    Customer is responsible for paying all federal, state, local taxes and other applicable taxes for the services provided by Customer to Subscribers (excluding any income taxes payable by BCGI) and for filing any tax returns with respect to such taxes.

4.5    Customer is responsible for all costs associated with the production and fulfillment of the prepaid cards and associated product and promotional support materials that provide the Subscriber with instructional information on how to use Customer's wireless prepaid service.

4.6    Customer shall report to BCGI via fax any card number belonging to one of Customer's customers that has been reported to Customer as stolen or otherwise subject to unauthorized use.

4.7    Customer will provide BCGI full and free access to the Prepaid Connection Node during mutually agreed times. Waiver of liability and other restrictions will not be imposed as a requirement for access to the premises. Customer will allow BCGI to use necessary machines, communications facilities, features, and other equipment at no charge.

BCG 25599
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT
PLF 1007-4**

A representative of Customer will be present at the premises during the performance of installation and support.

4.8    Customer will maintain the conditions of the premises where the Prepaid Connection Node is located within the common environmental range of and in accordance with the power, temperature, humidity, and other requirements for the Equipment.

4.9    Customer is responsible for the replacement cost of any BCGI equipment located on Customer's premises which is lost, stolen or damaged. Customer will maintain insurance as outlined in Section 4.10 below and will provide security adequate to protect such equipment from theft or damage.

4.10    Customer shall secure and maintain personal property insurance covering the value of the equipment and comprehensive general liability insurance for claims for damages because of bodily injury (including death) and property damage, caused by, or arising out of, its acts or omissions or acts or omissions of its employees, agents, or invitees or the presence or use of the equipment on Customer's premises. The minimum limits of such insurance shall be a combined limit of $2,000,000 general aggregate limit, and $1,000,000 each occurrence sublimit for General Liability; and a combined single limit of $2,000,000 for Excess Liability. BCGI shall be named as additional insured on all policies of such insurance.

4.11    Customer is responsible for providing first level troubleshooting and technical support for the Prepaid Connection Node.

4.12    During the Term of this Agreement, BCGI will be the exclusive provider of prepaid wireless services to Customer and Customer will not contract with or receive prepaid wireless services from any other prepaid wireless provider.

## 5. CHARGES

5.1    Customer shall pay to BCGI the charges for services provided in Exhibit A. If the action of any governmental authority increases BCGI's incremental costs in providing such service, BCGI may increase the charges set forth herein by the amount of such incremental costs.

5.2    The Implementation and Maintenance Fees are be due prior to any services rendered by BCGI.

5.3    BCGI shall invoice Customer on or about the first day of each month for the previous month as outlined in Exhibit A. All charges are quoted in and to be paid in U.S. dollars.

5.4    All invoices are net 30. All charges not paid within 60 days after the date of invoice shall be subject to an interest charge of 1.5% per month until paid. If charges are not paid when due, unless disputed in writing within sixty days of date of invoice and undisputed amounts are paid when due, BCGI may suspend the generation of PINs until the balance is paid in full. Customer may be required to pay for PIN generation charges prior to the

BCG 25600
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

generation of PINs. Customer is required to pay for card production services prior to the performance of such services.

5.5    Customer may be required to pay deposits from time to time for services yet to be performed hereunder. Deposit amounts and payment terms may be adjusted by BCGI based on Customer's payment history and credit scoring.

## 6.  TERM AND TERMINATION

6.1    This Agreement shall become effective on the date first written above and shall continue in effect for three (3) years. This Agreement shall automatically renew for successive three (3) year periods (the "Renewal Terms"), unless the Agreement is terminated pursuant to Section 6.2 or either party notifies the other party in writing of its intent not to renew at least six (6) months prior to the end of the term. As used herein, "Term" shall be deemed to include the Renewal Term when and as automatic renewal occurs.

BCGI shall notify Customer at least 60 days prior to the date upon which a notice of intent not to renew would be due under this section, of any changes to charges to be in effect during the forthcoming Renewal Term.

6.2    Reciprocal Right to Terminate

If at any time during the term of this Agreement any one or more of the following events (each of which is hereafter referred to as a "Default") shall occur, the non-defaulting party may, at any time thereafter, terminate this Agreement upon thirty (30) days' written notice to the defaulting party:

(i) A party defaults in the prompt payment of any amount due hereunder, and such default continues for thirty (30) days after notice from the non-defaulting party;

(ii) A party neglects or fails to perform or observe any other material provision of this Agreement and fails to remedy the same within thirty (30) days after notice from the non-defaulting party;

(iii) A party makes an assignment for the benefit of creditors;

(iv) A party files a voluntary petition in bankruptcy or is adjudicated bankrupt or insolvent, or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future Federal, State or other statute, law or regulation for the relief of debtors, or seeks, consents to, or acquiesces in the appointment of any trustee, receiver or liquidator of such party or of all or any substantial part of its properties, or admits in writing its inability to pay its debts generally as they become due; or

(v) A petition is filed against a party in bankruptcy or under any other law seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future Federal, State, or other statute, law or regulation of similar import and shall remain undismissed for an aggregate of ninety (90) days (whether or not consecutive), or if any debtor in possession, trustee, receiver or liquidator of a party or of all or any substantial part of its properties shall

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

BCG 25601
Restricted Confidential
Attorney's Eyes Only

be appointed without the consent or acquiescence of said party and such appointment shall remain unvacated for an aggregate of ninety (90) days (whether or not consecutive).

BCG 25602
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT**
**PLF 1007-7**

6.3    Obligations Upon Termination

In the event that this Agreement is terminated, each party will remain liable for amounts due to the other party prior to the date of such termination. In the event this Agreement is terminated by Customer, Customer will be liable for the minimum monthly commitment for the remaining months of the term.

6.4    Upon termination of this Agreement, BCGI will remove any BCGI owned equipment from Customer's premises. Customer will allow BCGI access to the premises to effect the removal of such equipment.

## 7. CUSTOM ALTERATIONS

For custom alterations to BCGI's standard service, Customer will submit a request for quote to BCGI detailing Customer's requirements. BCGI will then provide a written quote for the costs to deliver such custom alterations.

## 8. LIABILITY OF BCGI

8.1    BCGI shall exercise best efforts to avoid network service interruptions. BCGI's liability for loss or damages arising out of mistakes, omissions, interruptions, delays, errors, or defects in the services provided shall in no event exceed the amount of actual BCGI charges incurred by Customer during the period of such occurrence.

8.2.    BCGI DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE. IN NO EVENT SHALL BCGI BE LIABLE TO CUSTOMER OR ANY OTHER PERSON OR ENTITY FOR INDIRECT, CONSEQUENTIAL OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOST REVENUES OR PROFITS, EVEN IF BCGI HAS BEEN ADVISED OF THE POSSIBILITY THEREOF.

8.3    Neither BCGI nor its subcontractors, nor the officers, directors or employees or agents of any of them, shall be deemed to be employees or agents of Customer, it being understood that BCGI is an independent contractor.

8.4    BCGI is not responsible for any damages and costs incurred on any lost or stolen cards, or any damages or losses occurring on Customer's premises from the presence of BCGI equipment on said premises.

## 9. LIABILITY OF CUSTOMER

9.1    Customer shall be responsible for all damages and costs incurred on any lost or stolen cards and any damages or losses occurring on Customer's premises from the presence of BCGI equipment on said premises.

BCG 25603
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies

**EXHIBIT**
**PLF 1007-8**

9.2    Customer shall not use BCGI's service for any unlawful purpose, nor shall Customer allow any of its Resellers or Distributors to do so. Customer is responsible for all fraudulent usage of service by itself, Resellers or Distributors, including, without limitation, any intentional misuse of the service and fraud from cloning. The term "cloning" shall mean the unauthorized method of capturing a working MIN/ESN combination and the programming of that MIN/ESN into another wireless phone, enabling one wireless phone to emulate another wireless phone beyond the detection abilities of a wireless licensee.

## 10.  OTHER TERMS and CONDITIONS

10.1    INDEMNIFICATION  Each party agrees to indemnify and hold harmless the other party, its parents, affiliates, subsidiaries, directors, officers, employees, and agents, from and against any and all claims or liabilities of any kind, by third parties arising out of or relating to acts or omissions of the indemnifying party or the performance or non-performance of this Agreement by the indemnifying party, including without limitation allegations of libel, slander, defamation, or infringement of copyright or other intellectual property rights. The indemnified party will give prompt written notice to the indemnifying party of any such claim or liability, and will cooperate with it in the conduct and defense of any litigation, including without limitation not settling such claim without the prior written consent of the indemnifying party.

10.2    CONFIDENTIALITY.  BCGI and Customer each agree to comply with the confidentiality provisions set forth in Exhibit B.

10.3    FORCE MAJEURE.  Neither party shall be liable to the other for any delay or failure in its performance of this Agreement from any cause beyond its control and without its fault, including, without limitation, changes in government regulations, embargoes, epidemic, war, terrorist acts, riots, insurrections, fires, explosions, earthquakes, nuclear accidents, floods, strikes, power blackouts, severe weather conditions, failure by the other party to fulfill any of its obligations under this Agreement, acts of third parties, or acts or omissions of common Customers.

10.4    ASSIGNMENT.  Any assignment of this Agreement, in whole or in part, or of any other interest hereunder without the other party's written consent, such consent not to be unreasonably withheld, except an assignment confined solely to monies due or to become due, or an assignment to a purchaser of all or substantially all of the stock or assets of the assigning party, shall be void.

10.5    LAWS, RULES AND REGULATIONS.  Each party agrees to comply with all laws and governmental regulations applicable to it with respect to its performance hereunder. During the term of this Agreement each party shall maintain in full force and effect all necessary and applicable federal, state and local regulatory agency authorizations, licenses and permits relating to its properties or applicable to its business.

10.6    PROPERTY.  (a) Title to all property (including , without limitation, all intellectual property) owned by Customer and furnished to BCGI shall remain in Customer. Any

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

BCG 25604
Restricted Confidential
Attorney's Eyes Only

**EXHIBIT**
**PLF 1007-9**

property owned by Customer and in BCGI's possession or control shall be used only in the performance of this Agreement unless authorized in writing by Customer. BCGI shall adequately protect such property, and shall deliver or return it to Customer or otherwise dispose of it as directed by Customer.

(b) Title to all property (including, without limitation, all intellectual property) owned by BCGI and furnished to Customer shall remain in BCGI. Any property owned by BCGI and in Customer's possession or control shall be used only in the performance of this Agreement unless authorized in writing by BCGI. Customer shall adequately protect such property, and shall deliver or return it to BCGI or otherwise dispose of it as directed by BCGI.

10.7    **PLANT RULES AND SECURITY REQUIREMENTS.** The employees and agents of each party, shall while on the premises of the other, comply with all plant rules and regulations in effect at such premises, including security requirements.

10.8    **CHOICE OF LAW.** This Agreement shall be construed in accordance with the laws of the Commonwealth of Massachusetts.

10.9    **WAIVER.** No provision of this Agreement shall be deemed waived, amended, or modified by either party, unless such waiver, amendment or modification be in writing and signed by the party against whom it is sought to enforce the waiver, amendment or modification.

10.10    **ENTIRE AGREEMENT.** This Agreement and its attachments constitute the entire Agreement between Customer and BCGI with respect to the subject matter hereof and shall not be amended or modified except in writing, signed by both parties. No oral statement of any person whomsoever shall, in any manner or degree, modify or otherwise affect the terms and provisions of this Agreement.

10.11    **SUCCESSORS AND ASSIGNS.** This Agreement shall inure to the benefit of, and shall be binding upon the parties hereto and their respective successors and assigns.

10.12    **SEVERABILITY.** If any provision, or portion thereof of this Agreement is invalid under applicable statute or rule of law, it is only to that extent to be deemed omitted, and such unenforceability shall not affect any other provision of this Agreement, but this Agreement shall then be construed as if such unenforceable provision or provisions had never been contained herein.

10.13    **NON-SOLICITATION.** Customer acknowledges that BCGI has spent considerable time and effort building expertise in prepaid wireless technology and that the loss of an employee would harm BCGI. Therefore Customer agrees that during the term of this Agreement and continuing for one (1) year thereafter, Customer will not hire, contract, or solicit the employment of any current or previous employee of BCGI unless a period of 6 months has elapsed from the last date that such employee was employed by BCGI, without the prior written consent of BCGI. If Customer hires a current or previous BCGI employee in violation of this provision, Customer will pay to BCGI a sum equal to one half of the annual salary offered to such employee by Customer.

BCG 25605
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

EXHIBIT
PLF 1007-10

10.14  **ARBITRATION.** Except as provided otherwise in this Agreement all claims, disputes, controversies and other matters in question between the parties to this Agreement, or pertaining to the breach thereof, not involving injunctive or other equitable relief, and which cannot be resolved by the parties shall be conclusively settled by arbitration in accordance with this Agreement and the following procedure:

a) Any arbitration shall be conducted in accordance with the rules of the American Arbitration Association.

b) Either party may serve upon the other party by certified mail a written demand that the claim, dispute or controversy, be arbitrated, specifying in reasonable detail the nature of the dispute or claim to be submitted to arbitration. The demand, which shall be effective upon receipt, shall be made within a reasonable time after the claim, dispute or controversy has arisen. In no event shall the demand for arbitration be made more than one year after the claim or cause of action arises.

c) Within thirty (30) days after service of a demand for arbitration, the parties shall agree upon a single arbitrator.

d) In the event the parties cannot agree upon a single arbitrator within said 30 day period, either party may request the American Arbitration Association to appoint an arbitrator in accordance with its rules.

e) All arbitration hearings shall be held in Boston, Massachusetts. Judgment upon the award rendered by the arbitration may be entered in any court having jurisdiction thereof.

## 11. NOTICES

Any notice to be given hereunder by either party to the other shall be in writing and shall be deemed given when sent by postage prepaid certified United States mail.

Notices to BCGI shall be addressed to:        Notices to Customer shall be addressed to:

Boston Communications Group, Inc.            Illinois Valley Cellular

100 Sylvan Road                              455 Main Street

Woburn, MA 01801                            Marseilles, IL 61341

Attn: General Counsel                        Attn: General Manager

If either party changes its address during the term hereof, it shall so advise the other party in writing and any notice thereafter required to be given shall be sent to such new address in the manner set forth above.

BCG 25606
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT**
**PLF 1007-11**

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives, effective as of the day and year first above written.

CELLULAR EXPRESS, INC. d/b/a
BOSTON COMMUNICATIONS GROUP

By: _E Y Snoud_____

Name: _E Y. Snowden_____

Title: _CEO & President_____

Date: _1/19/01_____

**ILLINOIS VALLEY CELLULAR**
455 Main Street
Marseilles, IL 61341

By: _____

Name: _Thomas F. Walsh_____

Title: _Gereral Manager_____

Date: _1/02/01_____

BCG 25607
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT**
**PLF 1007-12**

# EXHIBIT A

## Pricing

**INITIAL FEES**

Implementation Cost          $4,500 per site or location

                             $7,500 per site or location with SS7

| | Subscribers | Technical Service | Implementation | Initial Cost |
|---|---|---|---|---|
| PC001 | 2,500 | N/A | $4500 | $4500 |
| PC001SS7 | 2,500 | N/A | $7,500 | $7,500 |
| PC002 | 5,000 | N/A | $4,500 | $4,500 |
| PC002SS7 | 5,000 | N/A | $7,500 | $7,500 |
| PC003 | 7,500 | N/A | $4,500 | $4,500 |
| PC003SS7 | 7,500 | N/A | $7,500 | $7,500 |
| PC004 | 10,000 | N/A | $4,500 | $4,500 |
| PC004SS7 | 10,000 | N/A | $7,500 | $7,500 |

- Implementation fees are due with Purchase Order.
- Technical Services are included with the minimums.
- Installation date will be determined based on the customer's readiness (i.e. the return of the pre-install checklist) and the current implementation schedule.
- Up to two distinct rate plans and four international dialing country code rates may be set up with no additional charge at the time of installation. Additional rate plans must be provisioned through BCGI and will incur an additional charge of $125/hr. for implementation.

### Implementation Fees includes the following:
- Installation of BCGI-owned equipment at Carrier site
- Project Management
- Table setup for Country codes and rates for two initial rate plans and four country codes
- Testing Labor & Travel

### Implementation Fees Does Not Include the Following:
- Modification of software for required signaling string changes @ $125/hour
- All costs associated with the data connections from the Remote Service Node to the BCGI Central Server Complex for call processing and customer care access are the carrier's responsibility.
- Additional equipment requests will be quoted on request
- Any delays in implementations as a result of carrier delays may result in additional fees.

BCG 25608
Restricted Confidential
Attorney's Eyes Only

EXHIBIT
PLF 1007-13

## RECURRING FEES

### Monthly MOU Minimums

All 1T1 and 2 T1 systems (non-SS7) will have a monthly minimum of $1,000.00

- Monthly MOU fees are payable monthly, net 30 days.

> *Monthly Minimums Include the Following:*
> - Standard reporting, data table maintenance and product support
> - BCGI standard software maintenance and releases

### Monthly Revenue Share Fee

18% Revenue Share Rate or $.03 per MOU

The Revenue Share Rate will apply to the total monthly prepaid service revenues that the Carrier generates in any given month. Carrier Prepaid Service Revenues shall mean all carrier prepaid service revenues that are generated in a given month including usage charges, LD charges, international charges, surcharges, daily debiting fees and breakage charges. Each month the Revenue Share Rate will be multiplied by the total monthly carrier prepaid service revenues to determine the Monthly Revenue Share Fee. Each month Carrier will charged the greater of the Revenue Share Rate of 18% or $.03 USD per MOU processed through the platform.

### Roaming

Hot-Line Roaming will be billed at $.15 per minute of use (MOU).

All unregistered roaming calls will be completed via BCGI ROAMER*plus* service, commissioned at a rate of $_1.00_ /minute.

### Prepaid Card PINs

PINs must be ordered through BCGI in lots of 1,000 or 10,000. PIN orders will be charged at $250 per order. (Maximum of 15,000 per order)

### WebCare

Customer Service Representative access is limited to 5 (simultaneous) connections per T1. Additional connection licenses (simultaneous) can be added in blocks of 5 for $1500 per block.

BCG 25609
Restricted Confidential
Attorney's Eyes Only

EXHIBIT
PLF 1007-14

**On – Site Support**

Any on Site support required due to equipment failures determined to be caused by the carrier or changes in switch translations that require a technicians visit will be billed at $1600/day(includes travel expenses)

**General Terms and Conditions:**

- All telecommunications costs are the responsibility of carrier.(Except Hotline Roaming)
- The above stated prices exclude any applicable taxes, including but not limited to GST, VAT, sales, and/or duties or country specific imposed fees.  All taxes are the responsibility of carrier.
- Other services/features will be quoted upon request.

BCG 25610
Restricted Confidential
Attorney's Eyes Only

**EXHIBIT
PLF 1007-15**

# EXHIBIT B

## Confidentiality Provisions

Any information of a party which is confidential or proprietary, specifically including, but not limited to, technical and business plans, data, business information, technical information, specifications, drawings, sketches, computer programs and documentation, processes, services and like information, written, oral or otherwise (all hereafter designated "Information") furnished to a party hereunder or in contemplation hereof shall remain the property of the disclosing party. Both parties hereby agree to receive such Information and to disclose such Information only subject to the following terms and conditions:

1.      Each party agrees to protect such Information provided to the other from whatever source from distribution, disclosure or dissemination to anyone except employees of the respective parties with a need to know such Information in conjunction with the provision of the above services, except as authorized herein or as otherwise authorized in writing by the parties. Each party will use, at a minimum, the same standard of care to protect such Information as it uses to protect its own similar confidential and proprietary information.

2.      Neither party will have an obligation to protect any portion of the Information which:

      a) is made publicly available by the disclosing party or lawfully by a third party;

      b) is lawfully obtained by a party from any source other than from the disclosing party; or

      c) is previously known to the receiving party without an obligation to keep it confidential.

3.      A party may disclose Information which is requested by a court of competent jurisdiction to such court, provided the party shall give reasonable notice to the disclosing party and shall cooperate with the disclosing party in seeking protection from the disclosure of such Information.

4.      Each party agrees to use the Information of the other solely in conjunction with the purpose for which it was disclosed and for no other purpose. Each party will only make such copies of the Information received from the other as are necessary for its use under the terms hereof, and each such copy will be marked with the same proprietary notice as appears on the original. Upon the termination of this Agreement or the request of a disclosing party, the other party will return all Information previously received in tangible form from the disclosing party and all copies thereof and notes prepared therefrom, or at the request of the disclosing party shall destroy the same and provide a signed statement certifying the

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

BCG 25611
Restricted Confidential
Attorney's Eyes Only

**EXHIBIT**
**PLF 1007-16**

destruction thereof. No Information of a disclosing party shall be retained by the other party after the termination of this Agreement.

5.     The parties agree not to identify each other or any other owner of information disclosed hereunder in any advertising or publicity without prior written permission of the disclosing party.

6.     The provisions hereof shall continue for a period of two years following termination of this Agreement. In any event, however, the obligations of each party to maintain the confidentiality of the Information it has received under this Agreement shall continue indefinitely as to Information constituting a trade secret under applicable law.

7.     No license to a party under any trademark, patent or copyright is either granted or implied by the disclosure of Information to such party.

BCG 25612
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT**
**PLF 1007-17**

# EXHIBIT C

**Description of Prepaid Connection**

BCGI will provide the Prepaid Connection service to Customer according to the terms and conditions of this Agreement. In order to provide the service, BCGI will install hardware and software (the "Prepaid Connection Node") configured for the needed prepaid subscriber capacity as stated by the Customer at the Customer's designated location. The BCGI owned hardware has BCGI software for call processing and digit collection from the Customer's prepaid subscribers and from roaming subscribers. Customer is responsible for provisioning and maintaining a data connection from the Prepaid Connection Node to a BCGI central Prepaid Connection server complex. BCGI is responsible for a data connection from the Prepaid Connection server complex to BCGI's C₂C server complex to allow national roaming.

Prepaid Connection will allow the Customer to offer prepaid wireless service to their subscribers and take advantage of the Prepaid Wireless features and the national network for roaming. The Prepaid Connection service rates each call a subscriber makes and monitors, in real-time, the usage of the subscriber's account. After each call is terminated the Prepaid Connection service debits the amount of each call from the subscribers account balance. The Prepaid Connection service terminates the call once the account balance is exhausted and prevents the subscriber from making additional calls until the account is replenished.

Customer is required to route all unregistered and "authorization denied" traffic to the Prepaid Connection Node for processing. BCGI's Roamerplus Service provides call processing, completion and billing services for roamers who are not allowed automatic roaming in the Customer's service area and are routed through the Prepaid Connection Node.

Customer provides customer care to their subscribers utilizing BCGI's web based care software which is part of the Prepaid Connection Service.

BCG 25613
Restricted Confidential
Attorney's Eyes Only

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT
PLF 1007-18**

## EXHIBIT D

### Maintenance/Technical Services

**1. Technical Services**

BCGI will provide technical troubleshooting assistance services as described herein (hereinafter referred to as "Technical Services") at the prices as outlined on Exhibit A. Technical Services shall include BCGI's best efforts to verify and correct any errors or failures (inability of BCGI's hardware, firmware or software to conform to the BCGI's published specifications) in an unaltered version of the BCGI software, which are detected by BCGI or reported by the Customer to BCGI.   BCGI has no responsibility for providing technical troubleshooting assistance for errors or failure of systems not supplied by BCGI. Customer is solely responsible for providing such services for its own equipment, telecommunications facilities and connections into the Prepaid Connection service.

**2. Disclaimer and Exclusions from Assistance**

BCGI shall have no obligation to perform Technical Services under the following conditions:

> (1) Any changes or modifications made to software, firmware or hardware that do not comply with BCGI published specifications (said modifications do not include routine database administration changes or the associated hardware assignments).

> (2) Customer uses software or equipment in an unauthorized manner that is not in accordance with the published specifications, instructions or license of the BCGI.

**3. Technical Service Times and Procedure**

This Agreement provides for Technical Services on a 24 hours a day, seven (7) days a week basis via pager callback.  Customer will be contacted within 30 minutes from the time the page was received, either to help troubleshoot or receive more information from the Customer.  During business hours (Monday -- Friday from 8 AM ET to 6 PM ET except holidays), the Customer may call BCGI directly for Technical Services.

This service provides remote dial-in support via modem, as well as telephone support to assist with the diagnosis and correction of any problems reported by Customer to the Technical Services organization of Boston Communications Group.

There is no restriction on the number of calls or the hours per month for Technical Services rendered under this agreement.

**BCG 25614**
**Restricted Confidential**
**Attorney's Eyes Only**

RESTRICTED - PROPRIETARY INFORMATION
The information contained herein is subject to a non-disclosure agreement and is for use by authorized employees of the parties thereto only and is not for general distribution within or outside their respective companies.

**EXHIBIT**
**PLF 1007-19**

# EXHIBIT M

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2005 NOV 30  A 10: 49

U.S. DISTRICT COURT
DISTRICT OF MASS.

FREEDOM WIRELESS, INC.,

                Plaintiff,

     v.

BOSTON COMMUNICATIONS GROUP,
INC., ALLTEL CORP., *et al.*,

                Defendants.

Civil Action No. 05-11062-EFH

---

### REGIONAL CARRIER DEFENDANTS' NOTICE OF JOINDER AND JOINDER IN BOSTON COMMUNICATIONS GROUP, INC.'S MOTION FOR STAY OF PROCEEDINGS PENDING RESOLUTION OF THE FEDERAL CIRCUIT APPEALS

Defendants Bluegrass Cellular, Inc., Cellular Properties, Inc. (d/b/a Cellular One of East Central Illinois), Centennial Cellular Operating Co. LLC, Cincinnati Bell Wireless LLC, Dobson Cellular Systems, Inc., East Kentucky Network LLC (d/b/a Appalachian Wireless), Farmers Cellular Telephone, Inc. (d/b/a Farmers Cellular), Great Lakes of Iowa, Inc., Marseilles Cellular, Inc. (d/b/a Illinois Valley Cellular), MTA Communications (d/b/a MTA Wireless), Mid-Missouri Cellular LLP, Southern Illinois RSA Partnership (d/b/a First Cellular of Southern Illinois), South #5 RSA Limited Partnership (d/b/a Brazos Cellular Communications, Ltd.), Thumb Cellular LLC, Uintah Basin Electronic Telecommunications (d/b/a UBET Wireless) (collectively, "the Regional Carriers") hereby join co-defendant Boston Communications Group, Inc.'s Motion for Stay of Proceedings Pending Resolution of the Federal Circuit Appeals ("BCGI's Motion for Stay").

### ARGUMENT

As discussed further in BCGI's Motion for Stay, the parties in *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, Civil Action No. 00-12234-EFH (D. Mass.) (*"Freedom Wireless I"*) have appealed several issues to the Federal Circuit Court of Appeals. Many of the issues presented in those appeals are identical to those that exist in the instant

litigation. For the same reasons also put forth by BCGI, the Regional Carrier Defendants agree that a stay is appropriate for reasons of judicial economy. However, additional circumstances concerning the Regional Carrier Defendants further compel the conclusion that a stay is appropriate.

First, it would be particularly costly and onerous for the Regional Carrier Defendants to litigate the instant case in Boston, Massachusetts because they are from disparate areas of the country. Allowing the instant litigation to proceed against such remotely-located companies while threshold issues are on appeal would be unjustified. As shown in the following table, the Regional Carrier Defendants can only be found in various far-flung locations across America:

|   | Regional Carrier | Location of headquarters |
|---|---|---|
| 1 | Bluegrass Cellular, Inc. | Elizabethtown, KY |
| 2 | Cellular Properties, Inc. d/b/a Cellular One of East Central Illinois | Danville, IL |
| 3 | Centennial Cellular Operating Co. LLC | Wall, NJ |
| 4 | Cincinnati Bell Wireless LLC | Cincinnati, OH |
| 5 | Dobson Cellular Systems, Inc. | Oklahoma City, OK |
| 6 | East Kentucky Network, LLC d/b/a Appalachian Wireless | Prestonsburg, KY |
| 7 | Farmers Cellular Telephone, Inc. d/b/a Farmers Cellular | Rainsville, AL |
| 8 | Southern Illinois RSA Partnership d/b/a First Cellular of Southern Illinois | Mt. Vernon, IL |
| 9 | Great Lakes of Iowa, Inc. | Spencer, IA |
| 10 | Marseilles Cellular, Inc. d/b/a Illinois Valley Cellular | Marseilles, IL |
| 11 | MTA Communications d/b/a MTA Wireless | Wasilla, AK |
| 12 | Mid-Missouri Cellular LLP | Sedalia, MO |

2

| 13 | South #5 RSA Limited Partnership d/b/a Brazos Cellular Communications, Ltd. | Olney, TX |
| 14 | Thumb Cellular LLC | Pigeon, MI |
| 15 | Uintah Basin Electronic Telecommunications d/b/a UBET Wireless | Roosevelt, UT |

Second, due to the limited reach of their operations, the Regional Carrier Defendants intend to move to dismiss for lack of personal jurisdiction as it would not comport with "fair play and substantial justice" for them to defend themselves against this suit in Massachusetts. Declarations on behalf of every Regional Carrier Defendant will demonstrate that each Regional Carrier Defendant lacks sufficient contacts with and does not purposefully avail itself of this forum. A stay of the present case pending appeal of *Freedom Wireless I* will spare the Court of the burden of adjudicating these issues presently.

Third, unlike the *Freedom Wireless I* carriers, the Regional Carrier Defendants do not operate nationally; their operations are limited to scattered corners of the country. Allowing the instant litigation to proceed against these relatively small, regional defendants while dispositive issues are before the Federal Circuit would be patently unfair. As explained in further detail by BCGI, the *Freedom Wireless I* litigation consumed five years of the Court's and the parties' time, hundreds of thousands of documents, over a hundred depositions, and a multitude of motions. Requiring the Regional Carrier Defendants to similarly defend themselves while the Federal Circuit is resolving identical issues would unjustly consume their limited financial resources.

3

## CONCLUSION

For reasons of judicial economy and fairness to the parties, the Regional Carrier Defendants agree that the Court should stay the instant proceedings pending the resolution of the identical issues before the Federal Circuit. As requested in BCGI's Motion for Stay, the Regional Carriers ask that the Court stay all proceedings until thirty (30) days after the Federal Circuit issues all mandates from the *Freedom Wireless I* appeals.

Dated: November 30, 2005

Respectfully submitted,

By: _Dean Bostock_

Dean G. Bostock, Esq. (BBO#549747)
Patrick J. Sharkey, Esq. (BBO#454820)
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY and POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111

Telephone: (617) 542-6000
Facsimile: (617) 542-2241
dbostock@mintz.com
psharkey@mintz.com

Michael H. Page
Leo L. Lam
Matthias A. Kamber
Andrew N. Shen
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111-1704

Telephone: (415) 391-5400
Facsimile: (415) 397-7188
mpage@kvn.com
llam@kvn.com
mkamber@kvn.com
ashen@kvn.com

Attorneys for Regional Carrier Defendants

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail/hand on: 11/30/05

_Dean Bostock_

LIT 1552097v.1

4

# EXHIBIT N

**quinn emanuel** trial lawyers | los angeles

8xx South Figueroa Street, 10th Floor, Los Angeles, California 90017  TEL 213 443 3000 FAX

January 5, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>

Leo L. Lamb
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704

Dean G. Bostock
Mintz, Levin, Cohn, Ferris, Clogsky, and
Popeo, P.C.
One Financial Center
Boston, MA 02111

Re:    <u>Freedom Wireless, Inc. v. Boston Communications Group, Inc., Alltel Corp., Inc., et al.</u>,
       <u>No. 05-11062-EFH</u>

Dear Counsel:

On December 19th, 2005, the Regional Carrier Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction. Accompanying this motion were 15 declarations regarding the Regional Carriers' lack of contacts in Massachusetts. Similarly, defendant South Canaan also relies on a declaration to support its separate motion.

In so doing, defendants have gone beyond the pleadings to rely on factual assertions that Freedom has no opportunity to challenge. As such, the motions to dismiss are, in reality, motions for summary judgment. Such motions are premature, especially given that discovery has not even begun.

In Freedom I, when Rogers Wireless, Inc. moved to dismiss for lack of personal jurisdiction prior to discovery, the Court denied the motion. To avoid the same delay in the present action, we seek to agree to postpone Freedom's opposition to the Regional Carriers motion in order to pursue limited discovery into the issue of personal jurisdiction.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-3757 FAX 760-345-2474
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

08930/1812129.1

We would like to discuss a briefing schedule for the proposed discovery; and believe it is in the best interests of all parties to agree on this matter. Please let us know your position by the close of business on Friday, January 6, 2006.

Very truly yours,

Marshall M. Searcy

MMS:mms
08930/1812129.1

# EXHIBIT O

**quinn emanuel** trial lawyers | los angeles

Sos Sengre Fogness Street, rith Floor, Los Angeles, California 90017 | Tel 213-443-3000 | Fax 213-443-3100

January 5, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>

Leo L. Lamb                          Dean G. Bostock
Keker & Van Nest, LLP                Mintz, Levin, Cohn, Ferris, Clogsky, and
710 Sansome Street                   Popeo, P.C.
San Francisco, CA 94111-1704         One Financial Center
                                     Boston, MA 02111

Re:    <u>Freedom Wireless, Inc. v. Boston Communications Group, Inc., Alltel Corp., Inc., et al.,</u>
       <u>No. 05-11062-EFH</u>

Dear Counsel:

On December 19th, 2005, the Regional Carrier Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction. Accompanying this motion were 15 declarations regarding the Regional Carriers' lack of contacts in Massachusetts. Similarly, defendant South Canaan also relies on a declaration to support its separate motion.

In so doing, defendants have gone beyond the pleadings to rely on factual assertions that Freedom has no opportunity to challenge. As such, the motions to dismiss are, in reality, motions for summary judgment. Such motions are premature, especially given that discovery has not even begun.

In Freedom I, when Rogers Wireless, Inc. moved to dismiss for lack of personal jurisdiction prior to discovery, the Court denied the motion. To avoid the same delay in the present action, we seek to agree to postpone Freedom's opposition to the Regional Carriers motion in order to pursue limited discovery into the issue of personal jurisdiction.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4767 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

08930/1812129.1

We would like to discuss a briefing schedule for the proposed discovery; and believe it is in the best interests of all parties to agree on this matter. Please let us know your position by the close of business on Friday, January 6, 2006.

Very truly yours,

Marshall M. Searcy

MMS:mms
08930/1812129.1

# EXHIBIT P

LAW OFFICES

# KEKER & VAN NEST
### L.L.P.

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

LEO L. LAM
leo@kvn.com

January 6, 2006

**By Facsimile & Mail**

Marshall M. Searcy, Esq.
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
*Facsimile No.: 213/624-0643*

Re:   *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*

Dear Marshall:

I write in response to the letter you sent after hours last night regarding the Regional Carriers' motion to dismiss for lack of personal jurisdiction.

We filed that motion on December 19; and previewed it to all parties and the Court earlier. The extended deadline for Freedom's opposition – next Tuesday, January 10 – is two business days away. Now, Freedom proposes to postpone its opposition and take limited discovery regarding personal-jurisdiction issues. Leaving aside your characterization of our motion, given the timing of things, your request last night for an immediate response (by today) hardly seems reasonable.

In any event, we would not oppose conducting some discovery as you suggested so long as it is limited and not one-sided, but you have not proposed any limits. For example, we can perhaps agree to limited interrogatories but cannot agree to doing numerous depositions at locales scattered around the country as a prerequisite to Freedom's opposition. Please propose some terms.

In exchange, we seek your agreement not to assert that the Regional Carriers' joinder to BCGI's motion for a stay waives jurisdictional defenses as your December 16 letter contended.

Received:    1/ 6/06 10:56AM;                415 397 7188 -> JetFax M920;  Page 3
01/06/06  10:47 FAX 415 397 7188        KEKER & VAN NEST                    Ø003/003

Marshall M. Searcy, Esq.
January 6, 2006
Page 2


Litigating that issue would be a waste of time and money especially in light of Freedom's current proposal.

Very truly yours,

Leo L. Lam

LLL/slr

cc:  Dean G. Bostock, Esq.

# EXHIBIT Q

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 6, 2006

<u>V<small>IA</small> F<small>ACSIMILE AND</small> U.S. M<small>AIL</small></u>

Leo L. Lamb
Keker & Van Nest
710 Sansome Street
San Francisco, CA 94111

Dean Bostock
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo,
P.C.
One Financial Center
Boston, MA 02111

Re:     <u>Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al., 05-11062-EFH</u>

Dear Counsel:

In response to your agreement to allow limited discovery, we would like to establish the following terms. Freedom requests 15 interrogatories and a 30(b)(6) witness who can testify with regard to the issues raised in the affidavits and motion to dismiss, for each moving Regional Carrier defendant. We can discuss adjusting the briefing schedule to accommodate this discovery.

Although Freedom is confident that the Court will find that the Regional Carriers have waived their personal jurisdiction defense through their prior appearances in this action, we agree to forgo this argument in exchange for the requested discovery. Please contact me to reschedule this discovery and to set a new date for Freedom's opposition.

Very truly yours,

Marshall Searcy

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
CHICAGO | 10 South Wacker Drive, Suite 2300, Chicago, Illinois 60606 | TEL 312-705-7400 FAX 312-705-7401
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

08930/1812919.1

# EXHIBIT R

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017   TEL 213-443-3000   FAX 213-443-3100

January 7, 2006

**VIA FACSIMILE AND U.S. MAIL**

Timothy J. Perry
Preti, Flaherty, Beliveau, Pachios & Haley LLP
10 High Street, Suite 502
Boston, MA 02110

Dean Bostock
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111

Re:    <u>Freedom Wireless, Inc. v. Boston Communications Group, Inc., Alltel Corp., Inc., *et al.*,</u>
       <u>No. 05-11062-EFH</u>

Dear Counsel:

On December 19th, 2005, the Regional Carrier Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction. Accompanying this motion were 15 declarations regarding the Regional Carriers' lack of contacts in Massachusetts. Similarly, defendant South Canaan also relies on a declaration to support its separate motion.

In so doing, defendants have gone beyond the pleadings to rely on factual assertions that Freedom has no opportunity to challenge. As such, the motions to dismiss are, in reality, motions for summary judgment. Such motions are premature, especially given that discovery has not even begun.

In Freedom I, when Rogers Wireless, Inc. moved to dismiss for lack of personal jurisdiction prior to discovery, the Court denied the motion. To avoid the same delay in the present action, we seek to agree to postpone Freedom's opposition to South Canaan's motion in order to pursue limited discovery into the issue of personal jurisdiction.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

08930/1812129.1

Freedom is in discussions with the Regional Carriers on this matter, and is in the process of formulating a briefing schedule for the proposed discovery. Please let us know your position by the close of business on Monday, January 9, 2005.

Very truly yours,

Marshall M. Searcy

MMS:mms
08930/1812129.1

# EXHIBIT S

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street · 10 Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 7, 2006

**VIA FACSIMILE AND U.S. MAIL**

Leo L. Lamb
Keker & Van Nest
710 Sansome Street
San Francisco, CA 94111

Dean Bostock
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo,
P.C.
One Financial Center
Boston, MA 02111

Re:    Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al., 05-11062-EFH

Dear Counsel:

In further consideration of our agreement to postpone Freedom's response to the Regional
Carriers' motion to dismiss, Freedom also asks for document requests on the issues raised in the
defendants' motions to dismiss and affidavits, in addition to the interrogatories and 30(b)(6)
witness previously requested.

Very truly yours,

Marshall Searcy

MMS:mms
08930/1813121.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

08930/1813121.1

# EXHIBIT T

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 10, 2006

**VIA FACSIMILE AND U.S. MAIL**

Michael Page
Keker & Van Nest LLP
710 Sansome St.
San Francisco, CA 94111-5400

Re:     Freedom Wireless v. BCGI, Alltel, et al, Case No. 05-11062

Dear Michael:

Thank you for speaking with me yesterday about potentially allowing limited discovery before Freedom files its opposition to the motion to dismiss, but we have decided to file our opposition today as planned. We are concerned that some of the limits on discovery may restrict our ability to fully determine the regional defendants' contacts with Massachusetts. For example, defendants were unwilling to produce its correspondence with BCGI, or allow depositions for more than 5 of the many affiants. Not to mention that South Canaan has not yet responded to our requests to meet and confer, and we must therefore respond at least to their motion to dismiss today.

Should the Court decide that it cannot reach the merits of defendants' personal jurisdiction argument in the absence of such discovery, we will likely resume our attempts to agree upon a scope of discovery related to defendants' motion.

Very truly yours,

*Eric P. Taggart*

Erica Taggart

EPT:wp
08930/1813872.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

# EXHIBIT U

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC.,          ) <br>                         ) <br>          Plaintiff,         ) | |

FREEDOM WIRELESS, INC.,                     )
                                            )
               Plaintiff,                   )
                                            )
       v.                                   )
                                            )
BOSTON COMMUNICATIONS GROUP,                )
INC., ALLTEL CORP., BAKERSFIELD             )
CELLULAR, DOBSON COMMUNICATIONS )
CORP., HONOLULU WIRELESS,                    )
CINCINNATI BELL WIRELESS,                    )
BLUEGRASS CELLULAR, INC., C1                 )
ARIZONA, THUMB CELLULAR LLC,                 )
GREAT LAKES OF IOWA INC. a/k/a               )
CELLONE OR IOWA ONE, UINTAH BASIN )
ELECTRONIC TELECOMMUNICATIONS               )
dba UBET WIRELESS, ILLINOIS VALLEY          )
CELLULAR RSA 2, INC. a/k/a ILLINOIS         )      Civil No. 05-11062-EFH
VALLEY CELLULAR, NEBRASKA                    )
WIRELESS TELEPHONE CO., SOUTH                )
CANAAN TELEPHONE CO., MATANUSKA )
TELEPHONE ASSOCIATION dba MTA                )
WIRELESS, FIRST CELLULAR OF                  )
SOUTHERN ILLINOIS, BRAZOS                    )
CELLULAR INC., CELLULAR ONE OF               )
EAST CENTRAL ILLINOIS, FARMERS               )
CELLULAR, MOUNTAIN STATE                     )
CELLULAR INC., MID-MISSOURI                   )
TELEPHONE CO., EAST KENTUCKY                  )
NETWORK LLC dba APPALACHIAN                  )
WIRELESS, BAUCE COMMUNICATIONS              )
OF BEAUMONT, INC. dba CENTENNIAL            )
WIRELESS a/k/a CENTENNIAL                    )
COMMUNICATIONS CORP., BTC                    )
MOBILITY, MOBILETEL INC., and DOES 1- )
20 et al.,                                   )
                                            )
               Defendants.                  )

## NOTICE OF MANUAL FILING WITH CLERK'S OFFICE

Notice is hereby given that the documents, exhibits or attachments listed below have been manually filed with the Court under seal:

1.  Exhibit U to the Affidavit of Marshall M. Searcy III -- Memorandum in Support of Motion of Defendant Rogers Wireless, Inc. for Summary Judgement for Lack of Personal Jurisdiction and for Non-Infringement, filed under seal in D. Mass. Civil Action No. 00-12234-EFH.

The original documents are maintained in the case file in the Clerk's Office.

Dated: January 10, 2006

Respectfully submitted,

FREEDOM WIRELESS, INC.

By their attorneys,

    /s/ Douglas C. Doskocil
Paul Ware (BBO #512240)
John Kenneth Felter, P.C. (BBO #162540)
Douglas C. Doskocil (BBO #558949)
Goodwin Procter LLP
Exchange Place
Boston, MA  02109-2881
Tel:  (617) 570-1000
Fax:  (617) 523-1231

A. William Urquhart
Marshall M. Searcy III
Erica Taggart
Quinn Emanuel Urquhart
Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(*Of Counsel*)