UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BOSTON COMMUNICATIONS GROUP, INC., ALLTEL CORP. *et al.*, <br><br> Defendants. | Civil Action No. 05-11062-EFH |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DEFENDANTS REGIONAL CARRIERS' FOR PROTECTIVE ORDER**

I.   **INTRODUCTION**

The "Regional Carriers"[1] hereby move under Fed. R. Civ. P. 26(c) for a protective order with respect to the documents, interrogatory responses, and deposition testimony that they have provided Plaintiff Freedom Wireless, Inc. ("Freedom") pursuant to the Court's January 24, 2006 Order re Jurisdictional Discovery as well as further materials to be produced in this litigation. To date, the Regional Carriers have produced approximately 300,000 pages of documents and served written discovery responses in compliance with the Court's Order. The Regional Carriers have

---

[1] The "Regional Carriers" consist of the following 15 codefendants: (1) Bluegrass Cellular, Inc., (2) Cellular Properties, Inc. d/b/a Cellular One of East Central Illinois, (3) Centennial Cellular Operating Co., LLC, (4) Cincinnati Bell Wireless LLC, (5) Dobson Cellular Systems, Inc., (6) East Kentucky Network, LLC d/b/a Appalachian Wireless, (7) Farmers Cellular Telephone, Inc. d/b/a Farmers Wireless, (8) Great Lakes of Iowa, Inc., (9) Marseilles Cellular, Inc. d/b/a Illinois Valley Cellular, (10) MTA Communications d/b/a MTA Wireless, (11) Mid-Missouri Cellular LLP, (12) Southern Illinois RSA Partnership d/b/a First Cellular of Southern Illinois, (13) South #5 RSA Limited Partnership d/b/a Brazos Cellular Communications, Ltd., (14) Thumb Cellular LLC, and (15) Uintah Basin Electronic Telecommunications d/b/a UBET Wireless.

374700.01

also been submitting to depositions, during which Freedom has examined company deponents regarding the information provided by the Regional Carriers. Because of the sensitive and proprietary nature of the business information provided in this discovery, the parties have thus far agreed to abide by the draft protective order proposed by the Regional Carriers while negotiations over a final protective order continue. This agreement was extended once and would expire on June 8, 2006.

Despite good-faith negotiations by the Regional Carriers, the parties have yet to agree on a final protective order. On June 6, Freedom refused to engage in any further negotiations. Because of the sensitive nature of the information that has been and continues to be provided to Freedom, the Regional Carriers respectfully request that the Court enter the protective order that the parties have followed without incident since discovery commenced.

## II.  DISCUSSION

### A.  Background

On January 24, 2006, the Court sanctioned limited discovery solely on the issue of personal jurisdiction. *See* Declaration of Andrew N. Shen ("Shen Decl."), Exh B. In particular, the Court required the Regional Carriers to respond to document requests and interrogatories from Freedom, and allowed Freedom to depose a representative from each Regional Carrier. Thus far, the Regional Carriers have provided Freedom with tens of thousands of documents as well as written responses to numerous interrogatories; and Freedom has deposed eight Regional Carriers and counting. *See id.*, ¶¶ 2-3.[2]

---

[2] Freedom served, and the Regional Carriers responded to, wide-ranging document requests and interrogatories. Freedom's broad document requests call for information pertaining to dozens of different topics. *See, e.g.,* Shen Decl., Exh. C. Freedom also propounded ten interrogatory subparts on each Regional Carrier despite the Court's explicit limitation of one interrogatory per codefendant. *See, e.g.,* Shen Decl., Exh. D.

374700.01

On March 23, the Regional Carriers proposed a draft protective order to Freedom. *See id.*, Exh. E. The proposed protective order is substantially similar to the protective order that governed the *Freedom I* litigation.[3] *See id.*, Exh. F. Freedom provided no comments or suggestions on the proposed protective order for over three weeks.[4] On April 4, Freedom agreed to abide by the Regional Carriers' proposed protective order for 30 days upon the Regional Carriers' initial document production (which was made on April 7, 2006). *See id.*, Exh. H. Over the next several weeks, the parties could not agree to final terms, so they agreed to extend the draft protective order another 30 days until June 8 to allow for further negotiations. *See id.*, Exhs. I-K. The additional negotiations have yet to result in a final agreement. *See id.*, Exhs. L-N. Rather than continue the dialogue, however, on June 6 Freedom abruptly announced that it refuses to engage in any further negotiations of the protective order. *See id.*, Exh. A.

For the past two months, Freedom has never indicated that the terms of the Regional Carriers' proposed protective order has hindered its efforts to conduct jurisdiction-related discovery or would interfere with future briefing. But instead of allowing for further good-faith discussions on the protective order, Freedom has forced the Regional Carriers to move the Court for the requested relief on short notice.

B.   **The Competing Protective-Order Proposals**

The Regional Carriers' proposed protective order follows two straightforward guidelines: (1) "Confidential" material may be disclosed to in-house counsel, outside counsel, and any non-legal representatives of each party that execute an undertaking that obliges them to abide by the

---

[3] *See Freedom Wireless, Inc. v. Boston Communications Group, et al.*, Civil Action No. 00-12234-EFH, Order re Defendants' Emergency Motion for Protective Order, December 8, 2004.

[4] On April 18, 2006, the Regional Carriers received Freedom's first "red-line" comments on their proposed protective order. *See* Shen Decl., Exh. G.

374700.01

protective order; (2) "Restricted Confidential—Attorney's Eyes Only" material may be disclosed to outside counsel only. Freedom's proposed protective order (*see* Shen Decl., Exh. G), on the other hand, substantially modifies the Regional Carriers' proposal to allow Freedom in-house access to broad, undefined areas of sensitive material.

### 1. Freedom's insistence on "Attorney's Eyes Only" access for its President and its VP of Engineering

First, Freedom insists on providing its in-house executives Larry Day and Dan Harned access to "Restricted Confidential – Attorney's Eyes Only" material ambiguously characterized as "financial data" and "defendant's technical implementation" information respectively. *See* Shen Decl., Exh. G at 6. Freedom has not defined either of these categories of information, but they would otherwise be restricted primarily to outside counsel under the general guidelines regarding "Restricted Confidential – Attorney's Eyes Only" material.

The Regional Carriers have declined these terms and have pointed out that Freedom can rely on independent consultants or experts to review such information. *See id.*, Exh. J. Indeed, the retention of third-party experts is a well-accepted method of balancing valid concerns regarding the disclosure of highly confidential information and the needs of opposing counsel in preparing for litigation. *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1992) ("court may restrict access to the disputed material to the opposing party's counsel, or may allow the parties to retain independent experts to evaluate material that is subject to the protective order"). Freedom has stubbornly refused this familiar and reasonable approach.

Given Mr. Day's role as Freedom's President and his competitive decision-making duties, he should not be allowed access to the Regional Carriers' "financial data." *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (access to discovery material may be

properly denied to those individuals who "are involved in competitive decisionmaking").

Freedom has countered that there is no evidence that Mr. Day ever misused "financial data" in *Freedom I*, but knows full well that any such misuse would be difficult to detect. Further, notwithstanding anyone's best intentions, the whole purpose of restricting sensitive business information from competitive decisionmakers is the inherent difficulty in avoiding the use of such material in course of their employment. *See United States v. Dentsply Int'l Inc.*, 187 F.R.D. 152, 159-60 (D. Del. 1999) (noting the limited ability of competitive decisionmakers to compartmentalize business information).

"Financial data" such as the Regional Carriers' revenues from prepaid wireless operations, revenue share arrangements, and its contracts with third parties other than BCGI—all of which Freedom has already explored in the limited Court-ordered discovery despite their questionable connection to the issue of personal jurisdiction—constitute some of the most closely held information within the increasingly competitive cellular telephone industry. The Regional Carriers have provided this information in discovery to comply with the Court's Order and should not be penalized for these good-faith efforts. Compared to the focused jurisdictional discovery ordered by the Court, Freedom's requests have been overbroad to the point of being abusive. The Regional Carriers nevertheless have responded, and now should not have to incur the potential harm posed by sharing their responsive information with Freedom's own President, a business executive of another company operating in the same cellular telephone industry.

Similarly, Mr. Harned, Freedom's Senior Vice President of Engineering, should not be allowed to access information relating to the Regional Carriers' technical implementation. Courts have recognized that technical information is also deserving of the highest level of protection. *See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20,

5

374700.01

22 (D. Del. 1988) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."). As the plaintiff in a patent lawsuit, Freedom cannot deny the value of technological innovations and protecting the secrecy of proprietary technical information. The Regional Carriers request that this category of sensitive information receive its just treatment.

### 2. Freedom's insistence on "Attorney's Eyes Only" access for counsel who may have involvement in patent prosecution

Second, Freedom insists on extending access to "Restricted Confidential – Attorney's Eyes Only" material to its counsel Robert Pressman, who may be involved in patent prosecution for Freedom despite a clear prohibition against such access. Paragraph seven of the Regional Carriers' proposed protective order provides that "any attorneys or support staff who currently are involved in patent prosecution of any prepaid cellular telephony patent application" shall not have access to material protected by the order. Shen Decl., Exh. E at 6-7. But Freedom added an exception that would allow Mr. Pressman to sidestep this restriction. *See id.*, Exh. G at 7.

Freedom initially stated that Mr. Pressman "has no intention of becoming patent prosecution counsel for Freedom." *Id.*, Exh. I. Based on Freedom's representation, the Regional Carriers indicated that it would not object to the language regarding Mr. Pressman if he "executes an agreement stating that he will not, in the future, be involved in patent prosecution for Freedom." *Id.*, Exh. J. Oddly, in response, Freedom claimed that the Regional Carriers "beg[ged] the question surrounding what it means to be involved in patent prosecution." *Id.*, Exh. M. The Regional Carriers have simply requested that Freedom back up its claim regarding Mr. Pressman, but Freedom has oddly refused. The extent of Mr. Pressman's previous, current, and future patent-prosecution activities for Freedom remains a mystery to the Regional Carriers;

6

and Freedom's shifting stance regarding Mr. Pressman fails to justify making an exception for him in the protective order.

### 3. Other areas of disagreement in the protective order

Freedom seeks a third broad exception for access to "Restricted Confidential – Attorney's Eyes Only" material via its proposed paragraph 6(f). *See* Shen Decl., Exh. G at 7. Freedom's proposed change provides that any witness in a deposition or trial is allowed to sensitive documents which mention that person by name. Upon receiving Freedom's explanation for its proposal—that such documents may be used to refresh the witness's recollection—the Regional Carriers proposed that the provision incorporate Freedom's stated rationale for the modification. *See id.*, Exh. L. But similar to its evasiveness with respect to Mr. Pressman, Freedom has refused to stand by its earlier representations and include its supposed rationale in the protective order. *See id.*, Exh. M. Including such rationale would clarify the provisions of the protective order. Given Freedom's unwillingness to stand by its own explanation, the changes it seeks to make should not be adopted to serve an ulterior motive or purpose.

There may be other, less significant aspects of the protective order over which the parties disagree, but the Regional Carriers have not had the opportunity to address them during the course of responding to Freedom's broad discovery requests. The Regional Carriers respectfully request that the Court enter the Regional Carriers' proposed protective order, which has been in place and honored for the past two months, in its entirety as the final protective order in this case.

### III. CONCLUSION

For the foregoing reasons, the Regional Carriers request that the Court enter their proposed protective order, attached as Appendix A to the proposed Order submitted with the present motion, as a final Order.

7

374700.01

Dated: June 8, 2006                                  Respectfully submitted,


                                        By:    /s/ Dean Bostock
                                            Dean G. Bostock, Esq. (BBO#549747)
                                            Patrick J. Sharkey, Esq. (BBO#454820)
                                            Mintz, Levin, Cohn, Ferris,
                                                Glovsky and Popeo, P.C.
                                            One Financial Center
                                            Boston, Massachusetts 02111

                                            Telephone: (617) 542-6000
                                            Facsimile: (617) 542-2241
                                            dbostock@mintz.com
                                            psharkey@mintz.com

                                            Michael H. Page
                                            Leo L. Lam
                                            Matthias A. Kamber
                                            Andrew N. Shen
                                            Kevin T. Reed
                                            KEKER & VAN NEST, LLP
                                            710 Sansome Street
                                            San Francisco, CA 94111-1704

                                            Telephone: (415) 391-5400
                                            Facsimile: (415) 397-7188
                                            mpage@kvn.com
                                            llam@kvn.com
                                            mkamber@kvn.com
                                            ashen@kvn.com
                                            kreed@kvn.com

                                            Attorneys for DEFENDANTS
                                            REGIONAL CARRIERS

374700.01

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 8, 2006.

                                            /s/ Dean Bostock
                                            Dean G. Bostock

LIT 1575711v.1

374700.01