# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., | ) Civil Action No. 05-11062-EFH |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOSTON COMMUNICATIONS GROUP, | ) |
| INC., et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF FREEDOM WIRELESS, INC.'S OPPOSITION TO DEFENDANTS REGIONAL CARRIERS' MOTION FOR PROTECTIVE ORDER

Plaintiff Freedom Wireless, Inc. hereby submits its opposition to defendants

Regional Carriers Motion for Protective Order.

## Preliminary Statement

Freedom does not oppose the entry of a reasonable protective order in this case. Yet, defendants insist that Freedom sign onto *every* term of *their* proposed protective order--no matter how those terms unjustifiably impair Freedom's ability to prepare its case.  If defendants' proposal were at all reasonable, Freedom would have agreed to it.  In fact, for months, Freedom negotiated with defendants on the terms of a protective order, even compromising when it became clear that some of Freedom's proposed provisions would be stumbling blocks to reaching an agreement.  Because of Freedom's willingness to compromise, very few of the terms of the proposed protective order remain contested.

On those remaining disputes, however, defendants continue to overreach, demanding unnecessary and unwarranted restrictions on Freedom's access to certain information. In particular, defendants argue that Freedom's President, Larry Day, and even one of Freedom's outside attorneys of record, Robert Pressman, must be denied access to information that defendants designate as "Attorneys' Eyes Only."  Similarly, defendants wish to preclude access to "Attorneys' Eyes Only" information by witnesses in the case, even if the witness is named in the designated document, and clearly should have access to the information to prepare to testify at deposition, or at trial.

Defendants do not even attempt to justify the restrictions in their proposed protective order, as required by the Federal Rules.  Indeed, rather than demonstrate that their proposals serve legitimate purposes, defendants merely raise conclusory and generalized assertions about the potential for harm from the disclosure of their purportedly confidential information.  But defendants' speculation and unfounded fears do not amount to good cause for a protective order.

Even so, Freedom is willing to agree that certain safeguards be put in place to ensure that information properly designated as confidential remains so. The Court should deny defendants' motion and enter the reasonable terms of the protective order proposed by Freedom.

### Statement of Facts

Pursuant to the Court's order of January 24, 2006, Freedom and defendants have engaged in discovery regarding the Court's personal jurisdiction.[1] In light of this exchange of information, defendants requested the imposition of a protective order; and the parties have abided by the terms of a draft protective order while negotiating a final version. The parties' negotiations have not resulted in an agreed-upon protective order. Instead, Freedom has objected to defendants' proposed protective order as unnecessarily restrictive, and strategically structured to prevent Freedom access to information rather than protect the legitimate confidentiality concerns of defendants.

Freedom has put forth a good faith effort to reach agreement with defendants on the terms of a protective order. Defendants have refused to engage in a meaningful meet and confer, as Freedom has made concessions to the defendants in the spirit of compromise, but has not received reciprocation even on insignificant changes.[2] Freedom and defendants are

---

[1]   Freedoms' discovery requests have been based in good faith upon the court's order. Defendants' repeated characterizations of Freedom's requests as "overbroad" and "abusive," (Motion at 2, 5), are not only inaccurate, but also irrelevant to the present motion.

[2]   Freedom has offered to forego its request to have Mr. Harned access "Attorney's Eyes Only" information, notwithstanding the fact that his technical knowledge and ability would be of assistance in reviewing the technical documents produced by defendants in connection with the preparation of Freedom's case. This agreement was made in exchange for the defendants' specific guarantee that Mr. Harned would not be asked about information designated "Attorney's Eyes Only" at deposition or trial. Letter to Erica Taggart from Andrew Shen, May 12, 2006 (Affidavit of Erica P. Taggart, dated June 22, 2006 ("Taggart Aff."), Exh. A). The redline draft of the defendants' proposed protective order attached as exhibit B to this Opposition incorporates this agreement, with the removal of Freedom's propose paragraph 6(d). Defendants never (footnote continued)

specifically unable to come to an agreement on three main aspects of the proposed protective order.[3]  First, Freedom has requested that its President Larry Day be given access to financial documents under the supervision of Freedom's counsel Quinn Emanuel at Quinn Emanuel's offices.  Second, Freedom suggested a clarification of paragraph 7 of the defendants' proposed protective order to ensure Freedom's outside counsel, Robert Pressman, would not be denied access to "Attorney's Eyes Only" designated information.  Finally, Freedom requested that a new paragraph 6(f) be added to defendants' proposed protective order so that witnesses receive access to information in which they have been named for preparation for trial or deposition.

However, during two months of negotiations, the parties have failed to reach agreement on the final terms of a protective order; and indeed, defendants have not been able to

---

responded to Freedom's request that the same agreement apply to Freedom's other inventor, Douglas Fougnies.  However, Freedom assumes that defendants will maintain the same position as to both inventors, and reserves its right to seek court intervention if defendants question either Mr. Harned or Mr. Fougnies regarding documents they have marked as "Attorneys' Eyes Only."

[3]  Freedom's redline of defendants' draft protective order contains additional minor changes which have not been the focus of negotiation, yet which Freedom nonetheless requests be adopted by the Court.  See Freedom's Redline of defendants' Stipulation and Protective Order ("Redline") (Taggart Aff., Exh. B).  These additional changes include:

- Expanding 3(f) to cover documents produced in Freedom I, Case No. 00-12234;

- Adding a new 5(c) to provide disclosure of "Confidential" material to Larry Day, Douglas Fougnies, and Dan Harned where necessary for the litigation.

- Changing the written statement on background to cover 4 rather than 10 years in paragraph 8;

- Adding language about identifying contested documents to the court to paragraph 10;

- Adding language to 12 to describe the loss of protection where information is used in any public proceeding;

- Expanding 17 to allow a challenge to a "Confidential" or "Attorney's Eyes Only" designation of information previously used in a public trial; and

- Condensing 19 to remove counsel's responsibility for court reporter compliance.

come to an agreement amongst themselves.[4]  Freedom now asks the Court to enter its redline version of the defendants' proposed draft protective order.

<div align="center">**Argument**</div>

I.    **DEFENDANTS CANNOT SHOW GOOD CAUSE FOR RESTRICTING THE ACCESS OF FREEDOM REPRESENTATIVES TO CERTAIN "ATTORNEY'S EYES ONLY" INFORMATION**

    A.    **Defendants' Generalized Assertions Regarding The Potential For Harm Do Not Amount To Good Cause**

A protective order may only be entered "for good cause shown."  Fed. R. Civ. P. 26(c).  "[A] finding of good cause to impound documents must be based on a particular factual demonstration of potential harm, not on conclusory statements."  FTC v. Standard Financial Mgt. Corp., 830 F.2d 404, 412 (1st Cir. 1987).  See also Alexander Housing LLC v. International Brotherhood of Electrical Workers, 2004 WL 1718654, at *3 (N.D. Ill. July 29, 2004)(The movant must demonstrate good cause by "provid[ing] 'specific examples of articulated reasoning', rather than 'stereotyped and conclusory statements' to support its assertion.").

Despite their burden under Rule 26, defendants do not even attempt to demonstrate good cause to enter their proposed protective order.  Instead, defendants merely speculate that they could be harmed by the disclosure of certain "Attorneys' Eyes Only" information to certain Freedom representatives.  For example, defendants argue that they "should not have to incur the *potential* harm posed by sharing their responsive information with Freedom's own President," and complain that "misuse would be difficult to detect . . . [and] the

---

    [4]  See Letter from Andrew Shen to Erica Taggart, June 5, 2006 (Taggart Aff. Exh. C) ("I agree that we should pursue a protective order that applies to all parties involved in this litigation.  However, at this time, defense counsel have so far been unable to reach an understanding regarding the terms of an appropriate protective order.  In order to adopt a protective order that will satisfy the valid confidentiality concerns of all defendants, we need additional time to discuss the draft protective order.")

whole purpose of restricting sensitive business information from competitive decision-makers is the inherent difficulty in avoiding the use of such material in the course of employment." (Motion at 5) (emphasis added).  Defendants' unsupported arguments about the potential for harm are insufficient under Rule 26.  See Alexander, 2004 WL 1718654 at *3  (holding the claim that disclosure "*could* cause our business competitive harm, impair the information's commercial value and competitive worth, or otherwise be commercially injurious" to be an "equivocal, conclusory statement" not sufficient for a showing of good cause).

> **B.      Freedom's President, Larry Day, Should Be Permitted Access To Financial Information**

By contrast, Freedom has a good reason for requesting that Freedom's representatives have access to purportedly confidential information.  Specifically, Freedom requests that its President, Larry Day, be given access to financial information.  As Freedom's President, Mr. Day has extensive knowledge of both Freedom's financial situation, and of the prepaid wireless industry.  Without access to financial information, Mr. Day will not be able to effectively assist counsel in preparation of the litigation.

Nonetheless, defendants argue that Freedom does not need to be able to show Mr. Day financial information because it "can rely on independent consultants or experts to review such information."  (Motion at 4).  Freedom is a small company of four employees that has spent the last six years attempting to enforce its valid patents.  With its limited resources, Freedom should not be obligated to hire costly experts to replace the knowledge of its President-- especially when they can establish good cause for permitting Mr. Day to have access to financial information.  See THK America, Inc. v. Nippon Seiko K.K. and NSK Corp., 141 F.R.D. 461, 462 (N.D. Ill. 1991) (allowing a company president to view production of sensitive technical documents where president was "the most knowledgeable person about the issues in [the] case

[and] should be able to assist in the evaluation and prosecution of his company's suit on his patented inventions.); <u>Medtronic Sofamor Danek, Inc. v. Michelson</u>, 2002 WL 33003691 at *3 (W.D. Tenn. January 30, 2002) (permitting a president of a small company to view production of sensitive technical documents from opposing party, where president was most knowledgeable, had access to those documents in the past, and there was little risk of use of the information in direct competition.).

   Although defendants offer no justification for denying Mr. Day access to financial information, Freedom has proposed that safeguards be put in place to ensure that the information remain confidential.  All financial information designated "Attorney's Eyes Only" would remain in the custody of Quinn Emanuel.  Mr. Day's only access would be at counsel's offices.  Without any justification, defendants reject this proposal as "an insufficient safeguard as he would be able to recall at least some of the sensitive financial information at a later time."[5]  But defendants have no reason to believe that Mr. Day's recollections of financial information will somehow be put to improper use; and indeed, Freedom has stated that it would agree to the requirement that Mr. Day sign the defendants' undertaking attached as Exhibit A to their proposed protective order prior to viewing "Confidential Material."[6]  Under penalty of perjury the undertaking prohibits any signatory from disclosing  or using "'Confidential Material' for any purpose not connected with the prosecution or defense of this case" and binds the signatory to all provisions of the protective order.[7]

---

[5] Letter to Erica Taggart from Andrew Shen, May 12, 2006 (Taggart Aff., Exh. A).

[6] Letter to Andrew Shen from Erica Taggart, May 4, 2006 (Taggart Aff., Exh. D)

[7] Agreement To Be Bound By Protective Order Pursuant To Stipulation, Exhibit A to defendants' draft Stipulation and Protective Order (Taggart Aff., Exh. E ).

These same safeguards were successfully employed in the prior litigation by Freedom against BCGI, and other defendants ("Freedom I").[8] In more than six years of litigation in Freedom I, there has not been a single allegation or even suggestion that Mr. Day has used confidential information improperly. Additionally, in Freedom I, despite defendants' insistence on the need for a protective order regarding the highly sensitive information at issue, in more than fifty days of trial, defendants never once asked that the proceedings be closed to Mr. Day, or any member of the public. Without any indication that Mr. Day has or will act inappropriately with defendants' confidential information, defendants' insistence on this restriction in the protective order appears to be motivated by an improper strategic purpose, namely to hinder Freedom's ability to prepare its case. Such gamesmanship is clearly inappropriate.

## II.  AS OUTSIDE COUNSEL FOR FREEDOM, ROBERT PRESSMEN SHOULD BE GIVEN ACCESS TO "ATTORNEY'S EYES ONLY" INFORMATION

Defendants also refuse to incorporate language into the protective order to address Freedom's request that Mr. Pressman--an attorney of record for Freedom--be given access to all material produced in this matter. Despite Freedom's many assurances, defendants continue to believe that Mr. Pressman "may be involved in patent prosecution for Freedom despite a clear prohibition against such access." (Motion at 6). Such a fear is wholly unfounded. As an attorney of record for Freedom in this action, Mr. Pressman should, by all rights, have access to "Attorneys' Eyes Only" information.

In paragraph 7 of the defendants' proposed protective order, those attorneys involved in patent prosecution are denied access to Confidential Material. The defendants do not define what was meant by "patent prosecution" in that paragraph. Therefore Freedom requested

---

[8]  Draft Joint Stipulation and Protective Order Concerning Confidentiality, regarding the first Freedom Wireless litigation (Taggart Aff., Exh. F).

clarifying language be added, in order to ensure that Mr. Pressman, who has not been involved in Freedom's patent prosecution since agreeing to operate according to a draft protective order in Freedom I, would not be denied access to such Confidential Material.[9]  This language was not meant to indicate that Mr. Pressman intends to ever become patent prosecuting counsel for Freedom.  In fact, as Mr. Pressman confirmed in two prior depositions in Freedom I, and Freedom's counsel reiterated in the current negotiations over the proposed protective order,[10] Mr. Pressman does not take any role in patent prosecution and has no intention of doing so.[11]  In short, defendants have no good reason for denying Freedom's attorney of record access to information designated as "Attorneys' Eyes Only."

III.    **FREEDOM SHOULD BE PERMITTED TO USE "ATTORNEY'S EYES ONLY" INFORMATION FOR THE LIMITED PURPOSE OF PREPARING CERTAIN WITNESSES FOR TRIAL OR DEPOSITION**

        Finally, defendants have not shown good cause for depriving witnesses of the ability to prepare to testify at deposition or trial by reviewing documents when those documents describe events in which the witnesses participated (such as meetings), or specifically name them.  As originally presented by the Regional Carriers, only those individuals who authored or previously received a document designated "Attorney's Eyes Only" would be given access to

---

    [9]   In Freedom's redline, Freedom added, "This provision shall not extend to Robert Pressman, unless and until he becomes prosecuting attorney identified to the PTO as such for any patent application of Freedom Wireless."  (Taggart Aff., Exh. B).

    [10]   Letter to Andrew Shen from Erica Taggart, May 4, 2006 (Taggart Aff., Exh. D)

    [11]   Excerpt of Deposition of Robert Pressman, December 1, 2004, at 166-167 (Taggart Aff., Exh. G) (A. . . "What I said, there was some point in time when, assuming the protective order was operable, if it was operable, I no longer could be involved in the prosecution.  Q.  And you haven't been involved in the prosecution since that time?  A.  Correct.  Q.  Have you been kept apprised of what's going on in the patent prosecution process?  A.  No.  Q.  Not at all?  A. No.").

such a document.[12]  Freedom requested that 6(f) be added, allowing the following individuals to

have limited access to "Attorney's Eyes Only" information: "[a]ny person who is scheduled to

appear as a witness for a deposition or trial, where the document in question names that person,

and as long as such documents remain in the custody of the party's outside counsel during that

witness' review."  Despite Freedom's proposal of narrowly tailored language to meet this

concern, and defendants' concession that Freedom's concern is legitimate, defendants continue to

resist agreement on this issue.[13]  Contrary to defendants' apparent understanding,[14] Freedom is

not asking permission to show an "Attorney's Eyes Only" document to anyone named in it, but

rather only to those few individuals, noticed as a witness by the defendants.  Nonetheless,

Freedom would be willing to further modify its proposal to require advance written notice, for

example 5 business days prior to a noticed deposition, that a party intends to question a witness

at deposition or trial with documents otherwise designated as "Attorneys' Eyes Only."  If such

notice is given, then the witness should be permitted to review the document.  However, to allow

the defendants to surprise a witness with questions about such documents in the absence of

proper preparation would be unfair.

---

[12]  Freedom's redline, paragraph 6(e) (Taggart Aff., Exh. B) ("Any person who authored or previously received the particular Confidential Material sought to be disclosed to that person, and, subject to timely objection, any person employed by the party that designated the particular document or piece of information as confidential.").

[13]  Letter to Erica Taggart from Andrew Shen, May 12, 2006 (Taggart Aff., Exh. A). Following Freedom's response the Regional Carriers have made no further correspondence regarding this paragraph.  Letter to Andrew Shen from Erica Taggart, May 15, 2006 (Taggart Aff., Exh. H).

[14]  Letter to Erica Taggart from Andrew Shen, May 12, 2006 (Taggart Aff., Exh. A) ("While I recognize that your stated purpose for the inclusion of paragraph 6(f) is legitimate, providing access to all 'Restricted Confidential - Attorney's Eyes Only' material to individuals 'named' in those documents is unnecessarily broad.").

## Conclusion

For the foregoing reasons, the Court should deny defendants' motion for protective order, and enter the protective order proposed by plaintiff Freedom.

Dated: June 22, 2006

Respectfully submitted,

FREEDOM WIRELESS, INC.
By their attorneys

/s/ Erica P. Taggart
_____
John Kenneth Felter (BBO# 162540)
Paul F. Ware, Jr. (BBO #516240)
Douglas C. Koskocil (BBO #558949)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
(617) 570-1000

Marshall M. Searcy III
Erica P. Taggart
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(*pro hac vice*)

Attorneys for plaintiff Freedom Wireless, Inc.

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2006.

/s/ Erica P. Taggart
_____
Erica P. Taggart

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FREEDOM WIRELESS, INC., | ) | Civil Action No. 05-CV-11062-EFH |
| Plaintiff, | ) | |
| v. | ) | |
| BOSTON COMMUNICATIONS GROUP, INC. et al., | ) | |
| Defendants. | ) | |
| AND RELATED COUNTERCLAIMS | ) | |

## AFFIDAVIT OF ERICA P. TAGGART IN SUPPORT OF PLAINTIFF FREEDOM WIRELESS, INC.'S TO DEFENDANTS REGIONAL CARRIERS' MOTION FOR PROTECTIVE ORDER

I, Erica P. Taggart, declare as follows:

1.     I am an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff Freedom Wireless, Inc.  I submit this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached as Exhibit A is a true and correct copy of a letter to Erica Taggart from Andrew Shen, dated May 12, 2006.

3.     Attached as Exhibit B is a true and correct copy of Freedom Wireless' redline of defendants' Stipulation and Protective Order.

4.     Attached as Exhibit C is a true and correct copy of a letter from Andrew Shen to Erica Taggart, dated June 5, 2006.

08930/1906249.1

5.    Attached as Exhibit D is a true and correct copy of a letter to Andrew Shen from Erica Taggart, dated May 4, 2006.

6.    Attached as Exhibit E is a true and correct copy of the Agreement To Be Bound By Protective Order Pursuant To Stipulation, Exhibit A to defendants' draft Stipulation and Protective Order.

7.    Attached as Exhibit F is a true and correct copy of the Draft Joint Stipulation and Protective Order Concerning Confidentiality, adhered to in the first Freedom Wireless litigation (Case No. 00-CV-12234 EFH).

8.    Attached as Exhibit G is a true and correct copy of an excerpt from the Deposition of Robert Pressman, December 1, 2004, at pages 166-167

9.    Attached as Exhibit H is a true and correct copy of a letter to Andrew Shen from Erica Taggart, dated May 15, 2006.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of June 2006, in Los Angeles, California.

*E. P. Tagt*

Erica P. Taggart

# EXHIBIT A

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ANDREW N. SHEN
ASHEN@KVN.COM

May 12, 2006

**VIA FACSIMILE**

Erica Taggart
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:    *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*
        Civil Action No. 05-11062-EFH

Dear Erica:

      I am writing to respond to your May 5, 2006 letter regarding the draft protective order. The statements below are made on behalf of the Regional Carriers and do not represent the views of any of the other defendants in this action.

      As defined in paragraph 2, the draft protective order distinguishes between material designated as "Restricted Confidential—Attorney's Eyes Only" and "Confidential."[1] Paragraph 5 of the draft protective order is entitled "Disclosure of 'Confidential' Material," i.e., material designated as "Confidential." The following section, paragraph 6, discusses the treatment of "Restricted Confidential—Attorney's Eyes Only" material. Paragraph 5(c) is unnecessary because, pursuant to paragraph 5(b), as "non-legal representatives" of Freedom, Mr. Day, Mr. Fougnies, and Mr. Harned may access material designated "Confidential" if they were to sign the undertaking attached as Exhibit A. Apparently, you have interpreted your desired paragraph 5(c) as modifying the access of these three Freedom employees to both "Confidential" and "Restricted Confidential—Attorney's Eyes Only" material. However, as explained, paragraph 5 only discusses the former category of material. Access to the latter category would thus be

---

[1] That same paragraph defines "Confidential Material" as material designated either "Confidential" or "Restricted Confidential—Attorney's Eyes Only." As such, "Confidential Material" encompasses a potentially larger category of documents than "Confidential."

**EXHIBIT A**

Erica Taggart, Esq.
May 12, 2006
Page 2

unaffected by your suggested paragraph 5(c). Please let me know if you disagree with my interpretation of these provisions or still insist on including this paragraph.

As to Mr. Day, I have not suggested that Freedom is required to hire any independent, third-party experts for this litigation. However, it would be grossly inappropriate for Mr. Day to have access to the Regional Carriers' sensitive financial data given his position as Freedom's President and the business decisions he must make in that role. While I appreciate that Quinn Emanuel will require assistance in the analysis of financial information, Mr. Day is an inappropriate source of expertise since he is a Freedom executive.[2] If you continue to believe otherwise, please provide some legal authority supporting your position. Please also propose a definition of "financial data" that describes the information to which you believe Mr. Day should have access.

As to Mr. Harned, in the interest of compromise, the Regional Carriers agree that they will not question him about its "Restricted Confidential – Attorney's Eyes Only" material. Thus, Mr. Harned would not have access to this category of documents unless permitted by another subsection of paragraph 6.

While I recognize that your stated purpose for the inclusion of paragraph 6(f) is legitimate, providing access to all "Restricted Confidential – Attorney's Eyes Only" material to individuals "named" in those documents is unnecessarily broad. Numerous sensitive business or technical documents produced by the Regional Carriers may "name" a person and would likely never be presented to a witness in order to refresh that person's recollection. Please provide alternative language that incorporates your justifications for access to this material.

With respect to Mr. Pressman and paragraph 7, we will not agree to your suggested edit unless Mr. Pressman executes an agreement stating that he will not, in the future, be involved in patent prosecution for Freedom. Since you have stated that he is not presently involved in such work (or has any intention of doing so in the future), I expect this will not be a problem. Please let me know if you have any objections to proceeding in this manner.

My earlier suggestion that we negotiate a single protective order for both cases arises out of a desire for efficiency, not for any "improper strategic reason." Since both cases involve several of the same parties and issues, one would think that two different protective orders would be unnecessary – especially from Freedom's perspective as the sole plaintiff in both actions. Further, I do not know the current status of the protective order in the Nextel action. However,

---

[2] Further, the absence of any claim that Mr. Day misused the financial data to which he had access in *Freedom I* is unpersuasive as it would be extremely difficult to detect whether Mr. Day had relied upon any of that information in making business decisions on behalf of Freedom. In addition, that Mr. Day's access to financial data would only take place in Quinn Emanuel's offices is an insufficient safeguard as he would be able to recall at least some of the sensitive financial information at a later time. Despite your assurances, the confidentiality of the Regional Carriers' financial data should be respected and Mr. Day should not have access to this material.

**EXHIBIT A**

Erica Taggart, Esq.
May 12, 2006
Page 3

in the interest of compromise, I will attempt to determine the state of that protective order and will forward provisions that may be relevant to our discussions.

Thank you.  Please let me know if you have any questions.

Sincerely,

Andrew Shen

ANS/rwt

cc:    Jeanine Zalduendo, Esq.

**EXHIBIT A**

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

               Plaintiff,

   v.

BOSTON COMMUNICATIONS GROUP,
INC., *et al.*,

               Defendants.

Civil Action No. 05-11062-EFH

## STIPULATION AND PROTECTIVE ORDER

WHEREAS, in the course of discovery in this patent case, it may be necessary for the parties to disclose trade secrets, proprietary information and other confidential research, development or commercial information within the meaning of Federal Rule of Civil Procedure 26(c), to opposing counsel, expert witnesses, and other persons; and,

WHEREAS, the parties agree that it would serve the interests of the parties to conduct discovery under this Stipulation and Protective Order pursuant to Fed.R.Civ.P. 26(c). Accordingly,

IT IS HEREBY STIPULATED AND AGREED by undersigned counsel, subject to the approval of the Court, as follows:

1.    <u>Scope</u>. This Protective Order shall apply to all information, documents and things subject to discovery in this action produced either by a party or a non-party in response to or in connection with any discovery conducted in this action, including without limitation, testimony adduced at depositions upon oral examination or upon written questions, answers to interrogatories, documents and things produced (including documents and things produced to the receiving party for inspection and documents and things provided to the receiving party, whether in the form of originals or copies), information obtained from inspection of premises or things, and answers to requests for admission as well as any and all copies, abstracts, digests, notes and

**EXHIBIT B**

summaries thereof (collectively referred to as "Discovery Materials") and also including without limitation testimony adduced at hearing or trial.

2.    <u>Definitions</u>.  The terms employed in this Protective Order are defined as follows:

a.    "<u>Restricted Confidential—Attorney's Eyes Only</u>":  Discovery Materials that have been maintained by the producing party or person as confidential and contain trade secret or other confidential information regarding proprietary technology, research, design or development; manufacturing methods, costs and capacities; marketing or sales; new products, business methods, or potential products or business methods; personnel data; information the disclosing party produces that it obtained in confidence outside this litigation from a third party; and any other information of a technical or financial nature may be designated as "RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY."

b.    "<u>Confidential</u>":  As a general guideline, information designated "CONFIDENTIAL" shall be those things that may be disclosed to the parties for the purposes of this litigation, but which must be protected against disclosure to third parties.  Discovery Materials that have been maintained by the producing party or person as confidential but do not qualify for treatment as "Restricted Confidential—Attorney's Eyes Only" may be designated as "Confidential."

c.    "<u>Confidential Material</u>":  Material designated "Confidential" or "Restricted Confidential—Attorney's Eyes Only" shall be referred to collectively as "Confidential Material."

3.    <u>Designation of Confidentiality</u>.  No designation of "Confidential" or "Restricted Confidential—Attorney's Eyes Only" shall be made unless counsel for the party producing the Discovery Material believes in good faith that the designated material is entitled to protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure.  The parties shall use their best, good faith efforts not to designate documents that a party is asserting, or intends to assert, as prior art, as Confidential Material.  Discovery Materials may be designated Confidential Material within the meaning of this Protective Order in the following ways:

**EXHIBIT B**

a.    In the case of documents and the information contained therein, designation shall be made by means of the following legend placed on any such document: "CONFIDENTIAL" or "RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY."

b.    In the case of computer disks, CD-ROMs or tapes, on the label cover or container of the disk, CD-ROM or tape, designation shall be made by placing the legend "CONFIDENTIAL" or "RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY" on such label or container. A designation as to anything of which inspection or sampling has been requested shall be made by placing a "CONFIDENTIAL" or "RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY" legend on the thing or container within which it is stored, or by some other means of designation agreed upon by the parties. To the extent a party prints out material from such computer disks, CD-ROMs or tapes, that party will immediately label the print-out with the same confidentiality designation on the container of the disk, CD-ROM or tape.

c.    In the case of interrogatory answers and the information contained therein, designation shall be made by means of a statement in each answer specifying the answer or part thereof designated as Confidential Material or by means of a statement at the conclusion of such answers specifying the answers or parts thereof designated as Confidential Material. The following legend shall be placed on the front of any set of interrogatory answers containing Confidential Material: "CONTAINS CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY MATERIAL. Designated parts not to be used, copied or disclosed except as authorized by court order."

d.    All testimony given at a deposition and each transcript of a deposition shall be presumptively treated as "Confidential—Attorney's Eyes Only" for a period of thirty (30) days following the deponent's counsel's receipt of the transcript of the deposition from the court reporter. Within that 30-day period, counsel for any party to this action or counsel for the deponent may designate certain, if any, pages of the transcript as "CONFIDENTIAL" or "RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY" by notifying all counsel of

**EXHIBIT B**

record in writing of such designation, and thereafter such pages shall be treated as Confidential

Material. Counsel for each party shall be responsible for marking the designated exhibits and

pages of copies of the transcript in their possession with the legend specified in paragraph 3(a)

above. Testimony given at a deposition may also be so designated by an appropriate statement at

the time of the giving of the testimony. If no such designation is made by counsel within 30 days

after receipt of the deposition by the deponent's counsel, the transcript shall be considered not to

contain Confidential Material. Use at deposition of a document previously designated as

Confidential Material shall have no effect on its designation.

        e.      During discovery, a party furnishing documents and things to another

party for inspection shall have the option to require that all or groups of documents and things be

treated as CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES

ONLY during inspection and to make its designations of particular documents and things at the

time copies of documents and things are produced or furnished.

        f.      The parties agree that under no circumstances shall any party show or

attempt to show any defendant or employee of any defendant a contract or the substantive

provisions of any contract between Boston Communications Group, Inc. ("BCGI") and any other

person. Nothing in this paragraph prohibits a party from showing any employee of a defendant a

contract between that defendant and BCGI to the extent otherwise allowable under this

Protective Order, including contracts that have been introduced as exhibits in open court

proceedings, including the trial in Case No. 00-12234.

    4.    <u>Use of Confidential Material</u>. Confidential Material shall be used by the

receiving person solely for the purpose of conducting this action, but not for any business or

other purpose whatsoever, whether directly or indirectly. Nothing contained in this Protective

Order shall preclude a party or non-party from using or disseminating its own Confidential

Material. The parties may not use any other party's Confidential Material in the prosecution of

any patent application. The parties also will not disclose any other party's "Restricted

Confidential—Attorney's Eyes Only" material to any person who is currently prosecuting any

**EXHIBIT B**

prepaid cellular telephony patent application for any party.

     5.    <u>Disclosure of "Confidential" Material</u>.  Material designated "Confidential" shall not be made public or disclosed to anyone other than to the following persons:

     a.    In-house and outside counsel actively involved in the above-entitled litigation, and paralegals, investigative, litigation support services, secretarial and clerical personnel, including outside copying services, who are engaged in assisting counsel in the above-entitled action and to whom it is necessary that the materials be disclosed for purposes of this litigation;

     b.    Non-legal representatives of each party under the condition that prior to any such disclosure to such a representative, that representative must first execute an undertaking in the form attached as Exhibit A;

     <u>c.    Freedom representatives Larry Day, Douglas Fougnies, and Dan Harned, where necessary that the material be disclosed for purposes of this litigation;</u>

     ~~c.~~<u>d.</u>    Upon compliance with and in accordance with the provisions of paragraph 8 herein, any expert, and employees and assistants under the control of such an expert, who (1) is engaged by counsel in this litigation, whether or not such expert is paid directly by a party, and (2) is not regularly employed by or associated with a party hereto and whose advice and consultations are being or will be used by a party hereto only in connection with this action to the extent necessary to perform their work on this litigation;

     ~~d.~~<u>e.</u>    Any person who authored or has previously received the particular Confidential Material sought to be disclosed to that person, and, subject to timely objection, any person employed by the party that designated the particular document or piece of information as confidential;

     ~~e.~~<u>f.</u>    Any interpreter, or court reporter or other shorthand reporter or typist translating, recording or transcribing testimony;

     ~~f.~~<u>g.</u>    Any other persons who are designated to receive CONFIDENTIAL material by order of this Court, after notice to the parties, or by written stipulation of the parties;

**EXHIBIT B**

and

g.h.____ the Court and Court personnel.

6.    Disclosure of "Restricted Confidential—Attorney's Eyes Only" Material.

Material designated "Restricted Confidential—Attorney's Eyes Only" shall not be made public

or disclosed to anyone other than to the following persons:

a.    In-house and Ooutside counsel actively involved in the above-entitled

litigation who are not prosecuting any prepaid cellular telephony patent application for the

parties, and paralegals, litigation support services, and secretarial and clerical personnel

including outside copying services, who are engaged in assisting counsel in the above-entitled

action, who are not prosecuting any prepaid cellular telephony patent application for the parties,

and to whom it is necessary that the materials be disclosed for purposes of this litigation;

b.    Upon compliance with and in accordance with the provisions of paragraph

8 herein, any expert, and employees and assistants under the control of such an expert, who (1) is

engaged by counsel in this litigation, whether or not such expert is paid directly by a party, and

(2) is not regularly employed by or associated with a party hereto and whose advice and

consultations are being or will be used by party hereto only in connection with this action to the

extent necessary to perform their work on this litigation;

c.    Freedom representative Larry Day where necessary that the material be

disclosed for purposes of this litigation and to the extent that the designated material concerns

financial data regarding any defendant, as long as such documents remain in the custody of

Freedom's outside counsel during Mr. Day's review;

d.____

e.e.____ Any person who authored or has previously received the particular

Confidential Material sought to be disclosed to that person, and, subject to timely objection, any

person employed by the party that designated the particular document or piece of information as

confidential;

f.    Any person who is scheduled to appear as a witness for a deposition or

**EXHIBIT B**

<u>trial, where the document in question names that person, and as long as such documents remain in the custody of the party's outside counsel during that witness' review;</u>

        ~~d.~~g.    Any interpreter, or court or other shorthand reporter or typist translating, recording or transcribing testimony;

        ~~e.~~h.    Any other persons who are designated to receive RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY material by order of this Court, after notice to the parties, or by written stipulation of the parties; and

        ~~f.~~i.    the Court and Court personnel.

7.      The parties hereto agree that, to the extent the same law firm may be acting both in a role as outside counsel actively involved in this litigation and as patent prosecution counsel for the same party or another party to this litigation, attorneys and support staff who currently are involved in patent prosecution of any prepaid cellular telephony patent application will not have access to Confidential Material.  Furthermore, any party may request that any other party designating information or documents as Confidential Material allow access by a particular individual to a particular document or particular information.  The parties agree that such requests will be considered in good faith and that access will not be unreasonably withheld.  <u>This provision shall not extend to Robert Pressman, unless and until he becomes the prosecuting attorney identified to the PTO as such for any patent application of Freedom Wireless.</u>

8.      <u>Procedure for Disclosure to Experts.</u>  Confidential Material shall not be disclosed to any person described in paragraphs 5(c) and 6(b) unless and until such person has executed an undertaking in the form attached as Exhibit A, and shall not be disclosed to any person described in paragraphs 5(c) and 6(b) unless and until the time period for objection to such disclosure (as specified below) has passed without objection from any party.  All executed undertakings shall be promptly provided to opposing counsel.  With respect to persons described in paragraphs 5(c) and 6(b), such executed undertaking must be provided to all other parties named in this action at least ten (10) business days before any initial disclosure of Confidential Material, along with a written statement setting forth such person's present residence address and business address,

**EXHIBIT B**

current employer and job title, and any company involved in the development or marketing of cellular telephone services or systems for whom said person has consulted or worked during the past ten four (410) years. If any party objects to the disclosure of Confidential Material to such person within ten (10) business days after receiving notice, no such disclosure shall be made to that person. Such objection must be for good cause, stating with particularity the reasons for the objection, and must be in writing served on all parties. Failure to make such an objection within ten (10) business days shall constitute approval. If the parties are unable to resolve their objections, the party seeking to make the disclosure may apply to the Court to resolve the matter. Upon the giving of notice of such an objection, no disclosure of the material or information in question shall be made until the parties resolve the objection or a ruling is made by the Court.

9.    <u>Rendering Advice of Counsel</u>. Nothing in this Protective Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to this case and, in the course thereof, relying in a general way upon his or her examination of Confidential Material produced or exchanged in this case, provided, however, that in rendering such advice and in otherwise communicating with his or her client, counsel shall not disclose (except to persons authorized to receive Confidential Material under paragraphs 5 and 6) the contents or the source of any Confidential Material produced by the other party.

10.    <u>Objections to Designations</u>. The failure of any party to object to the designation of Discovery Material as "Confidential" or "Restricted Confidential—Attorney's Eyes Only" at the time of its designation shall not be deemed a waiver of that party's right to challenge the propriety of such designation at any time thereafter. Should counsel object to the designation by a party of any Discovery Material as "Confidential" or "Restricted Confidential—Attorney's Eyes Only," counsel shall notify the designating party's counsel of the objections. If notice of such objection if received at any time, counsel shall promptly confer in an attempt to resolve the matter. If the matter remains unresolved, objecting counsel may then apply to the Court for a determination of whether the designation should be removed. <u>For purposes of applying to the Court, parties may identify contested documents by category or general description as long as it</u>

**EXHIBIT B**

is reasonably sufficient to identify all documents at issue. If no such application is made, the material will remain as designated. Any information which has been produced and designed as "Confidential Material" shall, under order of the Court, be treated as designated pending resolution of the dispute. The party making the designation of Confidential Material bears the burden of proving that it is Confidential Material.

This Protective Order shall not foreclose a party from moving this Court for an order that Confidential Material within the meaning of this Protective Order is, in fact, not confidential or otherwise protectable under Federal Rule of Civil Procedure 26(c). In addition, this Protective Order shall not prevent a party from applying to the Court for further or additional protective orders, or from agreeing to modification of this Order, subject to the approval of the Court.

11.    Use of Confidential Material in Court.  Confidential Material and the content of Confidential Material shall not be made public or disclosed to anyone except as provided in paragraphs 5, 6, 7 and 8. To the extent that it is necessary to file Confidential Material with the Court in connection with proceedings in this action, the party wishing to file any such Confidential Material, prior to or simultaneously with filing the Confidential Material, shall on each occasion move, pursuant to Local Rule 7.2, for an order of impoundment. The party filing any such Confidential Material pursuant to an order of impoundment by the Court shall file it with the Clerk of the Court in sealed envelopes marked with the caption of the case and the notation "CONTAINS CONFIDENTIAL INFORMATION TO BE OPENED ONLY AS DIRECTED BY THE COURT," or as otherwise directed by the Court. The Clerk of the Court is directed to impound and maintain under seal the envelope or container in accordance with this paragraph until further order of the Court.

12.    In the event that any CONFIDENTIAL or RESTRICTED CONFIDENTIAL— ATTORNEY'S EYES ONLY material is used in any court proceeding in connection with this litigation, it shall not lose its CONFIDENTIAL or RESTRICTED CONFIDENTIAL— ATTORNEY'S EYES ONLY status through such use, and the parties shall take all steps reasonably required to protect its confidentiality during such use, the party intending to use such

**EXHIBIT B**

Material shall notify all parties at least 10 days in advance of the court proceeding to allow sufficient time to apply to the Court for a protective order or other confidentiality measures. Once CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY material has been used in any court proceeding open to the public, it shall lose its CONFIDENTIAL status and thereafter be treated as a public document. Specifically, any trial exhibit either admitted or identified during the trial in Case No. 00-12234 is a public document and not subject to this Protective Order.

Subject to the Federal Rules of Evidence, Confidential Material may be offered in evidence at trial, provided that:

      a.     prior to the offer, the proponent of the evidence advises the Court and the designating party that Confidential Material will be offered;

      b.     the evidence shall be received *in camera* or under such other conditions to prevent disclosure to any persons other than the judge, the jury, the court reporter, counsel of record, any witness testifying with respect to the evidence, and other persons who are entitled to receive the appropriate category of Confidential Material under the terms of this Protective Order; and

      c.     the pertinent portions of the trial transcript that contain references to the substance of the Confidential Materials are treated in the manner described above for impounded materials under applicable local rules.

     13.    Designation of Confidential Material by Party Other Than Producing Party. Any party also may designate as CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY any other material or information specified in Paragraph 1 of this Order which has been furnished in this case by a nonparty (such as deposition testimony) that constitutes or reflects CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY material of the designating party under the terms of Paragraph 2 and 3 of this Order, whether or not the producing nonparty has also so designated. Nonparty materials produced in this case designated CONFIDENTIAL or RESTRICTED CONFIDENTIAL—

**EXHIBIT B**

ATTORNEY'S EYES ONLY by a nonparty or party shall be governed by the terms of this Order.

14.    <u>Secure Storage</u>.  The recipient of Discovery Materials designated as Confidential Material hereunder shall maintain such information, documents or things in a secure and safe area and shall exercise due and proper care with respect to the storage, custody, use and/or dissemination (including dissemination to persons identified in paragraphs 5 and 6) of such information, documents or things.

15.    <u>Preservation of Rights and Privileges</u>.  Nothing contained in this Protective Order shall affect the right, if any, or any party or non-party to make any other type of objection, claim, or other response to interrogatories, to requests for production of documents and/or things, to requests for admissions or to any questions at a deposition.  Nor shall this Protective Order be construed as a waiver by any party or non-party of any legally cognizable privilege to withhold any Discovery Material, or of any right which any party or non-party may have to assert such privilege at any stage of the proceedings.

Nothing in this Protective Order shall affect the rights of the parties concerning the presence of client representatives at trial.

Nothing in this Protective Order shall limit the right of any person who receives information designated as Confidential Material from using such information to the extent that the information (a) was in the possession or control of the recipient prior to the time it was disclosed under this Protective Order, (b) is public knowledge or becomes public knowledge through no fault or omission of the recipient, or (c) is lawfully obtained by the recipient from a third party.  In addition, nothing in this Order shall preclude any party to the lawsuit or its counsel in disclosing or using, in any manner or for any purpose, any information or documents from the party's own files which the party itself has designated as CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY.  Notwithstanding the foregoing, the parties hereby agree that they reserve the right and do not waive any right to object to disclosure of their Confidential Materials by third parties who may be in possession of

**EXHIBIT B**

such materials, and to designate such materials produced in this action as protected by this Stipulation and Order.

Inadvertent production of Discovery Material in this action shall not in itself be deemed to waive any claim of attorney-client privilege or attorney work-product protection that might exist with respect to such Discovery Material, or to other documents or communications, written or oral, including without limitation, other communications referred to in the Discovery Material produced. Nothing in this paragraph shall prejudice the right of any party to seek return of Discovery Materials as to which a claim of privilege has been made.

Except in the case of deposition testimony, which is governed by paragraph 3(c), above, the inadvertent or mistaken disclosure in this action of any Confidential Material by a producing party, without the designation required under Paragraphs 3 and 4, above, shall not constitute a waiver of any claim that the inadvertently disclosed material is entitled to protection under this Order, if such inadvertent or mistaken disclosure is brought to the attention of the receiving parties promptly after the producing party's discovery of such disclosure. Along with notice of inadvertent or mistaken disclosure, the producing party shall provide properly marked documents to each party to whom Confidential Material was inadvertently disclosed; and, upon receipt of these properly marked documents, the receiving party shall return to the producing party, or destroy, the improperly marked documents that were initially produced, along with any copies of duplicates thereof.

Counsel for the parties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY material that was inadvertently or unintentionally disclosed. Disclosure of such documents, information, responses or testimony prior to receipt of such notice to persons not authorized to receive CONFIDENTIAL or RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY information shall not be deemed a violation of this Protective Order; however, those persons to whom disclosure was made are to be advised that the material disclosed is CONFIDENTIAL or

RESTRICTED CONFIDENTIAL—ATTORNEY'S EYES ONLY and must be treated in accordance with this Protective Order.

16.     Notice of Requested Disclosure.  A party who contemplates disclosure of CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material requested in a validly served subpoena, civil investigative demand, discovery procedure permitted under the Federal Rules of Civil Procedure, or other formal discovery request shall give notice of such request, by facsimile and first class mail, upon the party which designated the material as CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY as soon as is reasonably possible to permit the designating party an opportunity to appear and be heard in connection with any motion to request to a court to order production of such CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material.

17.     Challenging Confidentiality Designations.  Nothing is this Order shall preclude any party from challenging the propriety of a CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY designation under this Order on the following or other appropriate grounds:  (a) that the designated information is available to the public other than through a breach of this Order or other duty of confidentiality; (b) that the designated information was already known to the receiving party at the time of the disclosure and was not subject to conditions of confidentiality; or (c) that the designated information was developed by the receiving party independently of any disclosure by the designating party; or (d) that the designated information has already been used as a demonstrative or trial exhibit at a public court proceeding.

18.     Using Confidential Material in Depositions.  In the event that counsel for a party believes it is necessary during the course of a deposition to show CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY materials to a deponent who is otherwise not permitted access to such CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material under the terms of this Order, counsel may immediately

seek consent to do so from counsel for the designating party or nonparty, who shall not unreasonably withhold such consent, provided that the deponent executes the ACKNOWLEDGMENT attached hereto. If such consent is withheld, the requesting counsel may apply to the Court for relief.

19.    <u>Return of Materials</u>.  Within sixty (60) days after the conclusion of the above-entitled action, including, without limitation, any appeal or retrial (or in the event that another action is then pending involving plaintiff and any defendant, sixty (60) days after the conclusion of that action), all Confidential Material shall be returned to counsel who produced it, or be destroyed, in which case the party destroying it shall certify that it has been destroyed, provided, however, outside counsel may retain one complete and unredacted set of deposition transcripts and pleadings and papers filed with the Court or served on the other party solely for reference in the event of, and only in the event of, further proceedings or litigation between the parties, or a dispute over the use of dissemination of CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material subject to the terms of this Order. As to those materials which contain or reflect Confidential material, but which constitute or reflect counsel's work product, all such work product may be maintained by counsel, but such work product shall be used only for the purpose of preserving a file on this action and shall not, without written permission of the party that disclosed the Confidential material or an Order of the Court, be disclosed to anyone other than those to whom such information was actually disclosed in accordance with this Protective Order during the course of this action. ~~Counsel retaining court reporters shall have the responsibility for ensuring their compliance with this paragraph and shall notify opposing counsel when compliance is complete.~~ Nothing herein shall require the return or destruction of pleadings or other papers filed with the Court or served by the parties, even of those pleadings or papers that contain or reflect Confidential Information; any such pleadings or papers not returned or destroyed remain subject to the provisions of this Order.

20.    <u>Continuing Effect</u>.  Upon conclusion of the above-entitled action, the provisions of this Protective Order shall continue to be binding. Participation by any party in the execution

**EXHIBIT B**

and implementation of this Protective Order, as well as any action undertaken pursuant to its provisions, shall not be deemed to constitute a submission by any party to the jurisdiction or venue of this Court and shall not waive the right of any party to challenge the sufficiency of service of process, jurisdiction, or venue of this Court, provided, however, that the signatures to this Stipulation and anyone who signs Acknowledgement A agrees to submit to the jurisdiction of the Court for the limited purpose of enforcing this Order.  Further, plaintiff agrees that it will not use any party's participation in this Joint Stipulation And Protective Order Concerning Confidentiality as an argument that that party waived its right to assert a defense of lack of personal jurisdiction.

21.     Effective Term.  This Protective Order shall remain in force and effect until modified in writing, superseded, or terminated by written consent of the parties or by Order of the Court made upon reasonable written request.

22.     Prior-Produced Documents and Information.  All producing parties have thirty (30) days after notice of entry of this Order within which to designate as Confidential Material any Discovery Material produced prior to notice of entry of this Order.

**IT IS SO STIPULATED.**

EXHIBIT B

Dated:  March 23, 2006                     Respectfully submitted,

 

 

_____
Marshall M. Searcy III
Erica P. Taggart
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
Tel:  (213) 443-3000
Fax:  (213) 443-3100

Paul F. Ware, Jr., P.C. (BBO #516240)
Douglas C. Doskocil (BBO #558949)
Goodwin Procter, LLP
Exchange Place
Boston, MA  02109-2881
Tel:  (617) 570-1000
Fax:  (617) 523-1231

Attorneys for Plaintiff Freedom Wireless, Inc.

Dated:  March 23, 2006

 

 

_____
Timothy J. Perry
Preti Flaherty Beliveau Pachios & Haley LLP
10 High Street, 5th Floor
Boston, MA  02110
Tel:  (617) 226-3800
Fax:  (617) 226-3801

Attorneys for Defendant South Canaan Cellular Communications Company and former defendant South Canaan Telephone Company

EXHIBIT B

Dated:  March 23, 2006

Patrick J. Sharkey (BBO #454820)
Dean G. Bostock (BBO #549747)
Mintz, Levin, Cohn, Ferris,
   Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone:  (617) 542-6000
Facsimile:  (617) 542-2241

Attorneys for Defendants
Alltel Corporation
Bluegrass Cellular, Inc.
Boston Communications Group, Inc.
Cellular Properties, Inc. (d/b/a Cellular One
   of East Central Illinois)
Centennial Cellular Operating Co. LLC
Cincinnati Bell Wireless LLC
Dobson Cellular Systems, Inc.
East Kentucky Network LLC (d/b/a
   Appalachian Wireless)
Farmers Cellular Telephone, Inc. (d/b/a
   Farmers Cellular)
Great Lakes of Iowa, Inc.
Marseilles Cellular, Inc. (d/b/a
   Illinois Valley Cellular)
Mid-Missouri Cellular LLP
MTA Communications (d/b/a MTA Wireless)
Southern Illinois RSA Partnership (d/b/a
   First Cellular of Southern Illinois)
South #5 RSA Limited Partnership (d/b/a
   Brazos Cellular Communications, Ltd.)
Thumb Cellular LLC
Uintah Basin Electronic Telecommunications
(d/b/a UBET Wireless)

**IT IS SO ORDERED.**

Dated:

By:  _____
        The Honorable Edward F. Harrington
        UNITED STATES SENIOR DISTRICT JUDGE

**EXHIBIT B**

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 05-11062-EFH |
| BOSTON COMMUNICATIONS GROUP, INC., *et al.*, | |
| Defendants. | |

## AGREEMENT TO BE BOUND
## BY PROTECTIVE ORDER PURSUANT TO STIPULATION

I, _____, hereby acknowledge that I have read the Protective Order executed and entered in connection with the case of *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, United States District Court for the District of Massachusetts, Case No. 05-11062-EFH, that I understand the provisions prohibiting the disclosure or use of "Confidential Material" for any purpose or in any manner not connected with the prosecution or defense of this case, and that I agree to be bound by all provisions of the aforesaid Protective Order. I understand that any "Confidential Material" I receive, any copies I make of any such material, and any other records or compilations that may be made regarding such information shall not be disclosed to others except as provided in the Protective Order, and shall be returned at the conclusion of this litigation to counsel of record for the party who provided the "Confidential Material" to me.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Signature

_____
Address

_____

**EXHIBIT B**

# EXHIBIT C

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

ANDREW N. SHEN
ASHEN@KVN.COM

June 5, 2006

**VIA FACSIMILE**

Erica Taggart
Quinn Emanuel Urquhart Oliver
& Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:     *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*
        Civil Action No. 05-11062-EFH

Dear Erica:

I am writing to request an additional thirty-day extension, until July 10, 2006, of our agreement to abide by the terms of the draft protective order proposed by the Regional Carrier defendants. As you are well aware, the current agreement between Freedom and the Regional Carrier defendants with respect to the draft protective order is set to expire on June 8.

In your letter of May 17, you stated, "Freedom will only agree to a final protective order once all defense counsel agree to its terms as we cannot have separate protective orders with each counsel." I agree that we should pursue a protective order that applies to all parties involved in this litigation. However, at this time, defense counsel have so far been unable to reach an understanding regarding the terms of an appropriate protective order. In order to adopt a protective order that will satisfy the valid confidentiality concerns of all defendants, we need additional time to discuss the draft protective order.

The Regional Carrier defendants have provided Freedom with numerous documents and interrogatory responses containing proprietary material in a good-faith effort to abide by Judge Harrington's January 24, 2006 Order re Jurisdictional Discovery. The Regional Carrier defendants have proceeded in this manner, despite the absence of a final protective order, with the expectation that the confidentiality of the business and technical information disclosed will be respected by Freedom.

374401.01

**EXHIBIT C**

Erica Taggart, Esq.
June 5, 2006
Page 2


     Please let me know if you will agree to this thirty-day extension by 5 PM PST on Tuesday, June 6, 2006.

     Thank you. Please let me know if you have any questions.

                            Sincerely,

                            Andrew Shen


ANS/rwt

cc:    Dov Grossman, Esq.
       John Cuddihy, Esq.
       Gregory T. Donoghue, Esq.
       Dean G. Bostock, Esq.

EXHIBIT C

# EXHIBIT D

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

May 4, 2006

**VIA FACSIMILE**
**415-397-7188**

Andrew Shen
710 Sansome Street
San Francisco, CA 94111-1704

Re:    _Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.,_
       _Case No. 05-11062-EFH_

Dear Andrew:

I am writing to respond to your letters of May 1 and 3 addressing the draft protective order.

When we initially agreed that paragraph 5(c) was redundant, that was under the belief that by signing the undertaking in Exhibit A, Mr. Day, Mr. Fougnies, and Mr. Harned would be able to access any "Confidential Material" as designated in the undertaking and defined in paragraph 2(c), where necessary for the purposes of this litigation.  In your letter, you now state that signing the undertaking would not permit Mr. Day, Mr. Fougnies, and Mr. Harned to access "all" Confidential Material, yet you do not indicate what of the Confidential Material requires further protection or any mechanism to provide this protection.  Please clarify your interpretation of this section, or Freedom will again have to insist on the inclusion of paragraph 5(c).

With respect to paragraph 6(c), Freedom remains insistent that Mr. Day be provided access to "financial data" under the supervision of Quinn Emanuel at their offices.  Mr. Day has extensive understanding of Freedom's financial information regarding its technology, and the resulting damages they have suffered from the infringement of this technology.  Freedom is not required to pay an outside expert to perform this function, especially when no one has the same knowledge or expertise as Mr. Day.  Additionally, Mr. Day has been given this access for the

**EXHIBIT D**

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

past 6 years and there has never been a claim that he used the information for anything other than legitimate case-specific purposes. That any access Mr. Day is given to financial data will occur in Quinn Emanuel's offices, should allay your fears that Mr. Day will use this information for anti-competitive purposes.

Regarding paragraph 6(d), Freedom has already offered to compromise, by restricting Mr. Harned's access to documents not authored by him or marked "Restricted Confidential - Attorney's Eyes Only," if defendants agree not to question him about any of those documents at deposition or trial. You did not address this suggestion in your letter, but rather stated that Freedom could obtain an independent, third-party expert. As mentioned above, Freedom is not required to obtain such an expert, and to do so would be inefficient when the individual most knowledgeable and best suited to assist this litigation is Mr. Harned himself.

In your third point, you suggest that paragraph 6(e) is sufficient to address our concerns behind the addition of paragraph 6(f). The problem lies in that a person noticed to be deposed or serve as a witness in trial may be asked about the events in documents or shown documents to refresh their recollection, in which they are referenced, yet which they did not author or otherwise receive. To allow for fair preparation of such a witness, it is imperative that they be familiar with all documents on which they could be questioned.

The addition of Mr. Pressman in paragraph 7, was not done as an indication that he intends to become patent prosecution counsel for Freedom. This should be evident from his two depositions in the first Freedom Wireless case and from the description of his firm on his website. However, because he has interacted with prosecution counsel in the past, we request that it be made explicit that he is not excluded from that limited work.

Additionally, we take issue with your recent insistence on adopting the protective order from case number 05-11061. For more than a month, we have been negotiating with regional carriers about a protective order that addressed the issues in this case. Neither Keker & Van Nest nor its clients are involved in the 11061 case. As you well know, Quinn Emanuel is not involved in the 11061 case and has not participated at all in the negotiation of that specific protective order. To suggest now, a month into the litigation, that we all adopt a protective order from another case can only be for improper strategic reasons. Again, we would be happy to consider specific provisions of that order that you feel are particularly relevant, but otherwise we will continue to negotiation the protective order for this case with the parties and counsel in this case.

Finally, in response to your May 3 letter, Freedom agrees to abide by the draft protective order for another month, until June 8, 2006, as long as all defense counsel agrees to do the same. Freedom believes this will provide ample time to resolve any disputes, or to allow the parties to apply for court intervention.



Very truly yours,

Erica Taggart /cn

Erica Taggart

EPT:jmz
08930/1878871.1

EXHIBIT D

# EXHIBIT E

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FREEDOM WIRELESS, INC.,

<div style="margin-left: 2em">Plaintiff,</div>

v.

BOSTON COMMUNICATIONS GROUP,
INC., *et al.*,

<div style="margin-left: 2em">Defendants.</div>

Civil Action No. 05-11062-EFH

## AGREEMENT TO BE BOUND
## BY PROTECTIVE ORDER PURSUANT TO STIPULATION

I, _____, hereby acknowledge that I have read the Protective

Order executed and entered in connection with the case of *Freedom Wireless, Inc. v. Boston*

*Communications Group, Inc., et al.*, United States District Court for the District of

Massachusetts, Case No. 05-11062-EFH, that I understand the provisions prohibiting the

disclosure or use of "Confidential Material" for any purpose or in any manner not connected

with the prosecution or defense of this case, and that I agree to be bound by all provisions of the

aforesaid Protective Order. I understand that any "Confidential Material" I receive, any copies I

make of any such material, and any other records or compilations that may be made regarding

such information shall not be disclosed to others except as provided in the Protective Order, and

shall be returned at the conclusion of this litigation to counsel of record for the party who

provided the "Confidential Material" to me.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

_____
Signature

_____
Address

_____

_____

**EXHIBIT E**

# EXHIBIT F

Sent by: QUINN EMANUEL

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> BOSTON COMMUNICATIONS GROUP, ) INC. et al.; ) <br><br> Defendants. ) <br><br>_____ ) <br> AND RELATED COUNTERCLAIMS. ) | No.   00-CV-12234 EFH <br><br><br> **JOINT STIPULATION AND PROTECTIVE ORDER CONCERNING CONFIDENTIALITY** |

## STIPULATION AND PROTECTIVE ORDER

WHEREAS, in the course of discovery in this patent case, it may be necessary for the parties to disclose trade secrets, proprietary information and other confidential research, development or commercial information within the meaning of Federal Rule of Civil Procedure 26(c), to opposing counsel, expert witnesses, and other persons; and

WHEREAS, the parties agree that it would serve the interests of the parties to conduct discovery under this Stipulation and Protective Order pursuant to Fed. R. Civ. P. 26(c). Accordingly,

IT IS HEREBY STIPULATED AND AGREED by undersigned counsel, subject to the approval of the Court, as follows:

1.    Scope.  This Protective Order shall apply to all information, documents and things subject to discovery in this action produced either by a party or a non-party in response to or in connection with any discovery conducted in this action, including without limitation, testimony

**EXHIBIT F**

Case 1:05-cv-11062-EFH    Document 112-2    Filed 06/22/2006    Page 37 of 68

Sent by: QUINN EMANUEL Case 1:00-cv-12234-EFH    Document 1225    Filed 12/01/2004    Page 2 of 25
10/09/01  5:11PM;JetFax #564;Page 5/30

adduced at depositions upon oral examination or upon written questions, answers to interrogatories, documents and things produced (including documents and things produced to the receiving party for inspection and documents and things provided to the receiving party, whether in the form of originals or copies), information obtained from inspection of premises or things, and answers to requests for admission as well as any and all copies, abstracts, digests, notes and summaries thereof (collectively referred to as "Discovery Materials") and also including without limitation testimony adduced at hearing or trial.

2.    Definitions. The terms employed in this Protective Order are defined as follows:

a.    "Confidential--Attorney's Eyes Only" or "Restricted Confidential -- Attorney's Eyes Only": Discovery Materials that have been maintained by the producing party or person as confidential and contain trade secret or other confidential information regarding proprietary technology, research, design or development; manufacturing methods, costs and capacities; marketing or sales; new products, business methods, or potential products or business methods; personnel data; information the disclosing party produces that it obtained in confidence outside this litigation from a third party; and any other information of a technical or financial nature may be designated as "Confidential--Attorney's Eyes Only" or "Restricted Confidential — Attorney's Eyes Only."

b.    "Confidential": As a general guideline, information designated "CONFIDENTIAL" shall be those things that may be disclosed to the parties for the purposes of this litigation, but which must be protected against disclosure to third parties. Discovery Materials that have been maintained by the producing party or person as confidential but do not qualify for treatment as "Confidential--Attorney's Eyes Only" may be designated as "Confidential."

c.    "Confidential Material": Material designated "Confidential" or "Confidential—Attorney's Eyes Only" or "Restricted Confidential — Attorney's Eyes Only" shall be referred to collectively as "Confidential Material."

**EXHIBIT F**

3.     <u>Designation of Confidentiality</u>.  No designation of "Confidential" or

"Confidential--Attorney's Eyes Only" or "Restricted Confidential – Attorney's Eyes Only" shall

be made unless counsel for the party producing the Discovery Material believes in good faith

that the designated material is entitled to protection under Rule 26(c)(7) of the Federal Rules of

Civil Procedure.  The parties shall use their best, good faith efforts not to designate documents

that a party is asserting, or intends to assert, as prior art, as Confidential Material.  Discovery

Materials may be designated Confidential Material within the meaning of this Protective Order

in the following ways:

a.     In the case of documents and the information contained therein,

designation shall be made by means of the following legend placed on any such document:

"CONFIDENTIAL" or "CONFIDENTIAL--ATTORNEY'S EYES ONLY" or "RESTRICTED

CONFIDENTIAL — ATTORNEY'S EYES ONLY."

b.     In the case of computer disks, CD ROMs or tape, on the label cover or

container of the disk, CD ROM or tape, designation shall be made by placing the legend

"CONFIDENTIAL" or  "RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY" on

such label or container.  A designation as to anything of which inspection or sampling has been

requested shall be made by placing a "CONFIDENTIAL" or "RESTRICTED CONFIDENTIAL

– ATTORNEY'S EYES ONLY" legend on the thing or container within which it is stored, or by

some other means of designation agreed upon by the ~~parties.~~

parties.  To the extent a party prints out material from such computer disks, CD ROMs or tape,

that party will immediately label the print-out with the same confidentiality designation on the

container of the disk, CD ROM or tape.

c.     In the case of interrogatory answers and the information contained therein,

designation shall be made by means of a statement in each answer specifying the answer or part

thereof designated as Confidential Material or by means of a statement at the conclusion of such

answers specifying the answers or parts thereof designated as Confidential Material.  The

following legend shall be placed on the front of any set of interrogatory answers containing

**EXHIBIT F**

Confidential Material: "CONTAINS CONFIDENTIAL or CONFIDENTIAL--ATTORNEY'S EYES ONLY MATERIAL. Designated parts not to be used, copied or disclosed except as authorized by court order."

    d.    All testimony given at a deposition and each transcript of a deposition shall be presumptively treated as "Confidential--Attorney's Eyes Only" for a period of thirty (30) days following the deponent's counsel's receipt of the transcript of the deposition from the court reporter. Within that 30-day period, counsel for any party to this action or counsel for the deponent may designate certain, if any, pages of the transcript as "CONFIDENTIAL" or "CONFIDENTIAL--ATTORNEY'S EYES ONLY" by notifying all counsel of record in writing of such designation, and thereafter such pages shall be treated as Confidential Material. Counsel for each party shall be responsible for marking the designated exhibits and pages of copies of the transcript in their possession with the legend specified in paragraph 3(A) above. Testimony given at a deposition may also be so designated by an appropriate statement at the time of the giving of the testimony. If no such designation is made by counsel within 30 days after receipt of the deposition by the deponent's counsel, the transcript shall be considered not to contain Confidential Material. Use at deposition of a document previously designated as Confidential Material shall have no effect on its designation.

    e.    During discovery, a party furnishing documents and things to another party for inspection shall have the option to require that all or groups of documents and things be treated as CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY during inspection and to make its designations of particular documents and things at the time copies of documents and things are produced or furnished.

    f.    The parties agree that under no circumstances shall any party show or attempt to show to any defendant or employee of any defendant a contract or the substantive provisions of any contract between Boston Communications and any other person. Nothing in this paragraph prohibits a party from showing any employee of a defendant a contract between

- 4 -

**EXHIBIT F**

Sent by: QUINN EMANUEL                                    10/09/01   5:12PM; Jetfax #564; Page 9/30

that defendant and Boston Communications to the extent otherwise allowable under this
Protective Order.

     4.    Use of Confidential Material.  Confidential Material shall be used by the
receiving person solely for the purpose of conducting this action, but not for any business or
other purpose whatsoever, whether directly or indirectly.  Nothing contained in this Protective
Order shall preclude a party or non-party from using or disseminating its own Confidential
Material.  The parties may not use any other party's Confidential Material in the prosecution of
any patent application.  The parties also will not disclose any other party's "Confidential –
Attorney's Eyes Only" or "Restricted Confidential" material to any person who is currently
prosecuting ~~patent applications~~any prepaid cellular telephony patent application for any party.

     5.    Disclosure of "Confidential" Material.  Material designated "Confidential" shall
not be made public or disclosed to anyone other than to the following persons:

     a.    In-house and outside counsel actively involved in the above-entitled
litigation, and paralegals, investigative, litigation support services, secretarial and clerical
personnel, including outside copying services, who are engaged in assisting counsel in the
above-entitled action and to whom it is necessary that the materials be disclosed for purposes of
this litigation;

     b.    Non-legal representatives of each party under the condition that prior to
any such disclosure to such a representative, that representative must first execute an undertaking
in the form attached as Exhibit A;

     c.    Upon compliance with and in accordance with the provisions of paragraph
8 herein, any expert, and employees and assistants under the control of such an expert, who (1) is
engaged by counsel in this litigation, whether or not such expert is paid directly by a party, and
(2) is not regularly employed by or associated with a party hereto and whose advice and
consultations are being or will be used by a party hereto only in connection with this action to the
extent necessary to perform their work on this litigation;

EXHIBIT F

Sent by: QUINN EMANUEL

     d.    (i) any person who authored or previously received the particular

Confidential Material sought to be disclosed to that person, and (ii) any person employed by the

party that designated the particular document or piece of information as confidential unless such

party makes timely objection to such ~~disclosure, and (iii) any person not employed by a party~~

~~who has first executed an undertaking in the form attached as Exhibit A;~~disclosure;

     e.    Any interpreter, or court or other shorthand reporter or typist translating,

recording or transcribing testimony;

     f.    Any other persons who are designated to receive CONFIDENTIAL

material by order of this Court, after notice to the parties, or by written stipulation of the parties;

and

     g.    the Court and Court personnel.

    6.    <u>Disclosure of "Confidential--Attorney's Eyes Only" and "Restricted Confidential</u>

<u>— Attorney's Eyes Only" Material</u>.  Material designated "Confidential--Attorney's Eyes Only"

or "Restricted Confidential — Attorney's Eyes Only" shall not be made public or disclosed to

anyone other than to the following persons:

     a.    In-house and outside counsel actively involved in the above-entitled

litigation who are not prosecuting any ~~patent application~~prepaid cellular telephony patent

application for the parties, and paralegals,~~investigative and~~ litigation support services, and

secretarial and clerical personnel including outside copying services, who are engaged in

assisting counsel in the above-entitled action, who are not prosecuting any ~~patent~~

~~application~~prepaid cellular telephony patent application for the parties, and to whom it is

necessary that the materials be disclosed for purposes of this litigation;

     b.    Upon compliance with and in accordance with the provisions of paragraph

8 herein, any expert, and employees and assistants under the control of such an expert, who (1) is

engaged by counsel in this litigation, whether or not such expert is paid directly by a party, and

(2) is not regularly employed by or associated with a party hereto and whose advice and

EXHIBIT F

consultations are being or will be used by a party hereto only in connection with this action to the

extent necessary to perform their work on this litigation;

    c.    Any person who authored or has previously received the particular

Confidential Material sought to be disclosed to that person, and, subject to timely objection, any

person employed by the party that designated the particular document or piece of information as

confidential;

    d.    Any interpreter, or court or other shorthand reporter or typist translating,

recording or transcribing testimony;

    e.    Larry Day shall be permitted access to financial documents and <u>financial</u>

information designated as "Confidential—Attorney's Eyes Only" and "Restricted Confidential –

Attorney's Eyes ~~Only" (including, without limitation, agreements between Boston~~

~~Communications and the other defendants),~~<u>Only,"</u> provided that such access be obtained either at

the law offices of plaintiff's counsel, or at Lewis & Roca in ~~Arizona;~~

<u>Arizona and further provided that such access be limited to the Agreement To Be Bound</u>

<u>By Protective Order Pursuant to Stipulation signed by Mr. Day and attached as Exhibit B . For</u>

<u>purposes of this paragraph, "financial documents" and "financial information" shall mean</u>

<u>contracts for pre-paid cellular telecommunications service entered into between Boston</u>

<u>Communications Group, Inc. and any named defendant in the above-captioned patent litigation</u>

<u>and documents reflecting actual revenue and associated costs for pre-paid cellular</u>

<u>telecommunications services provided by Boston Communications Group, Inc. Additionally, at</u>

<u>Freedom Wireless, Inc.'s request, all named defendants shall use their best, good faith efforts to</u>

<u>determine whether particular documents meet the definition of "financial information" set forth</u>

<u>above, on a document by document basis. Otherwise, only those documents which have been</u>

<u>designated as "financial information" by the defendant possessing such information shall be</u>

<u>disclosed to Larry Day;</u>

**EXHIBIT F.**

Sent by: QUINN EMANUEL                                    07/08/01   5:13PM;JetFax #564;Page 12/30

f.      Any other persons who are designated to receive RESTRICTED

CONFIDENTIAL – ATTORNEY'S EYES ONLY material by order of this Court, after notice to

the parties, or by written stipulation of the parties; and

g.      the Court and Court personnel.

7.      The parties hereto agree that, to the extent the same law firm may be acting both

in a role as outside counsel actively involved in this litigation and as patent prosecution counsel

for the same party or another party to this litigation, attorneys and support staff who currently are

involved in patent prosecution of any prepaid cellular telephony patent application will not have

access to Confidential Material. Furthermore, any party may request that any other party

designating information or documents as Confidential Material allow access by a particular

individual to a particular document or particular information. The parties agree that such

requests will be considered in good faith and that access will not be unreasonably withheld.

8.      Procedure for Disclosure to Experts. Confidential Material shall not be disclosed

to any person described in paragraphs 5(c) and 6(b) unless and until such person has executed an

undertaking in the form attached as Exhibit A, and shall not be disclosed to any person described

in paragraphs 5(c) and 6(b) unless and until the time period for objection to such disclosure (as

specified below) has passed without objection from any party. All executed undertakings shall

be promptly provided to opposing counsel. With respect to persons described in paragraphs 5(c)

and 6(b), such executed undertaking must be provided to all other parties named in this action at

least ten (10) business days before any initial disclosure of Confidential Material, along with a

written statement setting forth such person's present residence address and business address,

current employer and job title, and any company involved in the development or marketing of

cellular telephone services or systems for whom said person has consulted or worked during the

past ten (10) years. If any party objects to the disclosure of Confidential Material to such person

within ten (10) business days after receiving notice, no such disclosure shall be made to that

person. Such objection must be for good cause, stating with particularity the reasons for the

objection, and must be in writing served on all parties. Failure to make such an objection within

**EXHIBIT F**

ten (10) business days shall constitute approval. If the parties are unable to resolve their objections, the party seeking to make the disclosure may apply to the Court to resolve the matter. Upon the giving of notice of such an objection, no disclosure of the material or information in question shall be made until the parties resolve the objection or a ruling is made by the Court.

9.    <u>Rendering Advice of Counsel</u>. Nothing in this Protective Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to this case and, in the course thereof, relying in a general way upon his or her examination of Confidential Material produced or exchanged in this case, provided, however, that in rendering such advice and in otherwise communicating with his or her client, counsel shall not disclose (except to persons authorized to receive Confidential Material under paragraphs 5 and 6) thespecific contents or the source of any Confidential Material produced by the other party.

10.    <u>Objections to Designations</u>. The failure of any party to object to the designation of Discovery Material as "Confidential" or "Confidential--Attorney's Eyes Only" or "Restricted Confidential — Attorney's Eyes Only" at the time of its designation shall not be deemed a waiver of that party's right to challenge the propriety of such designation at any time thereafter. Should counsel object to the designation by a party of any Discovery Material as "Confidential" or "Confidential--Attorney's Eyes Only," counsel shall notify the designating party's counsel of the objections. If notice of such objection is received at any time, counsel shall promptly confer in an attempt to resolve the matter. If the matter remains unresolved, objecting counsel may then apply to the Court for a determination of whether the designation should be removed. If no such application is made, the material will remain as designated. Any information which has been produced and designated as "Confidential Material," shall, under order of the Court, be treated as designated pending resolution of the dispute. The party making the designation of Confidential Material bears the burden of proving that it is Confidential Material.

This Protective Order shall not foreclose a party from moving this Court for an order that Confidential Material within the meaning of this Protective Order is, in fact, not confidential or otherwise protectable under Federal Rule of Civil Procedure 26(c). In addition, this Protective

EXHIBIT F

Order shall not prevent a party from applying to the Court for further or additional protective orders, or from agreeing to modification of this Order, subject to the approval of the Court.

11.     Use of Confidential Material in Court.  Confidential Material and the content of Confidential Material shall not be made public or disclosed to anyone except as provided in paragraphs 5, 6, 7 and 8.  To the extent that it is necessary to file Confidential Material with the Court in connection with proceedings in this action, the party wishing to file any such Confidential Material, prior to or simultaneously with filing the Confidential Material, shall on each occasion move, pursuant to Local Rule 7.2, for an order of impoundment.  The party filing any such Confidential Material pursuant to an order of impoundment by the Court shall file it with the Clerk of the Court in sealed envelopes marked with the caption of the case and the notation "CONTAINS CONFIDENTIAL INFORMATION TO BE OPENED ONLY AS DIRECTED BY THE COURT," or as otherwise directed by the Court.  The Clerk of the Court is directed to impound and maintain under seal the envelope or container in accordance with this paragraph until further order of the Court.

12.     In the event that any CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material is used in any court proceeding in connection with this litigation, it shall not lose its CONFIDENTIAL or  RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY status through such use, and the parties shall take all steps reasonably required to protect its confidentiality during such use.

        Subject to the Federal Rules of Evidence, Confidential Material may be offered in evidence at trial, provided that:

        a.      prior to the offer, the proponent of the evidence advises the Court and the designating party that Confidential Material will be offered;

- 10 -

**EXHIBIT F**

Sent by: QUINN EMANUEL

b.      the evidence shall be received *in camera* or under such other conditions to prevent disclosure to any persons other than the judge, the jury, the court reporter, counsel of record, any witness testifying with respect to the evidence, and other persons who are entitled to receive the appropriate category of Confidential Material under the terms of this Protective Order; and

c.      the pertinent portions of the trial transcript that contain references to the substance of the Confidential Materials are treated in the manner described above for impounded materials under applicable local rules.

13.     <u>Designation of Confidential Material By Party Other Than Producing Party.</u>  Any party also may designate as CONFIDENTIAL or ~~HIGHLY~~ RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY any other material or information specified in Paragraph 1 of this Order which has been furnished in this case by a nonparty (such as deposition testimony) that constitutes or reflects CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material of the designating party under the terms of Paragraph 2 and 3 of this Order, whether or not the producing nonparty has also so designated.  Nonparty materials produced in this case designated CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY by a nonparty or party shall be governed by the terms of this Order.

14.     <u>Secure Storage.</u>  The recipient of Discovery Materials designated as Confidential Material hereunder shall maintain such information, documents or things in a secure and safe area and shall exercise due and proper care with respect to the storage, custody, use and/or dissemination (including dissemination to persons identified in paragraphs 5 and 6) of such information, documents or things.

15.     <u>Preservation of Rights and Privileges.</u>  Nothing contained in this Protective Order shall affect the right, if any, of any party or non-party to make any other type of objection, claim, or other response to interrogatories, to requests for production of documents and/or things, to requests for admissions or to any questions at a deposition.  Nor shall this Protective Order be

- 11 -

**EXHIBIT F**

construed as a waiver by any party or non-party of any legally cognizable privilege to withhold any Discovery Material, or of any right which any party or non-party may have to assert such privilege at any stage of the proceedings.

Nothing in this Protective Order shall ~~limit~~affect the rights of the parties concerning the presence of client representatives at trial.

Nothing in this Protective Order shall limit the right of any person who receives information designated as Confidential Material from using such information to the extent that the information (a) was in the possession or control of the recipient prior to the time it was disclosed under this Protective Order, (b) is public knowledge or becomes public knowledge through no fault or omission of the recipient, or (c) is lawfully obtained by the recipient from a third party. In addition, nothing in this Order shall preclude any party to the lawsuit or its counsel in disclosing or using, in any manner or for any purpose, any information or documents from the party's own files which the party itself has designated as CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY. Notwithstanding the foregoing, the parties hereby agree that they reserve the right and do not waive any right to object to disclosure of their Confidential Materials by third parties who may be in possession of such materials, and to designate such materials produced in this action as protected by this Stipulation and Order.

Inadvertent production of Discovery Material in this action shall not in itself be deemed to waive any claim of attorney-client privilege or attorney work-product protection that might exist with respect to such Discovery Material, or to other documents or communications, written or oral, including without limitation, other communications referred to in the Discovery Material produced. Nothing in this paragraph shall prejudice the right of any party to seek return of Discovery Materials as to which a claim of privilege has been made.

Except in the case of deposition testimony, which is governed by paragraph 3(c), above, the inadvertent or mistaken disclosure in this action of any Confidential Material by a producing party, without the designation required under Paragraphs 3 and 4, above, shall not constitute a

EXHIBIT F.

waiver of any claim that the inadvertently disclosed material is entitled to protection under this Order, if such inadvertent or mistaken disclosure is brought to the attention of the receiving parties promptly after the producing party's discovery of such disclosure. Along with notice of inadvertent or mistaken disclosure, the producing party shall provide properly marked documents to each party to whom Confidential Material was inadvertently disclosed; and, upon receipt of these properly marked documents, the receiving party shall return to the producing party, or destroy, the improperly marked documents that were initially produced, along with any copies or duplicates thereof.

Counsel for the parties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material that was inadvertently or unintentionally disclosed. Disclosure of such documents, information, responses or testimony prior to receipt of such notice to persons not authorized to receive CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY information shall not be deemed a violation of this Protective Order; however, those persons to whom disclosure was made are to be advised that the material disclosed is CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY and must be treated in accordance with this Protective Order.

16.    Notice of Requested Disclosure.  A party who contemplates disclosure of CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material requested in a validly served subpoena, civil investigative demand, discovery procedure permitted under the Federal Rules of Civil Procedure, or other formal discovery request shall give notice of such request, by facsimile and first class mail, upon the party which designated the material as CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY as soon as is reasonably possible to permit the designating party an opportunity to appear and be heard in connection with any motion or request to a court to order production of such

EXHIBIT F.

Sent by: QUINN EMANUEL                                                    10/09/01  5:16PM; JetFax  #564;Page  19/30

CONFIDENTIAL or RESTRICTED CONFIDENTIAL – ATTORNEY'S EYES ONLY material.

17.     Challenging Confidentiality Designations.  Nothing is this Order shall preclude any party from challenging the propriety of a CONFIDENTIAL or RESTRICTED CONFIDENTIAL -- ATTORNEY'S EYES ONLY designation under this Order on the following or other appropriate grounds:  (a) that the designated information is available to the public other than through a breach of this Order or other duty of confidentiality; (b) that the designated information was already known to the receiving party at the time of disclosure and was not subject to conditions of confidentiality; or (c) that the designated information was developed by the receiving party independently of any disclosure by the designating party.

18.     Using Confidential Material In Depositions.  In the event that counsel for a party believes it is necessary during the course of a deposition to show CONFIDENTIAL or RESTRICTED CONFIDENTIAL -- ATTORNEY'S EYES ONLY materials to a deponent who is otherwise not permitted access to such CONFIDENTIAL or RESTRICTED CONFIDENTIAL -- ATTORNEY'S EYES ONLY material under the terms of this Order, counsel may immediately seek consent to do so from counsel for the designating party or nonparty, who shall not unreasonably withhold such consent, provided that the deponent executes the ACKNOWLEDGMENT attached hereto.  If such consent is withheld, the requesting counsel may apply to the Court for relief.

19.     Return of Materials.  Within sixty (60) days after the conclusion of the above-entitled action, including, without limitation, any appeal or retrial (or in the event that another action is then pending involving plaintiff and any defendant, sixty (60) days after the conclusion of that action), all Confidential Material shall be returned to counsel who produced it, or be destroyed, in which case the party destroying it shall certify that it has been destroyed, provided, however, outside counsel may retain one complete and unredacted set of deposition transcripts and pleadings and papers filed with the Court or served on the other party solely for reference in the event of, and only in the event of, further proceedings or litigation between the

EXHIBIT F.

parties, or a dispute over the use or dissemination of CONFIDENTIAL or RESTRICTED

CONFIDENTIAL -- ATTORNEY'S EYES ONLY material subject to the terms of this Order.

As to those materials which contain or reflect Confidential Material, but which constitute or

reflect counsel's work product, all such work product may be maintained by counsel, but such

work product shall be used only for the purpose of preserving a file on this action and shall not,

without written permission of the party that disclosed the Confidential Material or an Order of

the Court, be disclosed to anyone other than those to whom such information was actually

disclosed in accordance with this Protective Order during the course of this action.  Counsel

retaining court reporters shall have the responsibility for ensuring their compliance with this

paragraph and shall notify opposing counsel when compliance is complete.  Nothing herein shall

require the return or destruction of pleadings or other papers filed with the Court or served by the

parties, even of those pleadings or papers that contain or reflect Confidential Information; any

such pleadings or papers not returned or destroyed remain subject to the provisions of this Order.

    20.    Continuing Effect.    Upon conclusion of the above-entitled action, the

provisions of this Protective Order shall continue to be binding.  Participation by any party in the

execution and implementation of this Protective Order, as well as any action undertaken pursuant

to its provisions, shall not be deemed to constitute a submission by any party to the jurisdiction

or venue of this Court and shall not waive the right of any party to challenge the sufficiency of

service of process, jurisdiction, or venue of this Court, provided, however, that the signatures to

this Stipulation and anyone who signs Acknowledgment A agrees to submit to the jurisdiction of

the Court for the limited purpose of enforcing this Order.  Further, plaintiff agrees that it will not

use any party's participation in this Joint Stipulation And Protective Order Concerning

Confidentiality as an argument that that party waived its right to assert a defense of lack of

personal jurisdiction.

    21.    Effective Term.  This Protective Order shall remain in force and effect until

modified in writing, superseded, or terminated by written consent of the parties or by Order of

the Court made upon reasonable written request.

EXHIBIT F.

Sent by: QUINN EMANUEL    ;    10/09/01    5:17PM; JetFax_#564; Page 21/30

22.    Prior-Produced Documents and Information.  All producing parties have thirty

(30) days after notice of entry of this Order within which to designate as Confidential Material

any Discovery Material produced prior to notice of entry of this Order.

EXHIBIT F

Case 1:05-cv-11062-EFH     Document 112-2     Filed 06/22/2006     Page 52 of 68

Case 1:00-cv-12234-EFH     Document 1225     Filed 12/01/2004     Page 17 of 25
Sent by: QUINN EMANUEL                              10/09/01   5:17PM;JetFax #564;Page 22/30

**IT IS SO STIPULATED:**

PLAINTIFF FREEDOM WIRELESS, INC.

By its attorneys,

---

F. Dennis Saylor, IV (BBO #443710)
Douglas C. Doskocil (BBO #548949)
Cheryl L. Rainville (BBO #643844)
Goodwin, Procter & Hoar LLP
Exchange Place
Boston, MA  02109-2881
Telephone:     (617) 570-1000
Facsimile:     (617) 523-1231

A.  William Urquhart
Steven M. Anderson
Gregory P. Barbee
Quinn Emanuel Urquhart Oliver & Hedges, LLP
A Professional Corporation
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 624-7707
Facsimile:     (213) 624-0643

Robert A. Pressman, Esq.
Bramson & Pressman
1100 E. Hector Street
Suite 410
Conshohocken, PA 19428
Telephone:     (610) 260-4444
Telephone:     (610) 260-4445

Dated:  October __, 2001

DEFENDANTS BOSTON COMMUNICATIONS
GROUP, INC. and WESTERN WIRELESS
CORP., a/k/a and d/b/a CELLULAR ONE

By its attorneys,

**EXHIBIT F**

Sent by: QUINN EMANUEL                              10/09/01  5:17PM; Jetfax_#564;Page 23/30

Philip C. Swain  (BBO #544632)
Stephen B. Deutsch  (BBO #122000)
Vickie L. Henry  (BBO #632367)
John E. Nilsson (BBO #644085)
Foley, Hoag & Eliot LLP
One Post Office Square
Boston, MA  02109
Telephone:    (617) 832-1000
Facsimile:    (617) 832-7000

Dated:  October __, 2001


DEFENDANT AT&T WIRELESS SERVICES,
INC. and CMT PARTNERS, d/b/a CELLULAR
ONE OF SAN FRANCISCO

By itstheir attorneys,


Lawrence G. Green  (BBO #209060)
Perkins Smith & Cohen LLP
One Beacon Street, 30th Floor
Boston, MA  02108
Telephone:  (617) 854-4000
Facsimile:  (617) 854-4040

Christopher B. Hockett
McCutchen, Doyle, Brown & Enersen LLP
Three Embarcadero Center, Suite 1800
San Francisco, CA  94111
Tel. (415) 393-2612
Fax (415) 393-2286

Dated:  October __, 2001


AIR TOUCH COMMUNICATIONS, INC., BELL
ATLANTIC MOBILE,PRIMCO PERSONAL
COMMUNICATIONS, L.P., and CELLCO
PARTNERSHIP a/k/a and d/b/a VERIZON
WIRELESS

By their attorneys,


- 18 -

EXHIBIT F

Douglas J. Kline (BBO #556680)
Joan M. Griffin (BBO #549522)
Testa Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Telephone: (617) 248-7000
Facsimile: (617) 248-7100

Scott G. Lindvall
Pierre R. Yanney
Darby & Darby
805 Third Avenue
New York, NY 10022-7513
Tel. (212) 527-7700
Fax (212) 753-6237

Dated: October __, 2001

AIR TOUCH COMMUNICATIONS, INC.

By its attorneys,

Douglas J. Kline (BBO #556680)
Joan M. Griffin (BBO #549522)
Testa Hurwitz & Thibeault, LLP
125 High Street
Boston, MA 02110
Telephone: (617) 248-7000
Facsimile: (617) 248-7100

Scott G. Lindvall
Pierre R. Yanney
Darby & Darby
805 Third Avenue
New York, NY 10022-7513
Tel. (212) 527-7700
Fax (212) 753-6237

Arthur Wineburg
D. James Pak
Pillsbury Winthrop LLP

- 19 -

EXHIBIT F

Sent by: QUINN EMANUEL

1600 Tysons Boulevard
McLean, VA  22102
Tel: (703) 905-2000
Fax: (703) 905-2500

Alan J. Droste
Pillsbury Winthrop LLP
650 Town Center Drive
7th Floor
Costa Mesa, CA  92626-7122
Tel: (714) 436-6800
Fax: (714) 436-2800

Dated: October __, 2001

CINGULAR WIRELESS LLC

By its attorneys,


Marcus E. Cohn, P.C. (BBO #090820 )
Nicholas G. Papastavros  (BBO #635742)
Stacey L. DiJon (BBO # pending)
Nixon Peabody LLP
101 Federal Street
Boston, MA  02110-1832
Telephone:    (617) 345-1000
Facsimile:    (617) 345-1300

Denis R. Salmon
Michael Wilson
Gibson Dunn & Crutcher LLP
1530 Page Mill Road
Palo Alto, CA  94304
Telephone:    (650) 849-5300
Facsimile:    (650) 849-5333

Dated: October __, 2001

DEFENDANT ROGERS WIRELESS INC.

By its attorneys,


Mark P. Szpak (BBO #546261)

- 20 -

**EXHIBIT F**

Luke T. Cadigan (BBO #561117)
Christopher R. Dillon (BBO #640896)
Ropes & Gray
One International Place
Boston, MA 02110
(617) 951-7000

Mark D. Wegener
Edward Han
Martin Cunniff
Howrey Simon Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202.383.7048
Fax:  202.383.6610

Dated:  October __, 2001

**IT IS SO ORDERED:**

Dated: _____

_____
Hon. Edward F. Harrington
United States District Judge

**EXHIBIT F**

Sent by: QUINN EMANUEL

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREEDOM WIRELESS, INC., ) | No.    00-CV-12234 EFH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **AGREEMENT TO BE BOUND BY** |
| ) | **PROTECTIVE ORDER PURSUANT** |
| BOSTON COMMUNICATIONS GROUP, ) | **TO STIPULATION** |
| INC. et al.; ) | |
| ) | |
| Defendants. ) | |
| ) | |
| AND RELATED COUNTERCLAIMS. ) | |

I, _____, hereby acknowledge that I have read the Protective Order

executed and entered in connection with the case of <u>Freedom Wireless, Inc. v. Boston</u>

<u>Communications Group, Inc., et al.</u>, United States District Court for the District of

Massachusetts, Case No. 00-CV-12234-EFH, that I understand the provisions prohibiting the

disclosure or use of "Confidential Material" for any purpose or in any manner not connected

with the prosecution or defense of this case, and that I agree to be bound by all provisions of the

aforesaid Protective Order. I understand that any "Confidential Material" I receive, any copies I

make of any such material, and any other records or compilations that may be made regarding

such information shall not be disclosed to others except as provided in the Protective Order, and

shall be returned at the conclusion of this litigation to counsel of record for the party who

provided the "Confidential Material" to me.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

_____
Signature

**EXHIBIT F**

Sent by: QUINN EMANUEL                                  10/09/01  5:18PM;JetFax #564;Page 28/30

_____

Address

_____

_____

- 23 -

EXHIBIT F

## EXHIBIT B

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FREEDOM WIRELESS, INC., | ) | No.    00-CV-12234 EFH |
| Plaintiff, | ) | |
| v. | ) | **AGREEMENT TO BE BOUND BY** |
| | ) | **PROTECTIVE ORDER PURSUANT** |
| BOSTON COMMUNICATIONS GROUP, INC. et al.; | ) | **TO STIPULATION** |
| Defendants. | ) | |
| AND RELATED COUNTERCLAIMS. | ) | |

I, Larry L. Day, hereby acknowledge that I have read the draft Protective Order in connection with the case of Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al., United States District Court for the District of Massachusetts, Case No. 00-CV-12234-EFH, that I understand the provisions prohibiting the disclosure or use of "Confidential Material" for any purpose or in any manner not connected with the prosecution or defense of this case, and that I agree to be bound by all provisions of the aforesaid Protective Order. I understand that any "Confidential Material" I receive, any copies I make of any such material, and any other records or compilations that may be made regarding such information shall not be disclosed to others except as provided in the Protective Order, and shall be returned at the conclusion of this litigation to counsel of record for the party who provided the "Confidential Material" to me. I further understand and agree that I shall be permitted access to financial documents and financial information designated "Confidential – Attorneys' Eyes Only" or "Restricted Confidential – Attorneys' Eyes Only" and to no other material so designated, provided that my access to such

EXHIBIT F.

Restricted Confidential material shall be obtained either at the law offices of plaintiff's counsel of record, or at a mutually agreed-upon law firm in Arizona (consent to be in writing and not unreasonably withheld). I further understand that any notes I may make concerning such documents shall remain at the location where I am permitted to review the documents, that I may not make copies of the documents, and that I may not disseminate the information in the documents or discuss the information contained in the documents with anyone other than plaintiff's outside counsel of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signature _____

Address _____

_____

_____

EXHIBIT F

# EXHIBIT G

```
 1        IN THE UNITED STATES DISTRICT COURT

 2        FOR THE DISTRICT OF MASSACHUSETTS

 3                  -   -   -

 4   FREEDOM WIRELESS, INC.,: CIVIL ACTION NO.        Plaintiffs : 00-CV-1

 5        v.                 :                    :

 6   BOSTON COMMUNICATIONS  :GROUP, INC., ET AL.,  :

 7             Defendants :

 8                  -   -   -

 9             December 1, 2004

10                VOLUME II

11                  -   -   -

12        Videotape deposition of ROBERT A.

13   PRESSMAN, ESQUIRE, held in the offices of

14   Bramson & Pressman, 1100 East Hector

15   Street, Conshohocken, Pennsylvania 19428,

16   commencing at 10:46 a.m., on the above

17   date, before Anne Marie Beecher, a

18   Professional Court Reporter and Notary

19   Public for the Commonwealth of

20   Pennsylvania.

21                  -   -   -

22

23

24   Job No.: 1908
```

EXHIBIT G    1

12/1/2004  Pressman, Robert (Vol. II)

1    patent issued?

2         A.    I think so.

3         Q.    Were you involved in the

4    prosecution of any continuation

5    applications after the '823 patent

6    issued?

7         A.    I'm just having trouble with

8    the dates, as I said earlier.  There was

9    a point when I was getting copied and

10   seeing sort of what was going on with the

11   patent office.  And then when the

12   protective order -- I mean, I don't even

13   know where the protective order stands.

14              When an agreement was

15   reached or whatever.  Maybe you don't

16   want to say that an agreement was

17   reached.

18              What I said, there was some

19   point in time when, assuming the

20   protective order was operable, if it was

21   operable, I no longer could be involved

22   in the prosecution.

23        Q.    And you haven't been

24   involved in the prosecution since that

EXHIBIT G

166

12/1/2004 Pressman, Robert (Vol. II)

1    time?

2         A.    Correct.

3         Q.    Have you been kept apprised

4    of what's going on in the patent

5    prosecution process?

6         A.    No.

7         Q.    Not at all?

8         A.    No.

9         Q.    You don't have any

10   discussions with anybody at Fish &

11   Richardson about that?

12        A.    No.

13        Q.    Now, in your prior

14   deposition you were asked whether there

15   are still any continuations pending, and

16   that deposition was June 26, 2003.

17        A.    Okay.

18        Q.    And your testimony was, you

19   didn't know.

20        A.    Okay.

21        Q.    Now, we now know that there

22   was a continuation application pending

23   that was filed on March 10, 2003?

24        A.    Okay.

EXHIBIT G    167

# EXHIBIT H

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

May 15, 2006

<u>VIA FACSIMILE AND U.S. MAIL</u>
**415-397-7188**

Andrew Shen
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111-1704

Re:   <u>*Freedom Wireless, Inc. v. Boston Communications Group, Inc., Alltel et al.,*</u>
      <u>Case No. 05-11062-EFH</u>

Dear Andrew:

I write in response to your May 12, 2006 letter addressing the draft protective order in this case.

As an initial matter, we suggest that defendants begin coordinating their responses to this protective order, and we are copying defense counsel on this letter to facilitate such coordination. We have circulated the two current versions of a draft protective letter to all counsel, yet have only heard from counsel from the Regional Carrier defendants. Freedom will only agree to a final protective order once all defense counsel agree to its terms as we cannot have separate protective orders with each counsel. As we have said earlier, Freedom has only agreed to abide by the draft protective order regarding the regional carrier defendants until June 8, 2006 to allow time for the negotiation and possible motion practice regarding any protective order. We fear that this timeline may not be achievable if the remaining defense counsel do not weigh in on these issues until the end of that period.

Regarding the substance of your letter, as agreed in our previous correspondence, we will not insist on the inclusion of paragraph 5(c), given the understanding as stated in paragraph 5(b) that

**EXHIBIT H**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

Mr. Day, Mr. Fougnies, and Mr. Harned will be able to access "Confidential" material, where necessary for the purposes of this litigation, upon their signing of the undertaking in Exhibit A.

As to your agreement that regional carriers will agree not to question Mr. Harned about any material designated as "Restricted Confidential -- Attorney's eyes Only," please confirm that the same condition applies to Mr. Fougnies. Furthermore, please confirm that all defense counsel join in this agreement.

Although we appreciate and accept your compromise to limit Mr. Harned's access to "Restricted Confidential - Attorney's Eyes Only" material on the condition that he is not questioned about this material, we cannot so agree to your position for Mr. Day. As you know, Mr. Day has been given access to very similar information in Freedom I, and there has been no accusation or other indication that such information has been used improperly. Indeed, no defense counsel has ever clarified how Mr. Day could misuse such information, especially when the documents remain in the possession of Quinn Emanuel. Mr. Day's expertise about financial matters is required for fully informed litigation and was granted in the first Freedom Wireless case. We will not agree to anything less in this protective order without a showing of a real threat of misuse of that information.

Regarding our requested paragraph 6(f), we believe that it is sufficiently narrow as currently worded. We can envision very rare times when a witnesses' name appears on a defense document marked "Restricted Confidential - Attorney's Eyes Only," as that category is largely reserved for technical documents that contain trade secret or otherwise sensitive information that should not contain the names of any Freedom Wireless witness. Moreover, paragraph 6(f) limits access to only those individuals noticed to be deposed or serve as a witness at trial. Furthermore, the proposed access to "Restricted Confidential - Attorney's Eyes Only" material will be limited to only that material in which the witness is specifically named. We continue to believe this request is reasonable and narrowly tailored.

Regarding Mr. Pressman, your proposal that he sign a statement indicating that he will not become involved in patent prosecution merely begs the question surrounding what it means to be involved in patent prosecution. We originally proposed our change to paragraph 7 to make clear that it would not include Mr. Pressman, who has consulted with patent prosecution counsel in the past, but has never been the lead patent prosecution attorney. His full involvement is well detailed in his two depositions given in this case. We merely request clarification that paragraph 7 as currently worded does not apply to Mr. Pressman. If defendants cannot agree to this, then they should suggest a different wording to paragraph 7 that more clearly defines what it means to be involved in patent prosecution so that it refers only to primary patent prosecution counsel, and will not be used to exclude those other outside attorneys, including Mr. Pressman, who have been part of the process in their role as attorneys for Freedom.

Finally, we continue to disagree that there is any need to inquire into the protective order in a separate case that does not concern Quinn Emanuel or the regional carrier defendants. You may choose to independently learn about the status of that protective order and propose any changes based on that review. But we will continue to address the protective order in this case solely based on the issues and parties relevant to this case.

EXHIBIT H

As always, please feel free to contact me if you have any questions.


Very truly yours,

*Erica Taggart*

Erica Taggart

EPT:jmz
08930/1884585.2


Cc:    All defense counsel (via fax)

EXHIBIT H